# EXHIBIT A

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| In re<br><br>Refreshing USA, LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No. 24-33919 |
| In re<br><br>Water Station Management LLC,<br><br>        Debtor. | Chapter 11<br><br>Case No. 24-33924 |

**DECLARATION OF BRIAN WEISS IN SUPPORT OF DEBTORS REFRESHING USA, LLC AND WATER STATION MANAGEMENT LLC'S MOTION FOR AN ORDER TO (1) EMPLOY AND RETAIN FORCE TEN PARTNERS, LLC, AND (2) DESIGNATE BRIAN WEISS AS CHIEF RESTRUCTURING OFFICER**

I, Brian Weiss, being duly sworn, state the following under penalty of perjury:

1. I submit this declaration (the "Declaration") in support of *Debtors Refreshing USA, LLC and Water Station Management LLC's Motion for an Order to (1) Employ and Retain Force Ten Partners, LLC, and (2) Designate Brian Weiss as Chief Restructuring Officer* (the "Motion"). Except as otherwise noted, I have personal knowledge of the matters set forth herein.

1. I am a partner of Force 10. I have approximately 24 years of experience providing financial advisory, restructuring and turnaround services and have advised companies across a diverse range of industries. I assist clients both inside and outside of chapter 11 in addressing a variety of financial, operational, liquidity, and leverage issues. I served as the CRO in Carbonlite Industries, Breckenridge Food Systems, Star Ribs, LLC, CIR Restaurant Holdings Group, Inc., Desert Restaurant Ventures, Mancha Development Corp., and Thomas Management, Inc. and as financial advisor in Rubio's Restaurants, Alpha Guardian, and

1

Sugarfina, Inc. I further served as the CRO and financial advisor in a variety of out-of-court restructurings. In 2022, I received an award and was named a "Top 25" restructuring consultant with a distinction in dealmaking by Global M&A Network.

2. Force 10 has extensive experience in providing CRO services and serving as a financial advisor to debtors, creditors, trustees, official creditors' committees, and others in a wide variety of bankruptcy matters, including acting as: (a) CRO, independent director, or financial advisor to the debtors in the bankruptcy proceedings of Carbonlite Industries, Inc., Rubio's Restaurants, Alpha Guardian, Corner Bakery, Tuesday Morning Corporation, Thomas Health System, Inc., Watsonville Hospital Corporation, Trade Global/Jagged Peak, Sugarfina, Inc., Breckenridge Food Systems, Star Ribs, LLC, CIR Restaurant Holdings Group, Inc., Desert Restaurant Ventures, Mancha Development Corp., and Thomas Management, Inc.; and (b) financial advisor to the official committees of unsecured creditors in bankruptcy proceedings of Irwin Naturals, The Litigation Practice Group, Ruby's Diner, Inc. and East Coast Foods, Inc.

3. On October 14, 2024 ("Retention Date"), Force 10 was engaged by Debtors to provide me as Debtors' CRO and with Restructuring Advisor Personnel, as necessary, to provide certain advisory services in connection with Debtors' ongoing evaluation, development, and implementation of strategic alternatives to address their assets, financial performance, and to analyze the prospects of a reorganization.

4. Since the Retention Date and even before, I have devoted and continue to devote substantial time and effort to prosecuting these cases, managing Debtors' business operations, preparing chapter 11 bankruptcy compliance documents, corresponding with various stakeholders, developing a plan for the chapter 11 cases to maximize value to the estates and for creditors, and managing Debtors' restructuring professionals.

5. As stated above, under the Retention Agreement, Force 10 has provided Debtors with me as CRO and with the Restructuring Advisor Personnel to further provide the services set forth in the Retention Agreement. My duties have been, and are proposed to continue to be, those duties customarily performed by individuals holding similar executive positions.

6. Subject to further order of the Court, and as more fully set forth in the Retention Agreement, the responsibilities of Force 10 include the following, without limitation:

(a) Manage the affairs of Debtors, supervise Debtors' professionals, and provide periodic reports to the Manager(s);

(b) Oversee Debtors' restructuring efforts;

(c) Supervise the engagement of Debtors' restructuring legal counsel, investment banker, claims agent, and other professionals;

(d) Seek to maximize the value of Debtors' assets and operations through one or more of the following: obtain debtor-in-possession financing, sale of one or more of Debtors' or their assets, refinance of existing indebtedness, a recapitalization, restructuring or reorganizing of Debtors' businesses, in whole or in part;

(e) Assist in connection with motions, responses, or other court activity as directed by legal counsel;

(f) Prepare periodic reporting to stakeholders, the Bankruptcy Court, and the Office of the United States Trustee;

(g) Prepare or supervise the preparation of cash budgets, monthly operating reports, cash flow variance reports, schedules of assets and liabilities, statements of financial affairs, and other financial analysis or reporting;

(h) Develop restructuring plans and other strategic alternatives for maximizing the value of Debtors' and their assets and recommend to the Manager(s) various plans and strategic alternatives from time to time, and upon receipt of Manager(s) approval of a proposed course of action, the CRO shall use commercially reasonable efforts to attempt to implement such course of action, subject to, as applicable, approval of any court of competent jurisdiction;

(i) Oversee the formulation and preparation of Debtors' disclosure statement(s) and plan(s) of reorganization, if applicable, including the creation of financial projections and supporting methodologies, and key assumptions;

(j) Assist in negotiations with Debtors' creditors;

(k) Work with restructuring legal counsel to address objections from parties in interest to the bankruptcy plan(s) or other courses of action undertaken by Debtors;

(l) Participate in meetings and provide support to Debtors and their professionals in responding to information requests, communicating with and/or negotiation with lenders, official committees of unsecured creditors, vendors, customers, the Office of the United States Trustee (the "U.S. Trustee"), other parties in interest, and professionals hired by the same;

(m) Identify executory contracts and unexpired leases and perform analyses of the financial impact of the assumption or rejection of each, as necessary;

(n) Advise senior management and the Manager(s) in the development, negotiation, and implementation of restructuring initiatives and evaluation of strategic alternatives;

(o) Oversee and manage a court-approved sales process including (i) oversight of any proposed investment banker, (ii) developing materials and documents for potential buyers' review, (iii) assisting Debtors with the preparation of due diligence materials, (iv) assisting with the evaluation of offers received and (v) working with Debtors and counsel to Debtors to prepare and support asset purchase agreements and related motions to obtain Court approval of the sale process;

(p) Prepare information and analysis necessary for the confirmation of a plan(s) of reorganization, including information contained in the disclosure statement(s) such as a liquidation analysis, if applicable;

(q) Assist in implementing a chapter 11 plan(s) of reorganization, if applicable;

(r) Render testimony, as requested, about the matters regarding which Force 10 and its personnel are providing services; and

(s) Provide such other restructuring or advisory services as are consistent with the role of CRO and/or the above-described services, requested by Debtors or counsel to Debtors, that are not duplicative of services provided by other professionals, and as agreed by Force 10.

7. Force 10's services do not include legal, tax, audit or accounting advice or services or any similar advice or services.

8. As set forth in the Retention Agreement, the hourly billing rates for restructuring professionals assigned to this engagement by Force 10 are as follows:

| PROFESSIONAL | RATE RANGE |
|---|---|
| CRO | $950 (capped at $850) |
| Partners | $695 to $950 (capped at $850) |
| Managing Directors | $600 to $695 |
| Directors | $550 to $595 |
| Senior Associates | $400 to $500 |
| Analysts | $325 to $375 |

9. Such rates shall be subject to Force 10's customary annual adjustments. Notice of any such adjustment shall be given to Debtors reasonably in advance of its effectiveness. Force 10 may add or substitute personnel during these cases, in which case the substituted personnel will be billed at Force 10's customary hourly rates. In addition to compensation for services rendered by Force 10's professionals, Force 10 will seek reimbursement for reasonable and necessary expenses incurred in connection with these cases, including, but not limited to travel, meals, lodging, postage, telephone, document reproduction, computer charges and database access fees, and any reasonable fees and expenses of counsel, consultants, and advisors retained in connection with Force 10's engagement.

10. I believe the foregoing fee structure is reasonable, market-based, and designed to fairly compensate Force 10 for its work and to cover necessary and reasonable expenses.

11. Other than as set forth herein or in the Retention Agreement, there is no proposed arrangement between Debtors and Force 10 for compensation to be paid in these cases.

12. Force 10 has received no cash retainers.

13. Force 10 is aware that Debtors seek to retain Tonkon Torp LLP as their bankruptcy counsel, and that Debtors may retain additional professionals during the term of the engagement. Force 10 will work cooperatively with, and not duplicate the services of, the other

professionals to integrate any respective work performed by Force 10 on behalf of Debtors with the work performed by the other professionals.

14. As a material part of the consideration for which Force 10 and its personnel have agreed to provide the services herein, pursuant to the Retention Agreement (including the indemnification provisions attached to Annex A to the Retention Agreement and made a part of the Retention Agreement (the "Indemnification Agreement")), and as further set forth therein, with the limitations included in the Order, Debtors have agreed to indemnify those Force 10 employees serving as officers of any of Debtors, including me, to the same extent as the most favorable indemnification it extends to its officers and directors and to cover such Force 10 employees under Debtors' director and officer liability policy.

15. I believe that the indemnity provisions are comparable to those indemnification provisions generally obtained in comparable engagements, both in and out of court.

16. Force 10: (i) does not hold or represent an interest adverse to Debtors' estates; and (ii) has no connection to Debtors, their creditors, or other parties in interest, or the attorneys or accountants of any of the foregoing, or the U.S. Trustee or any person employed in the Office of the U.S. Trustee except that in my work as a restructuring advisor, Tonkon Torp LLP represents me and works with Force 10 in matters completely unrelated to these Cases.

/ / /

/ / /

/ / /

/ / /

/ / /

**I HEREBY DECLARE THAT THE ABOVE STATEMENTS ARE TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND THEY ARE MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY.**

Dated: October 24, 2024.

                                               */s/ Brian Weiss*
                                               Brian Weiss