# EXHIBIT B



5271 California, Suite 270<br>
Irvine, California 92617<br>
Force10partners.com<br>
(949) 357-2360

October 14, 2024

Mr. Eric Camm, Manager
Refreshing USA, LLC
Water Station Management, LLC
Creative Technologies, LLC
2003 Western Avenue, Suite 660
Seattle, Washington 98121

      Re:      Force Ten Partners, LLC — Engagement Agreement

Dear Mr. Camm:

We appreciate the opportunity to work with Refreshing USA, LLC, Water Station Management, LLC, and Creative Technologies, LLC (individually and collectively the "Company"). This Engagement Agreement ("Agreement") confirms and sets forth the terms and conditions of the engagement between the Company and Force Ten Partners, LLC ("Force 10") regarding the scope of the services to be performed by Force 10 (the "Engagement") and the basis of compensation for those services.

1.    Description of Services.

       (a)    Executive Services – Chief Restructuring Officer. During the term of this Engagement, Force 10 shall provide Brian Weiss to the Company to serve in the capacity of the Company's chief restructuring officer ("CRO"). If Brian Weiss is unable to serve as CRO, Force 10 and the Company will work collaboratively to select a replacement CRO. The CRO will work under the direction of, and report to, the Manager, or his designee (collectively, the "Manager") of each respective Company to (i) manage the Company's restructuring efforts, (ii) manage the Company's efforts to reorganize their assets and liabilities for the benefit of their respective stakeholders, including, without limitation, authorizing the CRO to administer and carry out each Company's duties as a debtor-in-possession, if applicable; and (iii) such other duties as directed by the Manager and agreed to by the CRO.

       (b)    Restructuring Services. Brian Weiss, as CRO, and Force 10 in aid of the CRO, will seek to utilize the Company's employees to efficiently provide the following services ("Restructuring Services"), as appropriate:

          (i)    Manage the restructuring affairs of the Company and its professionals and provide periodic reports to the Manager;

          (ii)   Assist legal counsel and the Company in executing the Company's restructuring efforts;

          (iii)  Assist in connection with motions, responses, or other court activity as directed by legal counsel;

(iv) Evaluate and develop restructuring plans and other strategic alternatives for maximizing the value of the Company and their assets. The CRO, in coordination with the Company's other professionals, may recommend to the Manager various plans and strategic alternatives from time to time, and upon receipt of the Manager's approval of a proposed course of action, the CRO shall use commercially reasonable efforts to attempt to implement such course of action, subject, as applicable, to the approval of any court of competent jurisdiction;

(v) Assist in negotiations with the Company's creditors; and

(vi) Prepare and offer declarations, reports, depositions, and testimony.

(c) <u>Additional Personnel</u>. The CRO may utilize additional personnel with appropriate professional experience through Force 10 to address and handle the restructuring services.

(d) <u>Reporting</u>. The CRO shall act under the direction, control, and guidance of the Manager and shall serve at the Manager's pleasure.

(e) <u>Force 10 Personnel</u>. Force 10 will continue to engage the CRO while rendering services to the Company. The CRO and Force 10 will continue to work on unrelated matters that will not unduly interfere with services rendered under this Engagement.

(f) <u>Reliance</u>. The Company shall use commercially reasonable efforts to (i) provide the CRO and Force 10 and its personnel with access to management and other representatives of the Company and (ii) to furnish all data, material, and other information concerning the business, assets, liabilities, operations, cash flows, properties, financial condition and prospects of the Company that such personnel reasonably request in connection with the services to be provided under this Engagement. The CRO, Force 10, and its personnel may rely, without independent verification, on the accuracy and completeness of all information furnished by or on behalf of the Company or otherwise reviewed by such personnel in connection with the services to be provided under this Engagement. The Company acknowledges and agrees that the CRO and Force 10 and its personnel are not responsible for the accuracy or completeness of such information and shall not be responsible for any inaccuracies or omissions therein. The CRO and Force 10 and its personnel are under no obligation to update data submitted to them.

(g) <u>Projections</u>. You understand that the services to be rendered by the CRO and Force 10 and its personnel may include the preparation of projections and other forward-looking statements and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. Also, you understand that the CRO and Force 10 and its personnel will be relying on information provided by the Company, its management, employees, and other professionals in preparation of those projections and other forward-looking statements.

(h) <u>Limitations of Duties</u>.

(i) Neither the CRO nor Force 10 nor any of its personnel make any representations or guarantees that the goals of this Engagement will be achieved, that a restructuring will be realized, or that any plan or strategic alternative recommended or implemented by the CRO and Force 10 or any of its personnel will be more successful than any other possible proposals or strategic alternatives.

(ii) Neither the CRO nor Force 10 shall be deemed to be the employer (or co-employer with any Company) of any of the Company's employees, and shall not have the power to fire, hire, or promote any of the Company's employees or sign any checks payable to the employees. The Company's employees shall at all times be and remain exclusively employees of the Company that employs it.

(iii) Neither the CRO nor Force 10 nor any of its personnel shall have a role in decisions related to the Company's employees' wages, hours and days of work, employee policies, employee record maintenance, business expense reimbursements, wage

    statements, wage penalties, employee classification as independent contractors or exempt employees, or any other condition of employment. The Company retains these responsibilities.

   (iv) Neither the CRO nor Force 10 nor any of its personnel assume any responsibility for the Company's decision to pursue or not pursue any business strategy or to effect or not to effect any Transaction. Force 10 and its personnel shall only be responsible for implementing the proposals approved by the Manager and only to the extent and in the manner authorized by and directed by the Manager.

   (i) <u>Modifications</u>. This Engagement is fluid, and the specific scope of services may change. If circumstances arise and the scope of requested services expands, Force 10 and the Manager will consult regarding amendments and modifications to this Engagement.

2. <u>Compensation</u>. In consideration of Force 10's acceptance of this Engagement, the Company agrees:

  (a) <u>Hourly Fees</u>. To pay Force 10 for the hourly rate of its personnel providing services pursuant to the Engagement. The hourly rates agreed to for the Engagement are:

| | |
|---|---|
| Partners | $850-$950 (capped at $850) |
| Managing Directors | $600-$695 |
| Directors | $550-$595 |
| Senior Associates | |
| Analysts | $325-$375 |

  Force 10 generally adjusts its hourly rates annually, and the above rates reflect the current rates for the calendar year 2024. The CRO's hourly fee is $850.

  (b) <u>Expenses</u>. The Company shall reimburse the CRO and Force 10 for their reasonable and documented out-of-pocket expenses incurred in connection with the Engagement, including travel, lodging, duplicating, computer research, messenger services, and telephone charges.

  (c) <u>Payment Terms</u>. The Company shall pay Force 10's hourly fees and reimburse its expenses immediately upon approval of fees by the bankruptcy court.

3. <u>Term</u>.

  (a) The term of this Engagement shall commence as of the date set forth above and shall continue until the Engagement is completed unless terminated with or without cause by either the Company or Force 10 on thirty (30) days prior written notice, in which event all compensation and expenses owing to Force 10 through the date of such termination (including fees and costs incurred prior to but invoiced after such termination) shall be immediately due and payable. All provisions of this Agreement setting forth rights or obligations that extend beyond the termination of the Agreement shall survive and shall continue to bind the parties.

  (b) Force 10 may withdraw from this Engagement and terminate its obligations hereunder, and the CRO may resign from their respective positions upon written notice to the Manager if the Company makes it unethical or unreasonably difficult for the CRO, Force 10, or its personnel to fulfill the terms of this Engagement or otherwise perform their duties under this Engagement.

4. <u>No Audit</u>. Force 10 and its personnel are not being requested to perform and are not agreeing to undertake an accounting audit, review, compilation, or any other type of financial statement reporting engagement that is subject to the rules of the American Institute of Certified Public Accountants, the Securities Exchange Commission, or any other state or national professional or regulatory body.

5. <u>No Third-Party Beneficiary</u>. The Company acknowledges that all advice and work product given by Force 10 or any of its personnel in connection with this Engagement is intended solely for the benefit

and use of the Company, including its management and the Manager, in their capacities as such, in considering the matters to which this Engagement relates. Without Force 10's specific case-by-case written approval, the Company agrees that the advice and any work product shall not be used for any other purpose and that they shall not be reproduced, disseminated, quoted, or referred to other than for the exclusive purpose of accomplishing the tasks that are the subject matter of this Engagement during the term of this Engagement, except as otherwise required by law.

6. <u>Conflicts</u>. The CRO and Force 10 are not currently aware of any relationship that would create a conflict of interest with the Company or those parties in interest of which you have made us aware. Because the CRO is a corporate restructuring consultant and independent fiduciary and Force 10 is a financial advisory, corporate restructuring, and consulting firm that serves clients in numerous cases and industries, both in and out of court, it is possible that the CRO and/or Force 10 may have rendered services to or have business associations with other entities or people which had or have or may have relationships with any of the Company, including creditors of the Company. The CRO and Force 10 will not represent the interests of any such entities or people in connection with this matter.

7. <u>Confidentiality</u>. Force 10 and its personnel shall keep confidential all non-public information received from the Company in conjunction with this Engagement, except: (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings; or (iii) as reasonably required in the performance of this Engagement. All confidentiality obligations shall cease as to any part of such information that is or becomes public other than as a result of a breach of this provision.

8. <u>Indemnification and Limitations on Liability</u>.

(a) The Company shall indemnify and hold harmless the CRO to the greatest extent provided in their respective organizational documents for indemnifying any other officer of the Company. Furthermore, the Company shall indemnify and hold harmless Force 10 and each of its personnel, including the CRO, together with its officers, members, partners, directors, employees and agents (each an "<u>Indemnified Party</u>"), from and against any losses, claims, damages and liabilities, joint or several (collectively, the "<u>Damages</u>"), to which such Indemnified Party may become subject in connection with or otherwise relating to or arising from any services contemplated by this Engagement or performance of services by an Indemnified Party thereunder, including any liability to or on account of any employees of any Company, and will reimburse each Indemnified Party for all fees and reasonable and documented out-of-pocket expenses (including the fees and reasonable and documented out-of-pocket expenses of counsel) (collectively, "<u>Expenses</u>") as incurred in connection with investigating, preparing, pursuing or defending any threatened or pending claim, action, proceeding or investigation (collectively, "<u>Proceedings</u>") arising therefrom, whether or not such Indemnified Party is a formal party to such Proceeding; <u>provided</u>, <u>however</u>, that the Company will not be liable to any specific Indemnified Party to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of such specific Indemnified Party seeking indemnification hereunder. No Indemnified Party shall have any liability (whether direct or indirect, in contract, tort, or otherwise) to the Company or any person asserting claims on behalf of the Company arising out of or in connection with any services contemplated by this Engagement or the performance of services by any Indemnified Party thereunder except to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from, the gross negligence or willful misconduct of the Indemnified Party.

(b) If for any reason other than in accordance with this Engagement, the foregoing indemnity is unavailable to an Indemnified Party or insufficient to hold an Indemnified Party harmless, the Company agrees to contribute to the amount paid or payable by an Indemnified Party as a result of such Damages (including all Expenses incurred) in such proportion as is appropriate to reflect the relative benefits to the Company and/or its stakeholders or beneficiaries on the one hand, and Force 10 on the other hand, in connection with the matters covered by this Engagement and this Section 8 or, if the foregoing allocation is not permitted by applicable law, not only such relative benefits but also the relative faults of such parties as well

as any relevant equitable considerations. The Company agrees that for purposes of this paragraph the relative benefits to the Company and/or its stakeholders or beneficiaries and Force 10 in connection with the matters covered by this Engagement and this Section 8 will be deemed to be in the same proportion that the total value paid or received or to be paid or received by Company and/or its stakeholders or beneficiaries in connection with the Damages, bears to the fees paid to Force 10 under the Engagement; <u>provided</u>, <u>however</u>, that (a) in no event will the total contribution of all Indemnified Parties to all such Damages exceed the amount of fees actually received and retained by Force 10 under this Engagement (excluding any amounts received by Force 10 as reimbursement of expenses) and (b) the Company shall have no obligation to make any contribution to the extent that any Damages are found in a final non-appealable judgment by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of the applicable Indemnified Party.

(c) The Company shall not enter into any waiver, release, or settlement of any Proceeding (whether or not Force 10 or any other Indemnified Party is a formal party to such Proceeding) in respect of which indemnification may be sought hereunder without the prior written consent of Force 10 (which consent will not be unreasonably withheld), unless such waiver, release or settlement (i) includes an unconditional release of Force 10 and each Indemnified Party from all liability arising out of such Proceeding and (ii) does not contain any factual or legal admission by or with respect to any Indemnified Party or any adverse statement with respect to the character, professionalism, expertise or reputation of any Indemnified Party or any action or inaction of any Indemnified Party.

(d) If any Indemnified Party is entitled to indemnification under this Agreement with respect to any action or proceeding brought by a third party, the Company shall be entitled to assume the defense of any such action or proceeding with counsel reasonably satisfactory to the Indemnified Party. Upon assumption by the Company of the defense of any such action or proceeding, the Indemnified Party shall have the right to participate in such action or proceeding and to retain its own counsel but the Company shall not be liable for any legal expenses of other counsel subsequently incurred by such Indemnified Party in connection with the defense thereof unless (i) the Company have agreed to pay such fees and expenses, (ii) the Company shall have failed to employ counsel reasonably satisfactory to the Indemnified Party in a timely manner, or (iii) the Indemnified Party shall have been advised by counsel that there are actual or potential conflicting interests between the Company and the Indemnified Party, including situations in which there are one or more legal defenses available to the Indemnified Party that are different from or additional to those available to the Company; provided, however, that the Company shall not, in connection with any one such action or proceeding or separate but substantially similar actions or proceedings arising out of the same general allegations, be liable for the fees and expenses of more than one separate firm of attorneys at any time for all Indemnified Parties, except to the extent that local counsel, in addition to its regular counsel, is required in order to effectively defend against such action or proceeding.

(e) The CRO and any other officers or managers provided by Force 10 pursuant to this Engagement shall be insured as officers of the Company under the Company's director and officer liability insurance policies if and when such policy is obtained. If such insurance is obtained, the Company shall maintain such insurance and purchase an appropriate tail if the policies are to expire and not be replaced by substantially similar or better policies for the period through which claims can be made against such persons. At Force 10's request, the Company shall acquire appropriate additional insurance solely to insure the CRO and any other officers or managers provided by Force 10.

(f) The provisions of this Section 8 are contractual obligations, and no change in applicable law or any of the Company's organizational documents, bylaws, or any other agreement or, undertaking or insurance policy shall affect the CRO's, Force 10's, or any of Force 10's personnel rights under this Section.

9. <u>Joint and Several Liability</u>. Each Company agrees that they are each jointly and severally liable to Force 10 for the Company's representations, warranties, covenants, liabilities, and obligations as set forth in this Engagement. Force 10 and its personnel may seek to enforce, in their sole discretion, any of their respective rights and remedies against any Company and any of their subsidiaries in any order and at

any time.

10. <u>Limitations of Liability</u>. If Force 10 or any of its personnel are otherwise in breach of or default under this Engagement, then the maximum liability of Force 10 and such personnel in the aggregate with respect to such breach or default shall be limited to an amount equal to the fees actually paid to Force 10 (excluding any amounts received by Force 10 as reimbursement of expenses) pursuant to this Engagement as of such date.

11. <u>Successors and Assigns</u>. This Engagement shall inure to the benefit of, and be binding upon, the Company and Force 10 and their respective successors and assigns. Neither party may assign its rights and/or obligations under this Engagement without the written consent of the other party, which consent shall not be unreasonably withheld, conditioned, or delayed.

12. <u>Applicable Law</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without reference to principles of conflicts of law. Any action arising from or related in any way to this Engagement shall be brought only in the Federal or state courts located in California or a court of competent jurisdiction over the Company. If the Company seeks bankruptcy protection, then the Company and Force 10 agree the bankruptcy courts will govern the Agreement.

13. <u>Independent Contractor</u>. Force 10 and its personnel serve as independent contractors to the Company pursuant to the terms of this Engagement. This Engagement does not create and shall not be construed to create a relationship of principal and agent, joint venture, co-partners, employer and employee, or any similar relationship, and the parties hereto expressly deny the existence of any such relationship.

14. <u>No Attorney-Client Relationship or Provision of Legal Services</u>. Certain Force 10 personnel are attorneys. Neither this engagement nor any services provided by Force 10 or its personnel pursuant to this engagement shall give rise to an actual or imputed attorney-client relationship between any such attorney and any Company or its officers, directors, or principals. The Company agrees and acknowledges that neither it nor any of its officers, directors, or principals has any attorney-client relationship with any personnel affiliated with Force 10. The Engagement of Force 10 is not an engagement of Force 10 or any of its personnel to provide legal advice. The services provided by Force 10's personnel are business advice and do not constitute legal advice.

15. <u>Miscellaneous</u>. No amendment of this Engagement or waiver of any provision hereof will be binding unless set forth in a writing signed by the Company and Force 10. No failure or delay by a party in exercising any right, power, or privilege hereunder will operate as a waiver thereof, nor will any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power, or privilege hereunder. The invalidity or unenforceability of any provision of this letter agreement will not affect the validity or enforceability of any other provision of this letter agreement, each of which will remain in full force and effect. This Engagement may be executed in counterparts, each of which will be deemed to be an original and all of which will constitute one and the same instrument. Signatures delivered electronically will have the same force and effect as original signatures.

If this Agreement is acceptable to you, please execute and return it to acknowledge your agreement to its terms.*****************************

|  |  |
|---|---|
|  | **FORCE TEN PARTNERS, LLC,** a Delaware limited liability company |
|  | By: /s/ Brian Weiss |
|  | Name: Brian Weiss |
|  | Its: Member, Partner |

**COMPANY:**

REFRESHING USA, LLC

By: /s/ Eric Camm
Name: Eric Camm
Its: Manager

WATERSTATION MANAGEMENT, LLC

By: /s/ Eric Camm
Name: Eric Camm
Its: Manager

CREATIVE TECHNOLOGIES, LLC

By: /s/ Eric Camm
Name: Eric Camm
Its: Manager