UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| Refreshing USA, LLC, | Case No. 24-33919 |
| Debtors[1]. | (Jointly Administered) |

## DEBTORS' MOTION FOR AN ORDER ESTABLISHING PROCEDURES FOR SALE OR ABANDONMENT OF ASSETS OF DE MINIMIS VALUE

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON NOVEMBER 26, 2024 AT 2:00 PM (PREVAILING CENTRAL TIME) IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PÉREZ'S CONFERENCE**

---

[1] Debtors and debtors-in-possession in these Chapter 11 cases ("Bankruptcy Case(s)"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-33919; Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-33924; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station, "Debtors"), Case No. 24-33934. Debtors' mailing address is: 2732 Grand Ave., Ste. 122, Everett, WA 98201.

1

**CODE IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM.  CONNECT VIA THE FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PÉREZ'S HOME PAGE.  THE MEETING CODE IS "JUDGEPEREZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING. HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS.  TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PÉREZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Refreshing USA, LLC ("Refreshing"), Water Station Management LLC ("Water Station"), debtors and debtors in possession in the above-captioned Chapter 11 cases, and Creative Technologies, LLC ("Creative") together with Refreshing and Water Station, "Debtors"), who is subject to a currently pending involuntary petition for chapter 11, hereby state the following in support of this Motion:

## PRELIMINARY STATEMENT

1. Debtors request the Court enter an order approving procedures for the Debtors to sell or otherwise abandon certain personal property with de minimis value, pursuant to sections 105(a), 363, and 554 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 2002, 6004, 6007 and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") that is located in various locations across the country, including on various pieces of real property of a former affiliate, Ideal Property Investments LLC ("Ideal") and at customer and former customer locations.  Debtors believe developing expedited and less burdensome procedures for the sale or abandonment of certain personal property is fair, reasonable, and in the best interest of Debtors' estates, because Debtors have excess equipment and inventory that needs to be liquidated, including up to 15,000 pieces of light equipment (*i.e.* vending machines or water stations), approximately 250 vehicles including many that have very high mileage and/or are non-operating due to mechanical issues, and numerous palettes of expired inventory to

fill that equipment. The Debtors also have various inoperable vending and water machines that are costly to store and do not have a business use except for potentially for spare parts. The Motion is supported by the Declaration of Brian Weiss ("Weiss Decl."), Chief Restructuring Officer of Debtors, which is attached as **Exhibit A**.

## JURISDICTION AND VENUE

2.     The court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

3.     Debtors are incorporated and headquartered in Washington.  Debtors collectively operate water machine and vending machine businesses.  Creative previously manufactured and sold water purification machines.  Water Station services water machines purchased by investors. Refreshing owns and operates vending machines.  Refreshing is also the central financial clearinghouse for all machines and all revenue generated by the Debtors.  Ryan Wear or Tyler Sadek is believed to be the majority owner of each of the Debtors.  The claims against Debtors and its affiliates exceed $200 million.

4.     In May 2024, the Superior Court of King County, Washington ("Washington Court") appointed Turning Point Strategic Advisors ("Receiver") as a general receiver over each of the Debtors.

5.     On August 23, 2024, the Washington Court issued an Order under the Washington Consumer Protection Act and under its equitable powers in receivership to remove Ryan Wear as Manager of the Debtors and replace him with Eric Camm as Manager ("Removal Order").

6.     On August 27, 2024, Chapter 11 Involuntary Petitions were filed against each of Debtors under Chapter 11 of the Bankruptcy Code (collectively, the "Chapter 11 Cases").

7.     On October 2, 2024, the Court entered Orders for Relief pursuant to 11 U.S.C. § 303(h) as to Refreshing and Water Station, and the same was entered as to Creative on October 23, 2024 (the "Entered Orders for Relief").

8.     No committee of unsecured creditors has been appointed in Debtors' case.

9.     Debtors' (former) affiliate Ideal has filed a voluntary chapter 11 petition in the Bankruptcy Court for the Eastern District of Washington.  Ideal is a real property holding company controlling approximately 20 pieces of real property, and it appears most of or all of the money used to fund Ideal's property purchase transactions came from Debtors—to the tune of at least $31.7 million—without any consideration to Debtors.

## RELIEF REQUESTED

10.     By this Motion, the Debtors seek entry of an order (the "Order"), substantially in the form of **Exhibit B** hereto, authorizing the Debtors to implement expedited procedures to:  (a) sell certain assets, principally comprising idle vending machine and water station equipment, inventory for same, and vehicles, including any rights or interests therein (collectively, the "De Minimis Assets") in any individual transaction or series of related transactions (each, a "De Minimis Asset Transaction") to a single buyer or group of related buyers with an aggregate sale price equal to or less than $300,000 as calculated within the Debtors' reasonable discretion, free and clear of all liens, claims, interests, and encumbrances (collectively, the "Liens or Interests"), without the need for further court approval and with the Liens attaching to the proceeds of such sale with the same validity, extent, and priority as had attached to the De Minimis Assets immediately prior to the sale; or (b) abandon a De Minimis Asset up to a value of $25,000 per

4

individual asset to the extent that a sale of such asset cannot be consummated at a value greater than the cost of liquidating such De Minimis Asset (including storage before finding a buyer); and (c) pay those reasonable and necessary fees and expenses (if any) incurred in connection with the sale of De Minimis Assets, including, but not limited to, commission fees to agents, brokers, auctioneers, and liquidators with the amount of proposed commission fees to be paid to be disclosed in the Transaction Notice (as defined below).[2] No net proceeds of any such sales will be distributed to any creditor absent further order of the Court.

### THE DE MINIMIS ASSET SALE AND ABANDONMENT PROCEDURES

11. The Debtors are seeking court approval to continue their ongoing efforts to market and sell certain property, including equipment, vehicles, inventory, and other assets, related to the Debtors' commercial vending machine and water station business as well as certain other related assets. The Debtors are also lessees of certain real property owned by former affiliate Ideal. Ideal is in the process of selling through a court supervised process almost two dozen commercial properties and requires Debtors to remove their personal property from those properties (and resolve lease rejection damages claims). Accordingly, the Debtors are currently in possession of certain De Minimis Assets that are not, or soon will not be, needed by the Debtors for their future operations.

12. Given the De Minimis Assets' limited value in relation to the Debtors' overall operations and assets, the Debtors submit that selling the De Minimis Assets through efficient procedures will reduce costs and other administrative expenses that would otherwise be incurred

---

[2] For the avoidance of doubt, the Debtors will not (a) sell or abandon anything that is not property of Debtors' estates, including but not limited to water stations owned by third parties, (b) pay fees and expenses of estate-retained professionals in connection with such sale, however, other than in accordance with any orders entered by the Court.

by selling such assets by separate motions. Therefore, the Debtors seek approval of procedures that will authorize, to the extent necessary, the Debtors to sell certain assets outside the ordinary course of business with a transaction value equal to or less than $300,000. In addition, the Debtors seek approval of procedures that would govern the abandonment of certain assets of little or no use to the Debtors' estates.

13. In certain circumstances, the Debtors have a limited window of time in which they may enter into or take advantage of opportunities to sell or otherwise monetize De Minimis Assets. The cost, delay, and publicity associated with seeking individual Court approval of each De Minimis Asset Transaction could eliminate or substantially diminish the economic benefits of the transactions. Thus, the Debtors propose the De Minimis Asset Sale Procedures (as defined below) and the De Minimis Asset Abandonment Procedures (as defined below) to permit the Debtors to dispose of De Minimis Assets in a cost-efficient manner and to allow more expeditious and cost-effective review of certain De Minimis Asset Transactions by interested parties, while at the same time protecting the rights of creditors and other parties in interest.

14. The Debtors propose to sell the De Minimis Assets on the best terms available, taking into consideration the exigencies and circumstances in each such transaction under the following procedures (the "De Minimis Asset Sale Procedures"):

     a. With regard to the sales of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a total transaction value less than or equal to $100,000, as calculated within the Debtors' reasonable discretion:

          i. the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such transactions are in the best interest of the

estates, without further order of the Court, subject to the procedures set forth below.

ii.    any such transactions shall be, without need for any action by any party, final and fully authorized by the Court and may be, as provided in the documentation governing the applicable transaction, final and free and clear of all Liens or Interests with such Liens or Interests attaching only to the proceeds of such transactions with the same validity, extent, and priority as immediately prior to the transaction;

iii.    the Debtors shall (i) give written notice of such transaction (each notice, a "Transaction Notice") to (a) any official committee of unsecured creditors formed in this case (b) counsel to the Pacific Parties, John Bender (jbender@corrcronin.com), and Jay Kornfeld (jkornfeld@bskd.com); (c) counsel to 352 Capital, Scott Balber (Scott.Balber@hsf.com), Peter Behmke (Peter.Behmke@hsf.com), and Jason Kathman (jkathman@spencerfane.com); (d) counsel to First Federal Bank, Greg Fox (Foxg@lanepowell.com), and Andrew Geppert (GeppertA@lanepowell.com), (e) the U.S. Trustee, Ha Nguyen (ha.nguyen@usdoj.gov); (f) any party asserting a Lien or Interest in the De Minimis Asset, if known; and (g) those parties requesting notice pursuant to Bankruptcy Rule 2002 (each, a "Transaction Notice Party" and collectively, the "Transaction Notice Parties"), and (ii) allow all Transaction Notice Parties seven calendar days to object to such sale (the "Initial Objection Period");

iv.    the content of each Transaction Notice sent to the Transaction Notice Parties for the applicable sale of De Minimis Assets shall consist of:(a) identification of the De Minimis Assets being sold;(b) identification of the Debtor that directly owns the De Minimis Assets; (c) if known, the identification of the purchaser of the De Minimis Assets, including a disclosure of any connection to an insider of the Debtors, as applicable (e.g., identity of purchaser may not be know if the asset is to be sold at auction); (d) the identities of holders known to the Debtors as holding Liens or Interests on the De Minimis Assets; (e) the purchase price and the material economic terms and conditions of the sale; and (f) any commission fees, or similar expenses to be paid in connection with such transaction;

v.    if the terms of a proposed sale are materially amended after transmittal of the Transaction Notice but prior to the applicable deadline of any Transaction Notice Parties' right to object to such sale of the De Minimis Assets, the Debtors will send a revised Transaction Notice (the "Amended Transaction Notice") to the

Transaction Notice Parties, after which the Transaction Notice Parties shall have (a) the number of days remaining in the Initial Objection Period plus (b) an additional five (5) calendar days, to object to such sale (the "Amended Objection Period");

vi. any objections to any such transaction must (a) be in writing; (b) set forth the name of the objecting party; (c) provide the basis for the objection and the specific grounds therefor; and (d) be served on (i) the Debtors' Chief Restructuring Officer, Brian Weiss (bweiss@force10.com); (ii) counsel to the Debtors, Danny Newman (danny.newman@tonkon.com), Michael Fletcher (Michael.fletcher@tonkon.com), Ava Schoen (ava.schoen@tonkon.com); and (iii) counsel to any official committee of unsecured creditors formed in these cases; and (iv) the U.S. Trustee, Ha Nguyen (ha.nguyen@usdoj.gov); so as to be received on or before 5:00 p.m., Pacific Time on the last day of the applicable objection period;

vii. if no written objections are submitted by the Transaction Notice Parties prior to the expiration of the Initial Objection Period or the Amended Objection Period, as applicable (the "Transaction Notice Period"), the Debtors are authorized to consummate such transaction immediately; and

viii. if a written objection is received from a Transaction Notice Party within the Transaction Notice Period that cannot be resolved, Debtors must then file a file a motion with the Court to have that transaction approved unless the objecting party withdraws its objection in writing.

b. With regard to the sales of De Minimis Assets in any individual transaction or series of related transactions to a single buyer or group of related buyers with a total transaction value more than $100,000 but less than or equal to $300,000, as calculated within the Debtors' reasonable discretion:

i. the Debtors are authorized to consummate such transactions if the Debtors determine in the reasonable exercise of their business judgment that such transactions are in the best interest of the estates, without further order of the Court, subject to the procedures set forth below.

ii. any such transactions shall be, without need for any action by any party, final and fully authorized by the Court and may be, as provided in the documentation governing the applicable

transaction, final and free and clear of all Liens or Interests with such Liens or Interests attaching only to the proceeds of such transactions with the same validity, extent, and priority as immediately prior to the transaction;

iii. the Debtors shall (i) give written notice of such transaction to the Transaction Notice Parties, and (ii) file a Transaction Notice with the Court, after which any party shall have seven (7) calendar days to object to such sale (the "Initial Objection Period");

iv. the content of Transaction Notice sent to the Transaction Notice Parties and filed with the Court for the applicable sale of De Minimis Assets shall consist of: (a) identification of the De Minimis Assets being sold; (b) identification of the Debtor that directly owns the De Minimis Assets; (c) if known, the identification of the purchaser of the De Minimis Assets, including a disclosure of any connection to an insider of the Debtors, as applicable; (d) the identities of holders known to the Debtors as holding Liens or Interests on the De Minimis Assets; (e) the purchase price and the material economic terms and conditions of the sale; and (f) any commission fees, or similar expenses to be paid in connection with such transaction;

v. if the terms of a proposed sale are materially amended after transmittal of the Transaction Notice but prior to the applicable deadline of any Transaction Notice Parties' right to object to such sale of the De Minimis Assets, the Debtors will send a revised Transaction Notice (the "Amended Transaction Notice") to the Transaction Notice Parties, after which the Transaction Notice Parties shall have (a) the number of days remaining in the Initial Objection Period plus (b) an additional five (5) calendar days, to object to such sale (the "Amended Objection Period");

vi. any objections to any such transaction must (a) be in writing; (b) set forth the name of the objecting party; (c) provide the basis for the objection and the specific grounds therefor; (d) be filed electronically with the Court, and so as to be received by the ECF notice parties on or before 5:00 p.m., Central Time on the applicable objection period;

vii. if no written objections are filed by the Transaction Notice Parties prior to the expiration of the Initial Objection Period or the Amended Objection Period, as applicable (the "Transaction Notice Period"), the Debtors are authorized to consummate such transaction immediately; and

9

<ol type="i" start="8">
<li>if a written objection is received from a Transaction Notice Party within the Transaction Notice Period that cannot be resolved within seven calendar days, the objection will be deemed a request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be sold upon withdrawal of such written objection or further order of the Court specifically approving the sale of the De Minimis Asset(s).</li>
</ol>

15. To the extent that De Minimis Assets cannot be sold at a price greater than the cost of liquidating such asset that is no longer needed for the Debtors' operations, the Debtors seek authority to abandon De Minimis Assets in accordance with the following procedures (the "De Minimis Asset Abandonment Procedures", together with the De Minimis Asset Sale Procedures, the "De Minimis Asset Procedures"):

<ol type="a">
<li>For De Minimis Assets that the Debtors believe, as calculated within the Debtors' reasonable discretion, have a value of less than or equal to $25,000:
<ol type="i">
<li>the Debtors shall give written notice of the abandonment substantially in the form described in paragraph (ii) below (each notice, an "Abandonment Notice") to the Transaction Notice Parties and file each Abandonment Notice with the Court;</li>
<li>the Abandonment Notice shall contain (a) a description in reasonable detail of the De Minimis Assets to be abandoned, including the projected book value of the assets being abandoned as reflected in the Debtors' books and records, if reasonably ascertainable; (b) the identities of parties known to the Debtors as holding Liens or Interests on the De Minimis Assets, if any; (c) the identification of the Debtor entity that directly owns the De Minimis Assets; and (d) the Debtors' reasons for such abandonment;</li>
<li>any objections to the abandonment of any De Minimis Asset must (a) be in writing; (b) set forth the name of the objecting party; (c) provide the basis for the objection and the specific grounds therefor; (d) be filed electronically with the Court, so as to be received by ECF notice parties on or before 5:00 p.m., Central Time on the seventh calendar day after receipt of such Abandonment Notice;</li>
</ol>
</li>
</ol>

iv.      if no written objections from any of the Transaction Notice Parties are filed with the Court within seven calendar days after the date of receipt of such Abandonment Notice, then the Debtors are authorized to immediately proceed with the abandonment; and

v.      if a written objection from any Transaction Notice Party is filed with the Court within 7 calendar days after receipt of such Abandonment Notice, the objection will be deemed request for a hearing on the objection at the next scheduled hearing, subject to adjournment by the Debtors, and the relevant De Minimis Asset(s) shall only be abandoned upon withdrawal of such written objection or further order of the Court specifically approving the abandonment of the De Minimis Asset(s).

16.     The Debtors submit that the establishment of the foregoing procedures is desirable and in the best interests of the Debtors' estates, their creditors, and other parties in interest in these chapter 11 cases. The sale of the De Minimis Assets will generate additional value and help preserve existing value for the benefit of the Debtors' estates and all parties in interest. These procedures will promote an efficient administration of these chapter 11 cases, make De Minimis Asset Transactions cost effective, and expedite the sale of more valuable assets in a manner that will provide the most benefit to the Debtors' estates and creditors.

**BASIS FOR RELIEF**

**A.    The De Minimis Asset Procedures Are Appropriate Under Section 363(b) of the Bankruptcy Code.**

17.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's application of its sound business judgment in the use, sale, or lease of property is subject to great judicial deference. *See, e.g.*, *In re Global Crossing, Ltd.*, 295 B.R. 726, 744 n.58 (Bankr. S.D.N.Y. 2003) ("[T]he Court does not believe that it is appropriate for a bankruptcy court to substitute its own business judgment for that of the [d]ebtors and their advisors, so long as they have satisfied the requirements articulated in the

11

case law."); *In re Canyon Partnership*, 55 B.R. 520 (Bankr. S.D. Cal. 1985); *In re W.A. Mallory Co., Inc.*, 214 B.R. 834, 836–37 (Bankr. E.D. Va. 1997) ("[G]reat deference is given to a business in determining its own best interests."); *see also Walter v. Sunwest Bank (In re Walter)*, 83 B.R. 14, 19-20 (B.A.P. 9th Cir. 1988) ("[T]here must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business . . . whether the proffered business justification is sufficient depends on the facts of the case.  As the Second Circuit held in *[In re Lionel Corp*., 722 F.2d 1063, 1071 (2d Cir. 1983)]*, the bankruptcy judge should consider all salient factors pertaining to the proceeding and, accordingly, act to further the diverse interests of the debtor, creditors and equity holders, alike.").

18.     In interpreting section 363(b)(1) of the Bankruptcy Code, courts have held that a transaction involving property of the estate generally should be approved where the debtor or trustee can demonstrate "some articulated business justification for using, selling, or leasing property outside of the ordinary course of business."  *In re Continental Airlines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) (citing *Lionel*); *Walter*, 83 B.R. at 19-20; *In re Curlew Valley Assocs.*, 14 B.R. 506, 513-14 (Bankr. D. Utah 1981); *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (approval where a sound business purpose exists).

19.     The Debtors currently possess (and may identify in the future) certain De Minimis Assets that are appropriate to sell because such assets are no longer necessary to the estates.  As Ideal liquidates its real estate holdings, more and more such assets will be identified.  To defray any operational, carrying, or storage expenses associated with these assets, the Debtors have determined in their business judgment that it is in the best interests of the estates to sell the De Minimis Assets.  Requiring the Debtors to file motions with the Court each time the Debtors seek to dispose of De Minimis Assets would distract from their efforts in the chapter 11 cases

12

and force the Debtors to incur unnecessary costs that would reduce whatever value might be realized from the sale of such assets. To that end, the Debtors have proposed the De Minimis Asset Sale Procedures, under which the can consummate the sale of De Minimis Assets during the pendency of these chapter 11 cases. Under these proposed procedures, parties with an interest in the Debtors' assets are fully protected by the opportunity to object and to attend a hearing, if desired.[3]

**B.      The De Minimis Asset Sale Procedures Are Appropriate Under Bankruptcy Rule 2002(a)(2).**

20.      The notice and hearing requirements contained in section 363(b)(1) of the Bankruptcy Code are satisfied if appropriate notice and an opportunity for hearing are given in light of the particular circumstances. *See* 11 U.S.C. § 102(1)(A) (defining "after notice and a hearing" to mean such notice and an opportunity for hearing "as [are] appropriate in the particular circumstances"). Bankruptcy Rules 2002(a)(2) and 2002(i) generally require that a minimum of 21 days' notice of the proposed sale of property outside the ordinary course of business under section 363(b)(1) of the Bankruptcy be provided by mail to "the debtor, the trustee, all creditors and indenture trustees" and any committee appointed under section 1102 of the Bankruptcy Code. Fed. R. Bankr. P. 2002.

21.      Courts are authorized to shorten the 21-day notice period or direct another method of giving notice, upon a showing of "cause." Courts have recognized that when determining whether notice is appropriate under the circumstances for purposes of section 102(1)(A) of the Bankruptcy Code, they are guided by fundamental notions of procedural due process. *See In re*

---

[3] For the avoidance of doubt, the relief requested will not apply to sales of De Minimis Assets to "insiders" as defined in section 101(31) of the Bankruptcy Code or sales to Non-Debtor affiliates, and any such sales would be subject to further Court approval.

*Lomas Fin. Corp.*, 212 B.R. 46, 54 (Bankr. D. Del. 1997). Due process "requires that any notice is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). If basic due process is afforded to interested parties and appropriate cause is established, a court may determine that shortened or limited notice of an asset sale is appropriate.

### C.     The De Minimis Asset Procedures are Appropriate Under Section 363(f).

22.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a "free and clear" sale; (b) the holder of the interest consents; (c) the interest is a lien and the sales price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.

23.     The Debtors propose to sell the De Minimis Assets in a commercially reasonable manner and expects that the value of the proceeds from such sales will fairly reflect the value of the property sold.  The Debtors further propose that any party with a Lien on or Interest in the De Minimis Assets sold pursuant to this Motion shall have a corresponding security or other interest in the proceeds of such sale.  Moreover, the Debtors propose that the absence of any objection to the entry of the order approving this Motion, along with the absence of any timely objection under the De Minimis Asset Sale Procedures, in each case following the provision of notice, be deemed "consent" to any sales pursuant to the Order within the meaning of section 362(f)(2) of the Bankruptcy Code.  As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for any proposed sales free and clear of liens, encumbrances, and other interests.

24-01863-FPC11     Doc 149     Filed 11/01/24     Entered 11/01/24 10:42:28     Pg 14 of 19

**D. De Minimis Asset Sales Should Be Entitled to the Protections of Section 363(m) of the Bankruptcy Code**

24. Section 363(m) of the Bankruptcy Code provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a purchaser who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. *See* 11 U.S.C. § 363(m). As articulated by the Fifth Circuit, this provision "patently protects, from later modification on appeal, an authorized sale where the purchaser acted in good faith and the sale was not stayed pending appeal." *In re BNP Petroleum Corp.*, 642 F. App'x 429, 434 (5th Cir. 2016) (per curiam) (quoting *In re Gilchrist*, 891 F.2d 559, 560 (5th Cir. 1990)).

25. The Fifth Circuit has noted that the extension of protection to good faith purchasers under section 363(m) of the Bankruptcy Code "codifies Congress's strong preference for finality and efficiency in the bankruptcy context, particularly where third parties are involved." *Id.*; *see also In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986) ("The requirement that a purchaser act in good faith speaks to the integrity of [the purchaser's] conduct in the course of the sale proceedings"). Although the Bankruptcy Code does not define "good faith," in making determinations as to whether a purchaser was a "good faith" purchaser under section 363(m) of the Bankruptcy Code, courts have examined the integrity of the purchaser throughout the course of the sale process, and considered whether the purchaser committed any dishonest or wrongful acts during such process. *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) ("[a] purchaser's good faith is [only] lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders'"). Typically, the misconduct that would destroy a purchaser's

15

good faith status involves "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Hoese Corp. v. Vetter Corp. (In re Vetter Corp.)*, 724 F.2d 52, 56 (7th Cir. 1983) (emphasis omitted) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1198) (interpreting Bankruptcy Rule 805, the precursor to section 363(m)). As stated above, the Debtors propose to exclude sales to "insiders" (as that term is defined in section 101(31) of the Bankruptcy Code) and non-Debtor affiliates from the Order, and as such, any agreement that results in the sale of De Minimis Assets will be an arm's-length transaction entitled to the protections of section 363(m).

**E.     The De Minimis Asset Abandonment Procedures are Appropriate Under Section 554(a)**

26.     Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). The right to abandon property is virtually unfettered, unless (a) abandonment of the property will contravene laws designed to protect public health and safety or (b) the property poses an imminent threat to the public's welfare. *See In re Midlantic Nat'l Bank*, 474 U.S. 494, 501 (1986). Neither of these limitations is relevant under the instant facts.

27.     In evaluating decisions to abandon property of the estate, courts focus on whether such decision reflects a business judgment made in good faith. *See*, e.g., *In re Cult Awareness Network, Inc.*, 205 B.R. 575, 579 (Bankr. N.D. Ill. 1997) (citations omitted); *In re Wilson*, 94 B.R. 886, 888-889 (Bankr. E.D. Va. 1989); *In re Moore*, 110 B.R. 924, 928 (Bankr. C.D. Cal. 1990) ("The choice of which type of action [is appropriate to liquidate the assets of the estate] (whether it be acceptance of the offer, a counteroffer, negotiation, open bidding, or bringing a

16

formal motion for abandonment) belongs to the trustee within the sound exercise of the trustee's business judgment so long as the trustee fulfills his statutory duties.").

28.      The Debtors expect to take all reasonable steps to sell De Minimis Assets no longer needed in their operations and that cannot be used in any potential reorganization.  The costs associated with sales of certain De Minimis Assets, however, may exceed any possible proceeds of from selling them, especially after Ideal has sold a property and the new buyer requires Debtors to pay market rents.  The inability to consummate a commercially reasonable sale of De Minimis Assets would indicate that these De Minimis Assets have no meaningful monetary value to the Debtors' estates.  Further, the costs of moving, storing and maintaining such Assets may burden the Debtors' estates more than the value they could receive for selling them. For many assets there will at least be substantial risk that that is the case, or Debtors may in their business judgment simply determine that their cash-on-hand has better uses than administrative costs of moving, storing, and maintaining certain De Minimis Assets. Accordingly, the Debtors contend that, in such circumstances, the abandonment of De Minimis Assets pursuant to the De Minimis Asset Abandonment Procedures is in the best interests of the Debtors' estates.

**F.      Courts In This District and Elsewhere Have Repeatedly Approved Procedures Like Those Proposed Here.**

29.      In light of the demonstrable benefits of streamlined procedures to sell or abandon De Minimis Assets, courts in this and other circuits have approved similar procedures in other chapter 11 cases.  *See*, e.g., *In re Zachry Holdings Inc., et al.,* Case No. 24-90377 (MI) (July 24, 2024); *In re Sherwin Alumina Company, LLC, et al.*, Case No. 16-20012 (DRJ) Nov. 22, 2016); *In re Easterday Ranches, Inc., et al.,* Case No. 21-00141 (WLH) (Bankr. E.D. Wash. May 14, 2021); *In re PG&E Corporation*, Case No. 19-30088 (DM) (Bankr. N.D. Cal. Sept. 10, 2019);

*CPASEZ Liquidating, Inc.*, Case No. 20-10554 (DS) (Bankr. C.D. Cal. June 5, 2020); *In re RTI Holding Company, LLC*, Case No. 20-12456 (JTD) (Bankr. D. Del. Nov. 18, 2020); *In re PES Holdings*, LLC, No. 19- 11626 (KG) (Bankr. D. Del. Dec. 6, 2019); *In re Quicksilver Res. Inc.*, No. 15-10585 (Bankr. D. Del. Apr. 14, 2015); *In re Energy Future Holdings Corp.*, No. 14-10979 (Bankr. D. Del. Jun. 3, 2014). For the foregoing reasons, the Debtors believe that granting the relief requested in this Motion is appropriate and in the best interests of their estates and creditors.

## RESERVATION OF RIGHTS

30.     Nothing contained herein is intended or should be construed as an admission of the validity of any claim or Lien against the Debtors, a waiver of the Debtors' right to dispute any claim or Lien, or an approval or assumption of any agreement, contract, or lease under section 365 of the Bankruptcy Code. The Debtors expressly reserve their right to contest any claim or Lien with respect to the De Minimis Assets in accordance with applicable non-bankruptcy law.

## WAIVER OF BANKRUPTCY RULE 6004(A) AND 6004(H)

31.     To implement the foregoing successfully, the Debtors requests that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

## NOTICE

Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee; (b) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rules 2002

and 3017; (c) counsel for and the members of any committees appointed by this Court; (d) governmental agencies having a regulatory or statutory interest in these cases; and (e) the top 20 largest unsecured creditors of each Debtor. In light of the nature of the relief requested, and the exigent circumstances of these cases, Debtors submit that no further notice is necessary.

**NO PRIOR REQUEST**

32.     No previous request for the relief requested in the Motion has been made to this Court or any other court.

**CONCLUSION**

33.     For the reasons stated above, Debtors request the Court enter an order, substantially in the form attached to this Motion as Exhibit B, approving the De Minimis Asset Procedures.

Dated:  November 1, 2024.

Respectfully submitted,

TONKON TORP LLP

By  *s/Danny Newman*
　　Danny Newman, Texas Bar No. 24092896
　　　Email:  danny.newman@tonkon.com
　　　Direct:  503.802.2089
　　Ava Schoen, admitted *Pro Hac Vice*
　　　Email:  ava.schoen@tonkon.com
　　　Direct:  503.802.2143
　　888 SW 5th Avenue, Suite 1600
　　Portland, OR 97204
　　Telephone: (503) 221-1440
　　　*Attorneys for Debtors*

044904\00001\17665035v8