# EXHIBIT A

# BUSINESS LOAN AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call / Coll | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|
| $21,000,000.00 | 12-10-2020 | 12-10-2025 | 0613 | 1763 / 33 | 35-01 | *** | |

References in the boxes above are for Lender's use only and do not limit the applicability of this document to any particular loan or item.
Any item above containing "***" has been omitted due to text length limitations.

**Borrower:** Creative Technologies, L.L.C.
PO Box 3226
Everett, WA 98213

**Lender:** First Federal Savings & Loan Association of Port Angeles
First Federal - Eastside
1603 E 1st St
Port Angeles, WA 98362

---

**THIS BUSINESS LOAN AGREEMENT** dated December 10, 2020, is made and executed between Creative Technologies, L.L.C. ("Borrower") and First Federal Savings & Loan Association of Port Angeles ("Lender") on the following terms and conditions. Borrower has received prior commercial loans from Lender or has applied to Lender for a commercial loan or loans or other financial accommodations, including those which may be described on any exhibit or schedule attached to this Agreement. Borrower understands and agrees that: (A) in granting, renewing, or extending any Loan, Lender is relying upon Borrower's representations, warranties, and agreements as set forth in this Agreement; (B) the granting, renewing, or extending of any Loan by Lender at all times shall be subject to Lender's sole judgment and discretion; and (C) all such Loans shall be and remain subject to the terms and conditions of this Agreement.

**TERM.** This Agreement shall be effective as of December 10, 2020, and shall continue in full force and effect until such time as all of Borrower's Loans in favor of Lender have been paid in full, including principal, interest, costs, expenses, attorneys' fees, and other fees and charges, or until such time as the parties may agree in writing to terminate this Agreement.

**CONDITIONS PRECEDENT TO EACH ADVANCE.** Lender's obligation to make the initial Advance and each subsequent Advance under this Agreement shall be subject to the fulfillment to Lender's satisfaction of all of the conditions set forth in this Agreement and in the Related Documents.

**Loan Documents.** Borrower shall provide to Lender the following documents for the Loan: (1) the Note; (2) Security Agreements granting to Lender security interests in the Collateral; (3) financing statements and all other documents perfecting Lender's Security Interests; (4) evidence of insurance as required below; (5) guaranties; (6) together with all such Related Documents as Lender may require for the Loan; all in form and substance satisfactory to Lender and Lender's counsel.

**Borrower's Authorization.** Borrower shall have provided in form and substance satisfactory to Lender properly certified resolutions, duly authorizing the execution and delivery of this Agreement, the Note and the Related Documents. In addition, Borrower shall have provided such other resolutions, authorizations, documents and instruments as Lender or its counsel, may require.

**Payment of Fees and Expenses.** Borrower shall have paid to Lender all fees, charges, and other expenses which are then due and payable as specified in this Agreement or any Related Document.

**Representations and Warranties.** The representations and warranties set forth in this Agreement, in the Related Documents, and in any document or certificate delivered to Lender under this Agreement are true and correct.

**No Event of Default.** There shall not exist at the time of any Advance a condition which would constitute an Event of Default under this Agreement or under any Related Document.

**Conditional Funding.** Lender shall have received a commitment letter from MS Facilities LLC that it will purchase a participation interest in $19,950,000.00 aggregate principal amount of the initial Principal amount.

**REPRESENTATIONS AND WARRANTIES.** Borrower represents and warrants to Lender, as of the date of this Agreement, as of the date of each disbursement of loan proceeds, as of the date of any renewal, extension or modification of any Loan, and at all times any Indebtedness exists:

**Organization.** Borrower is a limited liability company which is, and at all times shall be, duly organized, validly existing, and in good standing under and by virtue of the laws of the State of Washington. Borrower is duly authorized to transact business in all other states in which Borrower is doing business, having obtained all necessary filings, governmental licenses and approvals for each state in which Borrower is doing business. Specifically, Borrower is, and at all times shall be, duly qualified as a foreign limited liability company in all states in which the failure to so qualify would have a material adverse effect on its business or financial condition. Borrower has the full power and authority to own its properties and to transact the business in which it is presently engaged or presently proposes to engage. Borrower maintains an office at 2732 Grand Ave. #122, Everett, WA 98201. Unless Borrower has designated otherwise in writing, the principal office is the office at which Borrower keeps its books and records including its records concerning the Collateral. Borrower will notify Lender prior to any change in the location of Borrower's state of organization or any change in Borrower's name. Borrower shall do all things necessary to preserve and to keep in full force and effect its existence, rights and privileges, and shall comply with all regulations, rules, ordinances, statutes, orders and decrees of any governmental or quasi-governmental authority or court applicable to Borrower and Borrower's business activities.

**Assumed Business Names.** Borrower has filed or recorded all documents or filings required by law relating to all assumed business names used by Borrower. Excluding the name of Borrower, the following is a complete list of all assumed business names under which Borrower does business:

| Borrower | Assumed Business Name | Filing Location | Date |
|---|---|---|---|
| Creative Technologies, L.L.C. | ECOS Water USA, Inc | WA | 05-01-2013 |
| Creative Technologies, L.L.C. | Water Station Technology LLC | WA | 06-07-2014 |

**Authorization.** Borrower's execution, delivery, and performance of this Agreement and all the Related Documents have been duly authorized by all necessary action by Borrower and do not conflict with, result in a violation of, or constitute a default under (1) any provision of (a) Borrower's articles of organization or membership agreements, or (b) any agreement or other instrument binding upon Borrower or (2) any law, governmental regulation, court decree, or order applicable to Borrower or to Borrower's properties.

**Financial Information.** Each of Borrower's financial statements supplied to Lender truly and completely disclosed Borrower's financial condition as of the date of the statement, and there has been no material adverse change in Borrower's financial condition subsequent to the date of the most recent financial statement supplied to Lender. Borrower has no material contingent obligations except as disclosed in such financial statements.

**Legal Effect.** This Agreement constitutes, and any instrument or agreement Borrower is required to give under this Agreement when delivered will constitute legal, valid, and binding obligations of Borrower enforceable against Borrower in accordance with their respective

terms.

**Properties.** Except as contemplated by this Agreement or as previously disclosed in Borrower's financial statements or in writing to Lender and as accepted by Lender, and except for property tax liens for taxes not presently due and payable, Borrower owns and has good title to all of Borrower's properties free and clear of all Security Interests, and has not executed any security documents or financing statements relating to such properties. All of Borrower's properties are titled in Borrower's legal name, and Borrower has not used or filed a financing statement under any other name for at least the last five (5) years.

**Hazardous Substances.** Except as disclosed to and acknowledged by Lender in writing, Borrower represents and warrants that: (1) During the period of Borrower's ownership of the Collateral, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from any of the Collateral. (2) Borrower has no knowledge of, or reason to believe that there has been (a) any breach or violation of any Environmental Laws; (b) any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Collateral by any prior owners or occupants of any of the Collateral; or (c) any actual or threatened litigation or claims of any kind by any person relating to such matters. (3) Neither Borrower nor any tenant, contractor, agent or other authorized user of any of the Collateral shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from any of the Collateral; and any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations, and ordinances, including without limitation all Environmental Laws. Borrower authorizes Lender and its agents to enter upon the Collateral to make such inspections and tests as Lender may deem appropriate to determine compliance of the Collateral with this section of the Agreement. Any inspections or tests made by Lender shall be at Borrower's expense and for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Borrower or to any other person. The representations and warranties contained herein are based on Borrower's due diligence in investigating the Collateral for hazardous waste and Hazardous Substances. Borrower hereby (1) releases and waives any future claims against Lender for indemnity or contribution in the event Borrower becomes liable for cleanup or other costs under any such laws, and (2) agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Agreement or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release of a hazardous waste or substance on the Collateral. The provisions of this section of the Agreement, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the termination, expiration or satisfaction of this Agreement and shall not be affected by Lender's acquisition of any interest in any of the Collateral, whether by foreclosure or otherwise.

**Litigation and Claims.** No litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Borrower is pending or threatened, and no other event has occurred which may materially adversely affect Borrower's financial condition or properties, other than litigation, claims, or other events, if any, that have been disclosed to and acknowledged by Lender in writing.

**Taxes.** To the best of Borrower's knowledge, all of Borrower's tax returns and reports that are or were required to be filed, have been filed, and all taxes, assessments and other governmental charges have been paid in full, except those presently being or to be contested by Borrower in good faith in the ordinary course of business and for which adequate reserves have been provided.

**Lien Priority.** Unless otherwise previously disclosed to Lender in writing, Borrower has not entered into or granted any Security Agreements, or permitted the filing or attachment of any Security Interests on or affecting any of the Collateral directly or indirectly securing repayment of Borrower's Loan and Note, that would be prior or that may in any way be superior to Lender's Security Interests and rights in and to such Collateral.

**Binding Effect.** This Agreement, the Note, all Security Agreements (if any), and all Related Documents are binding upon the signers thereof, as well as upon their successors, representatives and assigns, and are legally enforceable in accordance with their respective terms.

**AFFIRMATIVE COVENANTS.** Borrower covenants and agrees with Lender that, so long as this Agreement remains in effect, Borrower will:

**Notices of Claims and Litigation.** Promptly inform Lender in writing of (1) all material adverse changes in Borrower's financial condition, and (2) all existing and all threatened litigation, claims, investigations, administrative proceedings or similar actions affecting Borrower or any Guarantor which could materially affect the financial condition of Borrower or the financial condition of any Guarantor.

**Financial Records.** Maintain its books and records in accordance with GAAP, applied on a consistent basis, and permit Lender to examine and audit Borrower's books and records at all reasonable times.

**Financial Statements.** Furnish Lender with the following:

**Tax Returns.** As soon as available, but in no event later than sixty (60) days after the applicable filing date for the tax reporting period ended, Borrower's Federal and other governmental tax returns, prepared by a tax professional satisfactory to Lender.

**Additional Requirements.**

**Reporting Covenant.** As soon as is available, but in any event within sixty (60) days after the end of each fiscal quarter of Borrower, the Borrower shall deliver to Lender financial reporting in a form and substance reasonably acceptable to Lender setting forth the financial information, and where applicable reasonably detailed calculations of the required data, set forth in **Appendix C** attached hereto, as at the end of such fiscal quarter of the Borrower, which financial reporting and calculations, in each case, shall be true and accurate in all material respects and, where applicable, present fairly in all material respects the financial condition of Borrower for the period covered thereby in accordance with GAAP, consistently applied.

**Appendix C.** An exhibit titled "Appendix C", is attached to this Agreement and by this reference is made a part of this Agreement just as if all the provisions, terms and conditions of the Exhibit had been fully set forth in this Agreement.

**Annual Statements:** Starting with the 2020 year end, statements at a minimum must be Reviewed Financial Statements and shall be due beginning September 30, 2021. Audited financials to be provided for Creative Technologies within one hundred twenty (120) days of year end starting in 2022. Reviewed financials for Summit Management and WaterStation Management will be required within one hundred twenty (120) days of each year end; however, once they reach $25 million per year in gross sales, Audits will be required in that fiscal year (within 120 days of the following year).

Quarterly statements to be Combined & Combining (both separate and consolidated) for all three companies on a best effort bases by the Borrower (Creative Technologies LLC, WaterStation Management LLC, & Summit Management LLC). Quarterly financial statements will be provided within sixty (60) days of each quarter end

Furnish such additional information and statements, lists of assets and liabilities, agings of receivables and payables, inventory schedules, budgets, forecasts, tax returns, and other reports with respect to Borrower's financial condition and business operations as

DocuSign Envelope ID: A7B9042A-92F9-4517-AD78-9A30EB535BD3

Lender may request from time to time.

Copies of extensions of tax returns along with all IRS forms, W-2(s), and K-1(s) (if applicable), shall be provided within thirty (30) days of filing.

Bank, retirement or other statements shall be provided within thirty (30) days upon request.

Determination of compliance to be at the sole and absolute discretion of First Federal.

Borrower understands and agrees that the guarantor is required to provide annual financial information. If the Guarantor fails to provide the required information within the times stated in the Guaranty, such failure will be treated the same as the Borrower's failure to provide financial information as provided above.

All financial reports required to be provided under this Agreement shall be prepared in accordance with GAAP, applied on a consistent basis, and certified by Borrower as being true and correct.

**Additional Information.** Furnish such additional information and statements, as Lender may request from time to time.

**Additional Requirements.**

**Borrower DSCR before Distribution:** Annual debt service coverage ratio (DSCR) for Borrower to be no less than 1.50 to 1.00, defined as Borrower earnings before interest, taxes, depreciation, and amortization (EBITDA) less distributions, divided by their annual debt payments. DSCR is to be measured annually beginning December 31, 2021.

**Current Ratio:** Borrower shall maintain a Current Ratio in excess of 1.50 : 1.00. The term "Current Ratio" means Borrower's total Current Assets divided by Borrower's total Current Liabilities. This liquidity ratio will be evaluated annually beginning December 31, 2021.

**Insurance.** Maintain fire and other risk insurance, public liability insurance, and such other insurance as Lender may require with respect to Borrower's properties and operations, in form, amounts, coverages and with insurance companies acceptable to Lender. Borrower, upon request of Lender, will deliver to Lender from time to time the policies or certificates of insurance in form satisfactory to Lender, including stipulations that coverages will not be cancelled or diminished without at least thirty (30) days prior written notice to Lender. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Borrower or any other person. In connection with all policies covering assets in which Lender holds or is offered a security interest for the Loans, Borrower will provide Lender with such lender's loss payable or other endorsements as Lender may require.

**Insurance Reports.** Furnish to Lender, upon request of Lender, reports on each existing insurance policy showing such information as Lender may reasonably request, including without limitation the following: (1) the name of the insurer; (2) the risks insured; (3) the amount of the policy; (4) the properties insured; (5) the then current property values on the basis of which insurance has been obtained, and the manner of determining those values; and (6) the expiration date of the policy. In addition, upon request of Lender (however not more often than annually), Borrower will have an independent appraiser satisfactory to Lender determine, as applicable, the actual cash value or replacement cost of any Collateral. The cost of such appraisal shall be paid by Borrower.

**Guaranties.** Prior to disbursement of any Loan proceeds, furnish executed guaranties of the Loans in favor of Lender, executed by the guarantors named below, on Lender's forms, and in the amounts and under the conditions set forth in those guaranties.

| Names of Guarantors | Amounts |
|---|---|
| Ryan Wear | Unlimited |
| Richard Wear | Unlimited |

**Other Agreements.** Comply with all terms and conditions of all other agreements, whether now or hereafter existing, between Borrower and any other party and notify Lender immediately in writing of any default in connection with any other such agreements.

**Loan Proceeds.** Use all Loan proceeds solely for Borrower's business operations, unless specifically consented to the contrary by Lender in writing.

**Taxes, Charges and Liens.** Pay and discharge when due all of its indebtedness and obligations, including without limitation all assessments, taxes, governmental charges, levies and liens, of every kind and nature, imposed upon Borrower or its properties, income, or profits, prior to the date on which penalties would attach, and all lawful claims that, if unpaid, might become a lien or charge upon any of Borrower's properties, income, or profits. Provided however, Borrower will not be required to pay and discharge any such assessment, tax, charge, levy, lien or claim so long as (1) the legality of the same shall be contested in good faith by appropriate proceedings, and (2) Borrower shall have established on Borrower's books adequate reserves with respect to such contested assessment, tax, charge, levy, lien, or claim in accordance with GAAP.

**Performance.** Perform and comply, in a timely manner, with all terms, conditions, and provisions set forth in this Agreement, in the Related Documents, and in all other instruments and agreements between Borrower and Lender. Borrower shall notify Lender immediately in writing of any default in connection with any agreement.

**Operations.** Maintain executive and management personnel with substantially the same qualifications and experience as the present executive and management personnel; provide written notice to Lender of any change in executive and management personnel; conduct its business affairs in a reasonable and prudent manner.

**Environmental Studies.** Promptly conduct and complete, at Borrower's expense, all such investigations, studies, samplings and testings as may be requested by Lender or any governmental authority relative to any substance, or any waste or by-product of any substance defined as toxic or a hazardous substance under applicable federal, state, or local law, rule, regulation, order or directive, at or affecting any property or any facility owned, leased or used by Borrower.

**Compliance with Governmental Requirements.** Comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the conduct of Borrower's properties, businesses and operations, and to the use or occupancy of the Collateral, including without limitation, the Americans With Disabilities Act. Borrower may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Borrower has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Collateral are not jeopardized. Lender may require Borrower to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Inspection.** Permit employees or agents of Lender at any reasonable time to inspect any and all Collateral for the Loan or Loans and Borrower's other properties and to examine or audit Borrower's books, accounts, and records and to make copies and memoranda of Borrower's books, accounts, and records. If Borrower now or at any time hereafter maintains any records (including without limitation computer generated records and computer software programs for the generation of such records) in the possession of a third party,

Borrower, upon request of Lender, shall notify such party to permit Lender free access to such records at all reasonable times and to provide Lender with copies of any records it may request, all at Borrower's expense.

**Environmental Compliance and Reports.** Borrower shall comply in all respects with any and all Environmental Laws; not cause or permit to exist, as a result of an intentional or unintentional action or omission on Borrower's part or on the part of any third party, on property owned and/or occupied by Borrower, any environmental activity where damage may result to the environment, unless such environmental activity is pursuant to and in compliance with the conditions of a permit issued by the appropriate federal, state or local governmental authorities; shall furnish to Lender promptly and in any event within thirty (30) days after receipt thereof a copy of any notice, summons, lien, citation, directive, letter or other communication from any governmental agency or instrumentality concerning any intentional or unintentional action or omission on Borrower's part in connection with any environmental activity whether or not there is damage to the environment and/or other natural resources.

**Additional Assurances.** Make, execute and deliver to Lender such promissory notes, mortgages, deeds of trust, security agreements, assignments, financing statements, instruments, documents and other agreements as Lender or its attorneys may reasonably request to evidence and secure the Loans and to perfect all Security Interests.

**Late Financial Information Fee.** In the event Borrower fails to timely deliver to Lender such statements, schedules, documents, items and reports described within the Affirmative Covenants section of the Business Loan Agreement (including any required items related to any Guarantor or any other party for which financial information is required under the Loan Documents) (the "**Financial Information**"), then such failure shall constitute an Event of Default and, in addition to any other remedies which may be available to Lender as a result of such Event of Default, Borrower shall pay a late charge equal to 25 basis points (.25%) times the then outstanding balance of the Loan (the "**Late Financial Information Fee**") to compensate Lender (or its servicer) for the additional administrative and legal expense caused by such failure regardless of whether Borrower is entitled to any notice and opportunity to cure such failure prior to the exercise of any other remedies by Lender. The Late Financial Information Fee shall be charged each month that any Financial Information remains delinquent and shall be immediately payable from Borrower upon demand by Lender and, until paid, shall be added to and constitute a part of the Indebtedness. The Late Financial Information Fee shall be in addition to any other remedies available to Lender as a result of Borrower's default. In no event shall the Late Financial Information Fee constitute a cure of Borrower's default in failure to provide the Financial Information, nor limit Lender's remedies as a result of such default. In addition and without waiving or otherwise limiting any of Lender's rights hereunder, if Borrower fails to provide the Financial Information in a timely manner, then Lender shall have the right to have Borrower's books and records audited, at Borrower's expense, by independent certified public accountants selected by Lender in order to obtain such Financial Information, and all related costs and expenses of Lender shall become immediately due and payable and shall become an additional part of the Indebtedness.

**LENDER'S EXPENDITURES.** If any action or proceeding is commenced that would materially affect Lender's interest in the Collateral or if Borrower fails to comply with any provision of this Agreement or any Related Documents, including but not limited to Borrower's failure to discharge or pay when due any amounts Borrower is required to discharge or pay under this Agreement or any Related Documents, Lender on Borrower's behalf may (but shall not be obligated to) take any action that Lender deems appropriate, including but not limited to discharging or paying all taxes, liens, security interests, encumbrances and other claims, at any time levied or placed on any Collateral and paying all costs for insuring, maintaining and preserving any Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Borrower. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity.

**NEGATIVE COVENANTS.** Borrower covenants and agrees with Lender that while this Agreement is in effect, Borrower shall not, without the prior written consent of Lender:

**Indebtedness and Liens.** (1) Except for trade debt incurred in the normal course of business and indebtedness to Lender contemplated by this Agreement, create, incur or assume indebtedness for borrowed money, including capital leases, (2) sell, transfer, mortgage, assign, pledge, lease, grant a security interest in, or encumber any of Borrower's assets (except as allowed as Permitted Liens), or (3) sell with recourse any of Borrower's accounts, except to Lender.

**Additional Financial Restrictions.**

**Main Street Lending Program Required Negative Covenant.** The Borrower will not, nor will it permit any subsidiary to, create, incur, assume or suffer to exist any Lien upon any of its property, assets or revenues, whether now owned or hereafter acquired, securing any debt for borrowed money or any obligations evidenced by a bond, debenture, note, loan agreement or other similar instrument, or any guarantee of the foregoing, other than the following:

(a) Liens securing obligations under the loan;
(b) Liens on real property in connection with loans with respect to which substantially all of the proceeds were used for acquisition, construction, fit-out, and/or renovation of the property;
(c) Junior Liens securing permitted Indebtedness; or
(d) Liens on receivables assets and related assets incurred in connection with a receivables facility, provided that such debt is secured only by the newly acquired property.

**Continuity of Operations.** (1) Engage in any business activities substantially different than those in which Borrower is presently engaged, (2) cease operations, liquidate, merge or restructure as a legal entity (whether by division or otherwise), consolidate with or acquire any other entity, change its name, convert to another type of entity or redomesticate, dissolve or transfer or sell Collateral out of the ordinary course of business, or (3) make any distribution with respect to any capital account, whether by reduction of capital or otherwise.

**Loans, Acquisitions and Guaranties.** (1) Loan, invest in or advance money or assets to any other person, enterprise or entity, (2) purchase, create or acquire any interest in any other enterprise or entity, or (3) incur any obligation as surety or guarantor other than in the ordinary course of business.

**Agreements.** Enter into any agreement containing any provisions which would be violated or breached by the performance of Borrower's obligations under this Agreement or in connection herewith.

**CESSATION OF ADVANCES.** If Lender has made any commitment to make any Loan to Borrower, whether under this Agreement or under any other agreement, Lender shall have no obligation to make Loan Advances or to disburse Loan proceeds if: (A) Borrower or any Guarantor is in default under the terms of this Agreement or any of the Related Documents or any other agreement that Borrower or any Guarantor has with Lender; (B) Borrower or any Guarantor dies, becomes incompetent or becomes insolvent, files a petition in bankruptcy or similar proceedings, or is adjudged a bankrupt; (C) there occurs a material adverse change in Borrower's financial condition, in the financial condition of any Guarantor, or in the value of any Collateral securing any Loan; or (D) any Guarantor seeks, claims or otherwise attempts to limit, modify or revoke such Guarantor's guaranty of the Loan or any other loan with Lender; or (E) Lender in good faith deems itself insecure, even though no

Event of Default shall have occurred.

**RIGHT OF SETOFF.** To the extent permitted by applicable law, Lender reserves a right of setoff in all Borrower's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Borrower holds jointly with someone else and all accounts Borrower may open in the future. However, this does not include any IRA or Keogh accounts, or any trust accounts for which setoff would be prohibited by law. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on the Indebtedness against any and all such accounts, and, at Lender's option, to administratively freeze all such accounts to allow Lender to protect Lender's charge and setoff rights provided in this paragraph.

**DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Payment Default.** Borrower fails to make any payment when due under the Loan.

**Other Defaults.** Borrower fails to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**Default in Favor of Third Parties.** Borrower or any Grantor defaults under any loan, extension of credit, security agreement, purchase or sales agreement, or any other agreement, in favor of any other creditor or person that may materially affect any of Borrower's or any Grantor's property or Borrower's or any Grantor's ability to repay the Loans or perform their respective obligations under this Agreement or any of the Related Documents.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by Borrower or on Borrower's behalf under this Agreement or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished or becomes false or misleading at any time thereafter.

**Death or Insolvency.** The dissolution of Borrower (regardless of whether election to continue is made), any member withdraws from Borrower, or any other termination of Borrower's existence as a going business or the death of any member, the insolvency of Borrower, the appointment of a receiver for any part of Borrower's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or by any governmental agency against any collateral securing the Loan. This includes a garnishment of any of Borrower's accounts, including deposit accounts, with Lender. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and if Borrower gives Lender written notice of the creditor or forfeiture proceeding and deposits with Lender monies or a surety bond for the creditor or forfeiture proceeding, in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or any Guarantor dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**Adverse Change.** A material adverse change occurs in Borrower's financial condition, or Lender believes the prospect of payment or performance of the Loan is impaired.

**Insecurity.** Lender in good faith believes itself insecure.

**Right to Cure.** If any default, other than a default on Indebtedness, is curable and if Borrower or Grantor, as the case may be, has not been given a notice of a similar default within the preceding one (1) month, it may be cured if Borrower or Grantor, as the case may be, after Lender sends written notice to Borrower or Grantor, as the case may be, demanding cure of such default: (1) cure the default within fifteen (15) days; or (2) if the cure requires more than fifteen (15) days, immediately initiate steps which Lender deems in Lender's sole discretion to be sufficient to cure the default and thereafter continue and complete all reasonable and necessary steps sufficient to produce compliance as soon as reasonably practical.

**Cross-Acceleration Provision.** If Borrower or any Subsidiary shall fail to make any payment when due (whether by scheduled maturity, required prepayment, acceleration, demand, or otherwise) in respect of any Indebtedness (other than Indebtedness under the Loan Documents) owing to the Lender or any commonly controlled Affiliate of the Lender, in each case beyond the applicable grace period with respect thereto, if any; or (ii) the Borrower or any Subsidiary shall fail to observe or perform any other agreement or condition relating to any such Indebtedness or contained in any instrument or agreement evidencing, securing or relating thereto, or any other event occurs, the effect of which failure to make a payment, default or other event described in cause (i) or (ii) is to cause such Indebtedness to become due or to be repurchased, prepaid, defeased or redeemed (automatically or otherwise), or an offer to repurchase, prepay, defease or redeem such Indebtedness to be made, prior to its stated maturity; provided that clause (ii) shall not apply to secured Indebtedness that becomes due as a result of the voluntary sale or transfer of the property or assets securing such Indebtedness, if such sale or transfer is permitted hereunder and under the documents providing for such Indebtedness and such Indebtedness is repaid when required under the documents providing for such Indebtedness; provided that, as used in this clause, the term "Indebtedness" shall mean all debt for borrowed money and any obligations evidenced by a bond, debenture, note, loan agreement or other similar instrument, and any guarantee of any of the foregoing.

**EFFECT OF AN EVENT OF DEFAULT.** If any Event of Default shall occur, except where otherwise provided in this Agreement or the Related Documents, all commitments and obligations of Lender under this Agreement or the Related Documents or any other agreement immediately will terminate (including any obligation to make further Loan Advances or disbursements), and, at Lender's option, all Indebtedness immediately will become due and payable, all without notice of any kind to Borrower, except that in the case of an Event of Default of the type described in the "Insolvency" subsection above, such acceleration shall be automatic and not optional. In addition, Lender shall have all the rights and remedies provided in the Related Documents or available at law, in equity, or otherwise. Except as may be prohibited by applicable law, all of Lender's rights and remedies shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Borrower or of any Grantor shall not affect Lender's right to declare a default and to exercise its rights and remedies.

**ORAL AGREEMENTS. ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON STATE LAW.**

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties

as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Attorneys' Fees; Expenses.** Borrower agrees to pay upon demand all of Lender's costs and expenses, including Lender's attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may hire or pay someone else to help enforce this Agreement, and Borrower shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Consent to Loan Participation.** Borrower agrees and consents to Lender's sale or transfer, whether now or later, of one or more participation interests in the Loan to one or more purchasers, whether related or unrelated to Lender. Lender may provide, without any limitation whatsoever, to any one or more purchasers, or potential purchasers, any information or knowledge Lender may have about Borrower or about any other matter relating to the Loan, and Borrower hereby waives any rights to privacy Borrower may have with respect to such matters. Borrower additionally waives any and all notices of sale of participation interests, as well as all notices of any repurchase of such participation interests. Borrower also agrees that the purchasers of any such participation interests will be considered as the absolute owners of such interests in the Loan and will have all the rights granted under the participation agreement or agreements governing the sale of such participation interests. Borrower further waives all rights of offset or counterclaim that it may have now or later against Lender or against any purchaser of such a participation interest and unconditionally agrees that either Lender or such purchaser may enforce Borrower's obligation under the Loan irrespective of the failure or insolvency of any holder of any interest in the Loan. Borrower further agrees that the purchaser of any such participation interests may enforce its interests irrespective of any personal claims or defenses that Borrower may have against Lender.

**Governing Law. This Agreement will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Washington without regard to its conflicts of law provisions. This Agreement has been accepted by Lender in the State of Washington.**

**Choice of Venue.** If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of Clallam County, State of Washington.

**No Waiver by Lender.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Borrower, or between Lender and any Grantor, shall constitute a waiver of any of Lender's rights or of any of Borrower's or any Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**Notices.** Subject to applicable law, and except for notice required or allowed by law to be given in another manner, any notice required to be given under this Agreement shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Agreement. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. For notice purposes, Borrower agrees to keep Lender informed at all times of Borrower's current address. Subject to applicable law, and except for notice required or allowed by law to be given in another manner, if there is more than one Borrower, any notice given by Lender to any Borrower is deemed to be notice given to all Borrowers.

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be illegal, invalid, or unenforceable as to any circumstance, that finding shall not make the offending provision illegal, invalid, or unenforceable as to any other circumstance. If feasible, the offending provision shall be considered modified so that it becomes legal, valid and enforceable. If the offending provision cannot be so modified, it shall be considered deleted from this Agreement. Unless otherwise required by law, the illegality, invalidity, or unenforceability of any provision of this Agreement shall not affect the legality, validity or enforceability of any other provision of this Agreement.

**Subsidiaries and Affiliates of Borrower.** To the extent the context of any provisions of this Agreement makes it appropriate, including without limitation any representation, warranty or covenant, the word "Borrower" as used in this Agreement shall include all of Borrower's subsidiaries and affiliates. Notwithstanding the foregoing however, under no circumstances shall this Agreement be construed to require Lender to make any Loan or other financial accommodation to any of Borrower's subsidiaries or affiliates.

**Successors and Assigns.** All covenants and agreements by or on behalf of Borrower contained in this Agreement or any Related Documents shall bind Borrower's successors and assigns and shall inure to the benefit of Lender and its successors and assigns. Borrower shall not, however, have the right to assign Borrower's rights under this Agreement or any interest therein, without the prior written consent of Lender.

**Survival of Representations and Warranties.** Borrower understands and agrees that in making the Loan, Lender is relying on all representations, warranties, and covenants made by Borrower in this Agreement or in any certificate or other instrument delivered by Borrower to Lender under this Agreement or the Related Documents. Borrower further agrees that regardless of any investigation made by Lender, all such representations, warranties and covenants will survive the making of the Loan and delivery to Lender of the Related Documents, shall be continuing in nature, and shall remain in full force and effect until such time as Borrower's Indebtedness shall be paid in full, or until this Agreement shall be terminated in the manner provided above, whichever is the last to occur.

**Time is of the Essence.** Time is of the essence in the performance of this Agreement.

**Waive Jury. All parties to this Agreement hereby waive the right to any jury trial in any action, proceeding, or counterclaim brought by any party against any other party.**

**DEFINITIONS.** The following capitalized words and terms shall have the following meanings when used in this Agreement. Unless specifically stated to the contrary, all references to dollar amounts shall mean amounts in lawful money of the United States of America. Words and terms used in the singular shall include the plural, and the plural shall include the singular, as the context may require. Words and terms not otherwise defined in this Agreement shall have the meanings attributed to such terms in the Uniform Commercial Code. Accounting words and terms not otherwise defined in this Agreement shall have the meanings assigned to them in accordance with generally accepted accounting principles as in

effect on the date of this Agreement:

**Advance.** The word "Advance" means a disbursement of Loan funds made, or to be made, to Borrower or on Borrower's behalf on a line of credit or multiple advance basis under the terms and conditions of this Agreement.

**Agreement.** The word "Agreement" means this Business Loan Agreement, as this Business Loan Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Business Loan Agreement from time to time.

**Borrower.** The word "Borrower" means Creative Technologies, L.L.C. and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Collateral.** The word "Collateral" means all property and assets granted as collateral security for a Loan, whether real or personal property, whether granted directly or indirectly, whether granted now or in the future, and whether granted in the form of a security interest, mortgage, collateral mortgage, deed of trust, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien, charge, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever, whether created by law, contract, or otherwise.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or federal laws, rules, or regulations adopted pursuant thereto.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Agreement in the default section of this Agreement.

**GAAP.** The word "GAAP" means generally accepted accounting principles.

**Grantor.** The word "Grantor" means each and all of the persons or entities granting a Security Interest in any Collateral for the Loan, including without limitation all Borrowers granting such a Security Interest.

**Guarantor.** The word "Guarantor" means any guarantor, surety, or accommodation party of any or all of the Loan.

**Guaranty.** The word "Guaranty" means the guaranty from Guarantor to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note or Related Documents, including all principal and interest together with all other indebtedness and costs and expenses for which Borrower is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means First Federal Savings & Loan Association of Port Angeles, its successors and assigns.

**Loan.** The word "Loan" means any and all loans and financial accommodations from Lender to Borrower whether now or hereafter existing, and however evidenced, including without limitation those loans and financial accommodations described herein or described on any exhibit or schedule attached to this Agreement from time to time.

**Note.** The word "Note" means the Note dated December 10, 2020 and executed by Creative Technologies, L.L.C. in the principal amount of $21,000,000.00, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement.

**Permitted Liens.** The words "Permitted Liens" mean (1) liens and security interests securing Indebtedness owed by Borrower to Lender; (2) liens for taxes, assessments, or similar charges either not yet due or being contested in good faith; (3) liens of materialmen, mechanics, warehousemen, or carriers, or other like liens arising in the ordinary course of business and securing obligations which are not yet delinquent; (4) purchase money liens or purchase money security interests upon or in any property acquired or held by Borrower in the ordinary course of business to secure indebtedness outstanding on the date of this Agreement or permitted to be incurred under the paragraph of this Agreement titled "Indebtedness and Liens"; (5) liens and security interests which, as of the date of this Agreement, have been disclosed to and approved by the Lender in writing; and (6) those liens and security interests which in the aggregate constitute an immaterial and insignificant monetary amount with respect to the net value of Borrower's assets.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Loan.

**Security Agreement.** The words "Security Agreement" mean and include without limitation any agreements, promises, covenants, arrangements, understandings or other agreements, whether created by law, contract, or otherwise, evidencing, governing, representing, or creating a Security Interest.

**Security Interest.** The words "Security Interest" mean, without limitation, any and all types of collateral security, present and future, whether in the form of a lien, charge, encumbrance, mortgage, deed of trust, security deed, assignment, pledge, crop pledge, chattel mortgage, collateral chattel mortgage, chattel trust, factor's lien, equipment trust, conditional sale, trust receipt, lien or title retention contract, lease or consignment intended as a security device, or any other security or lien interest whatsoever whether created by law, contract, or otherwise.

# BUSINESS LOAN AGREEMENT
## (Continued)

BORROWER ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS BUSINESS LOAN AGREEMENT AND BORROWER AGREES TO ITS TERMS. THIS BUSINESS LOAN AGREEMENT IS DATED DECEMBER 10, 2020.

**BORROWER:**

**CREATIVE TECHNOLOGIES, L.L.C.**

By: _____
   **Ryan Wear, Member of Creative Technologies, L.L.C.**

By: _____
   **Richard Wear, Member of Creative Technologies, L.L.C.**

**LENDER:**

**FIRST FEDERAL SAVINGS & LOAN ASSOCIATION OF PORT ANGELES**

By: _____
   **Authorized Officer**

LaserPro, Ver. 19.4.10.036  Copr. Finastra USA Corporation 1997, 2020.  All Rights Reserved.  - WA  J:\CFI\LPL\C40.FC  TR-100613  PR-5

*Effective: November 25, 2020*

# Appendix C: Required Financial Reporting

Each Main Street loan should contain a financial reporting covenant requiring the regular delivery of certain financial information and calculations. The items listed in Table I below must be provided by each Main Street borrower to their Eligible Lender at least annually. The items listed in Table II must be provided by each Main Street borrower to their Eligible Lender at least quarterly; the quarterly requirements vary based on the Main Street facility in which the borrower is participating. Eligible Lenders will specify the required reporting standards and forms for each Eligible Borrower.[41]

| Table I: Data Required <u>Annually</u> from All Main Street Borrowers | |
|---|---|
| **Required Data** | **Definition** |
| Total Assets | The sum of current assets, fixed assets, and other non-current assets (including, but not limited to, intangible assets, deferred items, investments, and advances). |
| Current Assets | Cash, accounts receivable, inventory, and other short-term assets that are likely to be converted into cash, used, sold, exchanged, or otherwise expensed in the normal course of business within one year. |
| Cash & Marketable Securities | Cash, depository accounts, and marketable securities that can be easily sold and readily converted into cash. |
| Tangible Assets | Assets having a physical existence, measured as total assets less intangible assets. Tangible assets are distinguished from intangible assets, such as trademarks, copyrights, and goodwill. |
| Total Liabilities | The total amount of all outstanding obligations, both current and noncurrent. |
| Current Liabilities | Short term debt, accounts payable, and other current liabilities that are due within one year. |
| Total Debt (Incl. Undrawn Available Lines of Credit) | Existing outstanding and committed debt (including any undrawn available amounts). |
| Total Equity | Measured as total assets minus total liabilities. |
| Total Revenue | Total income generated by the sale of goods or services from ongoing operations. Total Revenue excludes any non-recurring sales or gains. |
| Net Income | The income (or loss) after expenses and losses have been subtracted from all revenues and gains for the fiscal period, including discontinued operations. |
| Unadjusted EBITDA | Earnings before interest expense, income tax expense, depreciation expense, and amortization expense. The starting point is net income. |
| Adjusted EBITDA | Unadjusted EBITDA adjusted for any non-recurring, one-time, or irregular items. The Adjusted EBITDA measurement should align with the relevant facility's term sheet. |

---

[41] Under the Servicing Agreement, in the case of multi-borrower loans, this information must be entered into the Portal "on a consolidated basis" (otherwise referred to in this document as on an "aggregated basis"). Eligible Lenders may elect to require reporting from the co-borrowers on an aggregated basis, or may aggregate such information after requiring individual co-borrower financial statements. If an Eligible Lender permits co-borrowers to submit aggregated financial statements, the Eligible Lender should instruct the co-borrowers to use the Eligible Lender's typical practices to aggregate such information in a manner that accounts for transactions between the co-borrowers and accurately reflects the financial position of the co-borrowers and their ability to repay the loan (e.g., in a manner that avoids double counting of revenues, assets, or liabilities).

*Effective: November 25, 2020*

| Table I: Data Required <u>Annually</u> from All Main Street Borrowers | |
|---|---|
| **Required Data** | **Definition** |
| Depreciation Expense | Non-cash expense measured based on the use of fixed assets, recognized over the useful life of the fixed assets. |
| Amortization Expense | Non-cash expense measured based on the use of intangible assets, recognized over the life of the intangible asset. |
| Interest Expense | The periodic finance expense of short term and long term debt. |
| Tax Expense | Federal, state and local income tax expenses. |
| Rent Expense | The contractual costs of occupying leased real estate. |
| Dividends / Equity Distributions | Distributions to equity owners. |
| Accounts Receivable (net of allowances) | Amounts owed to the borrower resulting from providing goods and/or services. Accounts receivable will be net of any allowances for uncollectible amounts. |
| Inventory (net of reserves) | Value of the raw materials, work in process, supplies used in operations, finished goods, and merchandise bought which are intended to be sold in the ordinary course of business. Inventory should be net of reserves. |
| Fixed Assets, Gross | Tangible property used in the business and not for resale, including buildings, furniture, fixtures, equipment, and land. Report fixed assets gross of depreciation. |
| Accumulated Depreciation | Cumulative depreciation of all fixed assets up to the Date of Financial Information. |
| Accounts Payable (A/P) | The obligations owed to the borrower's creditors arising from the entity's ongoing operations, including the purchase of goods, materials, supplies, and services. Accounts payable excludes short term and long term debt. |
| Short Term Debt | Debt obligations of the borrower due with a term of less than one year, including the current portion of any Long Term Debt. |
| Long Term Debt | Debt obligations of the borrower that are due in one year or more, excluding the current portion that is otherwise captured in Short Term Debt. |
| Description of EBITDA Adjustments | Description of items that are added to Unadjusted EBITDA to determine Adjusted EBITDA. |
| Total Expenses | All money spent and costs incurred, both recurring and non-recurring, to generate revenue. Expenses exclude items capital in nature (i.e., expenses that are allowed to be capitalized and included in the cost basis of a fixed asset). |
| Operating Expenses | Money spent and costs incurred related to normal business operations including selling, general & administrative expenses, depreciation, and amortization (i.e., total expenses less non-recurring expenses). Exclude capital expenditures. |
| Operating Income | Profit (or loss) realized from continuing operations (i.e., revenue less operating expenses). |
| Fixed Charges | Expenses that recur on a regular basis, regardless of the volume of business (i.e., lease payments, rental payments, loan interest payments, or insurance payments). |
| Capitalized Expenditures | Non-operating expenditures capitalized to fixed assets. |
| Guarantor Net Assets | Total assets less total liabilities of the guarantor (also referred to as net worth). |
| Sr. Debt Balance | Debt amount ranking senior to the Main Street loan. |
| Additional Pari Passu Debt Balance | Debt amount ranking pari passu to the Main Street loan. |
| Collateral Type (Non-Real Estate) | If the loan is secured by collateral that is not predominantly real estate, including if the collateral provided is different types, report the predominant type of collateral (e.g., inventory, receivables, securities, etc.) by aggregate value. |

24-01863-FPC11    Doc 150-3    Filed 11/01/24    Entered 11/01/24 12:35:46    Pg 11 of 14

DocuSign Envelope ID: A7B9042A-92F9-4517-AD78-9A30EB535BD3

*Effective: November 25, 2020*

| Table I: Data Required <u>Annually</u> from All Main Street Borrowers | |
|---|---|
| **Required Data** | **Definition** |
| Collateral Type (Real Estate) | If the loan is secured by real estate collateral, indicate the property type (e.g., hotel, multifamily, residential, industrial, etc.). If the loan is secured by multiple real estate property types, report the predominant property type by aggregate value. |
| Collateral Value Reporting | For loans that require ongoing or periodic valuation of the collateral, report the market value of the collateral as of the reporting date. |
| Collateral Value Date | Define the as-of date that corresponds with the Collateral Value Reporting field. |
| Covenant Status (Pass / Fail) | Yes/no, indicating if the facility has satisfied covenant tests. |
| Date of Covenant Default | If applicable, report the date when borrower defaulted covenants. |
| Nature of Covenant Default | If applicable, describe the covenant default (i.e., missing financial statements, ratio trigger). |
| Date of Covenant Cure | If applicable, report the date when borrower cured previous defaults. |

| Table II: Data Required <u>Quarterly</u> from Main Street Borrowers by Main Street Facility | | | | |
|---|---|---|---|---|
| **Required Data** | **MSELF** | **MSNLF** | **MSPLF** | **Definition** |
| Total Assets | Yes | Yes | Yes | The sum of current assets, fixed assets, and other non-current assets (including, but not limited to, intangible assets, deferred items, investments, and advances). |
| Current Assets | Yes | Yes | Yes | Cash, accounts receivable, inventory, and other short term assets that are likely to be converted into cash, used, sold, exchanged, or otherwise expensed in the normal course of business within one year. |
| Cash & Marketable Securities | Yes | Yes | Yes | Cash, depository accounts, and marketable securities that can be easily sold and readily converted into cash. |
| Tangible Assets | Yes | No | No | Assets having a physical existence measured as total assets less intangible assets. Tangible assets are distinguished from intangible assets, such as trademarks, copyrights, and goodwill. |
| Total Liabilities | Yes | Yes | Yes | The total amount of all outstanding obligations, both current and noncurrent. |
| Current Liabilities | Yes | Yes | Yes | Short term debt, accounts payable, and other current liabilities that are due within one year. |
| Total Debt (Incl. Undrawn Available Lines of Credit) | Yes | Yes | Yes | Existing outstanding and committed debt (including any undrawn available amounts). |
| Total Equity | Yes | Yes | Yes | Measured as total assets minus total liabilities. |
| Total Revenue | Yes | Yes | Yes | Total income generated by the sale of goods or services from ongoing operations. Total Revenue excludes any non-recurring sales or gains. |
| Net Income | Yes | Yes | Yes | The income (or loss) after expenses and losses have been subtracted from all revenues and gains for the fiscal period, including discontinued operations. |
| Unadjusted EBITDA | Yes | Yes | Yes | Earnings before interest expense, income tax expense, depreciation expense and amortization expense. The starting point is net income. |

24-01863-FPC11    Doc 150-3    Filed 11/01/24    Entered 11/01/24 12:35:46    Pg 12 of 14

*Effective: November 25, 2020*

| Table II: Data Required <u>Quarterly</u> from Main Street Borrowers by Main Street Facility | | | | |
|---|---|---|---|---|
| **Required Data** | **MSELF** | **MSNLF** | **MSPLF** | **Definition** |
| Adjusted EBITDA | Yes | Yes | Yes | Unadjusted EBITDA adjusted for any non-recurring, one-time or irregular items. The Adjusted EBITDA measurement should align with the relevant facility's term sheet. |
| Depreciation Expense | Yes | No | No | Non-cash expense measured based on the use of fixed assets, recognized over the useful life of the fixed assets. |
| Amortization Expense | Yes | No | No | Non-cash expense measured based on the use of intangible assets, recognized over the life of the intangible asset. |
| Interest Expense | Yes | Yes | Yes | The periodic finance expense of short term and long term debt. |
| Tax Expense | Yes | No | No | Federal, state and local income tax expenses. |
| Rent Expense | Yes | No | No | The contractual costs of occupying leased real estate. |
| Dividends / Equity Distributions | Yes | Yes | Yes | Distributions to equity owners. |
| Accounts Receivable (net of allowances) | Yes | No | No | Amounts owed to the borrower resulting from providing goods and/or services. Accounts receivable will be net of any allowances for uncollectible amounts. |
| Inventory (net of reserves) | Yes | No | No | Value of the raw materials, work in process, supplies used in operations, finished goods, and merchandise bought which are intended to be sold in the ordinary course of business. Inventory should be net of reserves. |
| Fixed Assets, Gross | Yes | No | No | Tangible property used in the business and not for resale, including buildings, furniture, fixtures, equipment, and land. Report fixed assets gross of depreciation. |
| Accumulated Depreciation | Yes | No | No | Cumulative depreciation of all fixed assets up to the Date of Financial Information. |
| Accounts Payable (A/P) | Yes | No | No | The obligations owed to the borrower's creditors arising from the entity's ongoing operations, including the purchase of goods, materials, supplies, and services. Accounts payable excludes short term and long term debt. |
| Short Term Debt | Yes | No | No | Debt obligations of the borrower due with a term of less than one year, including the current portion of any Long Term Debt. |
| Long Term Debt | Yes | No | No | Debt obligations of the borrower that are due in one year or more, excluding the current portion that is otherwise captured in Short Term Debt. |
| Description of EBITDA Adjustments | Yes | No | No | Description of items that are added to Unadjusted EBITDA to determine Adjusted EBITDA. |
| Total Expenses | Yes | No | No | All money spent and costs incurred, both recurring and non-recurring, to generate revenue. Expenses exclude items capital in nature (i.e., expenses that are allowed to be capitalized and included in the cost basis of a fixed asset). |
| Operating Expenses | Yes | Yes | Yes | Money spent and costs incurred related to normal business operations, including selling, general & administrative expenses, depreciation, and amortization (i.e. total expenses less non-recurring expenses). Exclude capital expenditures. |

DocuSign Envelope ID: A7B9042A-92F9-4517-AD78-9A30EB535BD3

*Effective: November 25, 2020*

| Table II: Data Required <u>Quarterly</u> from Main Street Borrowers by Main Street Facility | | | | |
|---|---|---|---|---|
| **Required Data** | **MSELF** | **MSNLF** | **MSPLF** | **Definition** |
| Operating Income | Yes | Yes | Yes | Profit (or loss) realized from continuing operations (i.e., revenue less operating expenses). |
| Fixed Charges | Yes | No | No | Expenses that recur on a regular basis, regardless of the volume of business (i.e., lease payments, rental payments, loan interest payments, or insurance payments). |
| Capitalized Expenditures | Yes | Yes | Yes | Non-operating expenditures capitalized to fixed assets. |
| Guarantor Net Assets | Yes | No | No | Total assets less total liabilities of the guarantor (also referred to as net worth). |
| Sr. Debt Balance | Yes | Yes | Yes | Debt amount ranking senior to the Main Street loan. |
| Additional Pari Passu Debt Balance | Yes | Yes | Yes | Debt amount ranking pari passu to the Main Street loan. |
| Collateral Type (Non-Real Estate) | Yes | No | No | If the loan is secured by collateral that is not predominantly real estate, including if the collateral provided is different types, report the predominant type of collateral (e.g., inventory, receivables, securities, etc.) by aggregate value. |
| Collateral Type (Real Estate) | Yes | No | No | If the loan is secured by real estate collateral, indicate the property type (e.g., hotel, multifamily, residential, industrial, etc.). If the loan is secured by multiple real estate property types, report the predominant property type by aggregate value. |
| Collateral Value Reporting | Yes | No | No | For loans that require ongoing or periodic valuation of the collateral, report the market value of the collateral as of the reporting date. |
| Collateral Value Date | Yes | No | No | Define the as-of date that corresponds with the Collateral Value Reporting field. |
| Covenant Status (Pass / Fail) | Yes | Yes | Yes | Yes/no, indicating if the facility has satisfied covenant tests. |
| Date of Covenant Default | Yes | Yes | Yes | If applicable, report the date when borrower defaulted covenants. |
| Nature of Covenant Default | Yes | Yes | Yes | If applicable, describe the covenant default (i.e., missing financial statements, ratio trigger). |
| Date of Covenant Cure | Yes | Yes | Yes | If applicable, report the date when borrower cured previous defaults. |

BORROWER:

CREATIVE TECHNOLOGIES, L.L.C.

By: _____

Ryan Wear, Member of Creative Technologies, L.L.C.


By: _____

Richard Wear, Member of Creative Technologies, L.L.C.