REAL ESTATE CONSULTING AND ADVISORY SERVICES AGREEMENT

This Agreement (the "Agreement") is entered into as of November 5, 2024, by and between Hilco Real Estate, LLC ("Hilco") and Refreshing USA, LLC, Water Station Management LLC, and Creative Technologies LLC (collectively "Debtor"), debtor and debtor-in-possession in that certain Chapter 11 case, Case Nos. 24-33919, 24-33924, and 24-33934 (the "Bankruptcy Cases"), pending in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court").

Recitals:

WHEREAS, the Debtor desires to retain Hilco as its exclusive agent to market for sale on its behalf that certain real estate property identified on Exhibit A attached hereto (each, a "Property, and collectively, the "Properties"), which list of Properties may be added onto by mutual agreement of the parties, in accordance with the terms set forth herein; and

WHEREAS, Hilco is willing to perform the services described herein on the terms set forth herein.

Agreement:

NOW, THEREFORE, in consideration of the foregoing recitals and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtor and Hilco agree as follows:

1. Hilco Services. Hilco shall provide the following services to the Debtor during the Term (as hereinafter defined):

    (a) Meeting with the Debtor to ascertain the Debtor's goals, objectives, and financial parameters in selling the Properties. The sales structure, including reserve pricing, is more specifically described on Exhibit B.

    (b) Soliciting interested parties for the sale of the Properties and marketing the Properties for sale through an accelerated sales process. The bid deadline/auction is anticipated to be on or about TBD, 2024 or within eight (8) weeks after entry of the Retention Order (as defined below).

    (c) At the Debtor's direction and on the Debtor's behalf, negotiating the terms of the sale of the Properties.

2. Term. The term (the "Term") of this Agreement shall commence upon the execution hereof and shall expire six (6) months after the entry of the Retention Order, unless terminated earlier (for cause, as set forth in Section 10 hereof) or extended pursuant to the terms hereof. The Term may be extended for successive thirty (30) day periods upon written agreement by Hilco and the Debtor. The parties acknowledge and agree that the effectiveness of this Agreement is contingent upon approval of the Bankruptcy Court.

3. Authority. During the Term, Hilco shall serve as the Debtor's exclusive agent for the purposes set forth in Section 1 above. All communications and inquiries made to the Debtor

regarding a sale of the Properties during the Term shall be redirected by the Debtor to Hilco. The parties hereto agree that Hilco is serving as an independent contractor for the Debtor pursuant to this Agreement for the limited purposes set forth herein and nothing herein shall be construed to establish a partnership or joint venture between Hilco and the Debtor.

4. <u>Compensation</u>.

(a) In the event any Property is sold (or the reserve price is met as set forth on <u>Exhibit B</u>), Hilco shall earn a fee equal to an amount as specified on <u>Exhibit B</u> of this Agreement.

(b) All fees payable to Hilco hereunder shall be free and clear of any liens, claims and encumbrances, including the liens of any secured parties. Any fees owing to Hilco pursuant to Section 4(a) shall be payable at the time of closing on a sale of a Property.

(c) Hilco shall not be responsible for any other fees or commissions in connection with the disposition of the Properties, including, without limitation, any compensation, or fees due to an outside, third-party broker in the event such third party broker procures the buyer of any Property.

5. <u>Survival</u>. If, within ten (10) days after the termination or expiration of the Term of this Agreement, Hilco delivers to the Debtor a written list of prospects for the Properties (the "Prospect List"), and within one hundred and twenty (120) days after the termination or expiration of the term of this Agreement, the Debtor consummates a sale of any Property to a prospect set forth on the Prospect List, Hilco shall be entitled to a fee, paid by the Debtor, in accordance with Section 4 hereof as if the sale had been agreed to or consummated during the Term of this Agreement, except and unless such termination is for cause as provided in Section 10, below. For purposes of this Agreement, to be properly included on the Prospect List, an entity must have submitted a written letter of intent, contract, or purchase offer to Hilco in connection with a Property or must have been shown the applicable Property by Hilco, prior to the termination or expiration of the Term of this Agreement.

6. <u>Expenses.</u> The Debtor shall reimburse Hilco for all reasonable and customary Reimbursable Expenses (as defined below) incurred in connection with the performance of the services proposed hereunder, for which Hilco and the Debtor shall agree on a proposed budget; provided, further, that such reimbursement obligation shall be capped at $10,000 per property. In addition to any other fees due hereunder, the Reimbursable Expenses shall be due and payable (i) at the closing of the sale of the Property to a third party, including a sale to a lender successfully credit bidding on such Property, (ii) in the event the Property does not sell, upon the expiration of the Term, (iii) in the event the sale and/or auction is cancelled, on the date the sale and/or auction was scheduled to occur, or (iv) upon the termination of this Agreement pursuant to Section 10. "Reimbursable Expenses" means all out-of-pocket expenses incurred in connection with performance of the contemplated services, including, without limitation: reasonable expenses of marketing, advertising, economy travel and transportation.

7. <u>No Guaranty</u>. Hilco has not guaranteed, and is not hereby guaranteeing, any specific result on the sale of the Properties.

8. Indemnification.

    (a) Hilco's Indemnification.

    Hilco shall indemnify and hold the Debtor harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to any of the following: (a) the grossly negligent acts or omissions of Hilco; (b) the breach of any material provision of this Agreement by Hilco; (c) any liability or other claim asserted by any employee, representative, consultant or other person or entity claiming through Hilco against the Debtor arising out of or related to Hilco's conduct of the marketing or sale of the Properties, other than claims arising from the Debtor's negligence or unlawful behavior; and (d) any liability or claim for unpaid commission made by a co-broker retained by Hilco.

    (b) The Debtor's Indemnification.

    The Debtor shall indemnify and hold Hilco and its members, officers, directors, employees, and principals harmless from and against all liabilities, claims, demands, damages, costs and expenses (including reasonable attorneys' fees) arising from or related to any of the following: (a) the negligent acts or omissions of the Debtor; (b) the breach of any material provision of this Agreement by the Debtor; and (c) claims asserted by any of the Debtor's previous real estate brokers.

9. General Provisions.

    (a) The Debtor and Hilco shall deal with each other in good faith so as to allow both parties to perform their duties and earn the benefits of this Agreement.

    (b) The effectiveness of this Agreement is subject to and contingent upon the entry of an Order under section 327 and 328 of the Bankruptcy Code (the "Retention Order"), in form and substance acceptable to Hilco, authorizing the Debtor's entry into this Agreement, which the Debtor agrees to use its commercially reasonable best efforts to obtain as soon as practicable. The Debtor will use its commercially reasonable best efforts to ensure that the Retention Order shall specifically provide that: (i) Hilco is being retained, *nunc pro tunc* to the date hereof, pursuant to sections 327 and 328 of the Bankruptcy Code by the Debtor; (ii) the payment of all fees and reimbursement of expenses hereunder to Hilco shall be free and clear of all liens, claims and encumbrances; (iii) all such payments of fees and reimbursement of expenses shall be made without further order of the Bankruptcy Court and paid at the closing of a Property; and (iv) Hilco is not required to maintain time records or file interim or final fee applications.

    (c) Any correspondence or required notice shall be addressed as follows and shall be deemed given (i) when received if hand delivered, (ii) three (3) business days after depositing in the United States mail if sent first-class certified mail, and (iii) on the next business day if sent by overnight mail:

|  |  |  |
|---|---|---|
| If to Hilco: | | Hilco Real Estate, LLC |
| | | 5 Revere Drive |
| | | Suite 320 |
| | | Northbrook, Illinois 60062 |
| | | Tel. (847) 418-2703 |
| | | Fax (847) 897-0826 |
| | | Attn: Jeff Azuse |
| | | jazuse@hilcoglobal.com |
| with a copy to: | | Hilco Global |
| | | 5 Revere Drive, Suite 206 |
| | | Northbrook, Illinois 60062 |
| | | Tel. (847) 504-2462 |
| | | Fax (847) 897-0874 |
| | | Attn: Eric Kaup |
| | | ekaup@hilcoglobal.com |
| If to Debtor: | | Brian Weiss |
| | | Force 10 Partners |
| | | 5271 California Avenue, Suite 270 |
| | | Irvine, California 92617 |
| | | Tel. (949) 357-2368 |
| | | bweiss@force10partners.com |
| with a copy to: | | Danny Newman |
| | | Ava Schoen |
| | | Tonkon Torp LLP |
| | | 888 SW 5th Avenue, Suite 1600 |
| | | Portland, OR 97204 |
| | | Tel. (503) 802-2089 (Danny Newman) |
| | | (503) 802-2143 (Ava Schoen) |
| | | danny.newman@tonkon.com |
| | | ava.schoen@tonkon.com |

(d) This Agreement shall be deemed drafted by both parties hereto, and there shall be no presumption against either party in the interpretation of this Agreement.

(e) By executing or otherwise accepting this Agreement, the Debtor and Hilco acknowledge and represent that they are represented by and have consulted with independent legal counsel with respect to the terms and conditions contained herein.

(f) This Agreement may be executed in counterparts, and if executed and delivered via facsimile shall be deemed the equivalent of an original.

(g) Other than may be expressly stated herein, this Agreement creates no third-party beneficiaries.

4

(h) The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provisions of this Agreement, which shall remain in full force and effect, and the invalid or unenforceable provision shall be reformed to the minimum extent required to render it valid and enforceable and to affect the intent of this Agreement.

(i) Neither this Agreement nor any of the rights hereunder may be transferred or assigned by either party hereto without the prior written consent of the other party. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

(j) No modification, amendment, or waiver of any of the provisions contained in this Agreement, or any future representation, promise or condition in connection with the subject matter of this Agreement, shall be binding upon any party to this Agreement unless made in writing and signed by a duly authorized representative or agent of such party. The failure by either party to enforce, or the delay by either party in enforcing, any of said party's rights under this Agreement shall not be construed as a waiver of such rights, and said party may, within such time as is provided by the laws established by any government with applicable jurisdiction, commence appropriate suits, actions, or proceedings to enforce any or all of such rights. A waiver by either party of a default in one or more instances shall not be construed as a waiver in other instances.

(k) This Agreement, together with all additional schedules and exhibits attached hereto, constitutes a single, integrated written contract expressing the entire agreement of the parties concerning the subject matter hereof. No covenants, agreements, representations, or warranties of any kind whatsoever have been made by any party to this Agreement except as specifically set forth in this Agreement. All prior agreements, discussions and negotiations are entirely superseded by this Agreement.

(l) All headings and captions in this Agreement are for convenience only and shall not be interpreted to enlarge or restrict the provisions of the Agreement.

(m) This Agreement has been made under the laws of the State of Delaware, and such laws will control its interpretation and any and all issues, disputes, claims or causes of action which relate or pertain to, or result or arise from this Agreement or Hilco's services hereunder, shall be settled by the Bankruptcy Court.

(n) The Debtor acknowledges and agrees that Hilco may present the Properties for sale to a potential purchaser who is also exclusively represented by Hilco. In such event, Hilco will disclose such arrangement to the Debtor, and Hilco shall be considered a co-broker and may be paid a commission as the exclusive agent for the prospective purchaser in addition to any commission owed for the listing of the Properties, except that in no event shall the Debtor be obligated for any commission in excess of the amount provided for herein.

(o) IF EARNEST MONEY OR SIMILAR DEPOSITS ARE FORFEITED TO DEBTOR, IN ADDITION TO ANY OTHER RIGHTS OF HILCO HEREUNDER, THE FORFEITED EARNEST MONEY SHALL FIRST BE USED BY DEBTOR TO REIMBURSE

5

24-01863-FPC11    Doc 168-6    Filed 11/06/24    Entered 11/06/24 13:43:42    Pg 5 of 8

HILCO'S REIMBURSABLE EXPENSES. TO THE EXTENT ANY EARNEST MONEY REMAINS AFTER DEBTOR REIMBURSES HILCO'S EXPENSES, SUCH REMAINING AMOUNTS SHALL BE DIVIDED EQUALLY AMONG DEBTOR OR ITS CREDITORS AND HILCO; PROVIDED, HOWEVER, HILCO'S PORTION OF THE REMAINING EARNEST MONEY, AFTER REIMBURSEMENT OF HILCO'S EXPENSES, SHALL NOT EXCEED THE TOTAL AMOUNT OF ANTICIPATED COMMISSION.

(p) THE DEBTOR AND HILCO AGREE THAT THE PROPERTIESWILL BE OFFERED FOR SALE AND WILL BE SOLD WITHOUT REGARD TO RACE, COLOR, RELIGIOUS CREED, ANCESTRY, AGE, NATIONAL ORIGIN, DISABILITY OR FAMILIAL STATUS.

10. <u>Termination for cause</u>. The Debtor may terminate this Agreement for cause upon written notice to Hilco at any time prior to the expiration of the Term. Termination for cause shall mean any termination as a result of Hilco's fraud, misrepresentation, gross negligence, willful misconduct or material breach of any of the terms of this Agreement. Upon termination of this Agreement pursuant to this Section 10, the Debtor shall be liable only for payment of accrued and unpaid Reimbursable Expenses of Hilco as of the effective date of the termination by the Debtor.

**IN WITNESS WHEREOF**, the Debtor and Hilco have executed and delivered this Agreement as of the date first above written.

| Debtor | HILCO REAL ESTATE, LLC |
|---|---|
| By: *[signature]* | By: *[signature]* |
| Brian Weiss | Eric Kaup, |
| Title: Chief Restructuring Officer | Title: EVP, CCO & Special Counsel, Managing Member |
| Date: 11/5/24 | Date: 11/6/24 |

# EXHIBIT A

Property Addresses:

204 NWW ROAD, SAN ANTONIO, TX

516 Veterans Memorial Blvd Harker Heights, TX

602 S. Meadow Ave, Odessa, TX

14026 Harrison Ave, Posen IL

14919, 14821 Smokey Point Blvd, Marysville, WA 98271

14805 35th Ave NE, Marysville, WA 98270

3740 152nd St NE, Marysville, WA 98271

1612 NW ST, Flagstaff AZ

770 W 39th Ave., Apache Junction, AZ 85120

1771 W. Superstition Blvd, Apache Junction, AZ 85120

585 S. Winchester Apache Junction, AZ 85199

2428 West Broadway, Apache Junction, AZ 85120

# EXHIBIT B

# PRICE & COMMISSION STRUCTURE

**SALES STRATEGY & STRUCTURE:** Managed Bid Sales Process

Unless otherwise specified herein or agreed to between Hilco and the Debtor in writing, the sale will be conducted as a "reserve sale" subject to the approval of the Debtor, those of Debtor's secured lender(s) with properly perfected and recorded interests in the Properties, and the bankruptcy court. If the sale is approved during the Managed Bid Sales Process or a Property otherwise sells during the Term (or during any tail period), the Debtor shall be obligated to pay the below commission to Hilco.

**COMMISSION**

In the event any Properties are sold, Hilco shall earn a fee equal to:

- Six percent (6%) for each property with Gross Sales Proceeds up to $2,000,000.

- Five percent (5%) for each property with of the Gross Sales Proceeds from $2,000,001 to $3,000,000.

- Four percent (4%) for each property with Gross Sales Proceeds over $3,000,001.

For purposes hereof, "Gross Sale Proceeds" shall mean the aggregate cash and non-cash consideration received by the Debtor in consideration of a Property. The value of non-cash consideration paid for a Property shall be determined by mutual agreement between Hilco and the Debtor.

044904\00001\17730689v1