IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| Refreshing USA, LLC, | Case No. 24-33919 (Jointly Administered) |
| Debtors[1]. | |

**AMENDED DEBTORS' APPLICATION FOR ENTRY OF AN ORDER (1) AUTHORIZING THE RETENTION AND EMPLOYMENT OF HILCO REAL ESTATE, LLC AS REAL ESTATE CONSULTANTS, (2) WAIVING CERTAIN TIMEKEEPING REQUIREMENTS, AND (3) GRANTING RELATED RELIEF**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 21 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXSB.USCOURTS.GOV/ WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK WITHIN TWENTY-ONE DAYS FROM THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON DECEMBER 9, 2024 AT 10:00 A.M. (PREVAILING CENTRAL TIME) IN COURTROOM 400, 515 RUSK, HOUSTON, TX 77002. YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AN AUDIO AND VIDEO CONNECTION. AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 832-917-1510. ONCE CONNECTED, YOU WILL BE ASKED TO ENTER THE CONFERENCE ROOM NUMBER. JUDGE PÉREZ'S CONFERENCE CODE IS 282694. VIDEO COMMUNICATION WILL BE BY USE OF THE GOTOMEETING PLATFORM. CONNECT VIA THE**

[1] Debtors and debtors-in-possession in these Chapter 11 cases ("Bankruptcy Case(s)"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-33919; Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-33924; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station, "Debtors"), Case No. 24-33934. Debtors' mailing address is: 2732 Grand Ave., Ste. 122, Everett, WA 98201.



24-01863-FPC11 Doc 169 Filed 11/06/24 Entered 11/06/24 16:18:09 Pg 1 of 17

**FREE GOTOMEETING APPLICATION OR CLICK THE LINK ON JUDGE PÉREZ'S HOME PAGE. THE MEETING CODE IS "JUDGEPEREZ". CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING. HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF BOTH ELECTRONIC AND IN-PERSON HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE PÉREZ'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

Debtors and Debtors-in-Possession Refreshing USA, LLC ("Refreshing"), Water Station Management LLC ("Water Station"), and Creative Technologies, LLC ("Creative," together with Refreshing and Water Station, "Debtors"), respectfully request this Court for entry of an order, substantially in the form attached hereto as **Exhibit C**, approving the employment and retention of Hilco Real Estate, LLC ("Hilco Real Estate") as their real estate advisors pursuant to the terms and conditions of the Services Agreement, effective as of the Petition Date; (b) waiving certain timekeeping requirements; and (c) granting related relief. In support of this Application, the Debtors submit the Declaration of Jeffrey Azuse, Executive Vice President of Hilco Real Estate (the "Azuse Declaration"), filed as **Exhibit B** to this Motion. In support of this application, Debtors further respectfully state as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are sections 327(a), 328(a), and 1107(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 2014(a) and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rules 2014-1 and 2016-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules").

## BACKGROUND

3. Debtors are incorporated and headquartered in Washington. Debtors collectively operated water machine and vending machine businesses. Creative previously manufactured, purchased from third parties and sold water purification machines. Water Station serviced water machines purchased by investors. Refreshing owned and operated vending machines. Refreshing was also the central financial clearinghouse for all machines and all revenue generated by the Debtors. Ryan Wear or Tyler Sadek is believed to be the majority owner of each of the Debtors. The claims against Debtors and its affiliates likely exceed $200 million.

4. In May 2024, the Superior Court of King County, Washington, ("Washington Court") appointed Turning Point Strategic Advisors ("Receiver") as a general receiver over each of the Debtors. On August 23, 2024, the Washington Court issued an Order under the Washington Consumer Protection Act and under its equitable powers in receivership to remove Ryan Wear as Manager of the Debtors and replace him with Eric Camm as Manager.

5. On August 27, 2024, Chapter 11 Involuntary Petitions were filed against each of Debtors under Chapter 11 of the Bankruptcy Code (collectively, the "Cases").

6. On October 18, 2024, Debtors filed their Renewed and Updated Applications for Order to Employ Tonkon Torp LLP as Attorneys for Debtors (the "Tonkon Application"). The Tonkon Application is set for hearing on November 13, 2024, at 11:00 a.m. (Prevailing Central Time).

7. On October 23, 2024, the Court entered an Order for Relief pursuant to 11 U.S.C. § 303(h) as to Creative.

8. On October 23 and October 24, 2024, Debtors filed their Motions for an Order to (1) Employ and Retain Force Ten Partners, LLC, and (2) Designate Brian Weiss as Chief

Restructuring Officer (the "Force 10 Application"). The Force 10 Application is set for hearing on November 20, 2024, at 11 a.m. (Prevailing Central Time).

9. On October 27, 2024, the Court entered Orders Directing Joint Administration of the Chapter 11 Cases and Granting Related Relief as to Refreshing and Water Station.

10. On October 28, 2024, the Court entered an Order Directing Joint Administration of the Chapter 11 Cases and Granting Related Relief as to Creative.

11. On October 27, 2024, the Court entered Orders Granting Complex Case Treatment as to Refreshing and Water Station. On October 28, 2024, the Court entered an Order Granting Complex Case Treatment as to Creative.

12. On October 28, 2024, the Chapter 11 Cases were reassigned to Judge Alfredo R. Perez under the complex case procedures.

13. No official committee of unsecured creditors has been appointed in Debtors' cases at this time.

**DEBTORS' REAL ESTATE**

14. Notably, despite beginning these cases with no real estate holdings of their own, on Tuesday October 22, 2024, Force Ten arranged for Mr. Wear to transfer title in 11 pieces of real property to Debtors (without compromising any of Debtors' potential claims against him).[2] Those properties are:

a. 204 NWW ROAD, SAN ANTONIO, TX

---

[2] Debtors' (former) affiliate Ideal Property Investments LLC ("Ideal") has filed a voluntary chapter 11 petition in the Bankruptcy Court for the Eastern District of Washington. Ideal is a real property holding company controlling approximately 20 pieces of real property, and it appears most of or all of the money used to fund Ideal's property purchase transactions came from Debtors—to the tune of at least $31.7 million—without any consideration to Debtors.

b. 516 VETERANS MEMORIAL BLVD., HARKER HEIGHTS, TX 76548

c. 602 S MEADOW AVE, ODESSA, TX 79761

d. 8825 S 228TH ST KENT, WA, 98031

e. 14026 S HARRISON AVE, POSEN, IL 60469

f. 3740 152ND ST NE, MARYSVILLE, WA 98271

g. 1606 N WEST ST, FLAGSTAFF, AZ 86004

h. 1610 N WEST ST, FLAGSTAFF, AZ 86004

i. 1612 N WEST ST, FLAGSTAFF, AZ 86004

j. 770 E 39TH AVE., APACHE JUNCTION, AZ 85119

k. 1771 W SUPERSTITION BLVD., APACHE JUNCTION, AZ 85120

l. 585 S WINCHESTER, APACHE JUNCTION, AZ 85199

m. 2428 WEST BROADWAY, APACHE JUNCTION, AZ 85120[3]

The above 13 properties are each a "Property" and collectively, are the "Properties."

15. It is anticipated, understood, and agreed that at Debtors' request, Hilco Real Estate may also provide the Services relative to any or all of the Additional Properties (defined below) and Receiver Properties (defined below) upon the mutual agreement in writing of the parties. In such event, the Additional Properties and the Receiver Properties shall be deemed "Properties" under the Services Agreement and this Application.

16. Moreover, Mr. Wear has committed to turning over control of 3422 W Clarendon LLC, which controls three additional pieces of real property to Debtors. However, because 3422 W Clarendon LLC filed its own subchapter V chapter 11 petition on October 18, 2024, there has

---

[3] On that same date, Mr. Wear assigned his minority interest in 1206 Hewitt LLC, which owns 1206 Hewitt Ave, Everett, WA, 98201.

been a slight delay in arranging for Debtors to obtain ownership of those three properties, which are:

a. 4035 E MAGNOLIA, PHOENIX, AZ

b. 14418 SMOKEY PT BLVD., MARYSVILLE, WA 98270

c. 4827 268TH ST NW, STANWOOD, WA 98292

These three properties are each an "Additional Property" and collectively "Additional Properties."

17. Based on repeated representations by Mr. Wear and 3422 Clarendon's counsel, Debtors fully expect to control these three Additional Properties shortly.

18. Further, Debtors are currently negotiating with the pre-relief Receiver and Ideal over how Receiver should dispose of eight additional pieces of real property (each a "Receiver Property" and collective, the "Receiver Properties") formerly controlled by Mr. Wear that are now under the Receiver's control that are not currently part of the bankruptcy estates of Debtors or Ideal. Debtors expect to receive at least some of the stated Receiver Properties from the Receiver.

19. In total, therefore, Debtors may potentially own and control up to 18 (or more) pieces of real property in short order that they will need Hilco Real Estate to monetize.

**HILCO REAL ESTATE'S QUALIFICATIONS**

20. Hilco Real Estate is a diversified real estate consulting and advisory firm that evaluates, restructures, facilitates the acquisition of, and brokers of all types of real estate located both nationally and internationally. Hilco Real Estate has provided real estate advisory services to debtors in many cases, including, among others: *In re WeWork Inc.*, Case No. 23-19865 (JKS) (Bankr. D.N.J. Nov. 6, 2023); *In re Cyxtera Techs., Inc.*, Case No. 23-14853 (JKS) (Bankr.

D.N.J. July 18, 2023); *In re Nielsen & Bainbridge, LLC*, Case No. 23-90071 (DRJ) (Bankr. S.D. Tex. Mar. 30, 2023); *In re Youfit Health Clubs, LLC*, Case No. 20-12841 (MFW) (Bankr. D. Del. Dec. 3, 2020); *In re RTI Holding Co., LLC*, Case No. 20-12456 (JTD) (Bankr. D. Del. Nov. 4, 2020); *In re Town Sports Int'l, LLC*, Case No. 20 12168 (CSS) (Bankr. D. Del. Oct. 29, 2020); *In re California Pizza Kitchen, Inc.*, Case No. 20-33752 (MI) (Bankr. S.D. Tex. Oct. 13, 2020) [Docket No. 497]; *In re CEC Entertainment, Inc.*, Case No. 20-33163 (MI) (Bankr. S.D. Tex. Aug. 14, 2020) [Docket No. 711]; *In re Ignite Restaurant Grp., Inc.*, Case No. 17-33550 (DRJ) (Bankr. S.D. Tex. June 29, 2017) [Docket No. 252].

21. The Debtors have selected Hilco Real Estate as their real estate advisor because, among other things: (a) the Debtors' need to retain a skilled real estate advisory firm to provide advice with respect to the Debtors' numerous real property leases and ownership interests; and (b) Hilco Real Estate's extensive experience and expertise in providing real estate consulting and advisory services in connection with the real property advisory and marketing in chapter 11 cases such as these. In light of the size of these Cases, Hilco Real Estate's resources, capabilities, and experience are important to the Debtors' successful monetization of its real property portfolio. An experienced real estate consulting and advisory firm like Hilco Real Estate fulfills a critical service and complements the services offered by the Debtors' other professionals. For these reasons, the Debtors believe that Hilco Real Estate is both well qualified and uniquely able to perform the services for which it is being sought to be retained in these chapter 11 cases in an efficient and timely manner, as well as that the retention and employment of Hilco Real Estate is in the best interests of the Debtors, their estates, and other parties in interest.

22. Hilco Real Estate commenced its engagement with the Debtors to provide real estate advisory services in connection with the Debtors' chapter 11 cases pursuant to that certain Real Estate Consulting and Advisory Services Agreement, dated as of November 5, 2024, attached as **Exhibit A** to this Motion (the "Services Agreement").

**SERVICES TO BE PROVIDED**

23. As set forth in the Services Agreement, the Debtors have requested that Hilco Real Estate serve as its exclusive real estate agent during these chapter 11 cases to market for sale the Properties set forth on Exhibit A to the Services Agreement on behalf of the Debtors in connection with the Debtors' real property holdings. Among other things, the services (the "Services") include:[4]

a. meeting with the Debtors to ascertain the Debtors' goals, objectives, and financial parameters in connection with the marketing and sale of the Properties listed on Exhibit A thereto;

b. soliciting interested parties for the sale of the Properties and marketing the Properties for sale through an accelerated sales process. The bid deadline/auction shall be as mutually agreed by the parties in writing (email shall be sufficient) or within eight (8) weeks after entry of the Retention Order (as defined below);

c. at the Debtors' direction and on the Debtors' behalf, negotiating the terms of the purchase and sale agreements for the Properties.

24. The Services are necessary to enable the Debtors to maximize the value of their real estate. All of the Services will be undertaken at the request of the Debtors.

/ / /

/ / /

[4] The summary provided is otherwise for illustrative purposes only. In the event of any inconsistency between the Services as set forth here and the Services Agreement, the Services Agreement will control. Capitalized terms used but not otherwise defined in this summary have the meanings ascribed to them in the Services Agreement.

## PROFESSIONAL COMPENSATION

25. Real estate consultants like Hilco Real Estate do not typically charge for their services on an hourly basis. Instead, compensation arrangements such as those contemplated by the Services Agreement are customary. Further, such compensation arrangements are consistent with and typical of compensation arrangements entered into by Hilco Real Estate and other comparable firms in connection with the rendering of similar services under similar circumstances.

26. Subject to the Court's authorization, the Debtors will compensate Hilco Real Estate in accordance with the terms and conditions and at the times set forth in the Services Agreement, which provides in relevant part for the following compensation structure (the "Fee Structure"):

a. Six percent (6%) for each Property with Gross Sales Proceeds up to $2,000,000

b. Five percent (5%) for each Property with of the Gross Sales Proceeds from $2,000,001 to $3,000,000

c. Four percent (4%) for each Property with Gross Sales Proceeds over $3,000,001

27. In addition to any fees payable to Hilco Real Estate, the Debtors will reimburse Hilco Real Estate for its reasonable, documented (through receipts or invoices) out-of-pocket expenses ("Expenses") incurred in performing the Services, including, without limitation, reasonable expenses of advertising, marketing, coach travel, and transportation, including the cost of out-of-town travel and postage and courier/overnight express fees as well as reasonable attorney's fees and costs incurred in relation Hilco's retention in the Cases and other mutually agreed upon expenses incurred in connection with performing the Services. With respect to Expenses incurred in connection with the Services relating to the marketing and sales of the

Properties, the Expenses shall be due and payable (i) at the closing of the sale of each respective Property to a third party, including a sale to a lender successfully credit bidding on such Property, (ii) in the event a Property does not sell, upon the expiration of the Term, (iii) in the event a sale and/or auction is cancelled, on the date the sale and/or auction was scheduled to occur, and (iv) upon the termination of the Services Agreement pursuant to Section 10; provided, however, Hilco's Expenses shall be capped at $10,000 per Property.

28. The Debtors believe that Hilco Real Estate's fee structure as set forth herein and in the attached Services Agreement is comparable to compensation generally charged by real estate brokerage firms of similar stature to Hilco Real Estate for comparable engagements, both in and out of bankruptcy. Furthermore, the Debtors believe that Hilco Real Estate's stated fee structure is consistent with Hilco Real Estate's normal and customary billing practices for cases of comparable size that require the level and scope of the services to be provided in these chapter 11 cases. Moreover, Hilco Real Estate's stated fee structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and effort will be required of Hilco Real Estate and its professionals, and in the light of the fact that such commitment may foreclose other opportunities for Hilco Real Estate and that the actual time and commitment required of Hilco Real Estate and its professionals to perform the services may vary substantially from week to week or month to month, creating "peak load" issues for Hilco Real Estate.

29. Hilco Real Estate's expertise and experience in the realm of sales of real property on behalf of chapter 11 debtors was an important factor in the selection process and determining the fee structure. The Debtors believe that the ultimate benefit of the Services cannot be measured by reference to the number of hours to be expended by Hilco Real Estate's professionals in the performance of such Services. The Debtors also believe that by using a

transactional fee structure, Hilco Real Estate's compensation is directly tied to and contingent upon the amount of proceeds from sales of the Properties and aligns the interests of Hilco Real Estate with those of the Debtors.

**WAIVER OF COMPLIANCE WITH TIME-DETAIL REQUIREMENTS**

30. Consistent with its ordinary practice and the practice of real estate advisors in other chapter 11 cases whose fee arrangements are not hours-based, Hilco Real Estate does not typically maintain contemporaneous time records or provide or conform to a schedule of hourly rates for its professionals. In exchange for its services, Hilco Real Estate will receive compensation as set forth in the Services Agreement. The detailed filing requirements of Bankruptcy Rule 2016 and the *United States Trustees Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330* (the "U.S. Trustee Guidelines") would require the expenditure of unnecessary time and fees in compiling time records and preparing fee applications and could hinder Hilco Real Estate from providing services as efficiently as possible. Given that and that the Fee Structure is based on proceeds generated by the sale of the Properties, the Debtors request that, notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any order of this Court, or any other guideline regarding the submission and approval of fee applications, Hilco Real Estate's professionals be excused from (a) submitting monthly and interim fee applications as set forth in Bankruptcy Rule 2016 and (b) maintaining time records in connection with the services to be rendered pursuant to the Services Agreement. Hilco Real Estate is granted this request routinely, including in the above-referenced list of cases where it has been retained.

31. With respect to any sale of a Property sold by Hilco Real Estate, the Debtors will file a motion authorizing and approving such sale (a "Sale Motion"). The Sale Motion will

disclose the applicable Fee Structure to be paid to Hilco Real Estate pursuant to the Services Agreement in connection with such closing of the Property and Hilco Real Estate shall be paid such fee at the closing of the sale of such Property and Hilco Real Estate is excused from submitting fee applications otherwise as it relates to the Services or any fees owed to Hilco Real Estate for the Services. In addition, Hilco Real Estate shall be reimbursed for all Expenses upon submission of invoices to Debtors.

32. Hilco Real Estate's fees payable under the Services Agreement shall be subject to review only pursuant to the standards set forth in section 328(a) of the Bankruptcy Code.

**INDEMNIFICATION**

33. The Services Agreement provides that the Debtors and Hilco Real Estate owe certain indemnification obligations to each other. The provisions governing the Debtors and Hilco Real Estate's indemnification obligations (the "Indemnification Provisions") are included in the Services Agreement.

34. The Indemnification Provisions were fully negotiated between the Debtors and Hilco Real Estate at arm's length and in good faith. The Debtors and Hilco Real Estate believe that the Indemnification Provisions are customary and reasonable for real estate advisory engagements, both in chapter 11 cases and outside of chapter 11 and reflect the qualifications and limitations on indemnification provisions that are customary in this district and other jurisdictions.

**NO DUPLICATION OF SERVICES**

35. The Debtors believe that the services Hilco Real Estate will provide will be complementary rather than duplicative of the services to be performed by other professionals. The Debtors are very mindful of the need to avoid duplication of services, and appropriate



24-01863-FPC11 Doc 169 Filed 11/06/24 Entered 11/06/24 16:18:09 Pg 12 of 17

procedures will be implemented to ensure that there is minimal duplication of effort as a result of Hilco Real Estate's retention as real estate advisor.

**HILCO REAL ESTATE'S DISINTERESTEDNESS**

36. Hilco Real Estate has reviewed the list of parties in interest provided by the Debtors. To the best of the Debtors' knowledge, information, and belief, and except to the extent disclosed herein and in the Azuse Declaration, Hilco Real Estate: (a) does not hold any interest adverse to the Debtors' estates; (b) has no connection with the Debtors, their creditors, equity security holders, or related parties herein; and (c) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code (as modified by section 1107(b) of the Bankruptcy Code). The Debtors' knowledge, information, and belief regarding the matters set forth here are based, and made in reliance, upon the Azuse Declaration.

37. In the ninety days prior to the Petition Date, Hilco Real Estate did not receive any payments from the Debtors. As of the Petition Date, Hilco Real Estate does not hold a prepetition claim against the Debtors for services rendered.

38. The Debtors have been informed that Hilco Real Estate will conduct an ongoing review of its files to ensure that no conflicts or other disqualifying circumstances exist or arise. If any new material facts or relationships are discovered or arise, Hilco Real Estate will promptly inform the Court as required by Bankruptcy Rule 2014(a).

39. As set forth in the Azuse Declaration, Hilco Real Estate has not shared or agreed to share any of its compensation from the Debtors with any other person except as permitted by section 504 of the Bankruptcy Code.

/ / /

/ / /

## BASIS FOR RELIEF

40. The Debtors seek approval of the retention and employment of Hilco Real Estate pursuant to sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code. Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor in possession, "with the court's approval, may employ or authorize the employment of a professional person under section 327. . .on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 327(a) of the Bankruptcy Code, in turn, authorizes a debtor in possession to employ professionals that "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). Section 1107(b) of the Bankruptcy Code provides that "a person is not disqualified for employment under section 327 of [the Bankruptcy Code] by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case." 11 U.S.C. § 1107(b).

41. Section 328 of the Bankruptcy Code permits the compensation of professionals, including investment bankers and real estate advisors, on more flexible terms that reflect the nature of their services and market conditions. As the U.S. Court of Appeals for the Fifth Circuit recognized in *Donaldson Lufkin & Jenrette Securities Corp. v. National Gypsum Co. (In re National Gypsum Co.)*, 123 F.3d 861 (5th Cir. 1997):

> Prior to 1978 the most able professionals were often unwilling to work for bankruptcy estates where their compensation would be subject to the uncertainties of what a judge thought the work was worth after it had been done. That uncertainty continues under the present § 330 of the Bankruptcy Code, which provides that the court award to professional consultants "reasonable compensation" based on relevant factors of time and comparable costs, etc. Under present § 328 the professional may avoid that uncertainty by obtaining court approval of compensation agreed to with the trustee (or debtor or committee).

123 F.3d at 862 (footnote omitted).

42. The Debtors should be authorized to retain and employ Hilco Real Estate in accordance with the terms and conditions of the Services Agreement. First, as discussed above and in the Azuse Declaration, Hilco Real Estate satisfies the disinterestedness standard in section 327(a) of the Bankruptcy Code. Moreover, other Hilco entities are expected to also be retained as investment banker and potential liquidator of various equipment, creating synergy across platforms, and reducing inefficient competition between different firms holding different roles. Hilco Real Estate's services are needed post-petition to assist with the marketing and sale of the Properties. Hilco Real Estate has extensive experience and an excellent reputation in providing high-quality real estate advisory services to debtors in bankruptcy reorganizations and other restructurings. The Debtors believe that Hilco Real Estate is well qualified to provide the Services to the Debtors in a cost-effective, efficient, and timely manner.

43. Additionally, the Debtors believe that the fee structure set forth in the Services Agreement and in this Application is market-based, fair, and reasonable under the standards set forth in section 328(a) of the Bankruptcy Code. The stated fee structure appropriately reflects the nature and scope of Services, Hilco Real Estate's substantial experience with sales of real property, and the fee and expense structures typically utilized by Hilco Real Estate and other leading advisory firms that do not bill their clients on an hourly basis. In particular, the Debtors believe that Hilco's fee structure creates a proper fee mix based on the overall success of Hilco Real Estate's efforts to market and sell the Properties.

44. Further, the Debtors and Hilco Real Estate believe that the Indemnification Provisions set forth in the Services Agreement are customary and reasonable for advisory

engagements, both out of court and in chapter 11 cases, and reflect the conventional qualifications and limitations on indemnification provisions in this district.

45. The employment of Hilco Real Estate effective as of the Effective Date of the Services Agreement is warranted under the circumstances of these chapter 11 cases. Hilco Real Estate will provide valuable services to the Debtors regarding the contemplated real property sale transactions. *See, e.g.*, *In re Mohiuddin*, 627 B.R. 875 (5th Cir. 2021) (citing *In re Triangle Chems., Inc.*, 697 F.2d 1280, 1289 (5th Cir. 1983)) ("Bankruptcy courts maintain the discretion to retroactively authorize the employment of estate professionals."). Accordingly, the Debtors respectfully submit that the Application should be granted as in the best interests of the Debtors, their estates, and all parties in interest.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /



24-01863-FPC11 Doc 169 Filed 11/06/24 Entered 11/06/24 16:18:09 Pg 16 of 17

**NOTICE**

The Debtors will provide notice of this Motion to the following parties or their respective counsel: (a) the Office of the United States Trustee; (b) the Debtors; (c) the attorneys for Debtors; (d) Creative secured creditor First Fed Bank; (e) those persons who have formally appeared and requested notice of service in this proceeding pursuant to Bankruptcy Rule 2002; and (f) the holders of the 30 largest unsecured claims against the Debtors. In light of the nature of the relief requested, and the exigent circumstances of these cases, Debtors submit that no further notice is necessary.

Dated: November 6, 2024.

Respectfully submitted,

TONKON TORP LLP

By *s/Danny Newman*

Danny Newman, Texas Bar No. 24092896
Email: danny.newman@tonkon.com
Direct: 503.802.2089
Ava Schoen, admitted Pro Hac Vice
Email: ava.schoen@tonkon.com
Direct: 503.802.2143
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
Telephone: (503) 221-1440
*Attorneys for Debtors*

044904\00001\17722220v1