IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>REFRESHING USA, LLC<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 24-33919 (ARP)<br>(Jointly Administered) |

**FIRST FED BANK'S OBJECTION TO**
**DEBTORS' MOTION TO TRANSFER VENUE**

First Fed Bank ("First Fed"), a secured creditor of Creative Technologies, LLC, hereby files this Objection to Debtor's Motion to Transfer Venue Pursuant to 28 U.S.C. 1412 and Fed R. Bankr. P. 1014(a) (the "Motion").[2] This Objection in supported by the declarations submitted with the Motion and other papers and pleadings on file with the Court.

**Introduction**

1. By the Motion, Debtors seek to transfer their cases to the Washington Bankruptcy Court so they can be heard before the same court as is presiding over Ideal's bankruptcy case. The Debtors argue that transfer is appropriate because (i) it will enable a single court to adjudicate (a) claims by creditors asserted against both the Debtors and Ideal and (b) intercompany claims between the Debtors and Ideal, (ii) avoid inconsistent rulings with respect to such adjudications, (iii) preserve court resources, and (iv) limit administrative expense. For the reasons set forth

---

[1] Debtors and debtors in possession in these Chapter 11 cases ("Bankruptcy Case(s)"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-33919; Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-33924; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station, "Debtors"), Case No. 24-33934. Debtors' mailing address is: 2732 Grand Ave., Ste. 122, Everett, WA 98201.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings given to such terms in the Motion.

1

herein, the Debtors overstate these bases for transfer and do not meet their burden to transfer their cases. While transfer of the cases may generate marginal efficiencies, they do not outweigh the benefit of having the Debtors' cases administered separately and by a different court than the Ideal case.

2. The Debtors' cases concern an operating water machine and vending machine business mired in Ponzi scheme allegations. In contrast, Ideal's case is a straightforward real estate liquidation case. The cases are related because the Debtors and Ideal have historically had common ownership, and it appears undisputed that Creative is owed at least $31.7 million from Ideal, making Creative Ideal's largest unsecured creditor (*See* Case No. 24-01421-FPC11, ECF No. 91 at 13). Certain creditors of the Debtors also assert claims against Ideal, but such claims are disputed by Ideal, and, as noted by the Debtors in the Motion, are derivative of the Debtors' claims against Ideal. *Id.* at 10-25; *See* ECF 170 at 7. A copy of Ideal's amended Schedule E/F is attached hereto reflecting the Creative claim and disputed creditor claims.

3. Given the divergent creditor constituencies[3], even if the Debtors' cases were transferred to the Washington Bankruptcy Court they would be administered separately from Ideal and would have separate management, counsel, and creditors' committees, making any cost efficiencies resulting from housing the cases in the same district marginal.

4. Unsecured creditors of the Debtors are actively working to conflate the Debtors' estates with Ideal. (*See* Case No. 24-01421-FPC11, ECF No. 91 at 10-25) (characterizing claims as disputed, contingent, and unliquidated). These creditors are attempting to characterize their claims as direct claims against Ideal (rather than derivative of the Debtors' claims against Ideal)

---

[3] The creditor bodies do not have substantial overlap if the disputed claims asserted by the Debtors' creditors against Ideal are excluded.

in order to gain access to an estate they view as more solvent. Indeed, Ideal's committee is made up entirely of creditors of the Debtors asserting derivatively the Debtors' claims against Ideal.[4] (*See* Amended Appointment of Committee, Case No. 24-01421-FPC11, ECF No. 206). Ultimately it is the Debtors and/or Ideal that should challenge such creditors' standing to assert these derivative claims, but First Fed raises it here to highlight to the Court why it is particularly important for the Debtors' cases and Ideal's case to be administered as separately and independently as possible.

## **Objection**

5. The Debtors have the burden to demonstrate by a preponderance of the evidence that transfer is in the interest of justice or for the convenience of the parties. *In re Commonwealth Oil Refining Co.*, 596 F.2d 1239, 1241 (5th Cir. 1979). The court has discretion and should make its decision based on "an individualized case-by-case analysis of convenience and fairness." *In re Positron Corp.*, 541 B.R. 816, 818 (Bankr. N.D. Tex. 2015).

**A.** **Interest of Justice**

6. When considering the interest of justice, the Court should consider: (a) efficiency and economics of estate administration; (b) presumption in favor of the "home court;" (c) judicial economy and efficiency; (d) fairness and the ability to receive a fair trial; (e) the state's interest in having local controversies decided within its borders; and (f) plaintiff's original choice of forum. *Id.* In general, First Fed agrees with the Debtors that factors (b) and (f) should not weigh heavily in the Court's analysis given that these cases were filed as involuntary cases. Additionally, the factor regarding a fair trial is inapplicable here. Accordingly, factors (b), (f), and (d) do not weigh

---

[4] First Fed recognizes that such creditors likely dispute that all of their claims are derivative of the Debtors' claims against Ideal. The Court need not make any determinations about the nature of these claims in connection with the Motion or this Objection.

in favor or against transfer of venue.  First Fed will address factors (a), (c), and (e) below.

   i.   Efficiency and Economics of Estate Administration

7. In the Motion, the Debtors' posit the below rhetorical questions to demonstrate why, in their view, it would be more efficient to have a single court preside over the Debtors' cases and the Ideal case. ECF No. 170 at 10.  First Fed responds to the Debtors' questions in turn.

> **Q** If a creditor enters into a settlement agreement with the Debtors and Ideal, would both courts need to approve such settlement?
>
> **A** Yes, of course.  Under Rule 9019 a compromise should be approved when it is both fair and equitable and in the best interests of the estate. *Matter of Foster Mortg. Corp.*, 68 F.3d 914, 917 (5th Cir. 1995).  But transferring venue does nothing to change this result.  Any bankruptcy court will be required to determine that the settlement is in the best interest of each affected bankruptcy estate.  A court's determination that a settlement is in the best interest of the Debtors' estates does not make it any more appropriate for Ideal.
>
> **Q** What happens if one court approves the settlement and the other does not?
>
> **A** As set forth above, this should be the result if the settlement is not in the best interest of each of the Debtors' estates and Ideal's estate.  A denial has whatever effect it has under the applicable settlement agreement, which customarily make bankruptcy court approval a condition precedent to effectiveness of the agreement.  In any event, Ideal's creditors should not be saddled with a settlement that is not in their best interest simply because it provides an efficient resolution in the Debtors' cases and vice versa.
>
> **Q** What if Ideal objects to a creditor's claim as derivative of Debtors?
>
> **A** Ideal should object to a claim if the claimant does not have standing to assert it. *See Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum),* 522 F.3d 575, 583 (5th Cir. 2008) ("If the claims belong to the estate, then it was not error for the bankruptcy court to deny remand (because it has jurisdiction over all property of the estate) and dismiss the claims (because the trustee has exclusive standing to assert claims belonging to the estate).");

> **Q** Would Ideal need to file a motion in Texas to enforce that argument?
>
> **A** No. The Washington Bankruptcy Court is perfectly competent to determine whether a creditor has standing to assert a claim against Ideal.
>
> **Q** Could the creditor race to get that issue determined in Texas as a motion is pending before the Washington Bankruptcy Court?
>
> **A** Potentially, but so what? The claim is either derivative, in which case the Debtors have exclusive standing to assert it, or it is not. Both bankruptcy courts will apply state law to determine whether the claim is derivative. *Ahcom, Ltd. v. Smeding*, 623 F.3d 1248, 1250 (9th Cir. 2010) ("Although federal bankruptcy law applies to this action, state law determines whether a claim belongs to the trustee or to the creditor.") (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979)). The Debtors have not submitted any evidence that this Court and the Washington Bankruptcy Court would arrive at different conclusions with respect to this issue. And as a practical matter, it will take longer for this Court to rule on a creditor's declaratory judgment action, which must be brought by adversary proceeding under Rule 7001, than it will for the Washington Bankruptcy Court to rule on a claim objection.

8. Given the mutual intercompany claims that exist, it is simply a reality that the Debtors will have to be involved in the Ideal case, and to a lesser extent, Ideal in the Debtors' cases. Debtors' counsel has already appeared in the Ideal case (Case No. 24-01421-FPC11, ECF No. 154), and Ideal's counsel has appeared in the Debtors' cases (ECF No. 47). The same is true of creditors like First Fed, who hold direct claims against both the Debtors and Ideal. But these obligations are not made substantially easier by transferring the Debtors' cases to the Washington Bankruptcy Court. Indeed, it may be more onerous for creditors to participate in the Debtors' cases in Washington given the local counsel requirements of the Washington Bankruptcy Court. E.D. Wash. Bankr. LR 9010-1(a)(3); E.D. Wash. L.Civ. 83.2(c).

   ii. <u>Judicial Efficiency</u>

9. In the Motion, the Debtors conflate the Ideal case with the Debtors' cases. The

Debtors argue that the Washington Bankruptcy Court is more "up to speed" than this Court on the Debtors' cases by virtue of it presiding over the Ideal case. It is precisely this conflation that First Fed is concerned will abound if the Debtors' cases are transferred to Washington. Ideal's case should proceed as a relatively straightforward liquidation of real property assets. The net proceeds of such liquidation, will be available to unsecured creditors of Ideal, including, Creative. While the Ideal case is superficially related to the Debtors' cases, familiarity with Ideal's case does not give the Washington Bankruptcy Court any advantage over this Court with respect to the Debtors' cases.

10. Ideal may assert whatever claims it has against the Debtors here, and the Debtors may assert whatever claims they have in Ideal's case. It is not novel for bankruptcy estates in one district to be creditors of other bankruptcy estates in other districts. Further, any creditors of the Debtors that believe they hold direct claims against Ideal may assert those claims against Ideal, and to the extent any Ideal creditors believe they have direct claims against any of the Debtors, they can assert those claims here. Such creditors would have to file, prosecute and defend their claims in multiple cases regardless of the district in which the cases are heard. The requirement to file, prosecute and defend claims in different bankruptcy courts is not so onerous as to justify transferring venue.

11. As noted above, Ideal's committee is composed entirely of creditors of the Debtors. First Fed does not believe these creditors are true creditors of Ideal, but are rather creditors of the Debtors who are inappropriately wielding derivative claims belonging to the Debtors' estates. Nevertheless, their appointment to the Ideal committee underscores why First Fed is concerned about conflation of creditors and claims that may result if the cases are heard before the same Court. From First Fed's perspective, there is a reasonable basis to jointly administer the Debtors'

cases given that they are all involved in the same water machine and vending machine businesses and there are Ponzi scheme allegations regarding how the Debtors conducted their businesses. On the other hand, Ideal is a real estate holding company that has a large payable owing to Creative. The amount of proceeds Ideal can generate from its equity after liquidating its real property assets will ultimately determine how much Creative recovers on account of its claim, but from First Fed's perspective, the relatedness of the cases ends there.

12. First Fed has confidence that this Court can capably preside over the Debtors' cases and that creditors of the Debtors can enjoy robust participation in these cases. To be clear, First Fed also has confidence that the Washington Bankruptcy Court can capably preside over the Ideal case, and First Fed would likely oppose a transfer of the Ideal case to Texas for the same reasons asserted herein. Nevertheless, there is merit to the Debtors' cases and Ideal's case being heard by different courts to avoid the potential that issues get conflated, like they appear to have been with respect to the composition of the Ideal committee.

    iii.    <u>State's Interest</u>

13. The Debtors' argue that Washington has a compelling state interest in deciding local controversies within its borders. ECF 170 at 13. First Fed does not dispute that to the extent state law issues are raised, Washington has an interest in such issues being determined by Washington courts. *See In re Centennial Coal, Inc.*, 282 B.R. 140, 148 (Bankr. D. Del. 2002).

14. For example, the creditors asserting derivative claims against Ideal will likely have to litigate whether their claims are direct or derivative in order to establish standing, and that determination may require a court to analyze Washington law. It makes most sense for that litigation to proceed in connection with Ideal's case in the Washington Bankruptcy Court, and to the extent the creditors seek to have that issue determined by this Court by adversary proceeding,

it may be appropriate to transfer such adversary proceeding to the Washington Bankruptcy Court in accordance with Fed. R. Bankr. P. 7087.  But Washington does not have any substantial interest in how substantive bankruptcy law is applied to the Debtors' cases.  *In re Borden Chemicals & Plastics Operating Ltd. P'ship*, 2003 WL 21698704, at *1 (Bankr. D. Del. July 21, 2003) (finding that there is no state interest in deciding core bankruptcy matters that do not implicate issues of state law).

**B.     Convenience of the Parties**

15.     In considering convenience of the parties, the Court should consider (a) location and proximity of the parties; (b) ease of access to necessary proof; (c) convenience of witnesses, including their location and proximity; (d) location of the assets, including books and records; (e) availability of subpoena power for the unwilling witness; and (f) expenses related to obtaining witnesses.  *In re Positron Corp.*, 541 B.R. 816, 818 (Bankr. N.D. Tex. 2015).  Factors (b), (e), and (f) are largely irrelevant in the context of the Motion.

16.     The Debtors propose transferring their cases to the Spokane Division of the Eastern District of Washington, hundreds of miles from the "hub" of the Debtors' operations in Everett, Washington, and even farther from the offices of many of the Debtors' professionals.  And as the Debtors' concede, their creditors and assets "are spread out such that their proximity does not, on its face, strongly weigh in favor of Texas or Washington." ECF No 170 at 15.  But the relevance of physical proximity of the Debtors, their professionals, creditors, and their professionals to this Court is dubious given the Court's proficiency with remote hearing technology and routine allowance of remote participation.  At best, convenience of the parties is neutral as between Texas and the Eastern District of Washington.

## Conclusion

17. For the reasons set forth above, the Court should deny the Motion and continue to administer the Debtors' cases in this District.

Dated: November 11, 2024

Respectfully submitted,

/s/ *Andrew J. Geppert*
**LANE POWELL PC**
Andrew J. Geppert (TX 24097733)
Gregory R. Fox (WSBA 30559) (*admitted pro hac vice*)
601 S.W. Second Avenue, Ste. 2100
Portland, Oregon 97204
Tel: (503) 778-2100
Fax: (503) 778-2200
gepperta@lanepowell.com

## CERTIFICATE OF SERVICE

      I certify that on November 11, 2024, I caused a copy of the foregoing Motion to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

                                                  /s/ Andrew J. Geppert
                                                  Andrew J. Geppert