Bryan T. Glover (WSBA No. 51045)
STOEL RIVES LLP
600 University Street, Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Facsimile: (206) 386-7500
Email: bryan.glover@stoel.com

Jamie P. Dreher
*Pro Hac Vice Application Pending*
Galen M. Gentry
*Pro Hac Vice Application Pending*
DOWNEY BRAND LLP
621 Capitol Mall, 18th Floor
Sacramento, CA 95814
Telephone: (916) 444-1000
Facsimile: (916) 444-2100
Email: jdreher@downeybrand.com
ggentry@downeybrand.com

*Attorneys for Creditor,
Raley's Arizona LLC d/b/a Bashas'*

The Honorable Frederick P. Corbit
Chapter 11

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| In re:<br><br>REFRESHING USA, LLC[1],<br><br>Debtor. | Lead Case No. 24-01863 (FPC)<br>Jointly Administered<br><br>DECLARATION OF GREG ASHLEY IN SUPPORT OF INITIAL OBJECTION TO POTENTIAL ASSUMPTION OF EXECUTORY CONTRACT |

---

[1] Debtors and debtors-in-possession in these Chapter 11 cases ("Bankruptcy Case(s)"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-01863-11; Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-01864-11; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station, "Debtors"), Case No. 24-01866-11. Debtors' mailing address is: 2732 Grand Ave., Ste. 122, Everett, WA 98201.

DECLARATION OF GREG ASHLEY IN SUPPORT OF INITIAL OBJECTION TO POTENTIAL ASSUMPTION OF EXECUTORY CONTRACT - 1

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
*Telephone 206.624.0900*

127695415.1 0099865-10002.021

24-01863-FPC11    Doc 510    Filed 01/24/25    Entered 01/24/25 15:32:49    Pg 1 of 16

I, Greg Ashley, declare as follows:

1. I am an employee of Creditor Raley's Arizona, LLC d/b/a Bashas' ("Bashas'") in the above-entitled action. Specifically, I am Sr. Manager Operations & Labor Optimization. I have personal knowledge of the facts stated in this declaration and, if sworn as a witness, could and would competently testify thereto.

2. I have access to all of Bashas' records, files, and communications that are related to its business relationship with Water Station Management, LLC (the "Debtor"), including, but not limited to the Water Station Location Agreement, dated February 12, 2024 (the "Agreement"), by and between the Debtor and Bashas'. Based on my review of such records and files, and my own personal knowledge, I make this declaration.

3. On or around February 8, 2024, Bashas' entered into the Agreement with the Debtor. The Agreement provides that the Debtor is the "owner of and has the obligation and authority" to install water dispensing machines (the "Water Machines") at approximately 90 grocery stores operated by Bashas' in the states of Arizona and New Mexico. A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

4. The Debtor has failed to abide by many of the material covenants in the Agreement. Specifically, the Debtor has failed to (a) send a single monthly statement to Bashas' that complies with the terms of the Agreement[2], (b) issue a single monthly payment to Bashas' and (c) provide Bashas' with certificates of insurance indicating that the Debtor has obtained the required insurance coverage and has named Bashas' as an additional insured. The Debtor has also failed to

---

[2] Rather, the Debtor has sent only an Excel spreadsheet that purports to serve as a "commission grid" and states the Debtor's grossly inaccurate calculations of the commissions due to Bashas'.

DECLARATION OF GREG ASHLEY IN SUPPORT OF INITIAL OBJECTION TO
POTENTIAL ASSUMPTION OF EXECUTORY CONTRACT - 2

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

127695415.1 0099865-10002.021

24-01863-FPC11    Doc 510    Filed 01/24/25    Entered 01/24/25 15:32:49    Pg 2 of 16

adequately maintain the Water Machines and failed to ensure that they are all properly licensed for operation at all times. Bashas' is aware of at least 10 instances where a Water Machine placed at a Bashas' location has been "blue-tagged" or "red-tagged" by the Arizona Department of Agriculture Weights and Measures Services Division for, among other things, having been operated by the Debtor without proper licensure, which means that such Water Machines are deemed inoperable until the issues are addressed.

5. Bashas' is also aware of another instance where a Water Machine that the Debtor had failed to maintain at a Bashas' location leaked substantial quantities of water onto the ground around it, creating a "black ice" condition when the water froze, which likely caused or contributed to an alleged "slip and fall" incident involving a Bashas' customer. Because the Debtor has failed to provide Bashas' any certificate of insurance, Bashas' is concerned that the Debtor may not have obtained the required insurance and may not have an insurance policy that would cover any losses that may arise from the incident.

6. Due to the Debtor's breaches of the Agreement, Bashas' delivered a Notice of Termination of the Agreement to the Debtor on October 24, 2024. A true and correct copy of such Notice of Termination is attached hereto as **Exhibit B**. Bashas' was unaware of the Debtor's bankruptcy proceeding at that time, since the Debtor did not provide notice of such bankruptcy proceeding to Bashas' until the Debtor's counsel served Bashas' with the Amended Notice of Chapter 11 Bankruptcy Cases on or around January 2, 2025, which was received by Bashas' on or around January 7, 2025.

7. Because many of Bashas' grocery store locations serve as the sole or limited source of groceries and clean water for tribal lands in Arizona and New Mexico, Bashas' had no choice but to remove and replace the Water Machines

DECLARATION OF GREG ASHLEY IN SUPPORT OF INITIAL OBJECTION TO POTENTIAL ASSUMPTION OF EXECUTORY CONTRACT - 3

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

127695415.1 0099865-10002.021

24-01863-FPC11    Doc 510    Filed 01/24/25    Entered 01/24/25 15:32:49    Pg 3 of 16

with water dispensing machines that were operated and maintained by a reliable vendor.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 24th day of January, 2025, in  CHANDLER  , Arizona.

_____
Greg Ashley

DECLARATION OF GREG ASHLEY IN SUPPORT OF INITIAL OBJECTION TO
POTENTIAL ASSUMPTION OF EXECUTORY CONTRACT - 4

STOEL RIVES LLP
ATTORNEYS
600 University Street, Suite 3600, Seattle, WA 98101
Telephone 206.624.0900

127695415.1 0099865-10002.021

24-01863-FPC11    Doc 510    Filed 01/24/25    Entered 01/24/25 15:32:49    Pg 4 of 16



# WATER STATION LOCATION AGREEMENT

This Water Station Location Agreement ("Agreement") dated effective as of February 12, 2024 ("Effective Date") is entered into by and between Raley's Arizona LLC, herein referred to as "ACCOUNT", and WATER STATION MANAGEMENT LLC, herein referred to as "WSM", relates to the placement and operation of WSM's water vending machines, herein referred to as "WATERSTATION(s)", as follows:

WSM is the owner of and desires to place its WATERSTATION(s) at the premises owned or leased by ACCOUNT to sell processed water to the public on a self-serve basis or for ACCOUNT for in-store use, and ACCOUNT agrees to permit WSM to place WATERSTATION(s) at such premises under the terms and conditions of this Agreement.

1. WSM represents that it is the legal owner of and has the obligation and authority to install WATERSTATION(s) at ACCOUNT's Locations (as defined below). WATERSTATION(s) shall remain the sole and exclusive property of WSM, its successors or assigns.

2. ACCOUNT represents that it is the legal owner or authorized tenant of the subject stores, excluding the parking lots, listed on the Location List, attached hereto as Exhibit A ("Locations"). The parties understand and agree that the terms of this Agreement are applicable to the subject stores only and are not applicable to the parking lots of the subject stores. ACCOUNT warrants to WSM that (i) it has full authority to allow placement of subject WATERSTATION(s) at the Locations, or (ii) it will make a good faith effort to obtain authority to allow placement of subject WATERSTATION(s) at the Locations that it does not already have full authority for. If ACCOUNT is requested by a third party with rights to the subject location (e.g., landlord, property owner, etc.) to remove or relocate a WATERSTATION(s), ACCOUNT will notify WSM and WSM agrees to promptly comply with ACCOUNT's request subject to the $100 fee set forth in Section 6.

3. Payment for Commissions shall be paid by WSM to ACCOUNT based on the information provided in the attached W-9 and remitted to the address located in the W-9. All Location agreements MUST complete a W-9 with Company information, otherwise payment cannot be made.

4. WSM agrees to incur the initial cost of permits, license, and water, electrical and drain connection and connection improvements necessary for the operation of the WATERSTATION(s) (collectively "Utilities"). For the avoidance of doubt, this includes, but is not limited to, providing, maintaining and repairing the WATERSTATION(s)'s electrical power cord and any and all tubing used to establish and maintain the water, electrical and drain connection between the WATERSTATION and the Location.

5. ACCOUNT shall provide continuous sources of water and electricity to the WATERSTATION(s) at ACCOUNT's expense to operate the WATERSTATION(s) during the term of this Agreement, unless ACCOUNT is temporarily unable to do so through no fault of its own.

6. ACCOUNT and WSM both acknowledge that their mutual success of water vending is dependent on a number of factors, not the least of which is the proper placement of the WATERSTATIONS at ACCOUNT's locations. ACCOUNT will determine the specific placement site of the WATERSTATIONS. If ACCOUNT requests that the WATERSTATION(s) be relocated to another site at ACCOUNT's location or removed, relocations costs will be deducted from subsequent Commissions earned by ACCOUNT. ACCOUNT shall be invoiced $100 for such relocation or removal costs. If ACCOUNT requests a WATERSTATION to be relocated through no fault of WSM, then WSM and ACCOUNT will share equally the costs for providing Utilities for the new location (if they are needed).

7. To the extent permitted by law or any agreements between ACCOUNT and any other third party with rights to the subject location (e.g., landlord, property owner, etc.), starting March 4, 2024 and for the remainder of the Term, ACCOUNT hereby grants to WSM: (a) the exclusive right to place WATERSTATION(s) and sell processed water at the Locations for the Term of this Agreement; and (b) access to the WATERSTATION(s) on a 24/7 basis for such WATERSTATION(s) that are located outside of a Location and during ACCOUNT's business hours for such WATERSTATION(s) that are located inside of a Location. ACCOUNT will take reasonable steps to attempt to cause the prompt removal of any water vending equipment that provides substantially the same function as WSM's WATERSTATION(s). Starting March 4, 2024 and for the remainder of the Term, ACCOUNT agrees not to authorize placement of other water vending devices, either inside or outside of subject Locations; except that, for the avoidance of doubt, this provision does not apply to any Location's parking lot.

8. WSM retains exclusive maintenance, control and supervision over the WATERSTATIONS's LCD display and the decals that are displayed on the WATERSTATIONS and shall have the right to use the LCD display and to select, replace, and remove the decals on the WATERSTATION(S) as WSM sees fit so long as any and all LCD displays and decals are appropriate for all audiences and non-competitive with or negatively impact

**Exhibit A - Page 1 of 8**

ACCOUNT or the goods ACCOUNT sells. Notwithstanding the foregoing, if ACCOUNT notifies WSM that

it has a concern(s) about an LCD display(s) and/or decal(s) displayed on a WATERSTATION(s) violating this provision, WSM shall promptly remove the LCD display(s) and/or decal(s) at issue until the parties are able to resolve the concern at issue.

9. This Agreement shall commence on the Effective Date and shall remain in effect for an initial period of twenty-four (24) months ("Initial Term"). This Agreement shall automatically renew for additional twelve (12) month periods at the conclusion of the initial term or renewal term (each "Renewal Term") (collectively "Term").

   (a) Nothing in this Agreement precludes or hinders ACCOUNT's right to cease operating a Location. If ACCOUNT elects to cease operating a Location, ACCOUNT will notify WSM of its request that WSM remove or relocate the WATERSTATION(s) at that Location, WSM will promptly comply with ACCOUNT's request subject to the $100 fee set forth in Section 6, and the Agreement will be terminated with respect to that Location only.
   (b) Nothing in this Agreement precludes or hinders ACCOUNT's right to enter into new lease(s) or lease amendment(s) with any other third party with rights to the subject location (e.g., landlord, property owner, etc.). If future lease(s) or lease amendment(s) change or impact ACCOUNT's ability to have a WATERSTATION(s) at a Location, ACCOUNT will notify WSM of its request that WSM remove or relocate the WATERSTATION(s) at that Location, WSM will promptly comply with ACCOUNT's request subject to the $100 fee set forth in Section 6, and the Agreement will be terminated with respect to that Location only.
   (c) If ACCOUNT reports multiple issues with a WATERSTATION within a twelve (12) month period, ACCOUNT may elect to notify WSM of its request that WSM remove the applicable WATERSTATION from the applicable Location, in which case WSM will promptly comply with ACCOUNT's request at no expense to ACCOUNT, WSM will ensure that the WATERSTATION is not used at any other ACCOUNT Location, and, if ACCOUNT elects, the Agreement will be terminated only with respect to the Location at which the WATERSTATION was located ("Location Termination").
   (d) This Agreement may be terminated in its entirety by ACCOUNT if ACCOUNT has elected the Location Termination option four (4) or more times within a twelve (12) month period.
   (e) During a Renewal Term, this Agreement may be terminated by ACCOUNT for any or no reason upon sixty (60) days written notice.

10. Revenue will be collected by WSM for the inside and outside WATERSTATIONS and shared with ACCOUNT in the form of a commission. The Commission shall be calculated in accordance with the commission schedule identified below. Commission shall also be net of any sales/use tax imposed by regulatory agencies.

57.5% revenue to the Company

11. WSM agrees to issue a monthly statement to ACCOUNT for Commission from the previous month no later than five (5) calendar days after the end of such previous month, setting forth in reasonable detail how it calculated the Commission; and issue payment to ACCOUNT for such Commission no later than ten (10) calendar days after the end of such previous month.

12. After receipt of a request from ACCOUNT, WSM shall timely produce documents requested by ACCOUNT relating to gross sales of the products sold from the WATERSTATIONS.

13. WSM will provide evidence to ACCOUNT of Commercial General Liability Insurance, when combined with umbrella coverage, of not less than $2,000,000 Combined Single Limit and $4,000,000 aggregate for Bodily Injury, Death, and/or Property Damage; this insurance shall name "Raley's Arizona LLC, and its affiliates and trade names as now exist or may be constituted hereafter and their directors, officers, employees, agents and representatives" as additional insureds. WSM will also provide evidence to ACCOUNT of Workers' Compensation Insurance in statutory minimum amounts with Employer's Liability limits of $1,000,000; as well as Automobile Liability Insurance for bodily injury and property damage in an amount not less than $1,000,000 for each accident (including owned, non-owned and hired vehicles).

14. WSM shall, at its own cost and expense, indemnify, defend and hold harmless ACCOUNT, its affiliates, and their respective directors, officers, employees, and agents, from and against any and all losses, damages, liabilities, penalties, claims, demands, suits or actions, and related costs and expenses of any kind, including, without limitation, expenses of investigation, attorney's fees, judgments and settlements, for injury to or death of any person, property damage or any other loss suffered or allegedly suffered by any person or entity and arising out of or otherwise in connection with the activities or business of WSM, any WSM employee or contractor, or the WATERSTATION(s), unless due to ACCOUNT's gross negligence or willful misconduct. ACCOUNT shall give WSM prompt notice, in writing, of all such claims or actions instituted against it. ACCOUNT will provide reasonable cooperation as requested by WSM and WSM shall not consent to the entry of any judgment imposing any judgment against ACCOUNT nor enter into any settlement with respect to any claim without ACCOUNT's written consent (not to be unreasonably

withheld) unless the judgment or proposed settlement involves only the payment of money damages to be paid solely by WSM or its insurance carrier and does not impose any liability, penalty or equitable remedy

upon ACCOUNT, its affiliates, and/or their respective directors, officers, employees, and/or agents.

15. At no cost to ACCOUNT, WSM agrees to service, operate, and maintain the WATERSTATIONS in first-class manner and in full compliance with all health and safety regulations of governmental authorities pertaining to water quality and in full compliance with the Americans with Disabilities Act. WSM agrees to maintain in full force and effect any permits or licenses required by governmental authorities to sell vended water.

    (a) WSM agrees that upon a report from ACCOUNT that there is an issue with a WATERSTATION(s), as determined by ACCOUNT in its sole discretion, WSM will, at no cost to ACCOUNT, either make any repairs and adjustments necessary or replace the WATERSTATION(S) with a new one no later than either: (i) twelve (12) calendar days from when ACCOUNT sent the report to WSM if the issue ACCOUNT reported was only cosmetic; or (ii) no later than forty-eight (48) hours from when ACCOUNT sent the report to WSM if the issue ACCOUNT reported was non-cosmetic or both cosmetic and non-cosmetic.

16. WSM and ACCOUNT will mutually determine the retail sales price for vended water at the subject locations based on the competitive market surrounding each location; provided that, if the parties cannot agree, ACCOUNT will determine the retail sales price. WSM and ACCOUNT will mutually agree whether a WATERSTATION, once placed at a location, is sufficiently profitable to merit continued operation at the applicable Location. If WSM and ACCOUNT determine that a WATERSTATION is not sufficiently profitable, the WATERSTATION shall be removed from the location by WSM at no cost to ACCOUNT and this Agreement will be terminated with respect to that Location only.

17. This Agreement is the entire agreement between the ACCOUNT and WSM. It replaces and supersedes any and all prior oral or written agreements between ACCOUNT and WSM. This Agreement, including any modifications and amendments, may only be amended by a written instrument executed by all parties hereto.

18. This Agreement will be governed under the internal laws of the State of Arizona without reference to the conflicts of law provisions thereof. Any action to enforce the terms of this Agreement shall be brought in the federal or state courts located in Maricopa County, Arizona.

19. Confidentiality: Neither party may disclose, reveal, use or by whatever means make available, except as required to perform its obligations pursuant to the Agreement, information of the other party or terms of this Agreement.

20. The parties may assign this Agreement without prior notice to the other party. This Agreement shall be binding on and inure to the benefit of the parties' and their respective successors and assigns.

21. All notices, requests, claims, demands and other communications between the parties shall be in writing. All notices shall be given (i) by delivery in person (ii) by a nationally recognized next day courier service, or (iii) by first class, registered or certified mail, postage prepaid to the address of the party specified in this Agreement or such other address as either party may specify in writing. All notices shall be effective upon (i) receipt by the party to which notice is given, or (ii) on the fifth (5th) day following mailing, whichever occurs first:

| OWNER NAME | Raley's Arizona LLC<br>Attn: General Counsel |
|---|---|
| OWNER EMAIL | bashaslegal@bashas.com |
| OWNER ADDRESS # | 2650 West Geronimo Place<br>Chandler, AZ 85224 |

WaterStation Management, LLC
2732 Grand Avenue, Suite 122
Everett, WA 98201

22. Name of Locator(s) assigned to this contract by WSM.

_____

**Exhibit A - Page 3 of 8**

Executed copies of this Agreement may be delivered by electronic mail, courier, facsimile, or hand delivery, and be deemed an original.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their respective duly authorized representative as of the Effective Date.

Raley's Arizona LLC
By: _____
Its: _President Bashas_
Dated: _2/8/2024_

Water Station Management LLC
By: _____
Its: _MANAGING MEMBER_
Dated: _2/8/2024_

## Exhibit A
### Location List

*If the parties want to add or remove stores from this Location List after the Effective Date of the Agreement, the parties agree to enter into an amendment to update this Exhibit A.*

| Store No. | Store Format | Phone # | Address | City |
|---|---|---|---|---|
| 2 | Bashas' | 480-898-3352 | 339 E. Brown | Mesa |
| 10 | Bashas' | 480-969-1368 | 1342 E. Main St. | Mesa |
| 11 | Bashas' | 480-496-8191 | 4855 E. Warner Rd. | Phoenix |
| 12 | Food City | 602-267-7201 | 2124 E. McDowell Rd. | Phoenix |
| 15 | Bashas' | 602-996-1040 | 10631 N. 32nd Street | Phoenix |
| 16 | Bashas' | 480-948-8110 | 8423 E. McDonald Dr. | Scottsdale |
| 17 | Bashas' | 520-725-3476 | P.O. Box 840, BIA Rte. 4& Rte. 41 | Pinon |
| 18 | Bashas' | 520-774-3882 | 2700 S. Woodlands Village Blvd. | Flagstaff |
| 21 | Bashas' | 520-836-8841 | 1162 E. Florence Blvd. | Casa Grande |
| 25 | Food City | 480-834-3594 | 450 E. Southern Ave. | Mesa |
| 26 | Food City | 480-857-2198 | 1005 N. Arizona Ave. | Chandler |
| 27 | Bashas' | 602-257-0035 | P.O. Box 3065, Topawa Rd. | Sells |
| 28 | Bashas' | 925-282-5351 | 160 Coffee Pot Dr. | Sedona |
| 30 | Bashas' | 928-757-7162 | 3360 Andy Devine Dr. | Kingman |
| 32 | Bashas' | 505-368-4248 | US-64 and US 491 | Shiprock NM |
| 33 | Bashas' | 928-674-3465 | P.O. Box 1060, Hwy 191 | Chinle |
| 34 | Bashas' | 928-688-4000 | 1022 US-191 | Sanders |
| 35 | Bashas' | 928-871-3322 | P.O. Box Hwy 3120, Hwy 264 & NR 12 | Window Rock |
| 36 | Bashas' | 928-283-5250 | P.O. Box 65, Hwy 160 & 264 | Tuba City |
| 37 | Bashas' | 928-634-4281 | P.O. Box 427, 1502 E. Hwy 89A | Cottonwood |
| 40 | Bashas' | 520-428-6238 | 2323 W. Hwy 70 | Thatcher |
| 41 | Food City | 480-425-5580 | 1845 N. Scottsdale | Tempe |

| | | | | |
|---|---|---|---|---|
| 42 | Bashas' | 928-697-8176 | P.O. Box 1810, Hwy 160 & 163 | Kayenta |
| 43 | Bashas' | 480-802-7180 | 10325 E. Riggs Rd. | Sun Lakes |
| 46 | Bashas' | 480-279-5700 | 23760 S. Power Rd. | Queen Creek |
| 47 | Bashas' | 480-837-1750 | 16605 E. Palisades | Fountain Hills |
| 48 | Bashas' | 480-839-9778 | 1761 E. Warner Rd. | Tempe |
| 49 | Bashas' | 928-567-4585 | P.O. Box 3958, 565 1st. Finnie Flat Rd. | Camp Verde |
| 51 | Bashas' | 480-396-8098 | 1122 N. Higley | Mesa |
| 52 | Bashas' | 520-575-7300 | 15310 N. Oracle | Tucson |
| 53 | Bashas' | 928-536-2050 | P.O. Box 749, 650 N. Main | Taylor |
| 54 | Bashas' | 928-474-4495 | 142 E. Highway 260 | Payson |
| 55 | Bashas' | 928-684-2831 | 275 N. Tegner #17 | Wichenburg |
| 60 | Food City | 520-287-4675 | 450 N. Grand Court Plaza | Nogales |
| 65 | Bashas' | 928-669-2300 | 1020 Arizona Ave. | Parker |
| 66 | Bashas' | 480-488-1797 | 36889 Tom Darlington | Carefree |
| 67 | Bashas' | 928-774-2101 | 1000 N. Humphreys #112 | Flagstaff |
| 69 | Bashas' | 520-887-1343 | 3923 N. Flowing Wells | Tucson |
| 71 | Bashas' | 520-299-0633 | 6900 E. Sunrise | Tucson |
| 73 | Bashas' | 480-830-7900 | 2864 N. Power Rd. | Mesa |
| 77 | Food City | 520-879-7760 | 2950 S. 6th Ave. | Tucson |
| 79 | Bashas' | 520-744-4488 | 8360 N. Thornydale Rd. | Tucson |
| 82 | Bashas' | 480-474-9401 | 5310 E. Superstition Mtn. Blvd. | Gold Canyon |
| 83 | Food City | 623-925-1725 | 323 E. Main Street | Avondale |
| 88 | Bashas' | 928-367-2004 | P.O. Box 16991753 E. White Mtn. Blvd. | Pinetop |
| 92 | Bashas' | 928-865-1820 | 172 Plaza | Morenci |
| 93 | Food City | 623-925-1515 | 1450 N. Dysart Rd. | Avondale |
| 95 | Food City | 602-222-2500 | 1940 W. Indian School Rd. | Phoenix |
| 98 | Bashas' | 928-657-3668 | NE Corner Navajo Rt. 15 & | Dilkon |

**Exhibit A - Page 6 of 8**

|     |           |              |                          |                 |
| --- | --------- | ------------ | ------------------------ | --------------- |
|     |           |              | Rt. 60                   |                 |
| 99  | Bashas'   | 480-513-7560 | 10111 E. Bell Rd.        | Scottsdale      |
| 102 | Bashas'   | 623-537-2321 | 20351 N. Lake Pleasant Rd. | Peoria        |
| 103 | Food City | 602-278-2402 | 4239 W. McDowell Rd.     | Phoenix         |
| 104 | Food City | 602-253-0087 | 3202 E. Greenway         | Phoenix         |
| 105 | Food City | 602-420-9925 | 3514 W. Glendale Ave.    | Phoenix         |
| 107 | Food City | 602-243-6770 | 7227 S. Central Ave.     | Phoenix         |
| 108 | Food City | 928-855-3800 | 1799 Kiowa Ave.          | Lake Havasu     |
| 109 | Bashas'   | 520-836-4400 | 21044 N. John Wayne Parkway | Maricopa     |
| 110 | Bashas'   | 480-357-3300 | 1133 N. Ellsworth Rd.    | Mesa            |
| 111 | Food City | 520-459-5005 | 800 E. Fry Blvd.         | Sierra Vista    |
| 113 | Bashas'   | 602-652-9520 | 731 E. Union Hills Rd.   | Phoenix         |
| 114 | Food City | 928-782-3821 | 1240 W. 8th Street       | Yuma            |
| 116 | Bashas'   | 928-854-9550 | 3269 Maricopa Ave.       | Lake Havasu     |
| 121 | Bashas'   | 928-333-0177 | 150 N. Main              | Eager           |
| 123 | Food City | 480-827-7600 | 822 S. Alma School Rd.   | Mesa            |
| 124 | Food City | 928-343-0840 | 2600 W. 16th St.         | Yuma            |
| 128 | Bashas'   | 623-975-6220 | 13940 W. Meeker Blvd.    | Sun City        |
| 130 | Bashas'   | 623-547-2320 | 5115 N. Dysart Rd.       | Litchfield Park |
| 132 | Food City | 602-272-0652 | 2709 W. Van Buren        | Phoenix         |
| 133 | Food City | 520-323-2591 | 3030 E. 22nd St.         | Tucson          |
| 135 | Food City | 602-278-2005 | 5114 W. McDowell         | Phoenix         |
| 136 | Food City | 520-792-3494 | 1225 W. St. Mary's       | Tucson          |
| 137 | Bashas'   | 480-507-7280 | 15367 W. Waddell         | Surprise        |
| 139 | Food City | 520-573-7060 | 1740 W. Ajo Way          | Tucson          |
| 140 | Food City | 623-849-5580 | 6544 W. Thomas           | Phoenix         |
| 142 | Food City | 623-939-2024 | 6020 N. 59th Ave.        | Glendale        |
| 143 | Food City | 602-275-2141 | 4430 E. McDowell Rd.     | Phoenix         |

**Exhibit A - Page 7 of 8**

| 149 | Food City | 602-249-4184 | 6025 N. 27th Ave. | Phoenix |
| --- | --- | --- | --- | --- |
| 152 | Food City | 602-438-4647 | 4727 E. Southern Ave. | Phoenix |
| 154 | Food City | 623-872-6200 | 9020 W. Thomas Rd. | Phoenix |
| 155 | Bashas' | 480-354-2798 | 9925 E. Baseline Rd. | Mesa |
| 156 | Food City | 520-434-6920 | 1221 W. Irvington Rd. | Tucson |
| 157 | Food City | 480-456-3201 | 725 W. Baseline Rd. | Tempe |
| 158 | Bashas' | 602-222-1820 | 5521 N. 7th St. | Phoenix |
| 160 | Bashas' | 520-690-3680 | 2000 W. River Rd. | Tucson |
| 161 | Bashas' | 480-883-2240 | 4940 S. Gilbert Rd. | Chandler |
| 162 | Food City | 602-305-3360 | 845 W. Southern Ave. | Phoenix |
| 165 | Food City | 520-807-0413 | 428 W. Valencia | Tucson |
| 171 | Food City | 520-434-2455 | 200 E. Irvington | Tucson |
| 172 | Bashas' | 480-926-5222 | 99 S. Higley | Gilbert |



October 24, 2024

**VIA FEDEX AND EMAIL**

WaterStation Management, LLC
Attn: Ryan Wear
2732 Grand Avenue, Suite 122
Everett, WA 98201
Ryan.Wear@waterstationtechnology.com

Re: Notice of Termination of Water Station Location Agreement

Dear Mr. Wear:

As previously stated, I am counsel for Raley's Arizona LLC d/b/a Bashas' ("**Bashas'**"). If WaterStation Management, LLC ("**WSM**") is represented by counsel, please forward this correspondence to WSM's legal representative.

Bashas' hereby notifies WSM that it is in material breach of, and has failed to perform its obligations under, Sections 10 and 11 of the Water Station Location Agreement ("**Agreement**").
For the reasons summarized below, Bashas' hereby provides WSM with notice that it is terminating the Agreement due to WSM's breach of the Agreement. **The effective termination date shall be December 1, 2024.**

### A. WSM Has Yet to Send Bashas' A Single Monthly Statement.

Per Section 11 of the Agreement, WSM agreed "to issue a monthly statement to [Bashas'] for Commission from the previous month no later than five (5) calendar days after the end of such previous month." WSM agreed that the monthly statements must set "forth in reasonable detail how it calculated the Commission." Even though the Agreement has been effective for more than eight months, Bashas' has yet to receive any monthly statement.

WSM tried to partially satisfy these requirements by providing Bashas' with a commission grid, but such an attempt does not satisfy the monthly statement requirement, is untimely, and *still* does not address, or even attempt to address, the outstanding September monthly statement. After Bashas' sent WSM a correspondence on October 15, 2024 demanding such commission statements ("**Demand Letter**"), Catherine Rhodes, on behalf of WSM, sent Bashas' an Excel spreadsheet with a tab for each month from March 2024 through August 2024, which WSM claims details commissions WSM owes Bashas' during that period. In her October 21, 2024 and October 22, 2024 emails, Ms. Rhodes refers to this Excel spreadsheet as a "commission grid." The commission grid, however, is not a monthly statement. It is, at best, a summary of commissions WSM claims it owes Bashas'. Even if WSM was attempting to satisfy the commission statement requirement by providing the commission grid, the commission grid falls short. The Agreement requires that a monthly statement set in reasonable detail how WSM calculated the commission, which the commission grid does not do. At a minimum, the commission grid does not detail: (1) how WSM obtained the total amounts listed in the "Cash" and "Credit" columns; and (2) why WSM applied a 97%

2650 W GERONIMO PLACE, CHANDLER, ARIZONA 85224 • 480-895-9350



deduction to the amounts in the "Total" column, which is the column noting the revenue that WSM allegedly collected. Additionally, even if the commission grid satisfied the monthly statement requirement, which it does not, the commission grid *still* has not been submitted within the timeframe required by the Agreement and *still* does not address, or even attempt to address, the outstanding monthly statement for September.

### B. WSM Has Not Submitted a Single Monthly Payment to Bashas'.

In the Agreement, WSM agreed to "issue payment to [Bashas'] for such Commission no later than ten (10) calendar days after the end of such previous month." *See* Section 11 of the Agreement. Nonetheless, Bashas' has yet to receive *any* monthly commission payment. This is the case even though the Agreement has been effective for more than eight months, Bashas' has made informal attempts to resolve its concerns, and Bashas' sent WSM the Demand Letter providing WSM with a final opportunity to comply with the Agreement by October 22, 2024 ("**Demand Letter**").

Notably, WSM half-hearted attempts to promise to pay are not the equivalent of remitting payment to Bashas'. After Bashas' sent WSM the Demand Letter, Ms. Rhodes sent an email on October 21, 2024, asserting that "We currently have a new CRO in place and structure within our company. The next two weeks we will be meeting to discuss outstanding amounts owed and will have a plan in place here shortly." Interestingly, the very next day at 7:35 p.m. (i.e. *the evening of the deadline in the Demand Letter*), Ms. Rhodes then sent an email stating, "I have confirmed we would like to send payment ASAP, do you have wiring instructions?". WSM, however, still did not send the outstanding payments to Bashas' and the offer to wire such payments is inconsistent with the Agreement, which requires that WSM remit payment to Bashas' location. *See* Section 3 of the Agreement. Also, the amounts Ms. Rhodes allegedly intended to pay Bashas' for March through August 2024 were only $5,533.73, which is a gross underestimate (as explained in more detail in Section C below). Furthermore, Ms. Rhodes' promise of future pay still excluded the outstanding amounts WSM owed from September. Ms. Rhodes admitted that she had not yet received the amounts allegedly owed to Bashas' from September and promised to pay those amounts at some future unspecified date.

### C. The Amounts WSM Claims It Owes Bashas' Are Shockingly Underestimated and Calculated in Contravention of the Agreement.

WSM agreed to collect all revenue from WSM's water vending machines in the amount of "57.5% revenue to [Bashas']" and "net of any sales/use tax imposed by regulatory agencies." *See* Section 10 of the Agreement. Nonetheless, as summarized in the commission grid, WSM claims that it only owes Bashas' the following amounts, which are approximately 1.73% the revenue WSM allegedly collected:

1. March 2024 – $344.18 out of the $19,952.35 WSM allegedly collected;
2. April 2024 – $869.26, even though WSM allegedly collected $50,392.04;
3. May 2024 – $1,076.00 out of the $62,376.87 WSM supposedly collected;
4. June 2024 – $1,001.32, even though WSM allegedly collected $58,047.37;
5. July 2024 – $1,103.78 out of the $63,987.16 WSM allegedly collected; and
6. August 2024 – $1,139.19, even though WSM claims it collected $66,040.13.



2650 W GERONIMO PLACE, CHANDLER, ARIZONA 85224 • 480-895-9350



It appears that these numbers are grossly underestimated because WSM applied a 97% deduction to the revenue it claims it collected and from that remaining amount applied the 57.5% commission fee that Bashas' is owed. Specifically, the commission grid includes a "Total" column for the revenue WSM allegedly collected from each of Bashas' stores each month. The grid also includes a "Total Payable" column, which lists the amounts in the "Total" column after a 97% deduction is made. It is not clear why WSM applied such a drastic deduction. The only deduction the Agreement authorized WSM to make from the revenue it collected was for "sales/use tax imposed by regulatory agencies," which is most certainly not 97%. This drastic deduction resulted in very low amounts in the "Total Payable" column. WSM added a "Total Payable 57.5%" column, which is 57.5% of the amounts in the "Total Payable" column. WSM contends that the amounts in this "Total Payable 57:5%" column are the amounts owed to Bashas'. As just one example, for Store Number 102 in August 2024, WSM claims it collected $483.80 in revenue (Total), that $14.51 is the portion left after deducting 97%, which is the amount the parties are to share (Total Payable), and that Bashas' is therefore owed $8.35 (Total Payable 57.5%). This is nonsensical and not supported by the Agreement the parties negotiatied.

This notice is without prejudice to any of Bashas' rights, powers, privileges, remedies, and defenses, now existing or hereafter arising, all of which are hereby expressly reserved. Should you have any questions, please contact me at rbujanda@bashas.com or (480) 496-1737.

Sincerely,

Rubi Bujanda
Associate Corporate Counsel

CC: Catherine Rhodes via email only (catherine.rhodes@waterstationtechnology.com)



2650 W GERONIMO PLACE, CHANDLER, ARIZONA 85224 • 480-895-9350

**Exhibit B - Page 3 of 3**

24-01863-FPC11    Doc 510    Filed 01/24/25    Entered 01/24/25 15:32:49    Pg 15 of 16

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the date listed below, I caused to be electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will in turn automatically generate a Notice of Electronic Filing to all parties in the case who are registered users of the CM/ECF system. The Notice of Electronic Filing specifically identifies the recipients of electronic notice.

DATED: January 24, 2025.

STOEL RIVES LLP

*/s/ Bryan T. Glover*
Bryan T. Glover, WSBA No. 51045
600 University Street, Suite 3600
Seattle, WA 98101
T. (206) 624-0900
Email: bryan.glover@stoel.com

*Attorneys for Creditor,
Raley's Arizona LLC d/b/a Bashas'*

CERTIFICATE OF SERVICE - 1