## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF WASHINGTON

In re:

REFRESHING USA, LLC,

　　　　　　　　　　Debtors.[1]

Bankr. Case No. 24-01863-11

**DECLARATION OF BRIAN WEISS IN SUPPORT OF MEMORANDUM IN SUPPORT OF PONZI SCHEME FINDINGS UNDER CHAPTER 11 PLANS OF LIQUIDATION**

I, Brian Weiss, declare under penalty of perjury that the following is true and correct to the best of my knowledge, information, and belief:

1.　　I am the Chief Restructuring Officer ("CRO") and/or Manager of the above-captioned debtors and debtors in possession (together, the "Debtors" or the "WST Enterprise"). I am generally familiar with the Debtors' business and financial affairs, and books and records. I am above 18 years of age and competent to testify to the matters stated herein.

---

[1] Debtors in these Chapter 11 cases: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-01863-11; Water Station Management LLC (81012-2716) ("WSM"), Case No. 24-01864-11; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station Management, "Opco Debtors"), Case No. 24-01866-11. Ideal Property Investments, LLC ("Ideal") is a related Debtor ("Ideal," together with Opco Debtors and Debtors' related affiliates defined in the Becky Yang O'Malley Report, ¶ 2, Appendix C, are referred to herein as "Debtors" or "WST Enterprise").

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 1

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

2.     I am a Partner at Force Ten Partners, LLC ("Force 10"), a corporate restructuring and financial advisory firm located at 5271 California Ave., Suite 270, Irvine, CA 92617. I have approximately 25 years of experience providing financial advisory, corporate restructuring, turnaround management, and fiduciary services, and have advised companies across a diverse range of industries. I and Force 10 assist clients both inside and outside of chapter 11 proceedings in addressing a variety of financial, operational, liquidity, and leverage issues. I served as the CRO in Carbonlite Industries, The Original Mowbray's Tree Service, Breckenridge Food Systems, Star Ribs, LLC, CIR Restaurant Holdings Group, Inc., Desert Restaurant Ventures, Mancha Development Corp., and Thomas Management, Inc. I have also served as financial advisor in numerous other cases, including Rubio's Restaurants, Alpha Guardian, and Sugarfina, Inc. I have also served as the CRO and financial advisor in a variety of out-of-court restructurings. In 2022, I received an award and was named a "Top 25" restructuring consultant with a distinction in dealmaking by Global M&A Network.

3.     I and Force 10 have extensive experience in providing CRO services and serving as a financial advisor to debtors, creditors, trustees, official creditors' committees, and others in a wide variety of bankruptcy matters, including acting as: (a) CRO, independent director, or financial advisor to the debtors in the bankruptcy proceedings of Carbonlite Industries, Inc., Rubio's Restaurants, Alpha Guardian, Corner Bakery, Tuesday Morning Corporation, Thomas Health System, Inc., Watsonville Hospital Corporation, Trade Global/Jagged Peak, Sugarfina, Inc., Breckenridge Food Systems, Star Ribs, LLC, CIR Restaurant Holdings Group, Inc., Desert Restaurant Ventures, Mancha Development Corp., and Thomas Management, Inc.; and (b) financial advisor to the official committees of unsecured creditors in

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 2

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

bankruptcy proceedings of The Dolphin Company, Irwin Naturals, The Litigation Practice Group, Ruby's Diner, Inc., and East Coast Foods, Inc.

4.     I am authorized to submit this declaration on behalf of the Debtors. I and Force 10 team members have possession, custody, and control of the Debtors' records to the extent they existed/were discoverable upon my appointment as CRO. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge of the Debtors' operations, finances, records, and information learned from my review of relevant documents, and information I have received from the Company's advisors. If I were called upon to testify, I could and would testify competently to the facts set forth herein on that basis.

<u>**BACKGROUND**</u>

5.     On August 27, 2024, Chapter 11 Involuntary Petitions were filed against Refreshing (Dkt. 1, 2:24bk01863), Creative (Dkt. 1, 2:24bk01866), and WSM (Dkt. 1, 2:24bk01864) in U.S. Bankruptcy Court in Texas.

6.     On September 5, 2024, Ideal filed for Chapter 11 bankruptcy protection in the Eastern District of Washington (Dkt. 1, 2:24bk01421).

7.     Debtors' respective bankruptcy cases were consolidated on October 27, 2024, and transferred to this Court on November 14, 2024.

8.     A general background of Debtors' assets and liabilities were provided in (1) Turning Point Strategic Advisors' Motion to Confirm Eric Camm's Status as Manager of Refreshing USA or, Alternatively, To Excuse Turnover Pending Dismissal or Other Relief, including supporting declarations and exhibits (Refreshing, Dkt. 13; Creative, Dkt. 13; WSM, Dkt. 22); and (2) the Declaration of Eric Camm In Support of First Day Motions (Ideal, 24-01421-FPC11, Dkt. 13) ("First Day Declaration"), the contents of which are incorporated herein by reference.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 3

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

24-01863-FPC11     Doc 1161     Filed 08/01/25     Entered 08/01/25 21:58:04     Pg 3 of 18

9.    On or about October 10, 2024, I was appointed as the Chief Restructuring Officer of the OpCo Debtors.[2]

10.    On or about October 14, 2024, Force 10 was officially engaged to provide various advisory services in connection with Debtors' ongoing investigation, evaluation, development, and implementation of strategic alternatives to address their assets, financial performance, and to analyze prospective reorganization. Upon Force 10's appointment, Creative, Refreshing, and WSM had less than $100,000 of cash in its bank accounts and was two months behind on paying the then currently employed employees and was at least three months behind on paying employees that were previously terminated prior to my appointment.[3]

11.    On November 21, 2024, the Court entered an order for the Debtors to retain Force Ten Partners, LLC, and Designate Brian Weiss as Chief Restructuring Officer [Docket No. 235].

12.    The Debtors' bankruptcy cases were commenced amidst serious allegations of fraud, comingling, fraudulent transfers, violations of state securities and consumer protection laws, and breach of contract. Debtors were parties to litigation in half a dozen states, which collectively posed hundreds of millions of dollars in possible exposure. As of the petition date, there were 15, 17, and 19 pending litigation cases against Creative, Refreshing, and Water Station Management, respectively. Since our appointment, Force 10 and I have undertaken a comprehensive investigation and analysis of Debtors' records and operations prior to the petition dates. Among other things, this investigation has consisted of the following:

        a.    Requests for production and examination of business records to numerous

---

[2] "OpCo" shall refer to Debtors Refreshing, Creative, and Water Station Management. OpCo does not include the "HoldCo" Ideal.

[3] Debtors' lack of funds were evident as Debtors struggled to pay employees, vendors, and investors leading up to the bankruptcy. Attached as Exhibits 1–12 are examples of these complaints.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 4

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

third parties and financial institutions;

    b. Identification and preservation of Debtors' available books and records, including data from their accounting systems, email systems, asset management software programs, machine owners' contracts, loan documents, reports from their credit card transaction processor, and other existing retained files;

    c. Analysis of the Debtors' financial statements;

    d. Review and analysis of Debtors' available books and records;

    e. Investigation of Debtors' relationships with numerous individuals, including insiders, former employees, creditors, and professionals; and

    f. Extensive communication with professionals and advisors regarding these cases and the administration of the estates.

13.    While our investigation continues, based on the work by Force10 and the Committee, we can draw several conclusive determinations about Debtors' operations based on the substantial work we have completed to date. Among other things:

    a. Debtors' business strategy of selling and operating water and traditional vending machines lacked, by a large margin, sufficient operating cash flow to pay their obligations as they became due resulting in mounting unpaid payment obligations.

    b. Over time, Debtors relied on different fundraising methods, in addition to generating revenues from legitimate vending operations, to meet payment obligations to creditors. In this case, money was raised to cover operating losses, fund debt service requirements, real estate purchases, water station repurchases, and guaranteed returns to machine owners (when the underlying operations were not profitable, which would

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 5

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1    normally result in no payments).

2    c. According to marketing materials, the Debtors represented to customers

3    and other creditors that it profitably operated a nationwide network of

4    vending machines (water stations and then traditional snack-based). In

5    reality, only a fraction of the water station machines the Debtors

6    represented to machine owners have been placed in service and operating

7    actually existed, and the numerous ones that did exist were either sold to

8    one and in several instances to more than one purchaser, and also used to

9    collateralize more a separate obligation in addition to being sold. For

10    example, certain water stations were sold to Machine Owners

11    (transferring title), and 352 Capital was granted a lien on them, in

12    violation of the bond requirements.

13    d. Force 10 undertook a comprehensive review of the water station machine

14    serial numbers,[4] which we obtained through Debtors' available books and

15    records, and the records submitted by Debtors' creditors in these

16    proceedings with their Proofs of Claims and subsequent Election Forms

17    as applicable.

18    e. We compared these data to determine whether or not the serial numbers

19    issued by former management were duplicative of serial numbers

20    submitted by creditors.[5] We reviewed almost 22,000 serial numbers

21    submitted with proofs of claims in this bankruptcy case. Our

22    methodology included four steps: (i) determining duplicative serial

23    numbers, (ii) determining multiple ownership of serial numbers, (iii)

24

---

[4] I incorporate by reference *In re Refreshing USA, LLC*, Case No. 2:24bk01863, Dkt. 235, which provides further details regarding this process.

[5] Claimants filed POCs with 21,866 serial numbers. Of these, 10,125 serial numbers were issued to multiple claimants (sold more than once).

25

26

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 6

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

identifying serial numbers in Debtors' available books and records, and (iv) identifying serial number ownership from Debtors' books and records. In addition, the Debtors' employed TAGeX to, among other things, perform field surveys at Debtors' warehouses located throughout the country and to inventory equipment and personal property that actually existed at these sites. TAGeX identified over 4,323 water stations sitting idle in these warehouses. In addition, the Debtors' asset management software and credit card transaction reports, revealed approximately 2,107 water stations in the field (i.e., at customer locations). A physical inspection of each site that was reported to have a water station present on site was not performed due to the extensive associated cost, so the actual number may be greater or less than the amounts derived from these reports.

f.  Based on TAGeX's efforts and the Debtors' asset management software program, we have been able to estimate at best just 2,107 machines may have been potentially in the field subsequent to the petition date of the purported 21,000+ water vending units purportedly sold by Debtors as evidenced by the proof of claims submitted by the purchasers, actually existed subsequent to the Petition Date. We identified 10,125 water station serial numbers that were assigned to multiple claimants, meaning the same machine was sold to multiple purchasers. We also noted that serial numbers assigned to water stations were not identified as being in the field or at the Debtors' warehouses, meaning these water stations may never have physically existed.

g.  Per the draft Expert Report of Becky Yang O'Malley, between 2018 and

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 7

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

2024, revenues from legitimate vending operations were 11.0% of the total cash deposits into the Debtors' main operating bank accounts when compared to the total cash deposited. The Debtors' operations predominantly consisted of fundraising from the sale of water stations, issuance of bonds, borrowings from a Washington bank, and borrowings from merchant cash advance lenders ("MCA Lenders"). The uses of cash primarily consisted of payments to water station investors, loan payments, acquisitions, and payments to insiders. The Debtors' operations were highly dependent on capital infusions consisting of loans, water station investors, bond proceeds, and other borrowing from third parties, so heavily that these activities accounted for over 80.7% of total cash receipts (excluding intercompany transfers) and were approximately four times greater than revenues from legitimate vending operations.

h.  The Debtors engaged in extensive commingling of funds and assets such that the Debtors and their affiliates operated as a single enterprise, despite being distinct and separate legal entities. There were no intercompany loan documents, advances to and from entities were not properly accounted for, nor were amounts regularly repaid. The Debtors engaged in a cash juggling act, stretching payments to vendors and advancing funds between Debtors based on who had cash and who needed it, without proper formalities and accounting. In other words, Debtors lacked corporate formalities, had inadequate capitalization, overlapped in ownership and management, failed to treat each other at arm's length, and transferred and commingled funds and payments of affiliated debts. Prior to the petition date, money was moved between Debtors with little to no

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 8

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

24-01863-FPC11     Doc 1161     Filed 08/01/25     Entered 08/01/25 21:58:04     Pg 8 of 18

documentation (such as borrowing agreements), and there is a significant lack of sufficient or reliable corporate and financial records. Because of how entangled the Debtors are, it would be extremely difficult to unscramble the Debtors' assets and liabilities in any meaningful sense.

14.     The facts and conclusions set forth below are based on my team's investigation and analysis and the forensic examination of Debtors' pre-petition activities prepared by the Committee, which I have reviewed and agree with.

## A. Corporate History.

15.     Debtors were founded by Ryan Wear and his father—along with numerous other related entities.[6]

16.     Water Station's story began with the formation of Creative in May 2013.[7] Creative is a Washington LLC with a principal place of business in Everett, Washington. Creative was held out to the public as being in the business of manufacturing,[8] assembling, and selling water vending machines. Wear oversaw the daily operations of Creative along with the other Debtors until the Receiver was appointed in mid-2024.[9]

17.     Water Station Management LLC ("WSM") was formed in January 2016[10] as a Washington LLC with the same principal place of business as Creative. WSM was held out to the public as a business that specialized in servicing and managing the water vending machines sold by Creative. Wear oversaw the daily operations of WSM along with the other Debtors. [11]

---

[6] Attached as Exhibit 44 is an organization chart of Ryan Wear's entities.
[7] Attached as Exhibit 13 is a copy of Creative's Certificate of Formation.
[8] In fact, the water stations were manufactured by third parties who are now creditors in these cases.
[9] Attached as Exhibit 14 is a copy of the Stipulated Order Appointing General Receiver, Wash., King County, Case # 24-2-10753-3 SEA (May 14, 2024).
[10] Attached as Exhibit 15 is a copy of Water Station Management's Certificate of Formation.
[11] The Washington State Department of Financial Institutions ("DFI") conducted an investigation of Ryan Wear and affiliated entities and individuals. On May 16, 2025, DFI issues a Statement of Charges

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 9

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

18.     Ideal was formed in September 2019[12] as a Washington LLC with the same principal place of business as Creative and WSM. Debtors used Ideal as a holding company for real estate acquired and serviced with OpCo resources. Wear oversaw the daily operations of Ideal along with the other Debtors.[13]

19.     Refreshing was formed in November 2020 as Debtors attempted to expand the business to include traditional vending machines.[14] Formed as a Washington LLC, Refreshing was operated from the same principal place of business in Everett, Washington, as the other Debtors. Refreshing was held out to customers and the public as in the business of placing and servicing traditional vending machines. Wear oversaw the daily operations of Refreshing and its subsidiaries along with the other Debtors.[15]

## B. Debtors were Held Out as Operator of a Nationwide Water and Traditional Vending Business.

20.     Debtors held themselves out to the public as a manufacturer and operator of specialized water vending machines and, later, traditional vending equipment. Throughout the relevant period, Debtors claimed to operate a network of vending machines at retail locations throughout the United States.

21.     Between 2018 and 2024, Debtors embarked on aggressive efforts to expand their business. During this period, Debtors raised over $380 million in capital

---

for this matter (Order No. S-21-3226-25-SC01). Attached as Exhibit 16 is a copy of the Statement of Charges. During this investigation, Ryan Wear was deposed on November 14 and 15, 2023. Attached as Exhibits 17–18 are copies of Ryan Wear's DFI deposition transcripts in *In the Matter of: Ryan Wear, et al.* that K&L Gates provided to me, along with other documents produced by DFI. In this deposition, Wear explains his role in WSM. Exhibit 17 (Day 1) at 13:2–17:14.

[12] Attached as Exhibit 19 is a copy of Ideal's Certificate of Formation.

[13] During the relevant time period, Ryan Wear held 90% of the membership interest in Ideal, and his father held the other 10%. Attached as Exhibit 45 is Ideal's LLC agreement. Ryan was the manager of Ideal until the filing of the Bankruptcy Case.

[14] Attached as Exhibit 20 is Refreshing USA, LLC's certificate of formation; Exhibit 17 (Wear Dep. Day 1) at 162:3–164:7.

[15] Exhibit 17 (Wear Dep. Day 1) at 161:16–162:11.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 10

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

in a variety of ways, including through the sale of water station machines using franchise syndications, water station private placement securities offerings, a bond securitization, direct borrowing from banks, and borrowings from at least twelve merchant cash advance ("MCA") entities. Each of these methods is covered in more detail below.

## C. Equipment Sales and Franchise Syndication.

22.    A primary means by which Debtors raised capital from the public was through purported water vending machine sales. Debtors marketed and bundled these sales with a purported franchise syndication.

23.    Debtors offered to sell machines for a purchase price of $8,500 per unit.[16] Debtors told customers that WSM would install and service their machines at retail locations throughout the U.S. in exchange for a percentage of the profits.[17]

24.    These transactions were marketed to be attractive to investors looking to invest in a turn-key business that would produce steady returns with predictable out-of-pocket costs. Debtors promised customers annual returns of at least 12% (and in some cases even 20%), distributed monthly.[18]

25.    Debtors' marketing materials touted "WaterStation Technology's portfolio of Water Vending Machines" as an "enormous opportunity to provide valuable service to people and the community while building a business with inventory-free, recurring revenues and great growth potential."[19]

---

[16] Debtors offered certain military and volume discounts. They also offered smaller/different machines, although few of the smaller units were actually sold.

[17] Retail locations included Walmart, Circle K, Family Dollar, H-E-B, 7-Eleven, and Dollar Tree. Exhibit 18 (Wear Dep. Day 2) at 351:6–356:13. Exhibit 45 to his deposition further provides a list of water station machine locations. This list is attached as Exhibit 21.

[18] Attached as Exhibit 22 are copies of DFI interviews, discussing these promised returns on investments ("ROIs"). Attached as Exhibits 23–27 are other materials Debtors used for marketing their business.

[19] Attached as Exhibit 32 is a sample business plan provided to investors.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 11

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

26.     Water Station's marketing materials touted its proprietary and "patent-pending" design as both "eco and health hazard friendly." It claimed its models "combine[d] the five most advanced and significant water treatment Technology in existence" and that they "surpass[ed] the competition – in price point, small foot-print, commercial grade quantity and duration specifications, and in its operational patent-pending feature-sets." Debtors marketed Water Station as a business model that (a) require[d] "Low Operating Costs, eliminating the need for inventory, full-time personnel, [or] trucks to deliver inventory"; and (b) would generate multiple revenue streams, from both water sales and advertising.[20] Early in this case, I requested my legal counsel to perform an intellectual property search for the Debtors, and despite the statements in the Debtors' marketing materials, there were no patents pending.

27.     Debtors facilitated transactions with machine purchasers with individual contracts and related transactional documents consisting primarily of purchase orders, franchise agreements, private placement/securities purchase agreements, and service agreements. Attached as Exhibits 28–31 are examples of these contracts.

28.     Debtors used Creative as the issuing entity of its Purchase Order Agreement. These purchase orders were relatively simple forms describing the number of machines that customers believed they were purchasing and the total cost. *See* Exhibit 31; *see also* Exhibit 33.[21]

29.     Debtors also required customers to sign franchise agreements in tandem with purchase orders. Debtors used an affiliated entity called Water Station Franchise Systems, LLC, as the purported franchise operator.

30.     Under the Water Station Franchise Agreements (Exhibit 28), Water Station represented that Creative created and owned a proprietary system (the

---

[20] Exhibit 32 (business plan).
[21] This summary of purchase orders is a non-exhaustive list.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 12

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

"System") for developing and operating a vending machine business, consisting of various products and services, methods, procedures and standards for developing and operating a Water Station business, intellectual property, training programs, business knowledge, and marketing plans and concepts.

31.     Most machine owners also entered into service agreements with WSM in connection with these transactions. Exhibit 29. Under these service agreements, Debtors promised to install and maintain customer-owned machines in exchange for a share of the profits. Debtors raised a substantial amount of capital through the purported sale of thousands of Water Station machines. [22]

32.     Between 2018 and 2022, Debtors raised in excess of $225 million through the purported sale of thousands of machines to customers across the U.S.[23] The customers who invested these funds had been told that their funds would be used to purchase water machines that would be placed in revenue-generating locations throughout the country. From the beginning, however, this largely did not occur. Based on the forensic accounting prepared by the Committee, approximately 65% of the funds were used for intercompany transfers and payments to machine owners and other creditors:

---

[22] Debtors sourced these customers through various channels, including national franchise listings and a network of brokers. In many cases, purchasers were induced to obtain loans to finance the purchase through a loan program developed by the Debtors. One of the advantages of offering a purported "franchise" was that Water Station could funnel investors toward to finance the purchase of water station—through a loan program it arranged for small business loans issued by a banking member of the SBA Preferred Lender Program ("PLP") under the SBA's 7(a) loan program. In or about October 2017, Water Station was issued a Franchise Identifier Code, which temporarily made it eligible for SBA financing. In January 2018, Water Station was listed in the SBA's Franchise Directory, a publicly available database with all franchises in the U.S. eligible for SBA loans.

[23] Claims Registry for this matter reflects at least 169 proof of claims filed by machine owners, totaling approximately $300 million. Attached as Exhibit 34 is a list of machine owners.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 13

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

| Uses | Amount |
|---|---|
| Intercompany Transfers | 40.7% |
| Operating Expenses[24] | 23.1% |
| Machine Owner Payments | 16.0% |
| Loan Payments | 8.7% |
| Acquisitions of Real Estate and Businesses | 8.3% |
| Payments to Insiders | 3.2% |

**D. Bond Securitization.**

33.     In April 2022, Water Station Management closed on a bond indenture that injected tens of millions in capital into the enterprise. Attached as Exhibit 35 is a copy of WSM's Bond Indenture (the "Bond Indenture").[25] Between 2022 and 2024, WSM also executed several supplements to the Bond Indenture to generate additional funds and apparently amend certain terms.

34.     Through the Bond Indenture, WSM initially issued over $56 million of Class A Notes, and $15 million of Class B notes under which WSM was listed as both Issuer and Servicer (taken together, the "Notes").[26] As security for the notes, Debtors granted the trustee, U.S. Bank Trust Co. ("Trustee"), a first priority security interest in a suite of assts, including "[w]ater station vending machines located in the U.S."

---

[24] Although 23% of machine purchaser capital has been allocated to "operating expenses," this category includes costs for payroll, overhead, broker payments, and other day-to-day expenses. In other words, it does not represent the dollar-for-dollar amount of capital raised actually devoted to acquiring and installing machines.
[25] *352 Capital GP LLC v. Ryan Wear, et al.*, Case No. 1:24-cv-05102-VEC, Dkt. 134, Ex. C.
[26] Exhibit 35 (Indenture) at Ex. C, p. 3.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 14

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

that were owned by Debtors or those "to be acquired by [Water Station Management] from Creative Technologies, L.L.C."[27]

35.    The Indenture required that all revenues generated in connection with the bond funds to be held in trust and distributed in accordance with a "Priority of Payments" provision in the Indenture.[28] WSM was "only permitted to direct the Trustee . . . to withdraw" certain funds to purchase water station vending machines.[29] Once those vending machines were purchased, they were immediately to be "pledged as part of the Collateral" under the Indenture.[30] The Indenture also prohibited Debtors from selling or exchanging or otherwise encumbering "any part of the Collateral" except as provided in the Indenture.[31]

36.    Between April 2022 and February 2024, WSM issued $115,425,000[32] in notes pursuant to the bond indenture: $91,125,000 in Class A notes held by 352 Capital and TWI.[33] During the same period, WSM issued $24,300,000 in Class B Notes held by the same parties.[34]

37.    A significant amount of the funds was deployed through intercompany transfers and payments to machine owners and other creditors.

**E.  Direct Lending.**

38.    Debtors also raised at least $58.7 million from a cadre of willing lenders, excluding bond proceeds. All told, between 2019 and 2024, Debtors obtained over

---

[27] *Id.* at Ex. C, pgs. 1-2.
[28] *Id.* at Ex. C, p. 47.
[29] *See id.* at p. 62; *see also id*. at p. 2 (defining "Assets"); *see also id*. at p. 7 (defining "Funded Acquisition Amount" as 95% of the purchase price of an asset).
[30] *Id.* at Ex. C, p. 62.
[31] *Id.* at Ex. C, p. 48.
[32] The $97.7 million described in O'Malley's Report represents the bond funds deposited into the Main Operating Bank Accounts and excludes the bond funds deposited into WSM BOA A/C 1258.
[33] *Id*. at Ex. C, pgs. 11-15.
[34] *Id*. at Ex. C, pgs. 16-19.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 15

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

$58.7 million[35] in financing through a variety of different loans from over 20 different lenders as described below. These loans were secured by the Debtors' various enterprises and real estate assets that were partially purchased from funds raised by the Debtors and placed in special-purpose LLCs owned and controlled by Wear.[36]

39.     In December 2020, in parallel to its fundraising through purported machine sales, Debtors obtained a $28.5 million package of loans from First Fed Bank, through the Covid-era Main Street Lending program administered by the Federal Reserve.

40.     As part of this package, First Fed issued a $21 million "Main Street" loan to Creative, a $5.5 million business loan to WSM, and a $2 million business loan to Ideal. Each of these loans were secured by various Debtors' assets and, later, real estate. Attached as Exhibits 36–38 are copies of these loans.

41.     In September 2021, First Fed executed another commercial loan to Ideal for $4.98 million. This loan was also guaranteed by Creative. Attached as Exhibit 39 is a copy of this loan.

42.     Debtors struggled to pay these loans soon after receiving them. The proceeds from these loans were transferred between Debtors and other Water Station entities to cover various costs, including the acquisition of real estate, payments to insiders, and investor payments.[37]

43.     Debtors also obtained loans from over a dozen MCA Lenders to address their dire cash flow needs.

---

[35] This figure includes First Fed, mortgages, and merchant cash advance loans but is likely understated.
[36] Furthermore, between 2022 and 2024, Debtors obtained an additional $11.5 million in cash advances from 12 different MCA Lenders.
[37] Attached hereto as Exhibits 40–43 are examples demonstrating the Debtors' inability to make payments.

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 16

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## SUMMARY OF EVALUATION OF DEBTORS' ASSETS
## AND CASH FLOW FROM OPERATIONS

44.     Since Force 10's appointment, the Debtors have worked collaboratively with the Official Committee of Unsecured Creditors and have undertaken a comprehensive investigation into the Debtors' assets and prepetition activities.

45.     The facts set forth herein show that Debtors unmistakably encountered massive liquidity challenges posed by the overriding fact that Debtors' cash flows were never sufficient to meet Debtors' mounting obligations to machine owners, real estate lenders, bondholders, trade creditors, and employees. As a result, Debtors relied on the various sources of capital raising activities described herein, which it was unable to service.

46.     Based on the forensic accounting prepared by the Committee, the charts below reflect the inflows of cash from legitimate operations (operating revenues are depicted in black) versus the inflows of cash from water station investors' funds and borrowings as detailed below:

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 17

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022



47.     As time went on, cash from sales to water station investors dramatically decreased, and the Debtors shifted to borrowings to fund as the primary source to fund the cash flow needs, as opposed to real revenues from legitimate vending sales.

Respectfully submitted,

Dated: August 1, 2025.

Brian Weiss

DECLARATION OF BRIAN WEISS IN SUPPORT OF
MEMORANDUM IN SUPPORT OF PONZI SCHEME
FINDINGS UNDER CHAPTER 11 PLANS
OF LIQUIDATION - 18

K&L GATES, LLP
925 FOURTH AVENUE, SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022