HONORABLE FREDERICK P. CORBIT

AARON BRECHER
abrecher@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: + 1 206 839 4300

LORRAINE MCGOWEN
lmcgowen@orrick.com
DAVID LITTERINE-KAUFMAN
dlitterinekaufman@orrick.com
MICHAEL TRENTIN
mtrentin@orrick.com
51 West 52nd Street
New York, New York 10019-6142
Telephone:  +1 212 506 5000

*Attorneys for Cantaloupe, Inc.*

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REFRESHING USA, LLC,<br><br>Debtors.[1] | Lead Case No.  24-01863-11<br>(Jointly Administered)<br><br>**RESPONSE OF CANTALOUPE, INC. TO THE PONZI SCHEME BRIEF FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS** |

---

[1] Debtors and debtors-in-possession in these Chapter 11 cases, along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-01863-11; Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-01864-11; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station, "Debtors"), Case No. 24-01866-11. Debtors' mailing address is: 2732 Grand Ave., Ste. 122, Everett, WA 98201.

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page i

# TABLE OF CONTENTS

| | Page |
|---|---|
| PRELIMINARY STATEMENT | 1 |
| BACKGROUND | 2 |
| ARGUMENT | 4 |
| I. A BLANKET PONZI FINDING IS NOT APPROPRIATE BECAUSE THE DEBTORS HAVE LEGITIMATE BUSINESS SEGMENTS | 4 |
| II. A PONZI FINDING IS PREMATURE AND VIOLATES DUE PROCESS | 7 |
| CONCLUSION | 11 |

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re ATM Fin. Servs., LLC*,
 2011 WL 2580763 (Bankr. M.D. Fla. June 24, 2011) ........................................ 8

*In re Bayou Group, LLC*,
 362 B.R. 624 (Bankr. S.D.N.Y. 2007) ............................................................ 4, 5

*In re Canyon Sys. Corp.*,
 343 B.R. 615 (Bankr. S.D. Ohio 2006) ............................................................ 8

*In re DBSI, Inc.*,
 476 B.R. 413 (Bankr. D. Del. 2012) ................................................................. 8

*In re EPD Inv. Co., LLC*,
 114 F.4th 1148 (9th Cir. 2024) ......................................................................... 5

*In re Fin. Res. Mortg., Inc.*,
 454 B.R. 6 (Bankr. D.N.H. 2011) ..................................................................... 8

*Finn v. All. Bank*,
 860 N.W.2d 638 (Minn. 2015) .......................................................................... 5

*In re Flashcom, Inc.*,
 361 B.R. 519 (Bankr. C.D. Cal. 2007), aff'd 503 B.R. 99 (C.D. Cal.
 2013), aff'd, 647 F.App'x 689 (9th Cir. 2016) ................................................ 10

*In re Foos*,
 188 B.R. 239 (Bankr. N.D. Ill. 1995), rev'd on other grounds, 1996
 WL 563503 (N.D.Ill. Sep. 23, 1996) ................................................................ 4

*In re Fox Ortega Enters., Inc.*,
 Adv. Proc. No.18-04019, Dkt. 76 (Bankr. N.D. Cal. Sep. 5, 2019) ................. 6

*In re Fox Ortega Enters., Inc.*,
 631 B.R. 425 (Bankr. N.D. Cal. 2021) .......................................................... 6, 8

*iCap Enters., Inc.*,
 Case No. 23-01243 (Bankr. E.D. Wash. 2024) .............................................. 5, 6

*In re IFS Fin. Corp.*,
 417 B.R. 419 (Bankr. S.D. Tex. 2009) ............................................................. 8

*Kriegman v. Bigelow, et al. (In re LLS America LLC)*
 Adv. Proc. No. 11-80299, Dkt. 378 (Bankr. E.D. Wash. Jul. 1,
 2013) ............................................................................................................. 8, 9

*In re LLS America LLC*,
 Case No. 09-06194, Dkt. 1392 (Bankr. E.D. Wash. Oct. 11, 2012) ................. 9

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page iii

*In re Mack Indus., Ltd.*,
 622 B.R. 887 (Bankr. N.D. Ill. 2020) ............................................................................. 5

*McNamara v. Voltage Pay Inc.*,
 2017 WL 3709057 (D. Nev. Aug. 28, 2017) ................................................................. 5

*In re Ramirez Rodriguez*,
 209 B.R. 424 (Bankr. S.D. Tex. 1997) ........................................................................... 8

*In re Taubman*,
 160 B.R. 964 (Bankr. S.D. Ohio 1993) .......................................................................... 8

*In re World Vision Ent., Inc.*,
 275 B.R. 641 (Bankr. M.D. Fla. 2002) ........................................................................... 8

**Statutes**

11 U.S.C. § 548(a)(1)(A) ...................................................................................................... 10

11 U.S.C. § 1129 .................................................................................................................... 11

Fed. R. Bankr. 7001(a) ..................................................................................................... 2, 10

1. Cantaloupe, Inc. ("Cantaloupe"), by and through its undersigned counsel, hereby responds in opposition to the memorandum [Dkt. No. 1158] (the "Ponzi Scheme Brief") filed by the Official Committee of Unsecured Creditors (the "Committee") and the joinder of the Debtors thereto [Dkt. No. 1165] (the "Joinder") in the above-captioned case (the "Case"), to the extent that they request a blanket finding that the Debtors operated as a Ponzi Scheme (the "Ponzi Finding") as part of this Court's ruling on the plan of liquidation [Dkt. No. 1117] (the "Plan") that the Debtors and Committee (together, the "Plan Proponents") have proposed for confirmation.

**Preliminary Statement**

2. The proposed Ponzi Finding is overbroad and premature under the circumstances of this Case. Cantaloupe is a trade creditor that leased credit card readers to the Debtors for use in their vending machines and processed payments that the Debtors received from customers who made purchases from those vending machines. Cantaloupe processed millions of legitimate transactions generating nearly $80 million in revenue from 2020 through the Petition Date (defined below). It is irrefutable that these transactions were legitimate – the sales at the vending machines occurred, payments were processed, and the Debtors received the revenue minus Cantaloupe's contractual fees. The Committee itself admits that $82 million of the Debtors revenue from 2018 through 2022 was derived from "legitimate operations." Ponzi Scheme Brief, at p. 13. Yet, before even initiating adversary proceedings, the Plan Proponents seek to impose on Cantaloupe and all other trade creditors an *irrebuttable* presumption that every transfer automatically satisfies the criteria for a fraudulent transfer claim. Cantaloupe and other trade creditors who supported the Debtors' legitimate operations should not be subject to such a powerful Ponzi Finding, especially in the context of a fast-paced confirmation hearing

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page 1

schedule.

3. Indeed, the fact that this Ponzi Finding request is to be decided at confirmation – before adversary proceedings have been filed – raises significant due process concerns. In most cases where a Ponzi finding is sought, the motion is brought after adversary proceedings have been filed, when it is clear who may be affected by it. Here, by contrast, most of the potential fraudulent transfer defendants likely are not aware of the requested Ponzi Finding or the effect it would have on future litigation against them, and so would deprive them of the opportunity to defend against this element of the claims. Furthermore, for potential defendants like Cantaloupe who are aware of the serious implications of the requested relief, the time to litigate this issue is being cut short by it being lumped into the confirmation process, instead of in an adversary proceeding where fraudulent transfer claims are required to be filed under Bankruptcy Rule 7001(a). By jamming this request into a confirmation order pre-suit, the Plan Proponents are manufacturing an exigency that does not need to exist, leading to a rushed adjudication of a critical issue that affects hundreds of yet-to-be served defendants.

4. At this stage in the proceedings, the Court should decline to enter the requested Ponzi Finding against Cantaloupe and other trade creditors who participated in legitimate aspects of the Debtors' business.

**Background**

5. As explained in Cantaloupe's Proof of Claim (Claim # 356) filed on July 7, 2025, the commercial relationship between Cantaloupe and Refreshing USA, LLC is governed by the Master Services Agreement (the "MSA") and applicable Rental Terms and Conditions (the "Rental Agreement").

6. Pursuant to the MSA and the Rental Agreement (together with all schedules, purchase orders, SOWs, and other documents relating thereto, the

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page 2

"Agreements"), Cantaloupe leased credit card readers to the Debtors for use in the Debtors' vending machines and provided ongoing services and warranties in connection therewith. Since the relationship between Cantaloupe and Refreshing began in 2012, Cantaloupe has leased and sold thousands of devices to Refreshing and its affiliates.

7. Under the Agreements, Refreshing is responsible for paying Cantaloupe all fees and other amounts contemplated in any purchase order or otherwise arising under the MSA. Within sixty (60) days of the end of the rental period applying to each Card Reader respectively, Refreshing is required to return that Card Reader to Cantaloupe in good working order. Cantaloupe has the right to charge Refreshing up to $300 for each Card Reader that is not returned to Cantaloupe within sixty (60) days or that is not in good working order upon its return.

8. Cantaloupe's records indicate millions of transactions processed in connection with Refreshing's water machines. From 2020 to the Petition Date (as defined below), Cantaloupe processed ***39,162,175 transactions*** generating gross revenue of ***$79,176,129.32***.

9. On August 27, 2024 (the "Petition Date"), involuntary petitions were filed against the Debtors under chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas. On November 14, 2024, the Debtors' bankruptcy Case was transferred to this Court.

10. On April 18, 2025, the Debtors filed their initial Chapter 11 Plan and Disclosure Statement. *See* Dkt. Nos. 792, 293.

11. On May 8, 2025, Refreshing filed the Stipulated Motion to reject and terminate the Agreements. On June 6, 2025, the Court entered an order (the "Rejection Order") [Dkt. No. 974] approving the Stipulated Motion. Cantaloupe

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page 3

24-01863-FPC11   Doc 1212   Filed 08/22/25   Entered 08/22/25 14:27:57   Pg 7 of 15

filed its Proof of Claim for rejection damages on July 7, 2025.

12. On July 1, 2025, the Debtors filed amended versions of their Chapter 11 Plan and Disclosure Statement. *See* Dkt. Nos. 1050, 1051. On July 11, 2025, the Debtors filed further amended versions of each. *See* Dkt. Nos. 1100, 1101 (the "<u>Disclosure Statement</u>"). On July 15, 2025, the Court approved the Disclosure Statement and entered an order to that effect on July 17, 2025. *See* Dkt. Nos. 1116, 1131.

13. The Debtors filed the current version of the Plan on July 16, 2025.

14. On August 1, 2025, the Plan Proponents filed the Ponzi Scheme Brief in support of the Debtors' request that the Court enter a Ponzi Finding upon confirmation. The confirmation hearing is currently scheduled for September 8 and 9, a mere *38 days* after Ponzi Scheme Brief was filed.

## <u>Argument</u>

### I. A Blanket Ponzi Finding is Not Appropriate Because the Debtors Have Legitimate Business Segments

15. The Court should not enter a Ponzi presumption that applies to transfers to trade vendors like Cantaloupe, who provided real services in support of the Debtors' legitimate business activities.

16. Courts are hesitant to apply the Ponzi Presumption to transactions that evidence legitimate business activity. *See In re Foos*, 188 B.R. 239, 244 (Bankr. N.D. Ill. 1995) (holding that where Ponzi scheme operator "conducts ordinary business transactions outside of the Ponzi scheme, the basis for presuming fraud is not present"), *rev'd on other grounds,* 1996 WL 563503 (N.D. Ill. Sep. 23, 1996); *In re Bayou Group, LLC*, 362 B.R. 624, 638 (Bankr. S.D.N.Y. 2007) (explaining that, even when the debtor is a Ponzi scheme, the analysis of intent to defraud should "focus precisely on the specific transaction or transfer sought to be avoided" and

suggesting that the repayment of valid antecedent debts may be distinguished from the payment of fictitious balances and profits).

17. Excluding legitimate business activity from the Ponzi presumption aligns with core principles underlying fraudulent transfer actions, which typically do not target vendors that a debtor paid in the ordinary course of legitimate business activities. *See In re Mack Indus., Ltd.*, 622 B.R. 887, 895 (Bankr. N.D. Ill. 2020) ("Fraudulent conveyance law is grounded in equity and . . . is not designed to turn every vendor into an insurer to creditors against corporate malfeasance . . . ."); *McNamara v. Voltage Pay Inc.*, 2017 WL 3709057, at *1 (D. Nev. Aug. 28, 2017) ("[T]he receiver's complaint alleges only that the Receiver Entities paid Voltage in an arms-length transaction for payment-processing services. This would be like treating a burglar's purchase of a crow bar as a fraudulent transfer merely because he later used the tool to carry out a crime . . . .").

18. In the Ninth Circuit, one of the required elements for a Ponzi presumption is that the company has "***no*** legitimate profit-making business opportunity." *In re EPD Inv. Co., LLC*, 114 F.4th 1148, 1159 (9th Cir. 2024) (emphasis added). This makes sense not only because of the policy goals noted above, but also because the law on Ponzi schemes is largely based on cases where there was no underlying business at all. *See Finn v. All. Bank,* 860 N.W.2d 638, 652 (Minn. 2015) (collecting cases). In the recent *iCap Enterprises, Inc.* case from this district, along the same lines, the Court's findings of fact included that the Debtor "did not operate as a legitimate profit-making business." *iCap Enters., Inc.*, Case No. 23-01243, Dkt. 1414, Section N (*Conduct of a Ponzi Scheme*) (Bankr. E.D. Wash. Oct. 18, 2024). Here on the other hand, there was obvious legitimate business activity – in connection with which Cantaloupe and possibly other trade vendors provided services – making a blanket Ponzi presumption inappropriate.

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page 5

19. Where a debtor has engaged in some legitimate business, courts in this Circuit are reticent to make a wholesale Ponzi finding. Instead, courts engage in a fact-sensitive analysis and "examine[] the types of businesses, or lines of business, to determine whether they can establish what portions of the enterprise were part of a Ponzi Scheme." *In re Fox Ortega Enters., Inc.*, Adv. Proc. No.18-04019, Dkt. 76 at 37-38 (Bankr. N.D. Cal. Sep. 5, 2019); *see also In re Fox Ortega Enters., Inc.*, 631 B.R. 425, 434 (Bankr. N.D. Cal. 2021) ("The Court declined to determine that the Trustee had established that the Debtor's business was a Ponzi Scheme . . . based on review of case law that required greater certainty than the Trustee had provided with respect to the scope of the Ponzi Scheme activity in the Debtor's business . . . .").[2] In *Fox Ortega,* Judge Lafferty considered issuing a Ponzi finding only after noting that the Trustee had sufficiently limited its scope to the fraudulent part of the debtors' business:

> The Trustee is not seeking an across the board ruling that any sales of wine by Premier Cru are subject to attack because a certain percentage of the business was fraudulent; rather the Trustee's focus here is considerably more modest, and tailored to the aspects of the business that he contends were actually fraudulent in fact.

*In re Fox Ortega Enters., Inc.*, Case No. 18-04019, Dkt. 76 at 29.

20. Based on the Plan Proponents' evidence alone, the Debtors made over $82 million in revenue from legitimate operations during the alleged Ponzi period. Ponzi Scheme Br. at 6. Indeed, Cantaloupe's records indicate millions of legitimate

---

[2] In the *Fox Ortega* case, after the Court decided not to make a global Ponzi finding, the trustee pursued avoidance under a badges of fraud theory. *In re Fox Ortega Enters., Inc.*, 631 B.R. 425, 430–31 (Bankr. N.D. Cal. 2021) ("Against this narrative of overarching fraud, the Trustee, no longer relying on establishing a 'Ponzi Scheme Presumption,' as set forth in his initial attempt to obtain summary judgment, seeks to establish that particular transfers of wine to Defendant exhibited anomalies that take them outside the ordinary course of the Debtor's business as publicly represented, and which correspond to the conditions described in Fox's Plea Agreement . . . .").

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page 6

transactions processed in connection with Refreshing's water machines. In the period from 2020 to the Petition Date alone, Cantaloupe processed 39,162,175 card transactions generating total gross credits of $79,176,129.32.[3] The Committee claims that only 10% of vending machines purportedly sold by the Debtors to investors (or 2,100 out of 21,000) were operating in the field as of the Petition Date. However, Cantaloupe's initial review of its records indicates that at least 4,500 of its units were processing transactions a few days after the Petition Date. But even assuming only 10% of units were in operation as of the Petition Date, that does not support a global Ponzi filing dating back to 2018.

21. In view of the substantial business activity that the Debtors were engaged in during the alleged Ponzi period, a global Ponzi Finding would be overbroad and inequitable to parties like Cantaloupe that only received funds from the Debtors in the course of transacting legitimate business.

## II. A Ponzi Finding Is Premature and Violates Due Process

22. The broad legal effect of the requested Ponzi Finding—creating an irrebuttable presumption of actual fraudulent intent against all transferees during the alleged Ponzi period—will substantially impair the rights of Cantaloupe and potentially hundreds of other parties to defend against yet-to-be-filed avoidance actions. Such sweeping relief should not be entered without adequate notice and an opportunity for transferees to present their case. The Plan Proponents' current process provides neither.

23. The Plan Proponents have neither identified potential defendants nor provided a list of all transferees during the relevant period, leaving most unaware that their defense to future fraudulent transfer claims would be compromised. Moreover, neither the Plan, Ponzi Scheme Brief, nor initial Notice of Hearing [Dkt. 1146]

---

[3] As Cantaloupe's data only pertains to card transactions, these figures necessarily exclude additional revenue received by the Debtors in the form cash transactions from operating water machines.

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page 7

clearly explain the Ponzi Finding's sweeping consequences. Even the supplemental Notice [Dkt. 1175] vaguely references Ninth Circuit authority without signaling its impact on third parties' defenses— noting that, "[t]he requested findings include, among others, that [] the Debtors . . . operated as a Ponzi Scheme *within the meaning of Ninth Circuit authority*." Dkt. No. 1175 at 2 (emphasis added). These statements do not clearly explain that a Ponzi Finding would affect the interests of many hundreds of as yet unidentified parties – most of whom are likely unaware that a Ponzi Finding would result in irrebuttable presumptions against them in future litigation.

24. Unlike typical cases where Ponzi findings follow the filing of avoidance actions— often years later, after defendants receive notice and conduct discovery[4] — here the request precedes nearly all adversaries (with only one pending, and no Ponzi allegation asserted).[5] The targets of avoidance actions in those cases were already on notice about how their rights could be affected by a Ponzi Finding, and were properly incentivized to litigate the issue.

---

[4] *See Kriegman v. Bigelow, et al. (In re LLS America LLC),* Adv. Proc. No. 11-80299, Dkt. 378 (Bankr. E.D. Wash. Jul. 1, 2013) (finding made two years after adversaries initiated); *In re Fox Ortega Enterprises, Inc.*, 631 B.R. 425 (Bankr. N.D. Cal. 2021) (finding made over three years after adversaries initiated); *In re IFS Fin. Corp.*, 417 B.R. 419 (Bankr. S.D. Tex. 2009) (finding made nearly five years after adversaries initiated); *In re Ramirez Rodriguez*, 209 B.R. 424 (Bankr. S.D. Tex. 1997) (finding made two years after adversaries initiated); *In re DBSI, Inc.*, 476 B.R. 413 (Bankr. D. Del. 2012) (finding made over one year after adversaries initiated); *In re Canyon Sys. Corp.*, 343 B.R. 615 (Bankr. S.D. Ohio 2006) (finding made over six years after adversaries initiated); *In re World Vision Ent., Inc.*, 275 B.R. 641 (Bankr. M.D. Fla. 2002) (finding made over one year after adversaries initiated); *In re Taubman*, 160 B.R. 964 (Bankr. S.D. Ohio 1993) (finding made over one year after adversaries initiated); *In re ATM Fin. Servs., LLC*, 2011 WL 2580763 (Bankr. M.D. Fla. June 24, 2011) (finding made over one year after adversaries initiated); *In re Fin. Res. Mortg., Inc.*, 454 B.R. 6 (Bankr. D.N.H. 2011) (finding made over one year after adversaries initiated).

[5] There is only one adversary complaint pending in this Case. *FPC Water Station Management LLC v. Riverside Capital NY LLC,* Adv. Proc. No. 24-01863 (Bankr. E.D. Wash. 2024). The Debtors have not alleged they would be entitled to a Ponzi Presumption even in this one adversary proceeding.

25. The *LLS America* case, from this district, is particularly instructive. In that case, the trustee filed Ponzi adversary proceedings against hundreds of defendants. It was only afterwards that the Court proceeded to analyze whether the Debtor operated a Ponzi scheme as a "common issue" in all of them. After significant discovery involving all the defendants, the Trustee filed a motion for partial summary judgment, and the Bankruptcy Court issued its report and recommendation to the District Court, finding that the Debtors operated a Ponzi scheme. *See Kriegman v. Bigelow, et al.*, Adv. Proc. No. 11-80299, Dkt. 378, Memo. at 2-6, 11-13 (Bankr. E.D. Wash. Jul. 1, 2013). Prior to this consolidated discovery process in the adversary proceedings, the Court declined to make a Ponzi finding as part of the plan confirmation process. *In re LLS America LLC*, Case No. 09-06194, Dkt. 1392 (Bankr. E.D. Wash. Oct. 11, 2012).

26. The process put forward by the Plan Proponents would deny many future fraudulent transfer defendants due process by denying them proper notice and foreclosing any meaningful opportunity for them to conduct discovery on whether the transfers they received were pursuant to the Debtors legitimate business activities. Investigating whether a Ponzi scheme exists is highly fact-intensive, especially where (as noted above) the subject business had some legitimate operations. The transferees have a constitutional right to be heard and to conduct discovery on factual issues, like fraudulent intent, that will arise in the adversary proceedings against them. The truncated and expedited period to respond to the requested Ponzi Finding in connection with confirmation of the Plan is not sufficient and does not satisfy the United States Constitution. *See In re Flashcom, Inc.*, 361 B.R. 519, 524 (Bankr. C.D. Cal. 2007), *aff'd*, 503 B.R. 99 (C.D. Cal. 2013), *aff'd*, 647 F.App'x 689 (9th Cir. 2016) ("For more than a century, the central requisite of due process has been the right to a meaningful opportunity to be heard.").

27. In these cases, the discovery process has been entirely one-sided. Whereas the Plan Proponents were able to build on work done in the state court receivership by taking further discovery over the course of a year, other parties in interest were only given access to this evidence of the Debtors' alleged Ponzi scheme earlier this month. It is not reasonable to expect them to conduct the discovery necessary to show which transfers were pursuant to legitimate business activities in just the time between August 1 and September 8, especially when they have no way of knowing which transferees, and which transfers, whether will be targeted in future avoidance actions. A blanket holding that all of the Debtors' transfers, including transfers to trade creditors as payment for legitimate services, would be premature.

28. Finally, the proposed Ponzi Finding is procedurally improper. It is axiomatic that a fraudulent transfer claim is "a proceeding to recover money or property" that must be brought by adversary proceeding pursuant to Fed. R. Bankr. 7001(a). The proposed Ponzi Finding seeks to conclusively establish an element of a fraudulent transfer claim, specifically the requirement that the transfer be made with the "actual intent to hinder, delay, or defraud" creditors. 11 U.S.C. § 548(a)(1)(A). As such, it plainly must be determined in an adversary proceeding.

29. As a result of these due process violations, entry of a blanket Ponzi Finding would lead to significant unnecessary litigation later in the Case. Future defendants will argue that the Ponzi Finding, if entered, is not binding on them due to lack of effective notice and an opportunity to defend. To resolve these motions, including appeals, would require years and result in extensive legal fees. Thus, it also is not in the best interest of the estate for the Court to make a Ponzi Finding at this stage in the Case.

## Conclusion

30. A Ponzi Finding is not necessary to the requirements of plan confirmation under 11 U.S.C. § 1129. The Debtors' request for a blanket Ponzi Finding ignores the caselaw in this Circuit that requires a fact-intensive inquiry when a putatively fraudulent business included some legitimate business operations, and would prejudice the rights of hundreds of third parties to due process and a meaningful opportunity to conduct discovery in defense of the claims that will later be brought against them. For these reasons, Cantaloupe respectfully requests that the Court not enter the Ponzi Finding requested by the Plan Proponents at confirmation of the Debtors' Plan.

Dated: August 22, 2025

/s/ Aaron Brecher
Aaron Brecher (WSBA No. 47212)

**ORRICK, HERRINGTON & SUTCLIFFE LLP**
401 Union Street, Suite 3300
Seattle, WA 98101
Telephone: (206) 839-4300
Email: abrecher@orrick.com

Lorraine McGowen (admitted *pro hac vice*)
David Litterine-Kaufman (admitted *pro hac vice*)
Michael Trentin (admitted *pro hac vice*)
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-5000
Email: lmcgowen@orrick.com
mtrentin@orrick.com

*Counsel for Cantaloupe, Inc.*

CANTALOUPE'S OPPOSITION TO
PONZI SCHEME FINDING – Page 11