Danny Newman, WSBA 61824
(Lead Attorney)
Email: danny.newman@tonkon.com
Tonkon Torp LLP
1300 SW 5th Avenue, Suite 2400
Portland, OR 97201
  Main: 503.221.1440
  Facsimile: 503.274.8779
    *Attorneys for Debtors and*
    *Debtors-in-Possession*

## UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| REFRESHING USA, LLC,<br><br>Debtors[1], | Lead Case No. 24-01863-11<br>(Jointly Administered)<br><br>**FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025)** |

---

[1] Debtors and debtors-in-possession in these Chapter 11 cases ("Bankruptcy Case(s)"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("Refreshing"), Case No. 24-01863-11; Water Station Management LLC (81-1202716) ("Water Station"), Case No. 24-01864-11; and Creative Technologies, LLC (46-2581888) ("Creative" and, together with Refreshing and Water Station, "Debtors"), Case No. 24-01866-11. Debtors' mailing address is: 2732 Grand Ave., Ste. 122, Everett, WA 98201.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16,
2025) - Page 1

*Debtors' and the Committee's Joint First Amended and Second Modified Chapter 11 Plan of Liquidation (July 16, 2025)* [ECF No. 1117] (the "Plan")[2] came on for hearing on September 8 and 9, 2025 (the "Confirmation Hearing"). Debtors and/or the Committee having:

a. filed, on July 11, 2025, *Debtors' and Committee's Joint First Amended and Modified Disclosure Statement (July 11, 2025)* [ECF No. 1101] (the "Disclosure Statement");

b. filed, on July 16, 2025, the Plan;

c. obtained, on July 17, 2025, the *Order Approving: (I) Proposed Disclosure Statement; (II) Solicitation and Voting Procedures; (III) Notice and Objection Procedures for Confirmation of Plan of Liquidation; and (IV) Granting Related Relief* [ECF No. 1131] (the "Solicitation Order"), which, among other things (i) approved the Disclosure Statement as having adequate information, as required under section 1125(a) of the Bankruptcy Code, (ii) authorized the Debtors to solicit votes with regard to the acceptance or rejection of the Plan, and (iii) approved the Debtors' related notices, forms, and ballots to be submitted to parties in interest in connection with voting on the Plan and the Debtors' voting procedures (the "Voting Procedures");

d. caused notice of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), and the solicitation materials and notice of the deadline for voting on the Plan and objecting to confirmation of

---

[2] Capitalized terms used but not defined in this Order shall have the meaning assigned to them in the Plan, or if not defined in the Plan, the meaning assigned to them in the Liquidation Trust Agreement.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 2

the Plan, to be distributed consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order, with such service commenced July 23, 2025, and completed on July 24, 2025, as evidenced by the Certificate of Service filed on July 25, 2025 [ECF No. 1151] (the "Solicitation Certificate of Service");

e. filed, on August 1, 2025, the *Memorandum in Support of Ponzi Scheme Findings Under Chapter 11 Plans of Liquidation* [ECF No. 1158] (the "Ponzi Brief");

f. filed, on August 1, 2025, the *Declaration of John T. Bender in Support of Memorandum in Support of Ponzi Scheme Findings Under Chapter 11 Plans of Liquidation* [ECF No. 1159] (the "Bender Declaration");

g. filed, on August 1, 2025, the *Declaration of Becky Yang O'Malley in Support of Memorandum in Support of Ponzi Scheme Findings Under Chapter 11 Plans of Liquidation* [ECF No. 1160] (the "O'Malley Declaration");

h. filed, on August 1, 2025, the *Declaration of Brian Weiss in Support of Memorandum in Support of Ponzi Scheme Findings Under Chapter 11 Plans of Liquidation* [ECF No. 1161] (the "Weiss Ponzi Declaration");

i. filed, on August 1, 2025, the *Declaration of Neal Sherman in Support of Memorandum in Support of Ponzi Scheme Findings Under Chapter 11 Plans of Liquidation* [ECF No. 1162] (the "Sherman Declaration");

j. filed, on August 1, 2025, the *Notice of Errata Regarding Declaration of Brian Weiss in Support of Memorandum in Support of Ponzi*

*Scheme Findings Under Chapter 11 Plans of Liquidation* [ECF No. 1163] (the "Weiss Errata");

k. filed, on August 4, 2025, *Debtors' Statement and Joinder to Official Committee of Unsecured Creditors Memorandum in Support of Ponzi Scheme Findings Under Chapter 11 Plans of Liquidation* [ECF No. 1165] (the "Debtors' Joinder");

l. filed, on September 3, 2025, the *Ballot Summary* [ECF No. 1230] (the "Ballot Summary");

m. filed, on September 3, 2025, the *Debtors' Memorandum in Support of Confirmation of Debtors' and Committee's First Amended & Second Modified Ch. 11 Plan of Liquidation (July 16, 2025)* [ECF No. 1231] (the "Confirmation Brief");

n. filed, on September 4, 2025, the *Declaration of Brian Weiss in Support of Memorandum in Support of Confirmation of Debtors' and Committee's First Amended & Second Modified Ch. 11 Plan of Liquidation (July 16, 2025)* [ECF No. 1237] (the "Weiss Confirmation Declaration");

o. filed, on August 22, 2025, *the Notice of Filing of Plan Supplement* [ECF No. 1210] (the "Plan Supplement"); and

p. filed, on September 3, 2025, the *Notice Proposed Confirmation Order* [ECF No. 1232];

The Bankruptcy Court, having:

a. set September 8 and 9, 2025, at 10:00 a.m. (prevailing Pacific Time) as the date and time for the commencement of the Confirmation Hearing, pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 4

b. reviewed the Disclosure Statement, the Plan, the Confirmation Brief, the Plan Supplement, the Ponzi Brief, the Ballot Summary, the Bender Declaration, the O'Malley Declaration, the Weiss Ponzi Declaration, the Weiss Confirmation Declaration, the Sherman Declaration, the Weiss Errata, the Debtors' Joinder, and all pleadings, exhibits, statements, responses, and comments filed in the Chapter 11 Cases regarding confirmation of the Plan ("Confirmation") and making of the Ponzi Findings (as defined below), including any objections, statements, and reservations of rights filed by parties in interest on the docket of the Chapter 11 Cases;

c. held the Confirmation Hearing, including hearing live testimony of Brian Weiss in support of Confirmation and the making of the Ponzi Findings;

d. heard and considered the statements and arguments made by counsel with respect to the Plan, the Ponzi Findings and Confirmation and the objections, if any, thereto;

e. heard and considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding the Plan, the Ponzi Findings, and Confirmation and the objections, if any, thereto;

f. overruled any and all objections (to the extent not withdrawn) to the Plan, Confirmation, the Ponzi Findings, and this Confirmation Order and all statements and reservations of rights not consensually resolved or withdrawn, unless otherwise indicated; and

g. taken judicial notice of all pleadings and other documents filed, all evidence proffered or adduced, and all arguments presented, in connection with the Plan.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 5

**NOW THEREFORE**, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to the Plan, Confirmation, and the Ponzi Findings having been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions and settlements contemplated thereby; and the record of the Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of Confirmation and presented at the Confirmation Hearing including, but not limited to, the Confirmation Brief, the Plan Supplement, the Ballot Summary, the Ponzi Brief, the Bender Declaration, the O'Malley Declaration, the Weiss Ponzi Declaration, the Weiss Confirmation Declaration, the Sherman Declaration, the Weiss Errata, and the Debtors' Joinder establish just cause for the relief granted in this Confirmation Order; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact, conclusions of law, and order:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**IT IS HEREBY DETERMINED, FOUND, ADJUDGED, DECREED, AND ORDERED THAT:**

**A.** **Findings of Fact and Conclusions of Law.**

1. The findings of fact and conclusions of law set forth in this Confirmation Order and on the record at the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as made applicable herein by Bankruptcy Rules 7052 and 9014. All findings of fact and conclusions of law announced by the Bankruptcy Court at the Confirmation Hearing in relation to Confirmation and the Ponzi Findings are hereby incorporated into this Confirmation Order to the extent not inconsistent herewith. To the extent any of the following conclusions of law

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 6

constitute findings of fact, or vice versa, they are adopted as such.

**B.      Jurisdiction, Venue, and Core Proceeding.**

2.      The Bankruptcy Court has subject matter jurisdiction over the Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.  Venue is proper under 28 U.S.C. §§ 1408 and 1409.  Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court may enter a final order consistent with Article III of the Constitution.

**C.      Eligibility for Relief.**

3.      The Debtors were and continue to be entities eligible for relief under section 109 of the Bankruptcy Code.

4.      The Debtors and the Official Committee of Unsecured Creditors appointed in these Chapter 11 Cases (the "Committee" and, together with the Debtors, the "Plan Proponents") are proper plan proponents under section 1121 of the Bankruptcy Code.

**D.      Commencement and Joint Administration of the Chapter 11 Cases.**

5.      On the Petition Date, Involuntary Petitions were filed against each Debtor in the Bankruptcy Court for the Southern District of Texas ("Texas Court") under chapter 11 of the Bankruptcy Code.  On October 27, 2024, the Texas Court entered Orders Directing Joint Administration of the Chapter 11 Cases.  On November 14, 2024, on motion to transfer venue filed by Debtors, the Texas Court transferred the Chapter 11 Cases to this Court.  Since the entry of orders for relief, the Debtors have managed their bankruptcy estates as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in the Chapter 11 Cases.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 7

## E. Appointment of the Committee.

6. On October 20, 2023, the Office of the United States Trustee for the Eastern District of Washington (the "U.S. Trustee") appointed the Committee pursuant to section 1102(a)(1) of the Bankruptcy Code [ECF No. 102] and amended such appointment on October 30, 2023 [ECF No. 112].

## F. Judicial Notice.

7. The Bankruptcy Court takes judicial notice (and deems admitted into evidence for purposes of Confirmation) of all pleadings and other documents filed, all evidence proffered or adduced, and all arguments presented, in connection with the Plan, including the hearing to consider the adequacy of the Disclosure Statement and the Confirmation Hearing.

## G. Plan Supplement.

8. The Plan Supplement complies and is consistent with the Bankruptcy Code and the terms of the Plan, and the filing and notice of the Plan Supplement was good and proper and in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of the United States Bankruptcy Court for the Eastern District of Washington (the "Local Rules"), the Solicitation Order, and the facts and circumstances of the Chapter 11 Cases. No other or further notice is or will be required with respect to the Plan Supplement. All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan. All Holders of Claims who voted to accept the Plan and who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified and supplemented by the Plan Supplement and this Confirmation Order. Subject to the terms of the Plan, the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement before the Effective Date subject to compliance with the Bankruptcy Code and the Bankruptcy Rules, *provided*, that no

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 8

such alteration, amendment, update, or modification shall be inconsistent with the terms of this Confirmation Order or the terms of the Plan.

**H.      Transmittal and Mailing of Solicitation Materials; Notice.**

9.      The Plan, the Solicitation Order, the ballots for voting on the Plan (the "Ballots"), the notice of the Confirmation Hearing, and the other materials distributed by the Debtors in connection with Confirmation of the Plan (collectively, the "Confirmation Materials") were transmitted and served in compliance with the Bankruptcy Rules, including Bankruptcy Rules 3017 and 3018, the Local Rules, and the procedures set forth in the Solicitation Order.

10.      Notice of the Confirmation Hearing was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases.  The transmittal and service of the Confirmation Materials complied with the procedures set forth in the Solicitation Order, were appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases, were conducted in good faith, and were in compliance with the provisions of the Bankruptcy Court's orders, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any other applicable rules, laws, and regulations.  All parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) were given due, proper, timely, and adequate notice in accordance with the procedures set forth in the Solicitation Order.  Because such transmittal and service were adequate and sufficient, no other or further notice is necessary or shall be required.

**I.      Voting.**

11.      Prior to the Confirmation Hearing, the Debtors filed the Ballot Summary.  As set forth in the Ballot Summary, the procedures used to solicit votes on the Plan and to tabulate the Ballots were fair and conducted in accordance with

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 9

the Solicitation Order, the Bankruptcy Code, the Bankruptcy Rules, and all other applicable rules, laws, and regulations.

12. As set forth in the Plan, Holders of Claims in Classes 1, 2, 3, 4, 5, 6, and 7 (collectively, the "Voting Classes") were eligible to vote on the Plan pursuant to the Voting Procedures. Holders of Claims in Class 8 and Holders of Interests in Class 9 (collectively, the "Deemed Rejecting Classes") have been deemed to reject the Plan and are not eligible to vote on the Plan.

**J.     Good-Faith Solicitation (11 U.S.C. § 1125(e)).**

13. Based on the record before the Bankruptcy Court in the Chapter 11 Cases, the Plan Proponents and each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professionals, representatives, and successors of the referenced Person have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, the Solicitation Order, the Voting Procedures, and any other applicable rules, laws, and regulations in connection with all of their respective activities relating to the solicitation of votes on the Plan, their participation in the Chapter 11 Cases, and the activities described in section 1125 of the Bankruptcy Code, and therefore, are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

**K.     Burden of Proof.**

14. The Plan Proponents have met their burden of proving the applicable elements of section 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation.

**L.	Bankruptcy Rule 3016.**

15.	The Plan is dated and identifies the Plan Proponents as the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Plan Proponents appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).  The Plan and Disclosure Statement describe in specific and conspicuous language any acts and actions to be enjoined and identify the Persons that would be subject to injunctions, thereby satisfying Bankruptcy Rule 3016(c).

**M.	Objections.**

16.	To the extent that any objections (including any reservations of rights) to Confirmation of the Plan or the Ponzi Findings have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, or are not otherwise resolved under this Confirmation Order or as stated by the Debtors and/or the Committee on the record of the Confirmation Hearing, all such objections are overruled on the merits.  Any resolutions of objections to entry of this Confirmation Order explained on the record at the Confirmation Hearing are hereby incorporated by reference.

**N.	Conduct of a Ponzi Scheme.**

17.	As set forth in the Ponzi Brief, the Bender Declaration, the O'Malley Declaration, the Weiss Ponzi Declaration, the Sherman Declaration, the Weiss Errata, and the Debtors' Joinder, from at least March 2018 through September 2024, Debtors perpetrated a scheme to defraud thousands of victims by raising nearly $400 million in outside capital under false pretenses, failing to deploy investor funds as promised, and misappropriating and converting funds for unauthorized purposes including the enrichment of insiders.  To execute the scheme, Debtors falsely held the WST Enterprise (as defined below) out to the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 11

public as the manufacturer, assembler, seller, servicer, and owner of a highly profitable, nationwide vending machine business.

18. Based on the evidence above and the evidence presented at the Confirmation Hearing, the Bankruptcy Court hereby finds (the "Ponzi Findings"), that (i) the "WST Enterprise," consisting of Debtors in these consolidated cases and their related affiliates (*see* O'Malley Declaration, Ex. Q, ¶ 2, Appendix C), operated as a single economic unit; (ii) the WST Enterprise inextricably commingled their financial affairs; (iii) the WST Enterprise had insufficient operating income to meet their liabilities on a current basis no later than March 1, 2018; (iv) the WST Enterprise routinely used funds raised from machine purchasers, bond issues, and lenders to make payments owed to earlier investors and creditors; and (v) the WST Enterprise operated as Ponzi scheme no later than March 1, 2018 (the "Ponzi Start Date"). *See In re EPD Inv. Co.,* 114 F.4th 1148, 1162–63 (9th Cir. 2024). The findings in Paragraphs 17 and 18 of this Order shall not be binding on First Fed Bank, First Northwest Bancorp, and/or their respective current and former officers, directors, employees, agents, attorneys, insurers, loan participants (including the Main Street SPV), and trustees (collective, the "First Fed Released Parties"), or be entitled to any preclusive effect against the First Fed Released Parties, in any forum or proceeding other than the Bankruptcy Court and the Chapter 11 Cases (but, for the avoidance of doubt, shall not be binding or entitled to any preclusive effect against the First Fed Released Parties in other proceedings that may be in the Bankruptcy Court).

**O.      Modifications or Alterations to the Plan.**

19. To the extent the Plan has been modified, supplemented, or altered between solicitation and the date of entry of this Confirmation Order, pursuant to the Plan Supplement or otherwise (collectively, the "Modifications"), such

Modifications made to the Plan constitute clarifications or technical changes, and do not materially and adversely affect or change the treatment of any Claims against, or Equity Interests in, the Debtors and comply in all respects with section 1127 of the Bankruptcy Code.  All such Modifications are incorporated by reference herein and approved.  Accordingly, pursuant to Bankruptcy Rule 3019, such Modifications, if any, do not require (a) additional or further disclosure with respect to the Modifications under section 1125 of the Bankruptcy Code and/or (b) either resolicitation of votes on the Plan or affording Holders of Claims in the Voting Classes the opportunity to change a previously cast Ballot under section 1126 of the Bankruptcy Code.

**P.	Compliance with the Requirements of Section 1129 of the Bankruptcy Code.**

20.	As detailed below, the Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

**1.	Compliance With Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).**

21.	The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

**i.	Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).**

22.	The classification of Claims and Equity Interests under the Plan is proper under the Bankruptcy Code.  Except with respect to Administrative Claims, Priority Tax Claims, and Professional Fee Claims, which need not be classified, Article III of the Plan classifies all Claims against, and Equity Interests in, the Debtors into nine (9) separate Classes based on the characteristics of those Claims and Equity Interests.  Valid business, factual, and legal reasons exist for the

separate classification of the various Classes created under the Plan, the classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Equity Interests. Each Class of Claims or Equity Interests contains only Claims or Equity Interests that are substantially similar to the other Claims or Equity Interests within that Class. Accordingly, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

### ii. Unimpaired Classes (11 U.S.C. § 1123(a)(2)).

23. Article 4 of the Plan specifies the Classes of Claims that are unimpaired under the Plan, as required by section 1123(a)(2) of the Bankruptcy Code. Administrative Claims and Priority Tax Claims are not classified under and are unimpaired by the Plan. Accordingly, the Plan satisfies section 1123(a)(2) of the Bankruptcy Code.

### iii. Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).

24. Article 5 of the Plan specifies the treatment of each Class of Claims and Interests that is impaired, as required by section 1123(a)(3) of the Bankruptcy Code. The Plan specifies that Claims in Class 1 (First Fed Secured Claim), Class 2 (C2FO Secured Claim), Class 3 (Acquisition Secured Claims), Class 4 (352 Secured Claim), Class 5 (Other Secured Claims), Class 6 (Other Priority Claims), and Class 7 (General Unsecured Claims) are impaired and entitled to vote on the Plan, while Claims or Equity Interests in Class 8 (Subordinated Claims) and Class 9 (Interests) are impaired and deemed to reject the Plan. In addition, Article 5 of the Plan describes the treatment of the Claims and Interests in such Classes. Accordingly, the Plan satisfies section 1123(a)(3) of the Bankruptcy Code.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 14

#### iv. No Discrimination (11 U.S.C. § 1123(a)(4)).

25. The treatment of each Allowed Claim within a Class is the same as the treatment of each other Allowed Claim in that Class unless the Holder of a Claim in such Class consents to less favorable treatment on account of its Claim. Accordingly, the Plan satisfies section 1123(a)(4) of the Bankruptcy Code.

#### v. Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

Article 7 and various other provisions of the Plan provide in detail adequate and proper means for the Plan's implementation, including, but not limited to, (as more fully described in the Plan): (a) authorization to enter into any transaction and take any action necessary or appropriate to execute and accomplish the Plan; (b) creation of the Liquidation Trust; (c) authorization to execute the Liquidation Trust Agreement and take all other steps necessary to transfer to the Liquidation Trust all Liquidation Trust Assets; (d) authorization to make Plan Distributions from the Liquidation Trust and Liquidation Trust Assets in accordance with the Plan and Liquidation Trust Agreement; (e) authorization for the Liquidation Trustee to pursue all Retained Causes of Action; and (f) authorization to undertake all company actions necessary or appropriate to effectuate the Plan or to consummate the transactions contemplated by the Plan. Accordingly, the Plan satisfies section 1123(a)(5) of the Bankruptcy Code.

#### vi. Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

26. The Debtors will not issue any stock or other securities under the Plan. Accordingly, section 1123(a)(6) of the Bankruptcy Code is not applicable to the Plan.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16,
2025) - Page 15

### vii. Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

27. The Plan provides for the appointment of a Liquidation Trustee and the Liquidation Trust Supervisory Board, as identified in the Plan Supplement. The Plan is compliant with the Bankruptcy Code's requirement that the selection of any officer, director, or trustee be made in the interests of equity security holders, because the Plan does not provide for the creation of any equity security interests. Accordingly, the Plan satisfies section 1123(a)(7) of the Bankruptcy Code.

### viii. Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).

28. As contemplated and allowed by section 1123(b) of the Bankruptcy Code, the Plan impairs Classes of claims and interests, provides for the assumption or rejection of executory contracts, provides for the settlement of claims, retains claims, provides for the sale of all or substantially all of the property of the Estates, modifies the rights of holders of secured claims and includes other discretionary provisions, including releases, none of which are inconsistent with the applicable provisions of the Bankruptcy Code. Accordingly, the Plans satisfies section 1123(b) of the Bankruptcy Code.

29. Without limiting the preceding, the settlement set forth in Article 6 of the Plan (First Fed Settlement) and the releases set forth in Article 14 of the Plan are consistent with the applicable provisions of the Bankruptcy Code and are in the best interest of Debtors and their respective Estates and creditors. Such settlement and releases (a) are fully consensual and do not bind any Holders of Claims that did not opt-in to the settlement and releases; (b) are in exchange for good and valuable consideration; (c) represent a good faith settlement and compromise of claims; (d) were given and made after due notice and opportunity for a hearing;

24-01863-FPC11     Doc 1259     Filed 09/09/25     Entered 09/09/25 11:46:22     Pg 16 of 57

(e) are appropriate in scope, and (f) were a necessary inducement to the participation of the Debtors' stakeholders in the negotiations and compromises that led to the Plan.

30. Further, and without limiting the preceding but to the maximum extent permitted by law, the exculpation provision set forth in Article 14.D of the Plan is appropriate under applicable law because it was proposed in good faith, was formulated following extensive good faith, arm's length negotiations with key constituents, is a key element of the Plan, and is appropriately limited in scope.

31. Additionally, the provisions regarding the preservation of all Retained Causes of Actions, including those contained in Article 7 of the Plan, are in the best interests of the Debtors, their respective Estates, and their Creditors and are consistent with the provisions of the Bankruptcy Code. Without in any way limiting the Liquidation Trust's and the Liquidation Trustee's rights to pursue claims against third parties, Article 7 provides illustrative categories of Retained Causes of Action that are preserved under the Plan and will be transferred and conveyed to the Liquidation Trust as provided for in the Plan and as authorized by this Confirmation Order.

32. Additionally, the provisions regarding Substantive Consolidation in Article 8 of the Plan are appropriate under the circumstances, are in the best interests of the Debtors, their respective Estates, and their Creditors and are consistent with the provisions of the Bankruptcy Code. As set forth in more detail below, Debtors and Committee have met the standard for substantive consolidation of all the Estates of Debtors, as well as certain non-Debtor affiliates, into a single consolidated estate for all purposes associated with confirmation and consummation of the Plan.

**2.** **The Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).**

33. As detailed below, the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code.

    i. The Debtors and the Committee, as proponents of the Plan, have complied with all applicable provisions of the Bankruptcy Code, as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, 1127, 1128, and 1129 of the Bankruptcy Code, the Bankruptcy Rules, including Bankruptcy Rules 3016, 3017, 3018, and 3019, the Local Rules, the Solicitation Order, and any applicable nonbankruptcy laws, rules, and regulations in transmitting the Disclosure Statement, the Plan, the Plan Supplement, and any related documents and notices.

    ii. The votes to accept or reject the Plan were solicited by the Plan Proponents and their agents after the Bankruptcy Court approved the Disclosure Statement pursuant to section 1125 of the Bankruptcy Code and entered the Solicitation Order.

    iii. The Plan Proponents and their agents (a) have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Solicitation Order, the Disclosure Statement, the Plan, the Bankruptcy Code, the Bankruptcy

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 18

Rules, the Local Rules, and all other applicable rules, laws, and regulations, and (b) are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article 14 of the Plan.

iv. The Plan Proponents and their agents and professionals have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance, and distribution of recoveries under the Plan and, therefore, are not, and on account of such Distributions will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made thereunder, so long as such Distributions are made consistent with and pursuant to the Plan.

### 3. **Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

34. The Plan (including all documents and agreements necessary to effectuate the Plan) and the transactions and settlements contemplated in the Plan have been proposed in good faith and not by any means forbidden by law, with the legitimate and honest purpose of maximizing recoveries to parties in interest. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of the Chapter 11 Cases, the Plan itself, and the process leading to its formulation. The Plan Proponents' good faith is evident from the facts and record of the Chapter 11 Cases, the Disclosure Statement, the Plan, the record of the Confirmation Hearing, the Ponzi Brief, the Bender Declaration, the O'Malley Declaration, the Weiss Ponzi Declaration, the Sherman Declaration, the Weiss Errata, and the Debtors'

Joinder, and all other proceedings held in the Chapter 11 Cases. The Plan is the product of arm's length negotiations between the Debtors, the Committee, and other parties in interest. The Plan itself and the process leading to its formulation provide independent evidence of the Debtors' good faith, serve the public interest, and assure fair treatment of Holders of Claims and Interests. Consistent with the overriding purpose of chapter 11, the Debtors proposed the Plan with the legitimate purpose of maximizing the value of the ultimate recoveries to all creditor groups on a fair and equitable basis. The Plan's classification, indemnification, exculpation, release, and injunction provisions were negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123, 1129, and 1142 of the Bankruptcy Code, and are each necessary for implementation of the Plan.

35. The Plan Proponents and each of the constituents who negotiated the Plan, including, but not limited to, each of their respective accountants, agents, assigns, attorneys, bankers, consultants, directors, employees, executors, financial advisors, investment bankers, managers, members, officers, partners, predecessors, principals, Professionals, representatives, and successors of the referenced Person (a) acted in good faith in negotiating, formulating, and proposing the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and (b) will be acting in good faith in proceeding to (i) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan and this Confirmation Order and (ii) take any actions authorized and directed or contemplated by this Confirmation Order. Accordingly, the Plan satisfies section 1129(a)(3) of the Bankruptcy Code.

**4. Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

36.     The procedures set forth in the Plan for the Bankruptcy Court's review and ultimate determination of the fees, costs, and expenses to be paid by the Debtors, or the Liquidation Trustee, as applicable, in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, satisfy the objectives of, and are in compliance with, section 1129(a)(4) of the Bankruptcy Code.

**5. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).**

The Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code because the Debtors have disclosed that Brian Weiss will be the initial Liquidation Trustee of the Liquidation Trust and responsible for the administration and winding up of the Estates after the Effective Date. The Plan also discloses that Philip Kaestle, Sterling Davis, and Chip Maselli shall be appointed as members of the Liquidation Trust Supervisory Board. Further, the Plan includes a draft of the Liquidation Trust Agreement, which details the responsibility and compensation of the Liquidation Trustee and the Liquidation Trust Supervisory Board. Article 5.B.9(b) of the Plan identifies that on the Effective Date, all Interests in Debtors will be cancelled. Debtor's post-confirmation membership and management is consistent with the interests of Creditors and public policy. Accordingly, the Plan satisfies the requirements of section 1129(a)(5) of the Bankruptcy Code.

**6. No Rate Changes (11 U.S.C. § 1129(a)(6)).**

37.     Debtors are not subject to any governmental regulation regarding rate changes and section 1129(a)(6) of the Bankruptcy Code is not applicable.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 21

**7. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).**

38. The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code because, with respect to each impaired class of claims or interests, each holder of a claim or interest has accepted the Plan or will receive or retain on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code. The evidence presented in support of the Plan establishes that Holders of Allowed Claims or Interests will recover at least as much under the Plan on account of such Claim or Interest, as of the Effective Date, as such Holder would receive if the Debtors were liquidated, on the Effective Date, under chapter 7 of the Bankruptcy Code.

**8. Acceptance of the Plan by Certain Classes (11 U.S.C. § 1129(a)(8)).**

39. As set forth in the Ballot Summary, Classes 1 through 7 have voted to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code. Class 8 and Class 9, the Deemed Rejecting Classes, are impaired and have been deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to the Deemed Rejecting Classes, the Plan may nevertheless be confirmed because, as set forth herein, the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

**9. Treatment of Claims Entitled to Priority Under Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).**

40. The treatment of Administrative Claims and Priority Tax Claims under Articles 4.A and 4.C. of the Plan, and of Other Priority Claims under Article

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 22

5.B.6. of the Plan, satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code. Notwithstanding anything to the contrary set forth in the Plan, the Debtors agree that any reference to consent to treatment that differs from the treatment permitted by section 1129(a)(9) of the Bankruptcy Code shall require actual consent and failure to object to Confirmation of the Plan shall not be deemed to be consent to receive treatment by a Holder of a Claim other than as provided for under section 1129(a)(9) of the Bankruptcy Code.

**10. <u>Acceptance of the Plan by at Least One Impaired Class (11. U.S.C.§ 1129(a)(10))</u>.**

41. Classes 1 through 7 are impaired under the Plan and have voted to accept the Plan by more than two-thirds in amount and one-half in number, without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code). Accordingly, the Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

**11. <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.**

42. The Plan provides for the liquidation of the Debtors' assets and no further reorganization is contemplated or likely. Accordingly, the Plan satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code. The Debtors have sufficient funds available as of the Effective Date to pay all claims and expenses that are required to be paid on the Effective Date and to capitalize the Liquidation Trust to continue the work of finalizing the liquidation, including selling any minimal remaining tangible assets and pursuing Retained Causes of Action, as well as making eventual distributions.

**12.** **Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

43. The Plan requires that all fees payable by the Debtors pursuant to section 1930 of title 28 of the United States Code have been paid or will be paid, thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

**13.** **Non-Applicability of Certain Bankruptcy Code Sections (11 U.S.C. §§ 1129(a)(13), (14), (15), and (16)).**

44. The Debtors (a) do not provide or pay any "retiree benefits," as such term is defined in section 1114 of the Bankruptcy Code, (b) are not obligated to pay any domestic support obligations, (c) are not individuals, and (d) are not a corporation or trust that is not a moneyed, business, or commercial corporation or trust. Sections 1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code are, therefore, inapplicable to the Chapter 11 Cases.

**14.** **Confirmation of the Plan Over Non-Acceptance of Impaired Classes (11 U.S.C. § 1129(b)).**

45. The Plan satisfies the requirements of section 1129(b) of the Bankruptcy Code. Notwithstanding the fact that the Deemed Rejecting Classes have not accepted the Plan, the Plan may be confirmed because the evidence proffered or adduced at the Confirmation Hearing (a) is reasonable, persuasive, credible, and accurate as of the dates such evidence was prepared, presented, or proffered, (b) utilizes reasonable and appropriate methodologies and assumptions, (c) has not been controverted by other evidence, and (d) establishes that the Plan does not discriminate unfairly, and is fair and equitable, with respect to Classes 8 and 9, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code, because (i) no Class of Claims or Interests that is junior to the Claims and Interests in Classes 8 and 9 will receive distributions or retain any property under the Plan on account of such junior Claim or Interest and (ii) the Claims and Interests in

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 24

Classes 8 and 9 are "dissimilar" from the Claims and Interests in all other Classes and the Plan does not provide any distributions to similarly situated Holders of Claims or Interests.

**15.   Only One Plan (11 U.S.C. § 1129(c)).**

46.    The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan (including previous versions thereof) is the only chapter 11 plan filed in the Chapter 11 Cases.

**16.   Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

47.    The Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act of 1933, and there has been no filing by any governmental agency asserting such avoidance.

**17.   Small Business Case (11 U.S.C. § 1129(e)).**

48.    The Chapter 11 Cases are not a "small business case," as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is not applicable.

**Q.   Satisfaction of Confirmation Requirements.**

49.    Based upon the foregoing, the Plan Proponents have met their burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.  The Plan satisfies all the requirements for Confirmation set forth in section 1129 of the Bankruptcy Code.

**R.   Substantive Consolidation.**

50.    Based on the evidence presented to the Bankruptcy Court, Debtors and Committee have met the *In re Bonham* standard for substantive consolidation of all the Estates of Debtors, and the non-Debtor affiliates identified for substantive consolidation in the Plan, into a single consolidated estate for all purposes

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 25

associated with confirmation and consummation of the Plan. *Bonham v. Compton (In re Bonham)*, 229 F.3d 750 (9th Cir. 2000). Such substantive consolidation is fair and equitable and is in the best interests of the Debtors, their Estates, the non-Debtor affiliates, and the Holders of Claims and Interests. Although Creditors generally may not have treated all of the Debtors as one legal entity, there was substantial commingling of assets and liabilities among the Debtors and their non-Debtor affiliates. An unscrambling of Debtors' and their affiliates' accounts and books and records is not feasible, including because the books and records are unreliable. This, in addition to a perpetration of a fraudulent scheme by a common corporate enterprise, warrants substantive consolidation. The affairs of Debtors and their non-Debtor affiliates identified in the Plan are so entangled that consolidation will benefit all creditors. The substantive consolidation shall be done in a manner to preserve avoidance actions of each Debtor and non-Debtor affiliate in the Liquidation Trust for the benefit of creditors and does not in any way impair any avoidance action or other cause of action held by any Debtor or non-Debtor affiliate before the substantive consolidation is effectuated. Here, substantive consolidation results in equitable treatment to all creditors and is not being used to disadvantage any particular creditor group. Accordingly, the requirements of substantive consolidation are satisfied and the substantive consolidation of all Debtors and certain non-Debtor affiliates in accordance with the Plan, including preservation of causes of action, is warranted and approved. *See In re Bonham*, 229 F.3d at 764-65.

**S.** **Disclosure of Facts.**

51. The Debtors have disclosed all material facts, to the extent applicable, regarding the Plan and the adoption, execution, and implementation of the other matters provided for under the Plan, including, without limitation, (a) the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 26

establishment of the Liquidation Trust and the execution and entry into the Liquidation Trust Agreement; (b) the identity of the Liquidation Trustee and their proposed compensation; (c) the adoption and making of the Ponzi Findings; (d) the method and manner of Distributions under the Plan; I the Releases, Exculpation Clause, injunctions, and preservation of the Retained Causes of Action; and (e) the adoption, execution, and delivery of all agreements or documents related to any of the foregoing.

**T.      Liquidation Trust Agreement.**

52.      The Liquidation Trust Agreement, and the Liquidation Trust to which it relates, are, individually and collectively, essential elements of the Plan, and entry into the Liquidation Trust Agreement is in the best interests of the Debtors, their Estates, and the Holders of Claims and Interests and is necessary and appropriate for consummation of the Plan.  The Debtors have exercised sound business judgment in determining to enter into the Liquidation Trust Agreement and have provided adequate notice thereof.  The terms of the Liquidation Trust Agreement have been negotiated in good faith and at arm's length among the Debtors and the Committee and are deemed to have been made in good faith and for legitimate business purposes.  The terms and conditions of the Liquidation Trust Agreement set forth in the Plan Supplement are fair and reasonable.

**U.      Likelihood of Satisfaction of Conditions Precedent to the Effective Date.**

53.      Without limiting or modifying the rights of the Debtors, each of the conditions precedent to the Effective Date, as set forth in Article 15.A. of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article 15.B. of the Plan, including by and through the Plan Supplement and its exhibits.

## V. Implementation.

54. All documents necessary to implement the Plan, including those contained in the Plan Supplement, and all other relevant and necessary documents (including, without limitation, the Liquidation Trust Agreement) have been negotiated in good faith and at arm's length, are in the best interests of the Debtors, and shall, upon completion of documentation and execution, and in accordance with the terms and conditions thereof, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law. The Debtors have exercised reasonable business judgment in determining which agreements to enter into and have provided sufficient and adequate notice of such documents and agreements. The terms and conditions of such documents and agreements have been and are continuing to be negotiated in good faith, at arm's length, are fair and reasonable, and are approved. The Debtors are authorized, without any further notice to or action, order, or approval of the Bankruptcy Court to finalize and execute and deliver all agreements, documents, instruments, and certificates relating thereto and perform their obligations thereunder in accordance with the Plan.

## W. Retention of Jurisdiction.

55. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Plan, this Confirmation Order, and the Chapter 11 Cases, to the fullest extent permitted by law, as set forth in Article 17 of the Plan.

24-01863-FPC11    Doc 1259    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 28 of 57

**X.    Waiver of Stay.**

56.    Given the facts and circumstances of the Chapter 11 Cases, it is appropriate that the 14-day stay imposed by Bankruptcy Rules 3020(e) and 7062(a) be waived.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACTS AND CONCLUSIONS OF LAW, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED, THAT:**

**A.    Approval of the Plan.**

57.    The Plan is approved in its entirety and is confirmed in all respects. A copy of the Plan is attached hereto as **Exhibit A**.  The terms of the Plan, including the Plan Supplement and any exhibits attached thereto, are incorporated by reference into and are an integral part of this Confirmation Order (whether or not such terms are expressly referenced or described herein).  The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement, or any related document or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Bankruptcy Court that the Plan, the Plan Supplement, and any related document or exhibit are approved and confirmed in their entirety.  The terms of the Plan, the Plan Supplement, all exhibits thereto, and all other relevant and necessary documents shall be effective and binding as of the Effective Date.

**B.    Objections.**

58.    To the extent that any objections (including any reservation of rights) to Confirmation have not been withdrawn, waived, or settled prior to entry of this Confirmation Order, or otherwise resolved as stated by the Debtors on the record

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 29

of the Confirmation Hearing, all such objections are denied and overruled on the merits and in their entirety.

**C.    Amendment of the Plan.**

59.    Subject to the requirements of section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019, and, to the extent applicable, sections 1122, 1123, and 1125 of the Bankruptcy Code, the Debtors may alter, amend, or modify the Plan at any time prior to the Effective Date.  Holders of Claims that have accepted the Plan shall be deemed to have accepted the Plan, as altered, amended, or modified, if the proposed alteration, amendment, or modification complies with the requirements of this paragraph 62 and Article 16 of the Plan, and does not materially and adversely change the treatment of the Claim of such Holder.

**D.    Plan Classification.**

60.    The Plan's classification scheme is approved.  The terms of the Plan shall solely govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim as representing the actual classification of such Claim under the Plan for distribution purposes; and (d) shall not be binding on the Debtors or the Liquidation Trust except for voting purposes.

**E.    First Fed Settlement.**

61.    The First Fed Settlement Agreement and related provisions set forth in Article 6 of the Plan, including the releases contemplated thereby, are incorporated

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 30

in the Plan in full, and are approved in their entirety and the Court explicitly approves such releases as a key component of the First Fed Settlement Agreement and overall scheme, compromises and settlement that form the basis of the Plan. In the event of any inconsistency between the Plan, the Plan Supplement, and/or this order, on the one hand, or the First Fed Settlement Agreement, on the other, the First Fed Settlement Agreement shall control.

62.     As set forth in the Ballot Summary, more than 80% of Water Station Owners (as defined in the First Fed Settlement Agreement) opted into the First Fed Settlement Agreement.  Accordingly, First Fed Bank will make a supplemental payment of $2,870,000 in accordance with Paragraph 2(b) of the First Fed Settlement Agreement.

**F.      Comprehensive Settlement of Claims and Controversies.**

63.     Pursuant to sections 1123(a)(5), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, as well as Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan constitute a good faith compromise and settlement of all claims and controversies relating to the rights that a Holder of a Claim or an Interest may have against any Debtor with respect to any Claim, Interest, or any Distribution on account thereof, as well as of all potential intercompany Claims, intercompany liens, and Causes of Action against any Debtor.  Entry of this Confirmation Order constitutes the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are (i) in the best interest of the Debtors, the Estates, and their respective property and stakeholders; and (ii) fair, equitable, and reasonable.

24-01863-FPC11     Doc 1259     Filed 09/09/25     Entered 09/09/25 11:46:22     Pg 31 of 57

### G. Ponzi Findings.

64. Entry of this Confirmation Order constitutes Ponzi Findings that (i) the "WST Enterprise," consisting of Debtors in these consolidated cases and their related affiliates (*see* O'Malley Declaration, Ex. Q, ¶ 2, Appendix C), operated as a single economic unit; (ii) the WST Enterprise inextricably commingled their financial affairs; (iii) the WST Enterprise has insufficient operating income to meet their liabilities on a current basis no later than March 1, 2018; (iv) the WST Enterprise routinely used funds raised from machine purchasers, bond issues, and lenders to make payments owed to earlier investors and creditors; and (v) the WST Enterprise operated as Ponzi scheme no later than March 1, 2018 (the "Ponzi Start Date"). The Ponzi Findings are not binding on any other court or governmental or regulatory authority.

65. The Ponzi Findings, including the finding of the Ponzi Start Date, are not preclusive or binding on the First Fed Released Parties in any other court or governmental or regulatory authority, or in any other proceedings in this Court. None of the Debtors, the Committee, the Liquidation Trust, nor the Liquidation Trustee will seek to enforce the same against the First Fed Released Parties in this Bankruptcy Court. In the event any party attempts to assert the Ponzi Findings are binding against any of the First Fed Released Parties in any other proceeding, such First Fed Released Parties shall be entitled to seek relief from this Court to enforce the First Fed Released Parties' rights pursuant to this Order and the First Fed Settlement Agreement. In addition, the substantive consolidation of the Debtors shall not affect or diminish any defenses or rights of the First Fed Released Parties with respect to any claims associated with the Debtors or any individual Debtor, including any deposit accounts held by a Debtor at First Fed Released Parties. The Plan Proponents acknowledge and agree that: the First Fed Released Parties

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16,
2025) - Page 32

are not Creditors or parties to this proceeding, that the First Fed Released Parties have not had a full or fair opportunity to litigate any Ponzi Findings to a final order or judgment, and that no claims have been specifically asserted against the First Fed Released Parties, or otherwise adjudicated in any manner against such parties in relation to the Plan or through Confirmation of the Plan.

66. These Ponzi Findings are a critical component of the Plan and are designed to provide a resolution of the innumerable disputed intercompany and intercreditor Claims, Liens, and Causes of Action that otherwise could take years to resolve, which would delay and undoubtedly reduce the Distributions that ultimately would be available for all Creditors, as well as a basis for Creditors to, as applicable, seek certain treatment for their losses due to the Ponzi scheme under the United States Tax Code.

67. On August 22, 2025, Creditor Lenders Funding filed an *Objection to Ponzi Scheme Findings* [ECF No. 1208]. Lenders Funding's objection has been resolved and withdrawn [ECF No. 1222].

68. On August 22, 2025, Creditor Cantaloupe, Inc. filed a *Response of Cantaloupe, Inc. to the Ponzi Scheme Brief Filed by the Official Committee of Unsecured Creditors* [ECF No. 1212] in opposition to the Ponzi Brief. Cantaloupe Inc.'s concerns have been addressed and it no longer opposes the Ponzi Brief.

69. Any finding of fact or conclusion of law by the Bankruptcy Court or any appellate court in connection with the confirmation of the Plan related to the existence of a Ponzi scheme, a Ponzi start date, or any fraud or misconduct by or on behalf of the Debtors, shall have no preclusive effect on Cantaloupe, Inc. or any of its affiliates ("Cantaloupe"), shall not be binding on Cantaloupe in any future litigation or proceeding by or against Cantaloupe in any tribunal, and shall not be relied upon or cited by any party in support of a claim against Cantaloupe in any

such future litigation or proceeding.  Any and all rights and defenses of Cantaloupe, the Debtors, the Committee, the Liquidation Trust, and/or the Liquidation Trustee are preserved.

70.     Any finding of fact or conclusion of law by the Bankruptcy Court or any appellate court in connection with the confirmation of the Plan relating to any finding of a Ponzi scheme, a Ponzi start date, or any fraud or misconduct by or on behalf of the Debtors, or any claim or cause of action asserted against Seaga Manufacturing, Inc. ("Seaga"), shall have no preclusive effect on Seaga and shall not be binding on Seaga in any future litigation or proceeding against Seaga in any tribunal.  Neither the Debtors, the Committee, the Liquidation Trust, nor the Liquidation Trustee will pursue any action in the Bankruptcy Court against Seaga, nor seek to enforce any such findings against Seaga or contend that Seaga is bound by any such findings; provided that, in the event Seaga files a motion or complaint in the Bankruptcy Court asserting a monetary claim or seeking affirmative recovery of funds from the Debtors' Estates or the Liquidation Trust (beyond filing a proof of claim) based on any activity, the Debtors, the Committee, the Liquidation Trust, or the Liquidation Trustee (as applicable) will be permitted to respond to such action and seek to enforce the findings.

71.     Any finding of fact or conclusion of law by the Bankruptcy Court or any appellate court in connection with the confirmation of the Plan (including any underlying facts, evidence or expert reports submitted in support of such finding of fact or conclusions of law) relating to any finding of (i) a Ponzi scheme (including the Ponzi Finding); (ii) a Ponzi start date; (iii) any fraud or misconduct by or on behalf of the Debtors, shall have no preclusive effect on 352 Capital and shall not be binding on 352 Capital in any current or future litigation or proceeding by or against 352 Capital (including in any claim objection) in any court, tribunal or

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 34

authority.  Without limitation on the foregoing, neither the Debtors, the Committee, the Liquidation Trust, nor the Liquidation Trustee will seek to enforce any such findings or conclusions against 352 Capital or contend that 352 Capital is bound by any such findings or conclusions.  Any and all rights and defenses of 352 Capital to defend claims, claim objections, causes of action against it, commence any action, or to rebut any facts or underlying reports/findings or conclusions in connection with the Ponzi scheme are preserved.

72.    "352 Capital" means 3/5/2 Capital GP LLC, 3/5/2 Capital ABS Master Fund, Leucadia Asset Management LLC, any accounts managed by Leucadia Asset Management through its 3/5/2 Capital Division and "352 Capital Claims" means all claims held by 352 Capital and claims of U.S. Bank Trust Company, National Association, as trustee, relating to the bonds issued by Water Station Management, LLC pursuant to an indenture dated April 29, 2022 (as subsequently modified from time to time).

**H.    <u>Substantive Consolidation of Debtors.</u>**

73.    On the Effective Date, Debtors and the non-Debtor affiliates listed in Article 8 of the Plan shall be substantively consolidated for all purposes relating to the Plan, including voting, Confirmation and Distributions, with the express exception that all causes of action, including avoidance actions, held by Debtors and the non-Debtor affiliates are vested into the Liquidating Trust as they were held before the substantive consolidation, and such substantive consolidation shall not provide any additional defense or prejudice the Liquidating Trust as to any element of any cause of action held thereby.  Except as provided in Paragraph 65 above or to the extend provided in Article 5.B.4 of the Plan, the Substantive Consolidation Provisions set forth in Article 8 of the Plan are approved in their entirety.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 35

**I. Liquidation Trust.**

74. The Liquidation Trust is approved. The Liquidation Trust Agreement, substantially in the form filed with the Plan Supplement, as such Plan Supplement may be amended in accordance with the Plan and this Confirmation Order is approved. On the Effective Date, the Liquidation Trust Assets shall automatically vest in the Liquidation Trust, free and clear of all Claims, liens, or interests, and such vesting shall be exempt from any stamp, real estate transfer, other transfer, mortgage reporting, sales, use, or other similar tax. The Liquidation Trustee shall be the exclusive trustee of the Liquidation Trust Assets for purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to section 1123(b)(3) of the Bankruptcy Code regarding all Liquidation Trust Assets. The Liquidation Trust shall administer, hold, and distribute the Liquidation Trust Assets in accordance with the provisions of the Plan and the Liquidation Trust Agreement.

75. Notwithstanding anything to the contrary in the Plan or this Order, nothing in the Plan or this Order releases the liens of any Secured third party lender of a Water Station Owner on the net sale proceeds of any water station machines if sold, or the water station machines if not sold.

**J. Appointment of Liquidation Trustee.**

76. The appointment of Brian Weiss as the Liquidation Trustee to perform the functions of the Liquidation Trustee as set forth in Article 11 of the Plan and the Liquidation Trust Agreement is hereby approved. The Liquidation Trustee shall have the rights, powers, and obligations set forth in, and shall be entitled to reimbursement of their costs and expenses incurred in connection with exercising their functions under, the Plan in accordance with the Plan and the Liquidation Trust Agreement.

**K.   Corporate Action.**

77.   On the Effective Date, all matters under the Plan involving or requiring action of the directors, members, managers, or officers of the Debtors, shall be deemed to have been authorized by this Confirmation Order and to have occurred and be in effect from and after the Effective Date, without any further action by the Bankruptcy Court or the directors, members, managers, or officers of the Debtors.

78.   Without limiting the generality of the foregoing, on the Effective Date and automatically and without further action, (a) any existing director, manager, or officer of the Debtors will be deemed to have resigned on the Effective Date without any further corporate action, (b) the Liquidation Trustee shall be deemed the manager, officer, and representative of the Liquidation Trust to exercise the rights, power, and authority of the Liquidation Trust under applicable provisions of the Plan and bankruptcy and non-bankruptcy law, and (c) all matters provided under the Plan shall be deemed to be authorized and approved without further approval from the Bankruptcy Court.  This Confirmation Order modifies the Debtors' constituent documents such that the provisions of the Plan can be effectuated.  The Plan shall be administered by the Liquidation Trustee, and all actions taken thereunder in the name of the Liquidation Trust shall be taken through the Liquidation Trustee.  All corporate governance activities of the Liquidation Trust shall be exercised by the Liquidation Trustee in their discretion, subject to the terms of the Plan and the Liquidation Trust Agreement.

**L.   Closing of the Chapter 11 Cases.**

79.   As soon as practicable after the Liquidation Trustee exhausts substantially all of the Liquidation Trust Assets by making the final Distributions under the Plan, the Liquidation Trustee shall, at the expense of the Liquidation

Trust, (a) abandon, destroy, or otherwise dispose of any books and records of the Debtors that the Liquidation Trustee deem not necessary for the continued administration of the Plan or required to be retained under any applicable agreements of the Debtors or the Liquidation Trust or applicable law (as determined by the Liquidation Trustee in good faith), without the need for any order of the Bankruptcy Court, (b) file a motion for entry of a final decree closing the Chapter 11 Cases that have not been already closed in accordance with the Bankruptcy Code and the Bankruptcy Rules and stating that the assets of the Liquidation Trust have been exhausted and final Distributions have been made under the Plan, (c) file the necessary paperwork in the respective jurisdictions to effectuate the dissolution of the Debtors in accordance with the laws of such jurisdiction, and (d) resign as the officer, director, and manager, as applicable, of the Debtors.  Upon the Bankruptcy Court's entry of a Final Order granting the motion described in clause (b) of the preceding sentence, the Debtors shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors or payments to be made in connection therewith, and the remaining Chapter 11 Cases shall be closed on the date that the Bankruptcy Court has entered such Final Order.

80.    Notwithstanding the immediately preceding paragraph, if the Liquidation Trustee deems it appropriate, the Liquidation Trustee may seek authority from the Bankruptcy Court to close any of the Chapter 11 Cases and dissolve or merge any of the Debtors prior to all final Distributions having been made under the Plan.

**M.    Books and Records.**

81.    On the Effective Date, the Debtors' books and records shall be transferred to the Liquidation Trustee.  The Liquidation Trustee shall be free, in

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16,
2025) - Page 38

their discretion to abandon, destroy, or otherwise dispose of the books and records in compliance with any applicable agreements of the Debtors or the Liquidation Trust or applicable non-bankruptcy law, or any other order of the Bankruptcy Court, at any time on and after the Effective Date, without the need for any other or further order; *provided, however*, that neither the Debtors nor the Liquidation Trustee shall destroy or otherwise abandon any books, records, electronically stored information, or other documents without providing advance notice to the Securities Exchange Commission (100 Pearl Street, Suite 20-100, New York, NY 10004-2616; zetlinjonesj@sec.gov), which shall have seven (7) days to object to any proposed destruction or abandonment, and with authorization from the Bankruptcy Court; *provided further* that, nothing in the Plan or this Confirmation Order shall affect the obligations of the Debtors, the Liquidation Trust, and/or any transferee or custodian to maintain any books and records that are subject to any governmental subpoena, document preservation letter, or other investigative request from a governmental agency.

**N.      Dissolution of the Debtors.**

82.      As provided in Paragraph 79, as soon as practicable after the Liquidation Trustee exhausts substantially all of the Liquidation Trust Assets by making the final Distributions under the Plan, the Liquidation Trustee is authorized to file necessary paperwork in the respective jurisdictions to effectuate the dissolution of the Debtors in accordance with the laws of such jurisdictions.

**O.      Cancellation of Indebtedness.**

83.      Except as otherwise specifically provided in the Plan, on the Effective Date, except for the purpose of evidencing a right to Distribution under the Plan, any Notes or other instruments or documents evidencing or creating any

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 39

indebtedness or obligations of, or interest in, the Debtors shall be cancelled and terminated and of no further force or effect.

**P.      Effectuating Documents; Further Transactions.**

84.      On and after the Effective Date, the Liquidation Trustee is authorized to, and may issue, execute, deliver, file, or record, such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan or the Liquidation Trust Agreement, without the need for any approvals, authorization, or consents, except for those expressly required pursuant to the Plan.

85.      The approvals and authorizations specifically set forth in this Confirmation Order are not intended to limit the authority of the Debtors or the Liquidation Trustee, as applicable, to take any and all actions necessary or appropriate to implement, effectuate, and consummate any and all document or transactions contemplated by the Plan or this Confirmation Order.

**Q.      Section 1146 Exemption.**

86.      In accordance with section 1146 of the Bankruptcy Code and Washington Administrative Code 458-61A-207, no stamp tax, conveyance fee, real estate, excise, or other transfer tax, mortgage tax, mortgage recording tax, Uniform Commercial Code filing or recording filing fee, or similar tax shall apply to (a) the sale or transfer of Liquidation Trust Assets to the Liquidation Trust; (b) the issuance, Distribution, transfer, or exchange of notes or equity securities under the Plan; (c) the establishment of any mortgage, deed of trust, lien, pledge, or other security interest, or the execution or delivery of any lease, sublease, deed, or other transfer instrument related to or in support of the Plan; or (d) the sale of any real estate by the Liquidation Trust.  Upon entry of this Confirmation Order, the

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 40

appropriate state or local governmental officials or agents and any third party shall forgo the collection of any such tax, recordation fee, or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or assessment.

**R.      Preservation of Rights of Action.**

87.      Except as otherwise provided in the First Fed Settlement Agreement, the Plan or this Confirmation Order, in accordance with section 1123(b) of the Bankruptcy Code, from and after the Effective Date, the Liquidation Trust will retain all rights to institute, commence, file, pursue, prosecute, enforce, abandon, settle, compromise, release, waive, dismiss, or withdraw, as appropriate, any and all of the Debtors' or Estates', including those belonging to non-Debtor affiliates that are substantively consolidated under the Plan, Retained Causes of Action and Causes of Action that are Contributed Claims (whether existing as of the Petition Date or thereafter arising), and all Avoidance Actions, all Retained Causes of Action, in each case in any court or other tribunal, including in an adversary proceeding Filed in the Chapter 11 Cases, subject to the requirements set forth in the Plan and the Liquidation Trust Agreement.  The Liquidation Trust shall have the exclusive right, power, and interest on behalf of itself, the Debtors, the Estates, substantively consolidated non-Debtor affiliates' and the Contributing Claimants to, enforce, sue on, settle, compromise, transfer, or assign (or decline to do any of the foregoing) any or all of the Retained Causes of Action without notice to or approval from the Bankruptcy Court, subject to the Liquidation Trust Agreement. In accordance with the Plan, without any further notice to or action, order, or approval of the Bankruptcy Court, from and after the Effective Date, the Liquidation Trust may compromise and settle Retained Causes of Action, subject to the Liquidation Trust Agreement.  For the avoidance of doubt, nothing in the

Disclosure Statement or the Plan shall require the Liquidation Trust to commence or pursue litigation concerning any Retained Cause of Action.

88. The failure to specifically identify in the Disclosure Statement (including its exhibits and schedules) or the Plan any potential or existing Retained Causes of Action (including Avoidance Actions that are Retained Causes of Action) as a Retained Cause of Action is not intended to and shall not limit the rights of the Liquidation Trustee to pursue any such Retained Causes of Action (including Avoidance Actions that are Retained Causes of Action). Unless a Retained Cause of Action is expressly waived, relinquished, released, compromised, or settled in the Plan (including by virtue of not being a Retained Cause of Action) or any Final Order (including this Confirmation Order), the Debtors expressly reserve such Retained Cause of Action for later resolution by the Liquidation Trust (including any Retained Causes of Action (including Avoidance Actions that are Retained Causes of Action) not specifically identified or of which the Debtors may presently be unaware or that may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts or circumstances that may change or be different from those the Debtors now believe to exist). In addition, the right to pursue or adopt any claims alleged in any lawsuit in which any Debtor or the Liquidation Trust is a plaintiff, defendant, or an interested party is fully reserved as against any Person that is not a Released Party, including the plaintiffs or co-defendants in such lawsuits. No preclusion doctrine, including the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to any Retained Causes of Action upon, after, or as a consequence of the confirmation of the Plan.

## S. Releases, Exculpation, and Injunctions.

89. The release, exculpation, and injunction provisions set forth in Article 14 of the Plan are hereby approved and authorized in their entirety. Such provisions are deemed to be restated in this Confirmation Order in their entirety.

90. Without limiting the above, entry of this Confirmation Order shall constitute (i) the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases set forth in Article 14 of the Plan; and (ii) the Bankruptcy Court's findings that such releases are (1) in exchange for good and valuable consideration provided by the Released Parties (including performance of the terms of the Plan), and a good-faith settlement and compromise of the released claims, (2) in the best interests of the Debtors, the Estates, and any Holders of Claims that are Releasing Parties, (3) fair, equitable, and reasonable, (4) given and made after due notice and opportunity for hearing, and (5) a bar to any of the Releasing Parties asserting any released Cause of Action against any of the Released Parties.

91. For the avoidance of doubt, the release does not apply to Ryan Wear, Richard Wear, Jordan Chirico, and the Released Parties shall not include them nor any other prepetition insider of any of the Debtors, any non-Debtor affiliates of the Debtors or insider of any such non-debtor affiliates, any prepetition employee of any of the Debtors involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors, and any other Person (including any "broker," salesperson, consultant, affiliated entity, or professional) involved in any way in the prepetition marketing or sale of any products offered by any of the Debtors.

92. This Confirmation Order shall serve as a permanent injunction against any Person seeking to enforce any Causes of Action against the Exculpated Parties that are encompassed by the exculpation provided by the Plan.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 43

93. Except as otherwise expressly provided in the Plan, and except in connection with the enforcement of the Plan or any documents provided for or contemplated in the Plan, all Persons who have held, hold, or may hold Claims against or Equity Interests in the Debtors or the Estates that (i) have been released pursuant to the Plan or (ii) are subject to exculpation pursuant to the Plan, are permanently enjoined from and after the Effective Date from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection, or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Interest; (c) creating, perfecting, or enforcing, directly or indirectly, any lien or encumbrance of any kind against the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, or recoupment of any kind against any obligation due to the Debtors, the Estates, or their successors and assignees, or any of their assets and property, with respect to any such Claim or Interest, unless approved by the Bankruptcy Court; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Without limiting the foregoing, the automatic stay provided under section 362(a) of the Bankruptcy Code shall remain in effect until the Chapter 11 Cases are closed. Nothing contained in Article 14 of the Plan shall prohibit the Holder of a Filed proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of the Plan,

or enjoin or prohibit the interpretation or enforcement by the Holder of such Claim or Interest of any of the obligations of the Debtors or the Liquidation Trustee under the Plan.

94. Upon entry of this Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions of any kind against the Liquidation Trustee, the Liquidation Trust, or any of the Liquidation Trust Assets that interfere with the implementation or consummation of the Plan, except to the extent preserved under Article 5.B.4 of the Plan or in relation to any claim objection (in each case preserving rights to file any counter-claims).

95. The Liquidation Trust shall be entitled, as liquidated damages, to the payment of any fees and costs incurred by the Liquidation Trust to address any violation of the injunctions contained herein or in the Plan to the extent the Liquidating Trust prevails in such dispute.

**T.    Provisions Governing Distributions.**

96. The distribution provisions of Article 12 of the Plan are approved in their entirety.  The Liquidation Trustee shall make all Distributions under the Plan to the appropriate Holders of Allowed Claims in accordance with the terms of the Plan and the Liquidation Trust Agreement, as applicable.

**U.    Post-Confirmation Notices, Professional Compensation, and Bar Dates.**

> **1.    Notice of Entry of the Confirmation Order and Occurrence of the Effective Date.**

97. In accordance with Bankruptcy Rules 2002 and 3020(c), promptly after the occurrence of the Effective Date, the Debtors shall promptly cause notice of confirmation of the Plan and the occurrence of the Effective Date (the "Notice

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 45

of Effective Date"), to be served by e-mail or United States first class mail to all parties served with the notice of the Confirmation Hearing; *provided*, that the Debtors are excused from distributing the Notice of Effective Date to those addresses from which one or more prior notices served in these Chapter 11 Cases were returned as undeliverable unless the Debtors are provided with updated addresses for such entities before the Effective Date. Mailing of the Notice of Effective Date in the time and manner set forth in this paragraph will be good, adequate, and sufficient notice under the particular circumstances and in accordance with the requirements of Bankruptcy Rules 2002 and 3020(c). No further notice is necessary.

98. The Notice of Effective Date will constitute sufficient notice of the entry of this Confirmation Order to filing and recording officers and will be a recordable instrument notwithstanding any contrary provision of applicable non-bankruptcy law.

### 2. **Final Administrative Claims Bar Date.**

99. The provisions governing the treatment of Allowed Administrative Claims set forth in Article 4.A. of the Plan are approved in their entirety. Administrative expense requests asserting Administrative Claims arising from the Petition Date through and including the Effective Date, excluding (a) Claims of Professionals in the Chapter 11 Cases and (b) claims arising in the ordinary course of business, must be filed no later than thirty (30) calendar days after service of the Notice of Effective Date, with such date to be provided in the Notice of Effective Date (the "Administrative Claims Bar Date"). Holders of Administrative Claims who are required to, but do not, file a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall forever be barred, estopped and enjoined from asserting such Administrative Expense Claim. Notwithstanding

24-01863-FPC11    Doc 1259    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 46 of 57

the foregoing, pursuant to section 503(b)(1)(D) of the Bankruptcy Code, no Governmental Unit shall be required to file a request for payment of any Administrative Expense Claim of a type described in sections 503(b)(1)(B) or 503(b)(1)(C) of the Bankruptcy Code as a condition to such Claim being Allowed.

### 3. Substantively Consolidated Non-Debtor Affiliates Claims Bar Date.

100. Claims of Creditors of the non-Debtor affiliates substantively consolidated into Debtors' Estates, as listed in Article 8 of the Plan, arising from the Petition Date through and including the Effective Date (the "Non-Debtor Affiliates Claims"), must be filed no later than thirty (30) days after service of the Notice of Effective Date is filed with the Bankruptcy Court, or such later date as may be established by order of the Bankruptcy Court (the "Non-Debtor Affiliates Claims Bar Date"). Holders of Non-Debtor Affiliates Claims who are required to, but do not, file a Proof of Claim for such Non-Debtor Affiliate Claims by the Non-Debtor Affiliates Claims Bar Date, shall forever be barred, estopped and enjoined from asserting such Non-Debtor Affiliates Claims.

### 4. Bar Date for Professional Fee Claims.

101. The provisions governing Professional Fee Claims set forth in Article 4.B. of the Plan are approved in their entirety. All final requests for compensation or reimbursement of Professional Fee Claims for services performed and expenses incurred prior to the Effective Date shall be filed no later than 30 days after service of the Notice of Effective Date unless otherwise agreed by the Debtors or the Liquidation Trustee, as applicable.

### 5. Bar Date for Rejection Damages Claims.

102. Any claim asserted in connection with any executory contracts or unexpired leases rejected under the Plan must be filed no later than thirty (30) days

after service of the Notice of Effective Date ("Rejection Claim Bar Date"). Holders of rejection claims who are required to, but do not, file a Proof of Claim by the Rejection Claim Bar Date shall forever be barred, estopped and enjoined from asserting such claim.

**6. Notice of Subsequent Pleadings.**

103. Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Cases after the Effective Date shall be limited to the following parties: (a) the Liquidation Trustee (as set forth in the Liquidation Trust Agreement); (b) the U.S. Trustee; and (c) any Person that files a renewed request for notice under Bankruptcy Rule 2002 after the Effective Date.

**V. Payment of Statutory Fees.**

104. The Debtors shall timely make all payments required under the Plan. Without limiting the generality of the foregoing, the Liquidation Trust shall be responsible for the timely payment of quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6) following Confirmation until the Case Closing Date. After Confirmation, the Liquidation Trust shall serve on the U.S. Trustee quarterly a financial report for each quarter (or portion thereof) the Chapter 11 Cases remain open. The financial report shall include a statement of all disbursements made during the course of the relevant quarter, whether or not pursuant to the Plan.

**W. Effectiveness of All Actions.**

105. All actions authorized to be taken pursuant to the Plan, including, without limitation, entry into the Liquidation Trust Agreement, shall be effective on, prior to, or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Bankruptcy Court, or further action by the respective officers, directors, managers, members, or stockholders of the Debtors or the Liquidation Trustee and with the effect that such actions had been

24-01863-FPC11    Doc 1259    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 48 of 57

taken by unanimous action of such officers, directors, managers, members, or stockholders.

106. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplement, the Disclosure Statement, the Liquidation Trust Agreement, and any other documents, instruments, securities, or agreements, and any amendments or modifications thereto, including with respect to the Exit Financing.

## X.     **Conflicts.**

107. Except as set forth in the Plan, to the extent that any provision of the Plan Supplement or any other document (but excluding, for the avoidance of doubt, this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing), conflict with or are in any way inconsistent with any provision of the Plan (without reference to the Plan Supplement), the Plan (without reference to the Plan Supplement) shall govern and control; *provided*, *however*, that notwithstanding anything herein or in the Plan to the contrary, in the event of a conflict between this Confirmation Order, on the one hand, and any of the Plan, the Plan Supplement, or any other documents (but excluding, for the avoidance of doubt, this Confirmation Order) referenced in the Plan (or any exhibits, schedules, appendices, supplements, or amendments to any of the foregoing) on the other hand, this Confirmation Order shall govern and control in all respects.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 49

**Y.      Texas Tax Authorities.**

108.    Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Allowed Claims of the Texas Tax Authorities with respect to real property ad valorem taxes (the "Texas Tax Authority Claims") shall be classified as Class 5 "Other Secured Claims."  The Texas Tax Authority Claims are secured claims under §§32.01 and 32.05 of the Texas Property Tax Code and §506(b) of the Bankruptcy Code.  The Texas Tax Authorities liens shall continue to attach to the real property collateral and proceeds of the sale of said real property collateral until said taxes are paid in full.

109.    The Texas Tax Authority Claims shall be paid in full from the sale of the respective real properties which secure said claims.  Upon the sale of the respective real properties, the corresponding ad valorem tax lien for pre-petition and any post-petition ad valorem taxes, including all accrued penalties and interest, shall attach to the sales proceeds of such real property to the same extent and priority as the existing tax lien and these taxes shall be paid in full immediately upon closing by the closing agent or Trustee prior to disbursement of any cash proceeds of the sale to any other person or entity.  The ad valorem tax lien for the then current year, if not paid in full at closing, shall be retained against the sold property and shall be assumed by the respective buyer who shall be liable to pay said post-petition ad valorem taxes in the ordinary course prior to delinquency. Post-petition interest shall accrue at the statutory rate of twelve percent (12%) per annum from the Petition Date to the Effective Date and post-confirmation interest will accrue at the rate of twelve percent (12%) per annum from the Effective Date until said taxes are paid in full.  The above referenced Texas Tax Authority Claims shall not be subject to any subordination and/or surcharge.

110. The Texas Tax Authorities are not required to file administrative expense claims and/or requests for payments for any post-petition ad valorem taxes (tax year 2025 and subsequent) pursuant to 11 U.S.C. §503(b)(1)(D). The Reorganized Debtors' rights and defenses under Texas state law and the Bankruptcy Code with respect to this provision of the Order, including their right to dispute or object to the Texas Tax Authorities Claims and liens, are fully preserved.

**Z. <u>Treatment of Water Vending Claim.</u>**

111. Notwithstanding anything in the Plan, the rights, liens, claims, and priorities of Upwell Water LLC, Water Vending LLC and/or Water Vending Assets LLC (collectively "Water Vending") with respect to its asserted collateral are fully preserved and shall be treated as a Class 5 Claim. To the extent any portion of Water Vending's Claims are Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of Class 7 General Unsecured Claims to the extent so Allowed. Nothing herein shall prejudice Water Vending's rights to assert, defend, or enforce its claims, liens, or remedies under applicable law or the Bankruptcy Code.

**AA. <u>Treatment of Clarendon Estate Claim.</u>**

112. Notwithstanding any provision of the Plan or the Confirmation Order to the contrary, confirmation of the Plan shall in no way interfere with the Chapter 7 Trustee's administration of the 3422 Clarendon Ave, LLC bankruptcy case, its estate, or its assets (the "Clarendon estate"). The Clarendon estate shall not be deemed an affiliate, shall not be substantively consolidated or merged with the Debtors, and shall not otherwise be subject to the findings in support of the confirmation order. Any administrative expense of the Clarendon Estate filed

herein is preserved, subject to notice and hearing, and opportunity to object. Debtors reserve all of their rights against the Clarendon Estate as well.

**BB.  SEC Rights.**

113.  Notwithstanding any language to the contrary in the Disclosure Statement, the Plan, and/or this Confirmation Order, no provision shall (i) preclude the SEC from enforcing its police or regulatory powers or (ii) enjoin, limit, impair, or delay the SEC from commencing or continuing any claims, causes of action, proceedings, or investigations against any non-Debtor Person or non-Debtor entity in any forum.

**CC.  US Bank and 352 Capital Indenture.**

114.  U.S. Bank Trust Company, National Association, as trustee ("U.S. Bank" or "Trustee") for holders of the notes issued by Water Station, asserts certain rights and interests under the Indenture between Water Station, as Issuer, and U.S. Bank, as Trustee dated April 29, 2022 (as amended from time to time, the "Indenture"), including certain funds held in a reserve account under the Indenture ("Reserve Account").  Notwithstanding anything to the contrary in the Plan:

115.  The Trustee shall have an allowed secured claim of $517,968.75 (the "Reserve Account Claim") for funds held in the Reserve Account under Section 10.2(d) of the Indenture.  The Reserve Account Claim will be treated as an Other Secured Claim under Class 5 of the Plan.  On the Effective Date, the Debtor and the Liquidating Trustee relinquish any claim to the Reserve Account.  The Trustee may pay any Priority Expenses and Covered Costs (as defined in the Indenture) without further order of the Court or consent of the Debtor or the Liquidating Trustee from the Reserve Account.  The Trustee shall provide notice and a statement of the Priority Expenses and Covered Costs to 352 Capital before paying any claims.  After ten (10) calendar days, the Trustee will pay any Priority

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 52

Expenses and Covered Costs from the Reserve Account, except any amount subject to good faith objection from 352 Capital delivered to the Trustee before the expiration of the ten (10) day period. In the event there is an objection by 352 Capital, the dispute shall be resolved by the Bankruptcy Court upon a motion filed by U.S. Bank. The Trustee anticipates that it will incur additional fees, costs, and expenses relating to post-confirmation activities, including responding to discovery in various litigation. Upon conclusion of the Trustee's involvement or potential involvement in such actions, if there are any funds remaining in the Reserve Account, the Trustee will distribute those funds to 352 Capital for distribution pro rata to all Noteholders (as defined in the Indenture).

116. Upon termination of the Indenture under Article 7.D of the Plan, the Trustee shall have no further duty to the Debtor, the Liquidating Trustee, 352 Capital or any holder of a security under the Indenture, except as expressly set forth in this Confirmation Order.

117. The Trustee shall assign its U.S. Bank Trustee Claim (which includes the U.S. Bank Temporary Claim) (each as defined in the *Voting Stipulation* [Docket No. 1202 and 1209]) to 352 Capital. The assignment is for the benefit of all Noteholders, and is expressly subject to the Trustee's rights, claims and interests under Sections 5.5, 5.6, 5.8, 6.7, 10.2, 11.2, 11.3, and 12.11 of the Indenture. Any distribution on account of the Indenture (including the 352 Capital Claims and the U.S. Bank Trustee Claim) shall be made directly to 352 Capital, and subject to payment of any Covered Expense of Trustee, which shall first be applied from the Reserve Account, shall be distributed pro rata to Noteholders. Notwithstanding any other provision in the Plan or the Confirmation Order, and subject to the Trustee's rights under the Indenture, U.S. Bank shall provide any

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 53

necessary consents and otherwise cooperate with respect to assignment of the claim and distributions on account of the Indenture.

118. Notwithstanding termination of the Indenture under Article 7D of the Plan, the Trustee's right to indemnification under Section 6.7 of the Indenture shall survive termination of the Indenture for all purposes, including, but not limited to, the Trustee's right to assert a priority claim under Section 5.6 of the Indenture to any distribution made to 352 Capital under the Plan, provided that the Trustee shall have exhausted the Reserve Account prior to asserting a priority claim to any distributions made to 352 Capital. The Liquidation Trustee shall give concurrent written notice to 352 Capital and the Trustee of any distribution to 352 Capital under the Plan. Notice to the Trustee shall be provided to U.S. Bank Trust Company, National Association, 190 South LaSalle Street, Chicago, IL 60603, Attention: Nicolas Valaperta, with a copy to Greenberg Traurig, LLP, 90 South 7th Street, Suite 3500, Minneapolis, MN 55402, Attention: Michael B. Fisco and Carlos A. Alonso Gayon.

**DD. Reservation of Rights.**

119. Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court shall enter this Confirmation Order. None of the filing of the Plan, any statement or provision contained herein, or the taking of any action by any Debtor with respect to the Plan shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders of Claims or Interests before the Effective Date.

**EE. Severability.**

120. In the event the Bankruptcy Court determines, before Confirmation, that any provision in the Plan is invalid, void, or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 54

valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified without consent of the Debtors; and (c) nonseverable and mutually dependent.

**FF.    Non-Occurrence of Effective Date Conditions.**

121.    If the conditions necessary for the Effective Date are not met or duly waived as outlined in Article 15 of the Plan, upon notification filed by the Debtors with the Bankruptcy Court, the following shall occur: (i) this Confirmation Order will be vacated; (ii) no Distributions will be made; (iii) the Debtors, the Estates, the Committee, and all Creditors will revert to the status quo as of the day immediately preceding the Confirmation Hearing as if the Confirmation Order had not been entered; and (iv) all obligations of the Debtors and the Estates regarding Claims will remain unchanged.  Nothing in the Plan will constitute a waiver or release of any Claims by or against the Debtors, the Estates, or any other Person, nor will it prejudice the rights, claims, or defenses of the Debtors, the Estates, or any other Person.

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 55

## GG. Retention of Jurisdiction.

122. Pursuant to sections 105(c) and 1142 of the Bankruptcy Code, and notwithstanding entry of this Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court retains jurisdiction and power over all matters arising in, arising under, or related to the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including the jurisdiction and power related to those matters set forth in Article 17 of the Plan.

## HH. Dissolution of Committee.

123. Upon the occurrence of the Effective Date, the Committee shall dissolve automatically, whereupon its members, professionals, and agents shall be released from any duties and responsibilities in the Chapter 11 Cases and under the Bankruptcy Code (except with respect to (a) obligations arising under confidentiality agreements, which shall remain in full force and effect, (b) applications for allowance and payment of the fees of Professionals, and (c) any pending motions or other actions seeking enforcement or implementation of the provisions of the Plan).

## II. Final Order.

124. This Confirmation Order is a Final Order and the period in which an appeal must be filed shall commence upon entry hereof.

## JJ. Enforceability of Plan.

125. Pursuant to sections 1123(a), 1141(a), and 1142 of the Bankruptcy Code, the Plan and all Plan-related documents shall be, and hereby are, valid, binding, and enforceable. Upon the occurrence of the Effective Date, the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding on the Debtors, all Creditors and Holders of Interests, and all other Persons in accordance with their respective terms.

**KK.  Substantial Consummation.**

126.  "Substantial Consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code, shall be deemed to occur on the Effective Date.

**LL.  Immediate Binding Effect.**

127.  Notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan shall be immediately effective and enforceable and deemed binding upon the Debtors, and any and all Holders of Claims or Interests (irrespective of whether such Claims or Interests are deemed to have accepted the Plan), all Persons and Entities that are party, or subject, to the settlements, compromises, releases, and injunctions described in the Plan, each Person and Entity acquiring property under the Plan, and the respective heirs, executors, administrators, successors or assigns, affiliates, officers, directors, agents, representatives, attorneys, beneficiaries, or guardians, if any, with respect to the foregoing.

///End of Order///

Presented by:


By: */s/ Danny Newman*
        Danny Newman, WSBA No. 61824
        Tonkon Torp LLP
        1300 SW 5th Avenue, Suite 2400
        Portland, OR 97201
044904\00001\18672365v9

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING
FIRST AMENDED AND SECOND MODIFIED PLAN OF LIQUIDATION (JULY 16, 2025) - Page 57