Danny Newman, WSBA 61824
  (Lead Attorney)
  Email:  danny.newman@tonkon.com
TONKON TORP LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Main:  503.221.1440
Facsimile:  503.274.8779

*Attorneys for Debtors and
Debtors-in-Possession*

- and -

Michael J. Gearin, WSBA 20982
  Email:  michael.gearin@klgates.com
K&L GATES LLP
925 Fourth Ave., Suite 2900
Seattle, WA 98104-1158
  *Attorneys for Official Committee of
  Unsecured Creditors of Refreshing
  USA, LLC, Water Station
  Management LLC, and Creative
  Technologies, LLC*

HONORABLE FREDERICK P. CORBIT

# UNITED STATES BANKRUPTCY COURT

# EASTERN DISTRICT OF WASHINGTON

REFRESHING USA, LLC,

Debtors[1],

Lead Case No. 24-01863-11
(Jointly Administered)

**DEBTORS' AND COMMITTEE'S
JOINT FIRST AMENDED AND
SECOND MODIFIED CHAPTER
11 PLAN OF LIQUIDATION
(JULY 16, 2025)**

---

[1] Debtors and debtors-in-possession in these Chapter 11 Cases ("*Bankruptcy Case(s)*"), along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (85-3358945) ("*Refreshing*"), Case No. 24-01863-11; Water Station Management LLC (81-1202716) ("*Water Station*"), Case No. 24-01864-11; and Creative Technologies, LLC (46-2581888) ("*Creative*" and, together with Refreshing and Water Station, "*Debtors*"), Case No. 24-01866-11.  Debtors' mailing address is 2732 Grand Ave., Ste. 122, Everett, WA 98201.

Exhibit A
Page 1 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 1 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 1 of 78

# TABLE OF CONTENTS

Page

ARTICLE 1.    INTRODUCTION AND EXECUTIVE SUMMARY ...................1

ARTICLE 2.    DEFINED TERMS, RULES OF INTERPRETATION,
              COMPUTATION OF TIME, AND GOVERNING LAW ..............1

A.    Defined Terms ............................................................................1
B.    Rules of Interpretation ................................................................14
C.    Computation of Time ...................................................................16
D.    Governing Law ............................................................................16
E.    Reference to Monetary Figures ....................................................16
F.    Controlling Document ..................................................................16

ARTICLE 3.    [RESERVED] .....................................................................16

ARTICLE 4.    ADMINISTRATIVE CLAIMS AND PRIORITY TAX
              CLAIMS...............................................................................16

A.    Administrative Claims..................................................................17
B.    Professional Fee Claims ...............................................................17
C.    Priority Tax Claims......................................................................19
D.    Statutory Fees and Related Reporting Obligations ......................19

ARTICLE 5.    CLASSIFICATION AND TREATMENT OF CLAIMS
              AND INTERESTS ..............................................................20

A.    Classification of Claims and Interests ..........................................20
B.    Treatment of Claims and Interests................................................20
C.    Special Provision Governing Unimpaired Claims ........................25
D.    Subordinated Claims....................................................................25
E.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting
      Classes ........................................................................................25
F.    Nonconsensual Confirmation .......................................................26
G.    [RESERVED]................................................................................26
H.    Controversy Concerning Impairment ...........................................26
I.    No Waiver....................................................................................26
J.    Ponzi Findings ............................................................................26

ARTICLE 6.    FIRST FED SETTLEMENT AND RELATED OPT-IN
              PROCESS............................................................................27

A.    First Fed Settlement.....................................................................27
B.    Unsecured Creditor Opt-In ..........................................................27
C.    Settlement Contribution...............................................................28

ARTICLE 7.    MEANS FOR IMPLEMENTATION OF THE PLAN .................29

A.    Restructuring Transactions ...........................................................29
B.    Sources of Consideration for Plan Distributions/Interface with Ideal
      Plan of Liquidation ....................................................................30
C.    The Liquidation Trust, Liquidation Trustee, and Liquidation Trust
      Supervisory Board ......................................................................31
D.    Cancellation of Securities and Agreements....................................31
E.    Company Action ........................................................................32
F.    Effectuating Documents; Further Transactions...............................32
G.    Section 1146 Exemption..............................................................32
H.    Preservation of Retained Causes of Action ...................................33
I.    Closing the Chapter 11 Cases ......................................................34
J.    U.S. Securities and Exchange Commission ....................................34

ARTICLE 8.    SUBSTANTIVE CONSOLIDATION.............................35

ARTICLE 9.    TREATMENT OF EXECUTORY  CONTRACTS AND
             UNEXPIRED LEASES ..............................................38

A.    Rejection of Executory Contracts and Unexpired Leases ...............38
B.    [Reserved].................................................................................38
C.    Indemnification Obligations ........................................................38
D.    Claims Based on Rejection of Executory Contracts or Unexpired
      Leases.......................................................................................39
E.    Preexisting Obligations to Debtors Under Executory Contracts and
      Unexpired Leases........................................................................39
F.    Modifications, Amendments, Supplements, Restatements, or Other
      Agreements ...............................................................................40
G.    Reservation of Rights .................................................................40
H.    Nonoccurrence of Effective Date .................................................40

ARTICLE 10.  [RESERVED] .........................................................40

ARTICLE 11.  LIQUIDATION TRUST AND LIQUIDATION TRUSTEE ........40

A.    Liquidation Trust Criteria...........................................................40
B.    Purpose of the Liquidation Trust .................................................41
C.    The Liquidation Trust Assets ......................................................41
D.    Beneficiaries of the Liquidation Trust..........................................42
E.    Distribution of the Liquidation Trust Assets .................................42
F.    Transfer of Assets to the Liquidation Trust...................................42
G.    Interests in Liquidation Trust Assets ...........................................43
H.    Appointment of the Liquidation Trustee .......................................43
I.    Rights and Powers of Debtors and the Liquidation Trustee...........44
J.    Distribution and Withholding.......................................................44
K.    Insurance..................................................................................44

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 3 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 3 of 78

L.    Other Rights and Remedies ........................................................45
M.   Priority Claims Reserve.............................................................45
N.   Disputed Claims Reserve..........................................................46
O.   Attribution of Income ..............................................................46
P.    Current Basis ............................................................................47
Q.   Tax Identification Numbers......................................................47
R.   Wind-Down ..............................................................................47
S.    Termination of Liquidation Trust and Liquidation Trustee .........48
T.    Transfer of Beneficial Interests ...............................................48

ARTICLE 12.   PROVISIONS GOVERNING DISTRIBUTIONS ......................49

A.   Timing and Calculation of Amounts to be Distributed .................49
B.   Delivery of Distributions and Undeliverable, Unclaimed, or Forfeited
      Distributions ............................................................................49
C.   Compliance With Tax Requirements .........................................52
D.   Allocations...............................................................................53
E.    No Postpetition Interest on Claims ..........................................53
F.    Foreign Currency Exchange Rate .............................................53
G.   Setoffs and Recoupment ..........................................................53
H.   Claims Paid or Payable by Third Parties...................................54
I.    Applicability of Insurance Policies...........................................55

ARTICLE 13.   PROCEDURES FOR RESOLVING CONTINGENT,
            UNLIQUIDATED, AND DISPUTED CLAIMS AND
            INTERESTS ...............................................................................55

A.   Allowance of Claims and Interests ...........................................55
B.   Prosecution of Objections to Claims and Interests.....................55
C.   Estimation of Claims ...............................................................56
D.   Expungement or Adjustment to Claims Without Objections.........57
E.    Time to File Objections to Claims............................................57
F.    Disallowance of Claims ...........................................................57
G.   Amendments to Claims ............................................................58
H.   No Distributions Pending Allowance ........................................58
I.    Distributions After Allowance..................................................58

ARTICLE 14.   TERMINATION OF CLAIMS, RELEASE,  INJUNCTION,
            AND RELATED PROVISIONS ..................................................58

A.   Termination of Claims and Interests .........................................58
B.   Release of Liens.......................................................................59
C.   Release Provision.....................................................................60
D.   Exculpation .............................................................................62
E.    Document Retention ................................................................63
F.    Reimbursement or Contribution ...............................................63
G.   Term of Injunctions or Stays ...................................................63

24-01863-FPC11   Doc 1117   Filed 07/16/25   Entered 07/16/25 12:03:53   Pg 4 of 78
24-01863-FPC11   Doc 1259-1   Filed 09/09/25   Entered 09/09/25 11:46:22   Pg 4 of 78

ARTICLE 15.  CONDITIONS PRECEDENT TO CONSUMMATION OF
            THE PLAN..........................................................................64

A.  Conditions Precedent to the Effective Date....................................64
B.  Waiver of Conditions.....................................................................64
C.  Effect of Failure of Conditions .....................................................65

ARTICLE 16.  MODIFICATION, REVOCATION, OR WITHDRAWAL
            OF THE PLAN ..................................................................65

A.  Modification and Amendments ......................................................65
B.  Effect of Confirmation on Modifications ......................................65
C.  Revocation or Withdrawal of Plan ................................................65

ARTICLE 17.  RETENTION OF JURISDICTION ...................................66

ARTICLE 18.  MISCELLANEOUS PROVISIONS ............................................68

A.  Binding Effect...............................................................................68
B.  Additional Documents ...................................................................69
C.  Reservation of Rights ....................................................................69
D.  Successors and Assigns .................................................................69
E.  Dissolution of the Committee ........................................................69
F.  Notices ..........................................................................................70
G.  Entire Agreement ..........................................................................71
H.  Exhibits.........................................................................................71
I.  Non-Severability of Plan Provisions .............................................71
J.  Votes Solicited in Good Faith .......................................................71
K.  Closing of Chapter 11 Cases .........................................................72

24-01863-FPC11     Doc 1117     Filed 07/16/25     Entered 07/16/25 12:03:53     Pg 5 of 78
24-01863-FPC11     Doc 1259-1     Filed 09/09/25     Entered 09/09/25 11:46:22     Pg 5 of 78

# ARTICLE 1.
## INTRODUCTION AND EXECUTIVE SUMMARY

Debtors and the Committee jointly propose the following Debtors' and Committee's Joint First Amended and Second Modified Chapter 11 Plan of Liquidation pursuant to Section 1121(a) of the Bankruptcy Code.

In connection with this Plan, Debtors and the Committee have jointly Filed the Disclosure Statement, which Debtors and the Committee contend satisfies the requirements of 11 U.S.C. §§ 1125 and 1126. The Disclosure Statement provides useful information to assist creditors in voting on the Plan. A copy of the Disclosure Statement accompanies the Plan and should be considered in conjunction with the Plan. In the event of any inconsistency between the Plan and Disclosure Statement, the Plan governs and controls.

The Plan provides for the disposition of Debtors' Assets in accordance with the priorities and requirements of the Bankruptcy Code. The Plan provides for creation of a Liquidation Trust and the appointment of a Liquidation Trustee and a three-member Liquidation Trust Supervisory Board. The Liquidation Trustee will, subject to supervision and oversight by the Liquidation Trust Supervisory Board, administer and liquidate all Assets, object to and settle Claims, and prosecute Retained Causes of Action. The Plan provides for the payment of Wind-Down Expenses and Distributions to Holders of Allowed Claims, including Administrative Claims, Professional Fee Claims, Priority Tax Claims, Other Priority Claims, Statutory Fees, Secured Claims, and General Unsecured Claims. The Plan cancels all Interests in Debtors.

# ARTICLE 2.
## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW

### A.   Defined Terms

As used in this Plan, capitalized terms have the meanings ascribed to them below.

     1.     "*Acquisition Secured Claims*" means the asserted Secured Claims of (a) Western Alliance Bank; (b) Mark G. Muesch and Donna J. Muesch, Trustees of the Mark and Donna Muesch Family Trust, dated April 6, 2018; (c) Stronghill Capital LLC; (d) SHC-ET Funding II LLC (successor-in-interest to Stronghill Capital LLC); (e) Pinnacle Bank; (f) O'Malley/Wellborn, Inc.; (g) JPMorgan Chase Bank; (h) SS Holdings LLC; (i) MCR Machine LLC; (j) American First National Bank; (k) Everett 1 LLC; and (l) Michael W. Holmes and Maureen A. Holmes.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 1

Exhibit A
Page 6 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 6 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 6 of 78

2.        "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Estates under Sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including (a) the actual and necessary costs and expenses incurred on or after the Petition Date of preserving the Estates and operating the businesses of Debtors, and (b) Allowed Professional Fee Claims in the Chapter 11 Cases.

3.        "*Administrative Claims Bar Date*" means the date that is 30 calendar days after service of the notice of Effective Date, with such date to be provided in the notice of Effective Date.

4.        "*Affiliate*" means an "affiliate" as defined in Bankruptcy Code Section 101(2).

5.        "*Allowed*" means, with reference to any Claim, proof of which was properly Filed or, if no Proof of Claim was Filed, that has been or hereafter is listed by a Debtor on its Schedules and Statements as liquidated in amount and not disputed or contingent and, in each case, as to which (a) no objection to allowance has been interposed within the applicable period fixed by the Plan, Bankruptcy Code, Bankruptcy Rules, Local Rules, or Bankruptcy Court; or (b) an objection has been interposed and such Claim has been Allowed by the Bankruptcy Court, in whole or in part, by a Final Order.  For the avoidance of doubt, a Claim which was listed in an amount of "Unknown" in the Schedules and Statements, and for which the Creditor did not File a Proof of Claim, shall be treated as a Disallowed Claim and shall receive no Distribution.

6.        "*APA*" means any asset purchase agreement or sale agreement for any Assets of Debtors entered into by a Debtor after the Petition Date and Prior to the Effective Date which has not closed on or prior to the Effective Date.

7.        "*Assets*" means any and all right, title, and interest of Debtors in and to property of whatever type or nature, real or personal, tangible or intangible, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, works in progress, accounts, chattel paper, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, Causes of Action, Claims, and any general intangibles.

8.        "*Avoidance Actions*" means any and all actual or potential avoidance, recovery, subordination, or other Causes of Action that may be brought by or on behalf of any Debtor or its Estate or other authorized

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 2

parties-in-interest under the Bankruptcy Code or applicable non-bankruptcy law, including Causes of Action under Sections 502, 510, 542, 544, 545, 547–553, and 724(a) of the Bankruptcy Code or under similar or related local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

9.    "*Bankruptcy Code*" means Title 11 of the United States Code, 11 U.S.C. §§ 101–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

10.    "*Bankruptcy Court*" means the United States Bankruptcy Court for the Eastern District of Washington having jurisdiction over the Chapter 11 Cases and, to the extent of the (a) withdrawal of reference under Section 157 of the Judicial Code or (b) entry of an order or judgment for which it is determined that the United States Bankruptcy Court for the Eastern District of Washington does not have constitutional authority to enter such order or judgment and the parties to such dispute do not consent to entry of such order or judgment by the United States Bankruptcy Court for the Eastern District of Washington, the United States District Court for the Eastern District of Washington.

11.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under Section 2075 of the Judicial Code and the general, local, and chambers rules of the Bankruptcy Court.

12.    "*Beneficiaries*" means the Holders of a Liquidation Trust Interest, whether individually or as an agent on behalf of one or more other Entities.  To the extent Holders of Allowed Claims are entitled to Distributions from the Liquidation Trust in accordance with the terms of the Plan, such Holders are each a Beneficiary.

13.    "*Business Day*" means any day other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

14.    "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

15.    "*Causes of Action*" means any action, claim, crossclaim, third-party claim, cause of action, controversy, dispute, or demand of any kind or character whatsoever, known or unknown, foreseen or unforeseen, existing or hereafter arising, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, Disputed or

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 3

Exhibit A
Page 8 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 8 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 8 of 78

undisputed, secured or unsecured, assertable directly or derivatively (including any alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law (including under any state or federal securities laws). For the avoidance of doubt, Cause of Action also includes (a) any right of setoff, counterclaim, or recoupment, and any claim for breach of contract or breach of duties imposed by law or in equity; (b) the right to object to Claims or Interests; (c) any claim pursuant to Section 362 or Chapter 5 of the Bankruptcy Code; (d) any claim or defense, including fraud, mistake, duress, and usury, and any other defenses set forth in Section 558 of the Bankruptcy Code; (e) any Avoidance Action or state law fraudulent transfer claim; and (f) all Contributed Claims.

16.     "*Chapter 11 Cases*" means the Chapter 11 Cases initiated against Debtors by the filing of Involuntary Petitions on the Petition Date under Chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are being jointly administered by the Bankruptcy Court under Case No. 24-01863-11.

17.     "*Claim*" means any claim, as such term is defined in Section 101(5) of the Bankruptcy Code, against Debtors and Debtors' Estates.

18.     "*Claims Register*" means the official register of Claims maintained by the Bankruptcy Court for the Eastern District of Washington.

19.     "*Class*" means a Class of Claims or Interests as set forth in Article 5 of the Plan in accordance with Section 1122(a) of the Bankruptcy Code.

20.     "*Committee*" means the Official Committee of Unsecured Creditors appointed by the U.S. Trustee in the Chapter 11 Cases.

21.     "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

22.     "*Confirmation Date*" means the date upon which Confirmation occurs.

23.     "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan pursuant to Sections 1128 and 1129 of the Bankruptcy Code.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 4

24.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

25.    "*Consummation*" means the occurrence of the Effective Date.

26.    "*Contributed Claims*" means any claims a Water Station Owner or other unsecured creditor has against any person or entity and are related in any way to the Debtors, their predecessors, or their respective affiliates, including but not limited to (a) all Causes of Action based on, arising out of, or related to the marketing, sale, and issuance of any investments in any Debtor, including any guarantees; (b) all Causes of Action based on, arising out of, or related to an unlawful dividend, fraudulent conveyance, fraudulent transfer, voidable transaction, or other avoidance claims under state or federal law; (c) all Causes of Action based on, arising out of, or related to the misrepresentation of any of the Debtors' financial information or business operations; (d) all Causes of Action based on, arising out of, or related to any failure to disclose, or actual or attempted cover up of any of the conduct described in the Disclosure Statement, including in respect of any alleged fraud related thereto  provided however, that Water Station Owners who are borrowers under any loan from a third party lender (other than First Fed) who elect to contribute claims shall not contribute their claims and defenses against any such lender. Contributed Claims shall not include any claims creditors or Water Station Owners may make against applicable policies of insurance for their losses arising from the Debtors' conduct and/or such creditor or Water Station Owner's claims in the Chapter 11 Cases.

27.    "*Creditor*" means any Person that is a Holder of a Claim against Debtors as defined in Bankruptcy Code Section 101(10).

28.    "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon a Debtor's defaults under an Executory Contract or an Unexpired Lease assumed by such Debtor under Section 365 of the Bankruptcy Code, other than a default that is not required to be cured pursuant to Section 365(b)(2) of the Bankruptcy Code.

29.    "*D&O Liability Insurance Policies*" means all Insurance Policies (including "tail policies" if any) issued or providing coverage to Debtors for liabilities against any of Debtors' current or former directors, managers, and officers, and all agreements, documents, or instruments relating thereto.

30.    "*Debtor Retention Applications*" means the applications Debtors filed in these Chapter 11 Cases seeking to retain certain

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 5

Professionals pursuant to Sections 327, 328, and/or 363 of the Bankruptcy Code.

31. "*Debtors*" means, collectively Refreshing USA, LLC, Case No. 24-01863-11 ("*Refreshing*"); Water Station Management LLC, Case No. 24-01864-11 ("*Water Station*"); and Creative Technologies, LLC, Case No. 24-01866-11 ("*Creative*").

32. "*Disallowed*" means, with respect to any Claim, or any portion thereof, that such Claim, or any portion thereof, is disallowed under the Plan, the Bankruptcy Code, or a Final Order.

33. "*Disclosure Statement*" means Debtors' and the Committee's Joint First Amended and Modified Disclosure Statement, as amended, modified, restated, or supplemented from time to time pertaining to the Plan.

34. "*Disputed*" means, with respect to any Claim or Interest, any Claim or Interest that (a) is not yet Allowed and (b) is not Disallowed.

35. "*Disputed Claims Reserve*" means a Cash reserve, if any, that may be funded by the Liquidation Trustee with a portion of the Liquidation Trust Assets for Distributions to Beneficiaries holding Disputed Claims if and to the extent such Disputed Claims become Allowed Claims.

36. "*Distribution*" means any distribution to the Holders of Allowed Claims against Debtors pursuant to the Plan.

37. "*Distribution Record Date*" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive Distributions under the Plan, which date shall be the first day of the Confirmation Hearing, or such other date as is announced by Debtors or designated in a Final Order of the Bankruptcy Court.

38. "*Effective Date*" means the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date set forth in Article 15.A of the Plan have been satisfied or waived pursuant to Article 15.B of the Plan, (b) no stay of the Confirmation Order is in effect, and (c) Debtors declare the Plan effective. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

39. "*Entity*" means an "entity" as defined in Bankruptcy Code Section 101(15).

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 6

40. "*Escrow Amounts Transfer Date*" means the date on which the Remaining Professional Fee Escrow Amounts (if any) are transferred to the Liquidation Trust.

41. "*Estates*" means the estates created on the Petition Date for Debtors in their Chapter 11 Cases pursuant to Section 541 of the Bankruptcy Code and all property (as defined in Section 541 of the Bankruptcy Code) acquired by Debtors after the Petition Date through the Effective Date.

42. "*Exculpated Party*" means collectively, and in each case in its capacity as such, (a) the following managers, officers, and directors of Debtors who served in such capacity between the Petition Date and the Effective Date: the Debtor's Chief Restructuring Officer, Brian Weiss of Force Ten Partners, LLC, and each Debtor's Manager, Ken Rosen; (b) the Professionals retained by Debtors in the Chapter 11 Cases; (c) the Committee; (d) the members of the Committee; and (e) the Professionals retained by the Committee in the Chapter 11 Cases; provided, however, and for the avoidance of doubt, that in no event shall Ryan Wear, Richard Wear, Tyler Sadek or Jordan Chirico be an Exculpated Party.

43. "*Executory Contract*" means a contract to which one or more of Debtors is a party and that is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

44. "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date, calculated as set forth in Section 1961 of the Judicial Code.

45. "*File*" or "*Filed*" means to file or filed with the Bankruptcy Court in the Chapter 11 Cases.

46. "*Final Decree*" means the order entered pursuant to Bankruptcy Code Section 350 closing the Chapter 11 Cases.

47. "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter which has not been reversed, stayed, modified, or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired, and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken, or any petition for certiorari that has been or may be filed has been resolved by the highest court to which the order or judgment could

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 7

Exhibit A
Page 12 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 12 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 12 of 78

be appealed or from which certiorari could be sought or the new trial, reargument, or rehearing shall have been denied, resulted in no modification of such order, or has otherwise been dismissed with prejudice; provided that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure or any comparable rule of the Bankruptcy Rules may be filed relating to such order shall not cause such order to not be a Final Order.

48. "*First Fed Parties*" means First Fed Bank and First Northwest Bancorp.

49. "*First Fed Released Parties*" means the First Fed Parties and their respective current and former officers, directors, employees, agents, attorneys, insurers, loan participants (including the Main Street SPV), trustees.

50. "*First Fed Settlement*" means the settlement as approved by the Court among: Ideal Property Investments LLC, a debtor and debtor-in-possession ("*Ideal*"); the First Fed Parties (on their own behalf and for the First Fed Released Parties), Debtors; and the Committee as further described in Article 6.A of the Plan

51. "*First Fed Third Party Loans*" means loans from First Fed to third parties, including creditors of any Debtor.

52. "*General Unsecured Claim*" means any Claim against Debtors which is not an Administrative Claim, Professional Fee Claim, Priority Tax Claim, Secured Claim, Other Priority Claim, or Subordinated Claim.

53. "*Governmental Unit*" means a "governmental unit" as defined in Bankruptcy Code Section 101(27).

54. "*GUC Recovery*" means the Liquidation Trust Assets, after payment of all Administrative Claims, Professional Fee Claims, Priority Tax Claims, Allowed Secured Claims, Allowed Class 6 Other Priority Claims, and Wind-Down Expenses.

55. "*Holder*" means an Entity holding a Claim against or an Interest in any Debtor.

56. "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 8

Exhibit A
Page 13 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 13 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 13 of 78

57.    "*Insurance Policies*" means all insurance policies that have been issued at any time to, or otherwise provide coverage to, one or more Debtors (or their predecessors) and all agreements, documents, or instruments relating thereto.

58.    "*Insurer*" means any company or other Entity that issued or entered into an Insurance Policy, any third-party administrator, and any respective predecessors and/or Affiliates thereof.

59.    "*Interest*" means any interests of a member in a limited liability company or any equity security as defined in Section 101(16) of the Bankruptcy Code, including all rights of any character relating to, or whose value is related to, any ownership interest in any Debtor, including any Claims against any Debtor subject to subordination pursuant to Section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

60.    "*Internal Revenue Code*" means the Internal Revenue Code of 1986, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

61.    "*IRS*" means Internal Revenue Service.

62.    "*Judicial Code*" means Title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

63.    "*Liquidation Trust*" means the liquidation trust established on the Effective Date pursuant to the Liquidation Trust Agreement and the Plan for the purpose of administering the Liquidation Trust Assets and to make one or more Distribution(s) to Beneficiaries.

64.    "*Liquidation Trust Agreement*" means the trust agreement that, among other things, governs the powers, duties, and responsibilities of the Liquidation Trustee, a copy of which is attached hereto as <u>Exhibit A</u>.

65.    "*Liquidation Trust Assets*" shall consist of (a) Retained Causes of Action; (b) all other remaining Assets of the Estates, including, without limitation, all Cash, escrow accounts, real estate, interests in real estate, amounts owing from Ideal Property Investments, LLC or other Affiliates, the Remaining Professional Fee Escrow Amounts, if any, and all other personal property; and (c) the proceeds of each of the foregoing.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 9

Exhibit A
Page 14 of 78

66. "*Liquidation Trust Interests*" means the non-certificated beneficial interests of the Liquidation Trust allocable to Holders of Allowed Claims in accordance with the terms of the Plan and the Liquidation Trust Agreement, which may or may not be transferable.

67. "*Liquidation Trust Supervisory Board*" or "*Board*" means the three-person supervisory board for the Liquidation Trust, whose initial members shall be identified in the Plan Supplement and the Liquidation Trust Agreement. One member of the Board shall be designated by the Committee and one member shall be designated by 3|5|2 Capital ABS Master Fund LP ("*352*").

68. "*Liquidation Trustee*" means the Person selected to administer the Liquidation Trust under the Liquidation Trust Agreement. The initial Liquidation Trustee will be identified in the Plan Supplement.

69. "*Non-Released Debtor Party*" means each of Ryan Wear, Richard Wear, Tyler Sadek, Jordan Chirico and any other Person or Entity, if any, specifically identified in the Plan Supplement.

70. "*Other Priority Claim*" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under Section 507(a) of the Bankruptcy Code.

71. "*Other Secured Claim*" means any Secured Claim that is not separately classified under the Plan.

72. "*Person*" means a "person" as defined in Bankruptcy Code Section 101(41).

73. "*Petition Date*" means August 27, 2024.

74. "*Plan*" means Debtors' and Committee's Joint First Amended and Second Modified Chapter 11 Plan of Liquidation, as amended, modified, restated, or supplemented from time to time.

75. "*Plan Supplement*" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and with the Bankruptcy Code and Bankruptcy Rules) to be Filed by Debtors no later than seven days before the Voting Deadline or such later date as may be approved by the Bankruptcy Court. The Plan Supplement will contain, among other things, (a) a

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 10

liquidation analysis, (b) the Liquidation Trust Agreement, (c) the identification of the initial Liquidation Trustee, and (d) any other disclosures required by the Bankruptcy Code.

76. "*Priority Claims Reserve*" means a reserve to be funded on the Effective Date by Debtors or the Liquidation Trustee, as applicable, to pay all anticipated Allowed Priority Tax Claims and Allowed Other Priority Claims, to the extent such Claims are not Allowed and paid by Debtors on the Effective Date. The Priority Claims Reserve shall be maintained and administered by the Liquidation Trustee.

77. "*Priority Tax Claim*" means any Claim of a Governmental Unit of the kind specified in Section 507(a)(8) of the Bankruptcy Code.

78. "*Professional*" means an Entity retained pursuant to a Bankruptcy Court order in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to Sections 327, 328, 329, 330, 331, or 363 of the Bankruptcy Code.

79. "*Professional Fee Claim*" means any Administrative Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date.

80. "*Professional Fee Escrow Account*" means an account, which may be interest-bearing, funded by Debtors with available Cash on or before the Effective Date in an amount equal to the Professional Fee Escrow Amount.

81. "*Professional Fee Escrow Amount*" means the total amount of unpaid Professional fees and expenses estimated pursuant to Article 4.B.3 of the Plan.

82. "*Proof of Claim*" means a written Proof of Claim Filed against any Debtor in the Chapter 11 Cases.

83. "*Proof of Interest*" means a written Proof of Interest Filed against any Debtor in the Chapter 11 Cases.

84. "*Released Parties*" means the Debtors, the Estates, the Unsecured Creditors' Committee and any of its current and former members (in their capacity as such), and the First Fed Released Parties.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 11

85. "*Releasing Creditors*" means unsecured creditors of the Debtors' estates, including the Water Station Owners, who opt-in to mutual releases with the First Fed Parties and related Released Parties pursuant to Article 6.B.

86. "*Releasing Parties*" means, on the one hand, each Debtor, each Additional Collateral Grantor (as defined in the First Fed Settlement Agreement, Dkt. No. 1069), any liquidation trustee, wind down debtor, and wind down CRO under this Plan, any other entity now or hereafter owned or controlled by a Debtor or a liquidation trustee, wind down debtor, or wind down CRO under this Plan, the Committee, and any successors of such parties, and on the other hand, the First Fed Parties, and any successors of such parties.

87. [Reserved]

88. "*Remaining Professional Fee Escrow Amounts*" means any remaining funds held in the Professional Fee Escrow Account after all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court.

89. "*Restructuring Transactions*" means the transactions described in Article 7.A of the Plan.

90. "*Retained Causes of Action*" means, collectively, all Causes of Action held by Debtors, except for (i) Causes of Action exculpated pursuant to Article 14.D hereof to the extent of any such exculpation and (ii) Causes of Action released pursuant to any settlement approved by a Final Order entered in the Chapter 11 Cases prior to the Effective Date.

91. "*Schedules and Statements*" means, collectively, the Schedules of Assets and Liabilities, Schedules of Executory Contracts and Unexpired Leases, and Statements of Financial Affairs Filed by each Debtor pursuant to Section 521 of the Bankruptcy Code, as such Schedules may have been or may be amended, modified, or supplemented from time to time.

92. "*SEC*" means the United States Securities and Exchange Commission.

93. "*Secured*" means, when referring to a Claim, a Claim that is (a) secured by a lien on property in which the applicable Estate has an interest, which lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Final Order of the Bankruptcy Court, or that

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 12

Exhibit A
Page 17 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 17 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 17 of 78

is subject to a valid right of setoff pursuant to Section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's valid interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Section 506(a) of the Bankruptcy Code; or (b) Allowed pursuant to the Plan as a Secured Claim.

94. "*Secured Claim*" means a Claim that is secured by a lien, security interest, or other charge against, or interest in, property in which Debtors have an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value (as set forth in the Plan or, if no value is specified, as determined in accordance with Section 506(a) of the Bankruptcy Code or, if applicable, Section 1111(b) of the Bankruptcy Code) of the interest of the Holder of such Claim in Debtors' interest in such property or to the extent of the amount subject to setoff, as the case may be.

95. "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

96. "*Security*" means a security as defined in Section 2(a)(1) of the Securities Act.

97. "*Statutory Fees*" means all fees payable to the U.S. Trustee pursuant to 28 U.S.C. § 1930, and any interest thereupon.

98. "*Subordinated Claim*" means any Claim subject to subordination, whether pursuant to Final Order of the Bankruptcy Court under Section 510 of the Bankruptcy Code or by written consent of the Holder of such Claim, whether such Final Order is entered or such consent is given prior to or following the Effective Date.

99. "*Treasury Regulations*" means the United States Treasury Regulations promulgated under the Internal Revenue Code, and any reference to any particular Treasury Regulation section shall be interpreted to include any final or temporary revision of, or successor to, that section regardless of how numbered or classified.

100. "*U.S.*" means the United States of America.

101. "*U.S. Trustee*" means the Office of the United States Trustee for the Eastern District of Washington.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 13

102.    "*Unexpired Lease*" means a lease to which one or more Debtors is a party, which is subject to assumption or rejection under Sections 365 or 1123 of the Bankruptcy Code.

103.    "*Unimpaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

104.    "*Voting Deadline*" means 4:00 p.m. (PST) on August 29, 2025.

105.    "*Water Station Owner*" means any person or entity other than an insider or entity controlled by an insider (as "insider" is defined under the Bankruptcy Code) that holds a claim against any Debtor in the Chapter 11 Cases, which claim asserts a claim based on or related to (i) an investment in any Debtor, (ii) an investment in an asset sold or purportedly sold by any Debtor, or (iii) a franchise agreement with any Debtor signed prior to the Petition Date (collectively, "*Water Station Owners*"), which Water Station Owners are set forth on Schedule 2.b of the First Fed Settlement Agreement.

106.    "*Wind-Down Expenses*" means the expenses to be incurred in complying with the Plan and winding down the Chapter 11 Cases, including, but not limited to, liquidation of any residual Assets, preparation and filing of final tax returns, making Distributions to Holders of Allowed Claims, the Claims reconciliation and objection process, the dissolution of each Debtor entity, and all actual and necessary fees, costs, expenses, and obligations incurred or owed by the Liquidation Trustee or its agents, employees, attorneys, advisors, or other Professionals in administering the Plan and the Liquidation Trust (including, without limitation, reasonable compensation for services rendered, and reimbursement for actual and necessary expenses incurred by the Liquidation Trustee and its agents, employees, and Professionals) arising after the Effective Date, through and including the date upon which the Bankruptcy Court enters a Final Decree closing the Chapter 11 Cases, in each case which shall be payable prior to any Distribution to Beneficiaries.

## B.    Rules of Interpretation

For purposes of this Plan:

1.    in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter gender;

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 14

Exhibit A
Page 19 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 19 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 19 of 78

2. any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions;

3. any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed, shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified;

4. any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns;

5. unless otherwise specified, all references herein to "Articles" are references to Articles of the Plan;

6. unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement;

7. unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan;

8. captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect interpretation of the Plan;

9. unless otherwise specified herein, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply;

10. all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system;

11. all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated;

12. any effectuating provisions may be interpreted by the Liquidation Trustee in such a manner as is consistent with the overall purpose and intent of the Plan all without further notice to, or action, order, or approval of, the Bankruptcy Court or any other Entity;

13. any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter;

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 15

14.     all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail;

15.     unless otherwise specified, the words "include," "includes," and "including" shall be deemed to be followed by the words "without limitation;" and

16.     any term used in capitalized form herein that is not otherwise defined but is used in the Bankruptcy Code or Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or Bankruptcy Rules, as the case may be.

## C.     Computation of Time

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day.

## D.     Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Washington, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control).

## E.     Reference to Monetary Figures

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided.

## F.     Controlling Document

In the event of an inconsistency between the Plan and the Plan Supplement, the Plan shall control.  In the event of any inconsistency between the Plan and the Confirmation Order, the Confirmation Order shall control.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 16

# ARTICLE 3.
# [RESERVED]

# ARTICLE 4.
# ADMINISTRATIVE CLAIMS AND PRIORITY TAX CLAIMS

In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims (including, Professional Fee Claims) and Priority Tax Claims have not been classified and thus are excluded from the Classes of Claims and Interests set forth in Article 5.A.

## A.    Administrative Claims

Except to the extent a Holder of an Allowed Administrative Claim and Debtors or the Liquidation Trustee, as applicable, agree to less favorable treatment with respect to such Allowed Administrative Claim, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim will be paid the full unpaid amount of such Allowed Administrative Claim in Cash (a) on the Effective Date or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter; (b) if such Administrative Claim is Allowed after the Effective Date, on the date such Administrative Claim is Allowed or as soon as reasonably practicable thereafter or, if not then due, when such Allowed Administrative Claim becomes due or as soon as reasonably practicable thereafter; (c) at such time and upon such terms as may be agreed upon by such Holder and Debtors or the Liquidation Trustee, as applicable; or (d) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except as otherwise ordered by the Court, Holders of Administrative Claims that are required to, but do not, File and serve a request for payment of such Administrative Claims by the Administrative Claims Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against Debtors or their property, and such Administrative Claims shall be deemed released against Debtors, their Estates, or the Liquidation Trustee as of the Effective Date.  Unless Debtors or the Liquidation Trustee (or another party with standing) object to a timely Filed and properly served Administrative Claim, such Administrative Claim shall be deemed Allowed in the amount requested.  In the event Debtors or the Liquidation Trustee object to an Administrative Claim, the parties may confer to try to reach a settlement and, failing that, the Bankruptcy Court shall determine whether such Administrative Claim should be Allowed and, if so, in what amount.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 17

Exhibit A
Page 22 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 22 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 22 of 78

**B.      Professional Fee Claims**

        1.      <u>Final Fee Applications and Payment of Professional Fee Claims</u>

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Effective Date must be Filed no later than 30 days after the Effective Date unless no final request for payment of such Professional Fee Claims is required pursuant to an order of the Bankruptcy Court. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. Debtors or the Liquidation Trustee (as applicable) shall pay the amount of Allowed Professional Fee Claims owing to Professionals in Cash, or receive such other treatment as may be agreed upon by a Holder of any such Allowed Professional Fee Claim, on the one hand, and Debtors or the Liquidation Trustee, as applicable, on the other hand, to such Holder on the later of (a) the Effective Date, or as soon as reasonably practicable thereafter; or (b) the date such Professional Fee Claim becomes an Allowed Claim by a Final Order of the Bankruptcy Court or as soon as reasonably practicable thereafter, to be paid in the full Allowed amount in Cash (as determined by agreement, settlement, or order of the Bankruptcy Court).

        2.      <u>Professional Fee Escrow Account</u>

As soon as is reasonably practicable after the Confirmation, and no later than the Effective Date, Debtors, in consultation with the Committee, may establish (if not previously established) and fund the Professional Fee Escrow Account with any available Cash in an amount up to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No liens, Claims, or interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of Debtors or the Liquidation Trust.

Professional Fee Claims owing to Professionals may be paid from funds held in the Professional Fee Escrow Account; provided that Debtors' and the Liquidation Trust's obligations to pay Allowed Professional Fee Claims shall not be limited, nor be deemed limited, to funds, if any, held in the Professional Fee Escrow Account. When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to Professionals pursuant to one or more Final Orders of the Bankruptcy Court, if any funds remain in the Professional Fee

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 18

Escrow Account, such funds shall (a) promptly be transferred to the Liquidation Trust's account, (b) thereupon constitute Liquidation Trust Assets, and (c) be distributed in accordance with the Plan without any further action or order of the Bankruptcy Court.

### 3. Professional Fee Escrow Amount

Upon request by Debtors, Professionals shall provide a reasonable and good-faith estimate of their unpaid fees and expenses incurred in rendering services to Debtors projected to be outstanding as of the Effective Date, and shall deliver such estimate to Debtors no later than five Business Days before the anticipated Effective Date; provided that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of fees and expenses that are the subject of the Professionals' final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates. If a Professional does not provide an estimate, Debtors may estimate the unpaid and unbilled fees and expenses of such Professional. The total aggregate amount so estimated as of the Effective Date shall be utilized by Debtors to determine the Professional Fee Escrow Amount. The Liquidation Trustee may use Cash on hand to increase the amount of the Professional Fee Escrow Account as reasonably determined by the Liquidation Trustee, in its sole discretion.

## C. Priority Tax Claims

Except to the extent a Holder of an Allowed Priority Tax Claim and Debtors, or the Liquidation Trustee, as applicable, agree to a less favorable treatment, each Holder of an Allowed Priority Tax Claim shall receive, at the option of Debtors, either (a) the full unpaid amount of such Allowed Priority Tax Claim in Cash on the later of the Effective Date and 30 calendar days following the date on which such Priority Tax Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Priority Tax Claim is due or as soon as reasonably practicable thereafter); or (b) equal annual installment payments in Cash of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five years after the Petition Date (provided that such election shall be without prejudice to the right to prepay any such Allowed Priority Tax Claim in full or part without penalty). Any liens securing such Allowed Priority Tax Claim shall be deemed released, terminated, and extinguished, in each case without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule, or the vote, consent, authorization, or approval of any Person.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 19

Exhibit A
Page 24 of 78
24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 24 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 24 of 78

## D.    Statutory Fees and Related Reporting Obligations

All fees due and payable pursuant to Section 1930 of Title 28 of the U.S. Code, together with the statutory rate of interest set forth in Section 3717 of Title 31 of the U.S. Code, to the extent applicable ("*Statutory Fees*"), which come due and payable prior to the Effective Date shall be paid by Debtors on the Effective Date. To the greatest degree possible, after the Effective Date, the payment of Statutory Fees shall be made from the Liquidation Trust Assets.  Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Liquidation Trustee and each of the post-Effective Date Debtors, to the extent the post-Effective Date Debtors make any Distributions after the Effective Date, shall file with the Bankruptcy Court separate UST Form 11-PCR reports when due.  After giving effect to the substantive consolidation of Debtors called for in the Plan, the Liquidation Trust or Refreshing, on behalf of the consolidated Debtors, shall remain obligated to pay Statutory Fees to the Office of the U.S. Trustee until entry of an order by the Bankruptcy Court that closes, dismisses, or converts to a case under Chapter 7 of the Bankruptcy Code each of the Chapter 11 Cases of Debtors. All parties' rights with respect to Statutory Fees are expressly reserved.

# ARTICLE 5.
# CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

## A.    Classification of Claims and Interests

Except for the Claims addressed in Article 4 of the Plan, all Claims against, and Interests in, Debtors are classified in the Classes set forth in this Article 5 for all purposes, including voting, Confirmation, and Distributions pursuant to the Plan and in accordance with Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class only to the extent such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or Interest also is classified in a particular Class for the purpose of receiving Distributions under the Plan only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The Plan is a substantively consolidated Plan for all Debtors, and serves as a motion to substantively consolidate Debtors, with the Confirmation Order ordering such consolidation.  Moreover, the Plan substantively consolidates or merges certain non-Debtor affiliates (listed in Article 8 below).  In addition or in the alternative, those non-Debtor affiliates listed may assign their fraudulent transfer /avoidance action claims to Debtors voluntarily.  Further, the Plan represents a

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 20

settlement of Debtors' and non-Debtor affiliates' claims against their affiliate Ideal Property Investments LLC, including their substantive consolidation claims.

All of the potential Classes for Debtors are set forth herein.

## B. Treatment of Claims and Interests

Subject to Article 11 hereof, each Holder of an Allowed Claim against, or Allowed Interest in, Debtors, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release of, and in exchange for, such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by Debtors or the Liquidation Trustee, as applicable, and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest, or as soon as reasonably practicable thereafter.

      1.     Class 1 – First Fed Bank Secured Claim

     (a)    Classification. Class 1 consists of the Secured Claim of First Fed Bank ("*First Fed*").

     (b)    Treatment. Subject to the terms of the First Fed Settlement (described below in Article 6), the lien of First Fed will continue to attach to its Collateral and the proceeds from such Collateral after the Effective Date, subject to all Avoidance Actions, Causes of Action, defenses and objections to Claims, which are hereby reserved under the Plan. Interest shall accrue on the Class 1 Claim at the prepetition non-default rate of interest to the extent First Fed is over secured. If Collateral securing the Class 1 Claim is sold during the pendency of an adversary proceeding or contested matter against First Fed before the Class 1 Claim is adjudicated, settled, Allowed, or Disallowed, the Liquidation Trustee shall reserve sufficient proceeds from the sale of such Collateral (to the extent sufficient proceeds are generated) to satisfy the asserted Class 1 Claim, to be held in reserve pending resolution of such adversary proceeding or contested matter. Debtors retain the right to satisfy the Class 1 Allowed Claim in any manner provided for under § 1129(b)(2) of the Bankruptcy Code including by means of surrender of the collateral supporting such claim; in the event of such surrender, First Fed may abandon its Secured Claim.

     (c)    Voting. Class 1 is Impaired under the Plan and, subject to the terms of the First Fed Settlement, is entitled to vote to accept or reject the Plan.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 21

2. Class 2 – Water for Commerce Fund Management, LLC ("*C2FO*") Secured Claim

(a) Classification. Class 2 consists of the Secured Claim of C2FO.

(b) Treatment. The lien of C2FO will continue to attach to its Collateral and the proceeds from such Collateral after the Effective Date, subject to all Avoidance Actions, Causes of Action, defenses and objections to Claims, which are hereby reserved under the Plan. In full and final satisfaction of the Class 2 Claim, C2FO will receive, from each sale of its Collateral, 87.5% of the "net proceeds" from such sale. The remaining 12.5% of net proceeds will be retained by the Liquidation Trustee for distribution under the Liquidation Trust. The phrase "net proceeds" means gross sale proceeds less allowed direct costs of liquidation incurred by the liquidator (e.g., TagEx Brands or Hilco Corporate Finance, LLC) and less any Allowed Administrative Claims properly allocated as a surcharge against the Collateral. To the extent any portion of the Class 2 Claim is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of a Class 7 General Unsecured Claim to the extent so Allowed. Debtors retain the right to satisfy the Class 2 Allowed Claim in any manner provided for under § 1129(b)(2) of the Bankruptcy Code including by means of surrender of the collateral supporting such claim.

(c) Voting. Class 2 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

3. Class 3 – Acquisition Secured Claims

(a) Classification. Class 3 consists of all Acquisition Secured Claims.

(b) Treatment. The liens of the Holders of Allowed Class 3 Claims will continue to attach to their respective Collateral and proceeds from such Collateral after the Effective Date, subject to all Avoidance Actions, Causes of Action, defenses and objections to Claims, which are hereby reserved under the Plan. Beginning on the Confirmation Date, to the extent such claim is oversecured, interest shall accrue on the Class 3 Claims at the prepetition non-default rate of interest. To the extent any portion of the Class 3 Claim is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of a Class 7 General Unsecured Claim to the extent so Allowed. Debtors retain the right to satisfy the Class 3 Allowed Claim in any manner provided for under § 1129(b)(2) of the Bankruptcy Code including by means of surrender of the collateral supporting such claim.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 22

Exhibit A
Page 27 of 78

24-01863-FPC11   Doc 1117   Filed 07/16/25   Entered 07/16/25 12:03:53   Pg 27 of 78
24-01863-FPC11   Doc 1259-1   Filed 09/09/25   Entered 09/09/25 11:46:22   Pg 27 of 78

(c)     <u>Voting</u>.  Class 3 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

4.     <u>Class 4 – Secured Claim of 3|5|2 Capital ABS Master Fund LP</u>

(a)     <u>Classification</u>.  Class 4 consists of the Secured Claim of 3|5|2 Capital ABS Master Fund LP ("*352*").

(b)     <u>Treatment</u>.  To the extent it has one, the lien of 352 will continue to attach to its Collateral and the proceeds from such Collateral after the Effective Date, subject to all Avoidance Actions, Causes of Action, defenses and objections to Claims, which are hereby reserved under the Plan.  Interest shall accrue on the Class 4 Claim at the prepetition non-default rate of interest to the extent the Class 4 Claim is secured.  If Collateral securing the Class 4 Claim is sold during the pendency of an adversary proceeding or contested matter to determine validity and amount of 352's Secured Claim and before the validity and amount of 352's Secured Claim is fully and finally adjudicated or settled, the Liquidation Trustee shall reserve the proceeds from the sale of such Collateral, to be held in reserve pending resolution of such adversary proceeding or contested matter.  To the extent any portion of 352's Claim is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of a Class 7 General Unsecured Claim to the extent so Allowed.  Debtors retain the right to satisfy the Class 4 Allowed Claim in any manner provided for under § 1129(b)(2) of the Bankruptcy Code including by means of surrender of the collateral supporting such claim.

(c)     <u>Voting</u>.  Class 4 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.  For purposes of voting only, 352 will vote a portion of its Claim as a Secured Claim in Class 4 and the remaining portion of its Claim as a Class 7 General Unsecured Claim, as set forth in a stipulation between Debtors and 352 to be filed prior to the Voting Deadline.

5.     <u>Class 5 – Other Secured Claims</u>

(a)     <u>Classification</u>.  Class 5 consists of all Other Secured Claims.

(b)     <u>Treatment</u>.  The lien of each Holder of a Class 5 Claim will continue to attach to such Holder's Collateral and the proceeds from such Collateral after the Effective Date, subject to all Avoidance Actions, Causes of Action, defenses and objections to Claims, which are hereby reserved under the Plan.  To the extent such claim is oversecured, interest shall accrue on each Class 5 Claim at the prepetition non-default rate of interest.  If Collateral securing a Class 5 Claim is sold during the pendency of an adversary proceeding or contested matter against the Holder of a Class 5 Claim before the Class 5 Claim is

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 23

adjudicated, settled, Allowed, or Disallowed, the Liquidation Trustee shall reserve sufficient proceeds from the sale of such Collateral (to the extent sufficient proceeds are generated) to satisfy the asserted Class 5 Claim, and to be held in reserve pending resolution of such adversary proceeding or contested matter.  To the extent any portion of a Class 5 Claim is Allowed but determined not to be a Secured Claim, such portion shall be classified and afforded the treatment of a Class 7 General Unsecured Claim to the extent so Allowed.

(c)     Voting.  Class 5 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

6.     Class 6 – Other Priority Claims

(a)     Classification.  Class 6 consists of all Other Priority Claims.

(b)     Treatment.  Each Holder of an Allowed Other Priority Claim shall receive, at the option of Debtors, either (i) the full unpaid amount of such Allowed Other Priority Claim in Cash on the Effective Date; or (ii) equal annual installment payments in Cash of a total value equal to the Allowed amount of such Priority Tax Claim, over a period ending not later than five years after the Petition Date.

(c)     Voting.  Class 6 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

7.     Class 7 – General Unsecured Claims

(a)     Classification.  Class 7 consists of all General Unsecured Claims.

(b)     Treatment.  Each Holder of an Allowed General Unsecured Claim shall receive its pro rata share of the GUC Recovery. To the extent a Holder of an Allowed General Unsecured Claim elects to contribute its Contributed Claims and opt in to become a Releasing Creditor as described in the opt-in provisions of the Plan (Article 6.B), such Holder shall receive an enhanced dividend on its claim in the amount of 10% of the dividend amount that such creditor would have received if no unsecured creditors had elected to opt-in. Releasing Creditors will also be entitled to the benefit of the First Fed release under the terms of the First Fed Settlement and this Plan.

(c)     Voting.  Class 7 is Impaired under the Plan and is entitled to vote to accept or reject the Plan.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 24

8. <u>Class 8 – Subordinated Claims</u>

(a) <u>Classification</u>. Class 8 consists of all Subordinated Claims.

(b) <u>Treatment</u>. On the Effective Date, all Subordinated Claims shall be cancelled, released, and discharged as of the Effective Date, and shall be of no further force or effect. Therefore, Holders of Subordinated Claims shall not receive any Distribution on account of such Subordinated Claims.

(c) <u>Voting</u>. Class 8 is Impaired under the Plan. Holders of Subordinated Claims are conclusively deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and, therefore, Class 8 is not entitled to vote to accept or reject the Plan.

9. <u>Class 9 – Interests</u>

(a) <u>Classification</u>. Class 9 consists of all Interests.

(b) <u>Treatment</u>. On the Effective Date, all Interests in Debtors shall be cancelled, and the Holders of all Interests in Debtors shall receive no Distribution under the Plan.

(c) <u>Voting</u>. Class 9 is Impaired under the Plan. Holders of Interests in Debtors are conclusively deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and, therefore, Class 9 is not entitled to vote to accept or reject the Plan.

## C. Special Provision Governing Unimpaired Claims

Except as otherwise provided in the Plan, including, without limitation, Article 12.G, nothing under the Plan shall affect Debtors' rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to, or setoffs or recoupments against, any such Claims that are Unimpaired. Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

## D. Subordinated Claims

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Interests, and the respective Distributions and treatments under the Plan, take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, Section 510(b) of the Bankruptcy Code, or otherwise. Pursuant to Section 510 of the Bankruptcy Code, Debtors and the

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 25

Liquidation Trustee reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

## E. Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim, Allowed Interest, or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing, shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to Section 1129(a)(8) of the Bankruptcy Code. If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

## F. Nonconsensual Confirmation

Bankruptcy Code Section 1129(a)(10) shall be satisfied for purposes of Confirmation by acceptance of the Plan by at least one Impaired Class of Claims. Debtors shall seek Confirmation of the Plan pursuant to Bankruptcy Code Section 1129(b) with respect to any rejecting Class of Claims or Interests. Debtors reserve the right to modify the Plan in accordance with Article 16 of the Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code Section 1129(b) requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and Bankruptcy Rules.

## G. [RESERVED]

## H. Controversy Concerning Impairment

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court may, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## I. No Waiver

Nothing contained in this Plan shall be construed to waive Debtors' or the Liquidation Trustee's right to object on any basis to any Claim, including after the Effective Date.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 26

**J.      Ponzi Findings**

The Committee and Debtors ("*Plan Proponents*") will seek findings in the Confirmation Order ("*Ponzi Findings*") that (i) prior to the Petition Date, Debtors and certain Affiliates of Debtors operated a Ponzi scheme and raised not less than $250 million from investors in the United States and abroad; and (ii) the Ponzi scheme involved the payment of purported returns to existing investors from funds contributed by new investors.  The Plan Proponents shall not seek Ponzi Findings that would be binding on any other court or governmental or regulatory authority.  In the event the Confirmation Order does not include Ponzi Findings, the Liquidation Trust may seek Ponzi Findings after the Effective Date.  For the avoidance of doubt, nothing set forth herein shall in any way prohibit the Liquidation Trust from investigating or pursuing Causes of Action related to prepetition Ponzi schemes or Ponzi-like conduct of Debtors and/or their Affiliates from and after the Effective Date.  See Article 6, Section B of the Disclosure Statement for further discussion of evidence and findings of the Committee in support of the Ponzi Findings.

**ARTICLE 6.**
**FIRST FED SETTLEMENT AND RELATED OPT-IN PROCESS**

**A.      First Fed Settlement**

On July 7, 2025, Debtors, Ideal and the Committee filed a Joint Motion for Approval of Settlement and Compromise with First Fed Bank [ECF No. 1069] ("*Settlement Motion*"), requesting approval of the Settlement Agreement, Plan Support Agreement and Release ("*Settlement Agreement*") among Ideal Property Investments LLC, a debtor and debtor-in-possession ("*Ideal*"); the First Fed Parties; Debtors; and the Committee.  The Settlement Agreement is attached to the Settlement Motion.  In the event of any inconsistency between the terms set forth in the Settlement Agreement and the terms set forth below, the terms of the Settlement Agreement prevail.  The summary set forth herein is for informational purposes only and does not in any way modify any of the terms of the Settlement Agreement.  Subject to approval of the Settlement Agreement by the Bankruptcy Court, pursuant to and as further described in the Settlement Agreement, among other things, First Fed will (i) be deemed to release all liens on Debtors' real properties and proceeds thereof; (ii) agree to an allowed Class 7 General Unsecured Claim in the amount of $30,593,771; (iii) retain its liens on its existing UCC collateral of Debtors other than general intangibles, which lien on general intangibles will be deemed released (which lien release includes any right to payment or distribution from the Ideal bankruptcy estate to Debtors) as to Debtors only, provided that its retained liens exclude any right to payment or distribution from the Ideal bankruptcy estate to Debtors; (iv) agree to vote in favor of this Plan to the extent consistent with the Settlement Agreement; and (v) agree to pay a cash

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 27

settlement contribution ("*Settlement Contribution*") in resolution of all claims and potential claims against the First Fed Parties held by the Debtors, Estates, Ideal, Ideal's bankruptcy estate, the Committee, Additional Collateral Grantors (as defined in the Settlement Agreement) and creditors of the foregoing. The Settlement Contribution is described below in Article 6.C.

## B.    Unsecured Creditor Opt-In

1.    Water Station Owners and other unsecured creditors of the Estates will be given the opportunity to contribute their Contributed Claims against third parties, including their claims against First Fed. The opt-in opportunity described above will be provided through the balloting process. To the extent unsecured creditors do opt-in they will receive the benefit of mutual releases with First Fed (to include the First Fed Parties) and receive enhanced distributions under the Plan, as further set forth in the Settlement Agreement.

Each Water Station Owner and other unsecured Creditor may opt-in to the release by electing on its ballot to contribute all Contributed Claims it may hold against third parties including the First Fed Released Parties, to the Estates (in the case of Causes of Action against the First Fed Released Parties) or the Liquidation Trust (in the case of Causes of Action against other parties). By electing such option on its ballot, the Releasing Creditor agrees that, subject to the occurrence of the Effective Date and formation of the Liquidation Trust, it will be deemed, without further action, to (i) have released the First Fed Released Parties pursuant to the Release set forth below, (ii) have contributed its Contributed Claims to the Estates or the Liquidation Trust, as applicable, (iii) have agreed to execute any documents reasonably requested to memorialize its contribution, and (iv) be eligible to share in pro rata distributions from the Liquidation Trust, including the enhanced distribution rights described in Article 5.B.7 of the Plan (treatment of Class 7 General Unsecured Claims).

## C.    Settlement Contribution

The Settlement Contribution paid or to be paid by First Fed shall be comprised of (i) an initial payment of $2,870,000 ("*Initial Payment*") due within five (5) business days following satisfaction of all conditions set forth in the Settlement Agreement and approval of the Settlement Agreement by the Bankruptcy Court; and (ii) if applicable, one or more supplemental payments ("*Supplemental Payments*") following entry of a Confirmation Order of this Plan of Liquidation that becomes a Final Order, and entry of an order confirming Ideal's Chapter 11 Plan of Liquidation that becomes a Final Order, and within ten (10) business days of written confirmation of satisfaction of the subject threshold in accordance with

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 28

the following threshold percentages of total Water Station Owners who opt-in to mutual releases ("*Water Station Opt-Ins*"):

1.   The amount of $956,666.66 in the event 25% of the Water Station Owners execute and return Water Station Opt-Ins in connection with Debtors' Chapter 11 Plans.

2.   The additional amount of $956,666.66 in the event 50% of the Water Station Owners execute and return Water Station Opt-Ins in connection with Debtors' Chapter 11 Plans (total of $1,913,333.33 in Supplemental Payments).

3.   The additional amount of $956,666.68 in the event 80% of the Water Station Owners execute and return Opt-Ins in connection with Debtors' Chapter 11 Plans (for a total of $2,870,000 of Supplemental Payments).

It has not been determined whether the proceeds of the Initial Payment will be paid entirely to Debtors' Estates or apportioned between Debtors' Estates and Ideal's bankruptcy estate. Proceeds of the Initial Payment received by Debtors' Estates, if any, will be general Assets of the Estates and/or Liquidation Trust Assets, as applicable, and may be used to pay Administrative Claims, Professional Fee Claims, Priority Tax Claims, Allowed Secured Claims, Allowed Class 6 Other Priority Claims, and Wind-Down Expenses, with the remainder to be distributed to Holders of Allowed General Unsecured Claims in accordance with their respective pro rata shares of the GUC Recovery. All of the Supplemental Payments will go to Debtors' Estates (with none going to Ideal). The treatment of any and all Contributed Claims under the Plan is not intended to, and will not, reduce, impair, satisfy, limit, or otherwise affect any rights or defenses that any Water Station Owner or other unsecured Creditor may have against any Person that is not expressly released by this Plan or any document referenced herein or contemplated hereby, including any release in connection with the opt-in process described above (including those rights that may be included in the Contributed Claims and contributed by making the ballot election described above).

## ARTICLE 7.
## MEANS FOR IMPLEMENTATION OF THE PLAN

**A.    Restructuring Transactions**

Prior to the Effective Date, pursuant to multiple merger transactions (collectively, the "*Prior Mergers*"), the following wholly-owned subsidiaries of Refreshing merged with and into Refreshing, with Refreshing surviving each merger and the separate existence of each merging subsidiary ceasing upon the effective date of

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 29

the respective merger: Refreshing Arizona, LLC, an Arizona limited liability company ("*Refreshing AZ*"); Refreshing California L.L.C., a California limited liability company ("*Refreshing CA*"); Refreshing Florida LLC, a Florida limited liability company ("*Refreshing FL*"); Refreshing Georgia LLC, a Georgia limited liability company ("*Refreshing GA*"); Refreshing Great Lakes, LLC, an Illinois limited liability company ("*Refreshing IL*"); Refreshing Las Vegas, LLC, a Nevada limited liability company ("*Refreshing LV*"); and Refreshing Texas LLC, a Texas limited liability company ("*Refreshing TX*" and, together with Refreshing AZ, Refreshing CA, Refreshing FL, Refreshing GA, Refreshing IL, and Refreshing LV, the "*Merged RUSA Subsidiaries*"). As a result of the Prior Mergers, real property and other Assets previously owned by the Merged RUSA Subsidiaries transferred to Refreshing by operation of law and became Assets. Refreshing or another Debtor may enter into one or more additional merger transactions with subsidiaries or other Affiliates, or substantive consolidation of subsidiaries or other Affiliates, to transfer real property or other Assets into Debtors' Estates and increase the Assets, or to otherwise benefit the Estates.

On the Effective Date, or as soon as reasonably practicable thereafter, the Liquidation Trustee shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, one or more intercompany or Affiliate mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively and, together with the Prior Mergers, the "*Restructuring Transactions*"). The actions to implement the Restructuring Transactions may include (i) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and that satisfy the pertinent requirements of applicable law and any other terms to which the applicable Entities may agree; (ii) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (iii) the filing of appropriate certificates or articles of incorporation, reincorporation, reinstatement, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable law; and (iv) all other actions the applicable Entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law in connection with the Plan. For the avoidance of doubt, the Liquidation Trust and Liquidation Trustee shall be bound by any release approved by a Final Order entered in the Chapter 11 Cases prior to the Effective

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 30

Date, and, in the event of such approval, shall be deemed to have released any and all Causes of Action against the First Fed Released Parties.

## B. Sources of Consideration for Plan Distributions/Interface with Ideal Plan of Liquidation

Distributions and other payments or amounts to be funded under the Plan on the Effective Date shall be funded from Cash on hand as of the Effective Date, which Cash includes proceeds from sales of real estate, vehicles, equipment, inventory, and other Assets, anticipated distributions from the Ideal estate pursuant to its plan of reorganization which is intended to be concurrently confirmed with the Plan, and recoveries under Causes of Action prior to the Effective Date. After the Effective Date, the Liquidation Trustee shall make Plan Distributions from the Liquidation Trust and Liquidation Trust Assets in accordance with the Plan and Liquidation Trust Agreement.

The Plan and the Plan of Liquidation filed by the Ideal Debtors shall be confirmed concurrently. The Debtors shall participate in the Ideal plan confirmation process in a manner that supports the participation of all creditors and which maximizes the recovery from the Ideal estate to be contributed to the Liquidation Trust. The Debtors shall ensure that creditors rights in the Liquidation Trust are established and confirmed by the Court as a predicate to confirmation of the Ideal plan and that the Ideal plan contributes rights including causes of action which are beneficial to the Liquidation Trust.

## C. The Liquidation Trust, Liquidation Trustee, and Liquidation Trust Supervisory Board

On or prior to the Effective Date, Debtors, on their own behalf and on behalf of Beneficiaries, will execute the Liquidation Trust Agreement and will take all other steps necessary to establish the Liquidation Trust pursuant to the Liquidation Trust Agreement as further described in Article 11 hereof. On the Effective Date (or, with respect to the Remaining Professional Fee Escrow Amounts, on the Escrow Amounts Transfer Date) or as soon thereafter as is practicable, and in accordance with and pursuant to the terms of the Plan, Debtors will transfer to the Liquidation Trust all of their rights, titles, and interests in all of the Liquidation Trust Assets.

Nothing in the Plan shall constitute a waiver of any privilege claims over any of the documents, including any privileged documents produced to or received by the Liquidation Trust or Liquidation Trustee. For the avoidance of doubt, the Liquidation Trust is a successor-in-interest to Debtors and thus the transfer of any privileged documents as provided herein does not impair or waive any privilege.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 31

Exhibit A
Page 36 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 36 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 36 of 78

The Liquidation Trustee shall serve as the trustee of the Liquidation Trust, subject to supervision by the Liquidation Trust Supervisory Board. Any rights, powers, or obligations given to the Liquidation Trustee pursuant to this Plan or the Liquidation Trust Agreement shall be subject to any consultation, approval, or other rights provided to the Liquidation Trust Supervisory Board in the Liquidation Trust Agreement.

## D. Cancellation of Securities and Agreements

On the Effective Date, except as otherwise specifically provided for in the Plan, (i) the obligations of Debtors under any certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any ownership interest in Debtors giving rise to any Claim or Interest shall be cancelled solely as to Debtors, and the Liquidation Trustee shall not have any continuing obligations thereunder; and (ii) the obligations of Debtors pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, operating agreements, articles of organization, or certificates or articles of formation, or similar documents governing any such ownership interest in Debtors shall be released. Notwithstanding the foregoing, no Executory Contract or Unexpired Lease (a) that has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (b) relating to a Claim paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

## E. Company Action

Upon the Effective Date, all actions contemplated by the Plan which were taken on or before the Effective Date, and all actions reasonably necessary or appropriate to effectuate the Plan or to consummate the transactions contemplated by the Plan which are taken during the period beginning on the Effective Date and ending 60 days after dissolution of the Liquidation Trust, shall be deemed authorized and approved, including, without limitation, the Restructuring Transactions. All matters provided for in the Plan or deemed necessary or desirable by Debtors before, on, or after the Effective Date involving the organizational structure of Debtors, and any company action required by Debtors or the Liquidation Trustee to implement the Plan, shall be deemed to have occurred and shall be in effect on the Effective Date without any requirement of further action by the security holders, directors, managers, members, or officers of Debtors or the Liquidation Trustee. On and after the Effective Date, the Liquidation Trustee shall be authorized to issue, execute, and deliver the agreements, documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of Debtors. To the fullest extent permitted by the Bankruptcy Code, the authorizations and approvals

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 32

contemplated by this Article 7.E shall be effective notwithstanding any requirements under non-bankruptcy law.

## F.     Effectuating Documents; Further Transactions

On and after the Effective Date, the Liquidation Trustee is authorized to, and may, issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and Restructuring Transactions in the name of and on behalf of Debtors without the need for any approvals, authorizations, or consents except those expressly required pursuant to the Plan.

## G.     Section 1146 Exemption

To the fullest extent permitted by Section 1146(a) of the Bankruptcy Code, any transfers of property under or in connection with the confirmed Plan or pursuant to the:

     1.     issuance, distribution, transfer, or exchange of any debt, equity security, or other interest in Debtors or the Liquidation Trust;

     2.     restructuring transactions;

     3.     creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means;

     4.     making, assignment, or recording of any lease or sublease; or

     5.     the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with the confirmed Plan, including any deeds, bills of sale, assignments, or other instruments of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the confirmed Plan;

shall not be subject to any document recording tax, stamp tax, transfer tax, conveyance fee, intangibles or similar tax, sales tax, use tax, mortgage tax, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, regulatory filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and accept for filing and

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 33

Exhibit A
Page 38 of 78

24-01863-FPC11     Doc 1117     Filed 07/16/25     Entered 07/16/25 12:03:53     Pg 38 of 78
24-01863-FPC11     Doc 1259-1     Filed 09/09/25     Entered 09/09/25 11:46:22     Pg 38 of 78

recordation any of the foregoing instruments or other documents without the payment of any such tax, fee, or governmental assessment.

All filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of Section 1146 of the Bankruptcy Code, shall forego the collection of any such tax or governmental assessment, and shall accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

## H.    Preservation of Retained Causes of Action

Debtors preserve and, as of the Effective Date, assign to the Liquidation Trust the Retained Causes of Action.  The Liquidation Trustee may, subject to supervision by the Liquidation Trust Supervisory Board, commence, prosecute, or settle such Retained Causes of Action.  No Entity may rely on the absence of a specific reference in this Plan or the Plan Supplement to any Cause of Action against it as any indication that Debtors or the Liquidation Trustee, as applicable, will not pursue any and all available Retained Causes of Action against it.  Except with respect to any Causes of Action released pursuant to any settlement approved by a Final Order entered in the Chapter 11 Cases prior to the Effective Date, Debtors or the Liquidation Trustee, as applicable, expressly reserve all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan, including Article 14.  The Liquidation Trustee expressly reserves all Retained Causes of Action for later adjudication and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Retained Causes of Action as a consequence of Confirmation or Consummation of the Plan.

The Liquidation Trust shall retain such Retained Causes of Action notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan.  In accordance with Section 1123(b)(3) of the Bankruptcy Code, any Retained Causes of Action a Debtor may hold against any Entity shall vest in the Liquidation Trust.  The Liquidation Trustee may, subject to the supervision of the Liquidation Trust Supervisory Board, exclusively enforce any and all such Retained Causes of Action.  Subject to the supervision of the Liquidation Trust Supervisory Board and the terms of the Liquidation Trust Agreement, the Liquidation Trustee shall have the exclusive right, authority, and discretion to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Retained Cause of Action without the consent or approval of any third party or further notice to, or action, order, or approval of the Bankruptcy Court.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 34

Exhibit A
Page 39 of 78

24-01863-FPC11     Doc 1117     Filed 07/16/25     Entered 07/16/25 12:03:53     Pg 39 of 78
24-01863-FPC11     Doc 1259-1     Filed 09/09/25     Entered 09/09/25 11:46:22     Pg 39 of 78

## I.  Closing the Chapter 11 Cases

After the Effective Date, the Liquidation Trustee may file a motion to close the Chapter 11 Cases of each Debtor for all purposes.  For the avoidance of doubt, the closing of the Chapter 11 Cases shall not have any effect, in any manner, on the Retained Causes of Action the Liquidation Trustee may assert in accordance with the Plan and the Liquidation Trust Agreement.

## J.  U.S. Securities and Exchange Commission

Notwithstanding any language to the contrary contained in this Plan and/or the Confirmation Order, no provision of the Plan or Confirmation Order shall (i) preclude the SEC or any other Governmental Unit from enforcing its police or regulatory powers; or (ii) enjoin, limit, impair, or delay the SEC or any other Governmental Unit from commencing or continuing any Claims, Causes of Action, proceedings, or investigations against any non-Debtor Person or Entity in any forum.

## ARTICLE 8.
## SUBSTANTIVE CONSOLIDATION

The Plan shall serve as a motion by Debtors and the Committee seeking entry of an order substantively consolidating all the Estates of all Debtors into a single consolidated estate for all purposes associated with confirmation and consummation of the Plan.

"*Substantive consolidation*" is an equitable remedy pursuant to which a bankruptcy court combines the assets and liabilities of separate and distinct, but related, legal entities into a single pool and treats them as if they belong to a single entity. *Bonham v. Compton (In re Bonham)*, 229 F.3d 750 (9th Cir. 2000).

Different standards have been employed by courts to determine the propriety of substantive consolidation.  Common to all of these tests is a fact-intensive examination and an analysis of consolidation's impact on creditors.

In *Union Savings Bank v. Augie/Restivo Baking Co., Ltd. (In re Augie/Restivo Baking Co., Ltd.*), 860 F.2d 515, 518 (2d Cir. 1988), the Second Circuit established a two-part disjunctive standard for gauging the propriety of substantive consolidation.  There, the court concluded that the factual elements considered by courts are "merely variants on two critical factors (i) whether creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit, * * *, or (ii) whether the affairs of the debtors are so entangled that consolidation will benefit all creditors."  The *Augie/Restivo* test was adopted by the Ninth Circuit in *In re Bonham*, 229 F.3d 750 (9th Cir. 2000).  The Ninth

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 35

Exhibit A
Page 40 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 40 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 40 of 78

Circuit has noted that under *Augie/Restivo*, "[t]he presence of either factor is a sufficient basis to order substantive consolidation." *Id.*

Debtors and the Committee believe they meet the standard for substantive consolidation under *In re Augie/Restivo*, as adopted by the Ninth Circuit in *In re Bonham*, and thus the Estates of all Debtors should be deemed substantively consolidated for the benefit of Creditors. Only one of the two factors needs to be satisfied to justify substantive consolidation. Here, both factors are satisfied.

The first factor is met for numerous reasons, including fraud, absence of corporate formalities, inadequate capitalization, overlap in ownership and management, failure of Debtors to treat each other at arm's-length, and transferring and commingling funds and payments of affiliated debts.

Additionally, the second factor is satisfied in that the affairs of Debtors are so entangled that consolidation will benefit all Creditors. Prepetition, money was moved between Debtors with little to no documentation (such as borrowing agreements), and there is a significant lack of sufficient or reliable corporate and financial records. Debtors and the Committee believe it would be extremely difficult to unscramble Debtors' Assets and liabilities in any meaningful sense. Further, any attempt to accurately separate the Assets and liabilities of each Debtor would be timely and costly and further deplete the Estates' already limited resources. The benefits of substantive consolidation significantly outweigh the costs and delay of attempting to separate the Assets and liabilities of each Debtor and, thus, the Estates of all Debtors should be deemed substantively consolidated.

Entry of the Confirmation Order shall constitute approval by the Bankruptcy Court of the substantive consolidation of Debtors and their respective Estates for all purposes relating to the Plan, including voting, Confirmation, and Distributions. If substantive consolidation is approved, then for all purposes associated with Confirmation and Consummation of the Plan, all Assets and liabilities of Debtors shall be treated as though they were merged into a single economic unit, and all guarantees by any Debtor of the obligations of any other Debtor, to the extent such exist, shall be considered eliminated so that any Claim and any guarantee thereof by any other Debtor, as well as any joint and several liability of any Debtor with respect to any other Debtor, shall be treated as one collective obligation of Debtors. Moreover, (a) no Distribution shall be made under the Plan on account of any Interest, if any, held by any Debtor in any other Debtor, except to the extent necessary to effect the substantive consolidation provided for herein; (b) all guarantees of any Debtor of the obligations of any other Debtor, to the extent such exist, shall be eliminated so that any Claim against any one Debtor, and any guaranty thereof executed by any other Debtor, shall be one obligation of the consolidated Debtors' Estates; and (c) every Claim that is timely Filed, or to be Filed, in the Chapter 11 Cases of any Debtor shall be deemed Filed against the

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 36

consolidated Estates and shall be one Claim against, and one obligation of, the Estates.

Notwithstanding any provision of the Plan to the contrary, any Holder of multiple Allowed Claims against more than one Debtor that arise from the contractual, joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances, shall be entitled to one Allowed Claim that, in the aggregate, does not exceed the amount of the underlying Claim giving rise to such multiple Claims. Claims against more than one Debtor arising from the same injury, damage, Cause of Action, or common facts shall be Allowed only once as if such Claim were against a single Debtor.

Any alleged defaults under any applicable agreement, including Executory Contracts and Unexpired Leases, with Debtors arising from substantive consolidation under the Plan shall be deemed unenforceable as of the Effective Date.

The Plan is a substantively consolidated Plan for all Debtors, and serves as a motion to substantively consolidate Debtors, with the Confirmation Order ordering such consolidation. Moreover, the Plan substantively consolidates or merges certain non-Debtor affiliates (listed below). In addition or in the alternative, such non-Debtor affiliates may assign their fraudulent transfer/avoidance action claims to Debtors voluntarily. Further, such merger and substantive consolidation represents a settlement of Debtors' and non-Debtor affiliates' claims against their affiliate Ideal Property Investments LLC, including their substantive consolidation claims.

| | |
|---|---|
| 11519 South Petropark LLC | Refreshing Colorado LLC |
| 204 NWW LLC | Refreshing DC LLC |
| 2129 Andrea Lane LLC | Refreshing Great Plains LLC |
| 516 Veterans LLC | Refreshing Mid Atlantic LLC |
| 602 South Meadow LLC | Refreshing Montana LLC |
| 701 Eden LLC | Refreshing New England LLC |
| 8825 LLC | Refreshing New Mexico LLC |
| Harrison Avenue LLC | Refreshing Washington LLC |
| Ideal Industrial Park LLC | Smokey Point Holdings LLC |
| Refreshing Carolinas LLC | WST AZ Properties LLC |

Additionally, Debtors expressly reserve the right to (a) supplement the above list with a notice filed on the docket with additional non-Debtor affiliates, so long as such notice is filed not less than 30 days before the Confirmation Hearing, and (b) post-Confirmation substantively consolidate or merge other affiliates of the Debtors via adversary proceeding. Neither the Plan nor the Confirmation Order

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 37

are final orders related to all potential consolidation or merger of non-Debtor affiliates constituting preclusive effect of non-Debtor affiliates that are not consolidated therein.

Notwithstanding the foregoing, substantive consolidation shall not in any way (i) preclude Debtors or the Liquidation Trustee, as applicable, from pursuing any Avoidance Action, and the Plan and Confirmation Order specifically preserve pre-consolidation rights of each Debtor to pursue third parties under Avoidance Actions as if there was no substantive consolidation, as such reservation is equitable and just under the circumstances unless such Causes of Action have been released pursuant to any settlement approved by a Final Order entered in the Chapter 11 Cases prior to the Effective Date; or (ii) impact the rights of any Secured Creditor with respect to its security interest in any of the Estates' property (including, without limitation, real property, personal property, or otherwise) or the net proceeds thereof, and such creditors lien shall continue to attach to the Collateral, or the proceeds thereof, until the Secured Claim is satisfied in the Allowed amount of such Claim or until such Claim is Disallowed by final, non-appealable order of the Bankruptcy Court. For the avoidance of doubt, the Liquidation Trust and Liquidation Trustee shall be bound by any release approved by a Final Order entered in the Chapter 11 Cases prior to the Effective Date, and, in the event of such approval, shall be deemed to have released any and all Causes of Action against the First Fed Released Parties, including, without limitation, any Causes of Action of any substantively consolidated entity.

**ARTICLE 9.**
**TREATMENT OF EXECUTORY**
**CONTRACTS AND UNEXPIRED LEASES**

## A.    Rejection of Executory Contracts and Unexpired Leases

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to Sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease is (i) the subject of a motion to assume such Executory Contracts or Unexpired Leases pending on the Confirmation Date; or (ii) a contract, release, or other agreement or document entered into in connection with the Plan.

Entry of the Confirmation Order by the Bankruptcy Court shall, subject to and upon the occurrence of the Effective Date, constitute a Final Order approving the rejection of the Executory Contracts and Unexpired Leases rejected pursuant to the Plan. Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 38

**B.    [Reserved]**

**C.    Indemnification Obligations**

Subject to the last sentence of this Article 9.C, any obligations of Debtors pursuant to their organizational documents, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Exculpated Party pursuant to Debtors' organizational documents, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any Claims, demands, suits, Causes of Action, or proceedings against such Party based upon any act or omission related to such Party's service with, for, or on behalf of Debtors prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to Debtors, shall survive Confirmation of the Plan.

Any Claim based on Debtors' indemnification obligations shall not be a Disputed Claim or subject to any objection under Bankruptcy Code Section 502(e)(1)(B). Debtors' indemnification obligations shall not apply to or cover any Claims, suits, or actions against a Person that result in a Final Order determining that such Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing, or breach of the duty of loyalty.

**D.    Claims Based on Rejection of Executory Contracts or Unexpired Leases**

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or Confirmation Order, if any, must be Filed with the Bankruptcy Court by the later of (i) the date set forth in an order of the Bankruptcy Court (including the Confirmation Order) authorizing Debtors to reject contracts or leases pursuant to Section 365 of the Bankruptcy Code (unless the order authorizing such rejection provides otherwise); (ii) 30 days after the claimant is served with notice of the applicable Court order; and (iii) the Effective Date.

Absent further order of the Bankruptcy Court, any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time may be forever barred, estopped, and enjoined from (a) asserting such Claim against Debtors, their Estates, the Liquidation Trust, the Liquidation Trustee, or the property of any of the foregoing, or thereafter filing a Proof of Claim with respect thereto in the Chapter 11 Cases; (b) with respect to such Claim, being treated as a Creditor of Debtors for the purpose of voting upon the Plan; and (c) receiving or being entitled to receive any payment or Distribution from Debtors or the Liquidation Trust, as applicable, with respect to such Claim, without further order of the Court. All Allowed Claims arising from the rejection

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 39

of Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims.

### E. Preexisting Obligations to Debtors Under Executory Contracts and Unexpired Leases

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to Debtors under such Executory Contracts or Unexpired Leases, to the extent of applicable law. In particular, to the extent afforded by applicable law, the Liquidation Trustee expressly reserves, and does not waive, any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued obligations concerning goods previously purchased or services previously received by Debtors contracted from non-Debtor counterparties to rejected Executory Contracts or Unexpired Leases.

### F. Modifications, Amendments, Supplements, Restatements, or Other Agreements

Unless otherwise provided in the Plan, each assumed Executory Contract or Unexpired Lease shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, and any other interests, unless any of the foregoing agreements have been previously rejected or repudiated, or are rejected or repudiated, under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases executed by Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

### G. Reservation of Rights

Nothing contained in the Plan shall constitute an admission by Debtors that any contract or lease is in fact an Executory Contract or Unexpired Lease or that the Liquidation Trust has any liability thereunder. If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, Debtors or the Liquidation Trustee, as applicable, shall have 30 days following entry of a Final Order resolving such dispute to alter its treatment of such contract or lease under the Plan.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 40

## H. Nonoccurrence of Effective Date

In the event the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to Section 365(d)(4) of the Bankruptcy Code.

## ARTICLE 10.
## [RESERVED]

## ARTICLE 11.
## LIQUIDATION TRUST AND LIQUIDATION TRUSTEE

### A. Liquidation Trust Criteria

On the Effective Date, the Liquidation Trust will be established and become effective for the benefit of Beneficiaries.  All relevant parties will take all actions necessary to cause title to the Liquidation Trust Assets to be transferred to the Liquidation Trust.  The powers, authority, responsibilities, and duties of the Liquidation Trust and Liquidation Trustee are set forth in, and will be governed by, the Liquidation Trust Agreement (attached hereto as <u>Exhibit A</u>), and the Confirmation Order.

### B. Purpose of the Liquidation Trust

The Liquidation Trust will be established for the primary purpose of liquidating the Liquidation Trust Assets; pursuing the Retained Causes of Action; reconciling and objecting to asserted Claims; and making Distributions to Beneficiaries in accordance with Treas. Reg. § 301.7701-4(d), Revenue Procedure 94–45, 1994.28 I.R.B. 124, the Plan, Confirmation Order, and Liquidation Trust Agreement, with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Liquidation Trust.

Further, to continue the Chapter 11 Cases or convert these cases to Chapter 7 would result in greater administrative and professional fees and expenses, which would likely decrease, if not erase, any recovery Beneficiaries might receive from prosecution of the Causes of Action.

The Liquidation Trust is intended to qualify as a liquidating trust pursuant to Treasury Regulation Section 301.7701-4(d).  If the Liquidation Trust does not qualify as a liquidating trust for U.S. federal income tax purposes, it is intended that the Liquidation Trust be treated as a partnership for U.S. federal income tax purposes.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 41

Exhibit A
Page 46 of 78

24-01863-FPC11     Doc 1117     Filed 07/16/25     Entered 07/16/25 12:03:53     Pg 46 of 78
24-01863-FPC11     Doc 1259-1     Filed 09/09/25     Entered 09/09/25 11:46:22     Pg 46 of 78

## C. The Liquidation Trust Assets

The Liquidation Trust Assets include (i) Retained Causes of Action; (ii) all other remaining Assets of the Estates, including, without limitation, all Cash, escrow accounts, real estate, interests in real estate, amounts owing from Ideal Property Investments, LLC or other Affiliates, the Remaining Professional Fee Escrow Amounts, if any, and all other personal property; and (iii) the proceeds of each of the foregoing.

### 1. Retained Causes of Action

The Retained Causes of Action are being preserved and contributed to by Debtors to the Liquidation Trust so these Retained Causes of Action may be investigated and prosecuted, if possible, by the Liquidation Trustee, with any recoveries resulting therefrom to be distributed to Beneficiaries of the Liquidation Trust.

### 2. Remaining Assets of the Estates

Additionally, Debtors will transfer all other remaining Assets in their possession as of the Effective Date (or, with respect to the Remaining Professional Fee Escrow Amounts, on the Escrow Amounts Transfer Date) or as soon thereafter as is practicable, to the Liquidation Trust, including all contractual rights and obligations under the APAs and any other purchase and sale agreements executed prior to the Effective Date which have not closed as of the Effective Date.

The Liquidation Trustee will also review whether any Insurance Policies held by Debtors provide a source of recovery to Beneficiaries of the Liquidation Trust, including whether any such Insurance Policies cover any Causes of Action.

For the avoidance of doubt, the Liquidation Trust Assets shall not include (a) Cash, if any, held in the Professional Fee Escrow Account for the benefit of Professional Fee Claims, but shall include the Remaining Professional Fee Escrow Amounts (if any); or (b) any Causes of Action expressly released or exculpated pursuant to this Plan.

## D. Beneficiaries of the Liquidation Trust

Beneficiaries of the Liquidation Trust are the Holders of Liquidation Trust Interests, whether individually or as an agent on behalf of one or more other Entities. To the extent Holders of Allowed Claims are entitled to Distributions from the Liquidation Trust in accordance with the terms of the Plan, such Holders are each a Beneficiary.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 42

Exhibit A
Page 47 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 47 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 47 of 78

## E. Distribution of the Liquidation Trust Assets

The Liquidation Trust Assets, including any recovery from prosecution of the Retained Causes of Action, if any, will be distributed in accordance with the Plan, Confirmation Order, Liquidation Trust Agreement, and the Bankruptcy Code.

## F. Transfer of Assets to the Liquidation Trust

Debtors establish the Liquidation Trust on behalf of the Beneficiaries pursuant to the Liquidation Trust Agreement, with the Beneficiaries to be treated as grantors and deemed owners of the Liquidation Trust Assets. Debtors will irrevocably transfer, assign, and deliver to the Liquidation Trust, on behalf of the Beneficiaries, all of their rights, title, and interests in the Liquidation Trust Assets, notwithstanding any prohibition on assignment under non-bankruptcy law. The Liquidation Trustee will accept and hold the Liquidation Trust Assets in the Liquidation Trust for the benefit of the Beneficiaries, subject to the Plan and Liquidation Trust Agreement.

On the Effective Date (or, with respect to the Remaining Professional Fee Escrow Amounts, on the Escrow Amounts Transfer Date), all Liquidation Trust Assets will vest, and be deemed to vest, in the Liquidation Trust in accordance with Section 1141 of the Bankruptcy Code; provided that the Liquidation Trustee, with the consent of the Liquidation Trust Supervisory Board, may abandon or otherwise not accept any Liquidation Trust Assets the Liquidation Trustee believes, in good faith, have no value to the Liquidation Trust. Any Assets the Liquidation Trust so abandons or otherwise does not accept shall not vest in the Liquidation Trust. As of the Effective Date (or, with respect to the Remaining Professional Fee Escrow Amounts, on the Escrow Amounts Transfer Date), all Liquidation Trust Assets vested in the Liquidation Trust shall be free and clear of all liens, Claims, and Interests except as otherwise specifically provided in the Plan or Confirmation Order. Upon transfer by Debtors of the Liquidation Trust Assets to the Liquidation Trust, or abandonment of Liquidation Trust Assets by the Liquidation Trustee, Debtors will have no reversionary or further interest in or with respect to any Liquidation Trust Assets or the Liquidation Trust. Notwithstanding anything herein to the contrary, the Liquidation Trust and the Liquidation Trustee shall be deemed to be fully bound by the terms of the Plan, the Liquidation Trust Agreement and the Confirmation Order.

Upon the occurrence of the Effective Date, Debtors' books and records shall be transferred to the Liquidation Trust, which shall continue to preserve all financial books and records, emails, and other financial documents relating to Debtors' business that are currently in Debtors' possession.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 43

Exhibit A
Page 48 of 78

For the avoidance of doubt, and notwithstanding anything herein to the contrary, Debtors shall not transfer, or be deemed to have transferred, to the Liquidation Trust any Claims or Causes of Action that are specifically exculpated pursuant to the Plan or Confirmation Order, or released pursuant to a settlement approved by the Bankruptcy Court prior to the Effective Date.

## G.     Interests in Liquidation Trust Assets

Each Beneficiary shall have a beneficial interest in the Liquidation Trust Assets.

## H.     Appointment of the Liquidation Trustee

The initial Liquidation Trustee shall be set forth in the Plan Supplement.  The Liquidation Trustee shall serve as trustee of the Liquidation Trust subject to supervision of the Liquidation Trust Supervisory Board.  Any rights, powers, or obligations given to the Liquidation Trustee pursuant to the Plan or Liquidation Trust Agreement shall be subject to any consultation, approval, or other rights provided to the Liquidation Trust Supervisory Board in the Liquidation Trust Agreement.

## I.     Rights and Powers of Debtors and the Liquidation Trustee

### 1.     Powers of Debtors and the Liquidation Trustee

All Distributions under the Plan shall be made on the Effective Date by Debtors or thereafter by the Liquidation Trustee or its designees.  After the Effective Date, the Liquidation Trustee shall have the right to object to, allow, or otherwise resolve any Claim, and shall have such other rights, duties, and obligations as set forth in this Plan and the Liquidation Trust Agreement.

Debtors and the Liquidation Trustee, as applicable, shall not be required to give any bond, surety, or other security for the performance of their respective duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event the Bankruptcy Court requires Debtors or the Liquidation Trustee, as applicable, to post a bond or surety, all costs and expenses of procuring any such bond or surety shall be paid for with Cash from the Liquidation Trust.

### 2.     Expenses Incurred on or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the fees and expenses incurred by the Liquidation Trustee on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including attorney fees and expenses) made by the Liquidation Trustee shall be paid in Cash

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 44

from the Liquidation Trust Assets without any further notice to, or action, order, or approval of, the Bankruptcy Court.

## J.  Distribution and Withholding

Notwithstanding anything in the Plan to the contrary, the Liquidation Trustee will make, or cause to be made, all Distributions under the Plan other than (i) those Distributions made by Debtors on the Effective Date, and (ii) Distributions from the Professional Fee Escrow Account in accordance with this Plan.

The Liquidation Trustee may withhold from amounts distributable to any Entity any and all amounts, determined in the Liquidation Trustee's sole discretion, required to be withheld by the Plan or applicable law, regulation, rule, ruling, directive, or other governmental requirement.

## K.  Insurance

The Liquidation Trustee may maintain customary insurance coverage for the protection of the Liquidation Trust Assets, Liquidation Trustee, and Professionals retained by the Liquidation Trust on and after the Effective Date.  The cost of such insurance shall be deemed a trust administrative expense.

## L.  Other Rights and Remedies

In addition to the Liquidation Trustee's rights and duties with respect to the Liquidation Trust, on and after the Effective Date, the Liquidation Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court.

On the Effective Date, the Liquidation Trust shall (i) take possession of all books, records, and files of Debtors and their Estates in all forms, including electronic and hard copy, other than Debtors' Professionals' work product and other documents; and (ii) provide for the retention and storage of such books, records, and files until such time as the Liquidation Trustee determines, in accordance with the Liquidation Trust Agreement, that retention of same is no longer necessary or required.  Any and all rights to conduct investigations with respect to Causes of Action or Claims not released by Debtors and to assert such Causes of Action shall vest with the Liquidation Trust and shall continue until dissolution of the Liquidation Trust, and the Liquidation Trust shall be deemed a successor-in-interest to Debtors with all requisite standing and authority to pursue such rights, including the Causes of Action, as if neither the Confirmation Date nor the Effective Date had occurred.  The filing of the final monthly report (for the month in which the Effective Date occurs) and all subsequent quarterly reports shall be the responsibility of the Liquidation Trustee.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 45

Exhibit A
Page 50 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 50 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 50 of 78

Notwithstanding the foregoing or any other provision in the Plan, in the event the Liquidation Trust receives any monies from the United States or any other Governmental Unit, obtained as forfeited assets (or otherwise) by the Governmental Unit for the benefit of the investor victims of Debtors' prepetition Ponzi scheme, all such monies shall not constitute Estate Assets or Liquidation Trust Assets, and such monies shall be distributed only to such victims subject to the terms of any restitution order, or alternatively, the Plan and the Liquidation Trust Agreement; provided that the Liquidation Trustee and its agents will be reimbursed from such monies for reasonable costs and expenses incurred by said parties related to the Liquidation Trust's collection, administration, and distribution of such monies to the applicable investors.

## M. Priority Claims Reserve

On the Effective Date, the Liquidation Trustee shall, to the extent feasible, establish the Priority Claims Reserve by depositing Cash from the Liquidation Trust Assets in the amount of all anticipated Allowed Priority Tax Claims and Allowed Other Priority Claims. The Priority Claims Reserve shall be used to pay Allowed Priority Tax Claims and Allowed Other Priority Claims in accordance with the Plan. If all or any portion of a Priority Tax Claim or Other Priority Claim shall become a Disallowed Claim, or is reclassified as a General Unsecured Claim, then the amount on deposit in the Priority Claims Reserve attributable to such Disallowed Claim or reclassified Claim, including the interest that has accrued on said amount while on deposit in the Priority Claims Reserve, shall remain in the Priority Claims Reserve to the extent the Liquidation Trustee determines necessary to ensure that the Cash remaining in the Priority Claims Reserve is sufficient to ensure that Allowed Priority Tax Claims and Allowed Other Priority Claims will be paid in accordance with the Plan.

## N. Disputed Claims Reserve

The Liquidation Trustee may maintain, in accordance with the Liquidation Trustee's powers and responsibilities under the Plan and the Liquidation Trust Agreement, a Disputed Claims Reserve. The Liquidation Trustee may, in its reasonable discretion, distribute such amounts (net of any expenses, including any taxes relating thereto), as provided herein and in the Liquidation Trust Agreement, as Disputed Claims are resolved pursuant to Article 13 hereof, and such amounts may be distributed on account of such Disputed Claims as if such Disputed Claims were Allowed Claims as of the Effective Date.

## O. Attribution of Income

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the issuance of applicable Treasury Regulations, the receipt

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 46

Exhibit A
Page 51 of 78

24-01863-FPC11     Doc 1117     Filed 07/16/25     Entered 07/16/25 12:03:53     Pg 51 of 78
24-01863-FPC11     Doc 1259-1     Filed 09/09/25     Entered 09/09/25 11:46:22     Pg 51 of 78

by the Liquidation Trustee of a private letter ruling if the Liquidation Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidation Trustee), allocations of taxable income of the Liquidation Trust (other than taxable income allocable to the Liquidation Trust's claims reserves) among Holders of Claims will be determined by reference to the manner in which an amount of Cash equal to such taxable income would be distributed (were such Cash permitted to be distributed at such time) if, immediately prior to such deemed Distribution, the Liquidation Trust had distributed all of its Assets (valued at their tax book value) to holders of beneficial interests in the Liquidation Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent Distributions from the Liquidation Trust. Similarly, taxable loss of the Liquidation Trust will be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidation Distribution of the remaining Liquidation Trust Assets. The tax book value of the Liquidation Trust Assets for purposes of this paragraph shall equal their fair market value on the date the Liquidation Trust Assets are transferred to the Liquidation Trust, adjusted in accordance with tax accounting principles prescribed by the IRS, Internal Revenue Code, applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

**P.     Current Basis**

All income of the Liquidation Trust will be subject to tax on a current basis.

**Q.     Tax Identification Numbers**

The Liquidation Trustee may require any Beneficiary to furnish to the Liquidation Trustee its Employer or Taxpayer Identification Number as assigned by the IRS or certify to the Liquidation Trustee's satisfaction that Distributions to the Beneficiary are exempt from backup withholding. The Liquidation Trustee may condition any Distribution to any Beneficiary upon receipt of such identification number. If, after reasonable inquiry, any Beneficiary fails to provide such identification number to the Liquidation Trustee, the Liquidation Trustee shall deem such Beneficiary's Claim Disallowed and no Distribution shall be made on account of such Beneficiary's Claim.

**R.     Wind-Down**

In addition to the Liquidation Trustee's rights and duties with respect to the Liquidation Trust, on and after the Effective Date, the Liquidation Trustee will be authorized to implement the Plan and any applicable orders of the Bankruptcy Court that pertain to the Liquidation Trust. The Liquidation Trustee shall retain the power and authority to take any action necessary to wind down and dissolve

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 47

Debtors' Estates or take any other action of Debtors required or permitted under the Bankruptcy Code.

As soon as practicable after the Effective Date, the Liquidation Trustee shall (i) cause Debtors to comply with, and abide by, the terms of any APAs; (ii) complete and file all final or otherwise required federal, state, and local tax returns for Debtors and, pursuant to Section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of each Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws; and (iii) take such other actions as may be necessary or desirable to carry out the purposes of the Plan. From and after the Effective Date, Debtors (a) for all purposes shall be deemed to have withdrawn their business operations from any state in which they were previously conducting, or are registered or licensed to conduct, their business operations; and (b) shall not be liable in any manner to any taxing authority for franchise, business, license, or similar taxes accruing on or after the Effective Date. In addition, Debtors shall be deemed to have cancelled all Interests pursuant to this Plan. For the avoidance of doubt, (x) the dissolution of Debtors shall not have any effect, in any manner, on the Retained Causes of Action the Liquidation Trustee may assert in accordance with the Plan and Liquidation Trust Agreement; and (y) notwithstanding each Debtor's dissolution, Debtors shall be deemed to remain intact solely with respect to the preparation, filing, review, and resolution of applications for Professional Fee Claims.

## S.    Termination of Liquidation Trust and Liquidation Trustee

Notwithstanding any provision of the Plan to the contrary, the Liquidation Trust shall be dissolved upon the earlier of the Distribution of all Liquidation Trust Assets to the Beneficiaries required to be made by the Liquidation Trust under the Plan or the fifth anniversary of the creation of the Liquidation Trust; provided, however, notwithstanding the foregoing, that the Liquidation Trust shall be dissolved no later than five years from the Effective Date unless the Bankruptcy Court, upon a motion filed within six months of the fifth anniversary of the Effective Date or the end of any extension period approved by the Bankruptcy Court (the filing of which shall automatically extend the term of the Liquidation Trust pending entry of an order by the Bankruptcy Court granting or denying the motion), determines that a fixed period extension (not to exceed three years, together with any prior extensions, without a favorable letter ruling from the IRS that any further extension would not adversely affect the status of the Liquidation Trust as a liquidating trust for federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Liquidation Trust Assets; provided, however, that adequate funding exists for such extension period as determined by the Bankruptcy Court; and provided, further, that each request for

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 48

Exhibit A
Page 53 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 53 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 53 of 78

an extension shall be approved by the Bankruptcy Court within six months prior to conclusion of the extended term. After (i) final Distribution of the balance of the Liquidation Trust Assets or proceeds of the Liquidation Trust pursuant to the Plan; (ii) the filing by or on behalf of the Liquidation Trust of a certification of dissolution with the Bankruptcy Court in accordance with the Plan; and (iii) any other action deemed appropriate by the Liquidation Trustee, the Liquidation Trust shall be deemed dissolved for all purposes without the necessity for any other or further actions.

The duties, responsibilities, and powers of the Liquidation Trustee will terminate in accordance with the terms of the Liquidation Trust Agreement.

## T. Transfer of Beneficial Interests

Notwithstanding anything to the contrary in the Plan, beneficial interests in the Liquidation Trust may be transferred upon notice to the Liquidation Trustee.

**ARTICLE 12.**
**PROVISIONS GOVERNING DISTRIBUTIONS**

## A. Timing and Calculation of Amounts to be Distributed

Each Holder of an Allowed Claim against Debtors shall receive its proportionate share of the full amount of Distributions the Plan provides for Allowed Claims in the applicable Class from Debtors, or the Liquidation Trustee on behalf of Debtors or the Liquidation Trust, as applicable. In the event any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, in which case such payment shall be deemed to have occurred when due. If and to the extent there are Disputed Claims or Disputed Interests, Distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article 13. Except as specifically set forth in this Plan, no Holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Distribution in excess of the Allowed amount of such Claim plus any interest accruing on such Claim that is actually payable in accordance with the Plan.

## B. Delivery of Distributions and Undeliverable, Unclaimed, or Forfeited Distributions

### 1. Record Date for Distribution

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making Distributions shall instead be authorized and entitled to

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 49

recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date.

### 2. Delivery of Distributions

Except as otherwise provided herein, Debtors or the Liquidation Trustee, as applicable, shall make Distributions to Holders of Allowed Claims and Allowed Interests on or after the Effective Date at the address for each such Holder as indicated on Debtors' records as of the date of any such Distribution; provided that the manner of such Distributions shall be determined at the discretion of Debtors or the Liquidation Trustee, as applicable; provided, further, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder.

### 3. Payments and Distributions on Disputed Claims

Distributions made after the Effective Date to Holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims shall, in the Liquidation Trustee's reasonable discretion, be deemed to have been made by the Liquidation Trustee on the Effective Date, unless the Liquidation Trustee and the applicable Holder of such Claim agree otherwise.

### 4. Special Rules for Distributions to Holders of Disputed Claims and Interests

Notwithstanding any provision otherwise in the Plan, and except as may be agreed to by Debtors or the Liquidation Trustee, as applicable, on the one hand, and the Holder of a Disputed Claim or Interest, on the other hand, no partial payments or partial Distributions shall be made with respect to any Disputed Claims or Interests, other than with respect to Professional Fee Claims, until all Disputed Claims or Interests held by the Holder of such Disputed Claims have become Allowed Claims or have otherwise been resolved by settlement or Final Order.

### 5. Fractional Cents

Notwithstanding anything in the Plan to the contrary, no payment of fractional cents shall be made pursuant to the Plan. Whenever any payment of a fraction of a cent under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole penny (up or down), with half cents or more being rounded up and fractions less than half of a cent being rounded down.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 50

6. <u>Minimum Distributions</u>

Notwithstanding anything to the contrary contained in the Plan, the Liquidation Trustee shall not be required to distribute, and shall not distribute, Cash or other property to the Holder of any Allowed General Unsecured Claim if the amount of Cash or other property to be distributed on account of such Claim is less than $100. Any Holder of an Allowed General Unsecured Claim on account of which the amount of Cash or other property to be distributed is less than $100 shall be forever barred from asserting such Claim against the Liquidation Trust.

7. <u>Undeliverable Distributions and Unclaimed Property</u>

All Distributions to Holders of Allowed Claims not made by wire transfer shall be made at the address of such Holder as set forth in the Claims Register maintained in the Chapter 11 Cases (subject to any transfer effectuated pursuant to Bankruptcy Rule 3001(e) or, after the Effective Date, a change of address notification provided by a Holder in a manner reasonably acceptable to the Liquidation Trustee) or, in the absence of a Filed Proof of Claim, the Schedules and Statements, on the Effective Date. If any Distribution to a Holder of an Allowed Claim is returned as undeliverable, the Liquidation Trustee shall make reasonable inquiry for a correct current address. In the event reasonable inquiry does not yield a correct current address, the Liquidation Trustee shall have no further obligation to determine the correct current address of such Holder and no Distribution to such Holder shall be made unless and until the Liquidation Agent is notified, in writing, by the Holder of the correct current address of such Holder within 90 days of such Distribution, at which time a Distribution shall be made to such Holder without interest. Amounts in respect of undeliverable Distributions made by the Liquidation Trustee shall be held in trust on behalf of the Holder of the Claim to which they are payable by the Liquidation Trust or the Estates until the earlier of the date such undeliverable Distributions are claimed by such Holder and the date 90 days after the date the undeliverable Distributions were made. Following the expiration of 90 days after the date the undeliverable Distributions were made, the amounts in respect of undeliverable Distributions shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust or Estates, as applicable, automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan. Such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidation Trust or the Estates, and the Claims of such Holder shall be forever barred.

8. <u>Forfeiture of Distribution</u>

If the Holder of a Claim fails to cash a check payable to it within the time period set forth in this Article 12.B hereof, fails to claim an undeliverable Distribution

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 51

Exhibit A
Page 56 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 56 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 56 of 78

within 90 days after issuance thereof, or fails to complete and return to the Liquidation Trustee the appropriate Form W-8 or Form W-9 within 120 days of a request by the Liquidation Trustee for the completion and return to it of the appropriate form, then such Holder shall be deemed to have forfeited its right to any reserved and future Distributions from the Liquidation Trust or Estates, and the Claims of such Holder shall be forever barred. The forfeited Distributions shall revert (notwithstanding any applicable federal or state escheat, abandoned, or unclaimed property laws to the contrary) to the Liquidation Trust or Estates automatically and without need for a further order by the Bankruptcy Court for Distribution in accordance with the Plan.

9. <u>Further Distributions Not Feasible</u>

Notwithstanding anything to the contrary in the Plan, if the Liquidation Trustee determines that any Beneficiaries of the Liquidation Trust no longer exist or cannot otherwise be reasonably ascertained, or the Liquidation Trustee determines that the Liquidation Trust Assets are insufficient to make any further Distribution economically justifiable, the Liquidation Trustee shall distribute the Liquidation Trust Assets that constitute Cash in accordance with the Liquidation Trust Agreement (which may include donating such Cash to one or more charitable organizations) and thereafter seek to terminate the Liquidation Trust.

10. <u>Manner of Payment Pursuant to the Plan</u>

Any payment in Cash to be made pursuant to the Plan shall be made at the election of Debtors or the Liquidation Trustee, as applicable, by check, wire transfer, or such other method as Debtors or the Liquidation Trustee, as applicable, deem appropriate under the circumstances. Cash payments to foreign creditors may be made, at the option, and in the sole discretion, of the Liquidation Trustee, in such funds and by such means as are necessary or customary in a particular foreign jurisdiction. For purposes of effectuating Distributions under the Plan, any Claim denominated in foreign currency shall be converted to U.S. dollars pursuant to the applicable published exchange rate in the <u>Wall Street Journal, National Edition</u>, in effect on the Effective Date. Cash payments in the form of checks issued by the Liquidation Trustee shall be null and void if not cashed within 90 days of the date of issuance thereof and shall be deemed undeliverable Distributions.

**C. Compliance With Tax Requirements**

In connection with the Plan, to the extent applicable, Debtors or the Liquidation Trustee, as applicable, shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant hereto shall be subject to such withholding and reporting requirements. The Liquidation Trustee shall be authorized to take any and all actions that may be

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 52

necessary or appropriate to comply with such withholding, payment, and reporting requirements. The Liquidation Trustee may require, in the Liquidation Trustee's sole and absolute discretion and as a condition to the receipt of any Distribution, that the Holder of an Allowed Claim complete and return to the Liquidation Trustee the appropriate Form W-8 or Form W-9, as applicable to each Holder. Notwithstanding any other provision of the Plan, (i) each Holder of an Allowed Claim that is to receive a Distribution pursuant to the Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and other tax obligations on account of such Distribution, and including, in the case of any Holder of a Disputed Claim that has become an Allowed Claim, any tax obligation that would be imposed upon the Liquidation Trust in connection with such Distribution; and (ii) no Distribution shall be made to or on behalf of such Holder pursuant to the Plan unless and until such Holder has made arrangements reasonably satisfactory to the Liquidation Trustee for the payment and satisfaction of such withholding tax obligations or such tax obligation that would be imposed upon the Liquidation Trust in connection with such Distribution.

## D.    Allocations

To the extent any Allowed Claim entitled to a Distribution from Liquidation Trust Assets or non-Liquidation Trust Assets consists of indebtedness and accrued but unpaid interest thereon, such Distributions shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to any portion of such Claims for accrued but unpaid interest.

## E.    No Postpetition Interest on Claims

Unless otherwise specifically provided for in Section 506(b) of the Bankruptcy Code, a Final Order, the Plan, or the Confirmation Order, or required by applicable law, postpetition interest shall not accrue or be paid on any prepetition Claims against Debtors, and no Holder of a prepetition Claim against Debtors shall be entitled to interest accruing on or after the Petition Date on any such prepetition Claim.

## F.    Foreign Currency Exchange Rate

Except as otherwise provided in a Bankruptcy Court order, as of the Effective Date, any Claim asserted in currency other than U.S. dollars shall be automatically deemed converted to the equivalent U.S. dollar value using the exchange rate for the applicable currency as published in <u>The Wall Street Journal, National Edition</u>, on the Effective Date.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 53

Exhibit A
Page 58 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 58 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 58 of 78

## G.    Setoffs and Recoupment

The right of any creditor to offset a mutual debt owing by such creditor to the Debtors that arose before the commencement of the case against a claim of the Debtor that arose before the commencement of the case is expressly preserved pursuant to the terms of §553 of the Code. The Liquidation Trustee may, but shall not be required to, set off against any Claim, including any Allowed Claim, and the payments or other Distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that Debtors or the Liquidation Trust may have against the Holder of such Claim, unless such claims have been released pursuant to a Final Order approved by the Bankruptcy Court; provided, that neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidation Trust of any such claim it may have against such Holder.  To the extent the Liquidation Trustee exercises setoff rights against payment or other Distributions made pursuant to the Plan, the Liquidation Trustee shall indicate the amount of such setoff in the distribution letter and shall notify the affected claimant that such claimant may challenge such setoff in the Bankruptcy Court.

Notwithstanding anything to the contrary herein or in a Sale Order, any right of setoff or recoupment is preserved against Debtors, the Purchasers in the event of a Sale, and any of their affiliates and successors to the extent such right(s) exist under applicable law and subject to Debtors', Purchasers', and any of their Affiliates' and successors', as applicable, right to contest any such right(s) of setoff or recoupment; provided, however, that notwithstanding the foregoing or anything in the Plan to the contrary, the right of any Entity or Holder of a Claim or Interest to assert setoff or recoupment as a defense or affirmative defense to claims brought against them is expressly preserved to the extent permitted by applicable law and shall not be impaired, enjoined, precluded, restricted, or otherwise limited by the Plan or the Confirmation Order.

## H.    Claims Paid or Payable by Third Parties

Debtors or the Liquidation Trustee, as applicable, shall be authorized to reduce in full a Claim, and such Claim shall be Disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or, as applicable, the Liquidation Trust, including on account of recourse to collateral held by third parties that secure such Claim.  No Distributions under the Plan shall be made on account of a Claim payable pursuant to one of Debtors' Insurance Policies, other non-Debtor payment agreements, or collateral held by a third party, until the Holder of such Claim has exhausted all remedies with respect to such Insurance Policy, other non-Debtor payment agreement, or collateral, as applicable.  To the

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 54

extent a Holder of a Claim receives a Distribution on account of a Claim and receives payment from a party that is not a Debtor on account of such Claim, such Holder shall, within 14 days of receipt thereof, repay or return the Distribution to the applicable Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such Distribution under the Plan. The failure of such Holder to timely repay or return such Distribution shall result in the Holder owing the applicable Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the 14-day grace period specified above until the amount is repaid. To the extent one or more of Debtors' Insurers or non-Debtor payors pays or satisfies in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction or otherwise settled), or collateral or proceeds from such collateral are used to satisfy such Claim, unless such Claim is withdrawn, then, reasonably promptly following Debtors or the Liquidation Trustee becoming aware of any such payment or satisfaction, Debtors or the Liquidation Trustee shall object to such Claim on notice to the affected Claimants or by filing a notice of claims satisfaction and serving such notice on the affected Claimants.

## I. Applicability of Insurance Policies

Except as otherwise provided in the Plan, payments to Holders of Claims shall be in accordance with the provisions of any applicable Insurance Policy. Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that Debtors or any Entity may hold against any other Entity, including Insurers under any Insurance Policies, nor shall anything contained herein constitute or be deemed a waiver by any Insurers of any rights or defenses, including coverage defenses, held by such Insurers.

**ARTICLE 13.**
**PROCEDURES FOR RESOLVING CONTINGENT,**
**UNLIQUIDATED, AND DISPUTED CLAIMS AND INTERESTS**

## A. Allowance of Claims and Interests

Prior to the Effective Date, Debtors, and on and after the Effective Date, the Liquidation Trustee, shall have and shall retain any and all rights and defenses Debtors had with respect to any Claim or Interest, except with respect to any Claim or Interest deemed Allowed as of the Effective Date. Except as expressly provided in the Plan or in any Final Order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), no Claim or Interest shall become an Allowed Claim or Interest unless and until such Claim or Interest is deemed Allowed under the Plan or the Bankruptcy Code, or the Bankruptcy Court has entered a Final Order, including the Confirmation Order, in the Chapter 11

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 55

Cases allowing such Claim or Interest.  Notwithstanding anything to the contrary herein, if a timely objection to a Proof of Claim has not been Filed, or the Schedules and Statements have not been amended with respect to a Claim that was scheduled by Debtors but was not set forth in the Schedules and Statements by Debtors as contingent, unliquidated, and/or Disputed, then the Claim to which the Proof of Claim or the Claim set forth in the Schedules and Statements relates will be treated as an Allowed Claim.

## B.  Prosecution of Objections to Claims and Interests

Other than with respect to Professional Fee Claims or Claims Allowed pursuant to a Final Order, prior to the Effective Date, Debtors and, on or after the Effective Date, the Liquidation Trustee or its designees, as applicable, shall have the authority to File objections to Claims or Interests, and to settle, compromise, withdraw, or litigate to judgment objections on behalf of Debtors' Estates to any and all Claims or Interests, regardless of whether such Claims or Interests are in a Class or otherwise.

Subject to the foregoing sentence, from and after the Effective Date, the Liquidation Trustee (i) may settle or compromise any Disputed Claim in accordance with the Liquidation Trust Agreement and Article 13 hereof and, (ii) shall succeed to Debtors' rights with respect to any objections Filed by Debtors that remain pending as of the Effective Date.  From and after the Effective Date, the Liquidation Trustee shall have sole authority to administer and adjust the Claims Register to reflect any such settlements or compromises without further notice to or action, order, or approval of the Bankruptcy Court.  Without limiting the preceding, the Liquidation Trustee shall have the benefit of, and may utilize, the procedures approved pursuant to, that certain Order Approving (1) Omnibus Claims Objections Procedures and (2) Settlement Procedures entered into in the Bankruptcy Cases [Dkt. 397].

## C.  Estimation of Claims

On and after the Effective Date, the Liquidation Trustee may, at any time, request that the Bankruptcy Court estimate (i) any Disputed Claim pursuant to applicable law; and (ii) any contingent or unliquidated Claim pursuant to applicable law, including Section 502(c) of the Bankruptcy Code, regardless of whether Debtors or the Liquidation Trustee have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 to the maximum extent permitted by law as determined by the Bankruptcy Court to estimate any Disputed Claim, contingent Claim, or unliquidated Claim, including during litigation concerning any objection to any Claim or during the pendency of any appeal relating to any such objection.  Notwithstanding any provision otherwise in the

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 56

Plan to the contrary, a Claim that has been expunged from the Claims Register but is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars unless otherwise ordered by the Bankruptcy Court. In the event the Bankruptcy Court estimates any Disputed Claim, contingent Claim, or unliquidated Claim, which estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim for all purposes under the Plan, including for purposes of Distributions, Debtors or the Liquidation Trustee, as applicable, may elect to pursue additional objections to the ultimate Distribution on such Claim. If the estimated amount constitutes a maximum limitation on such Claim, Debtors or the Liquidation Trustee, as applicable, may elect to pursue any supplemental proceedings to object to any ultimate Distribution on account of such Claim. Notwithstanding Section 502(j) of the Bankruptcy Code, in no event shall any Holder of a Claim that has been estimated pursuant to Section 502(c) of the Bankruptcy Code or otherwise be entitled to seek reconsideration of such estimation unless such Holder has Filed a motion requesting the right to seek such reconsideration on or before 21 days after the date on which such Claim is estimated. All of the aforementioned Claims and objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### D. Expungement or Adjustment to Claims Without Objections

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled, or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by Debtors or the Liquidation Trustee without an objection to such Claim or Interest having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

### E. Time to File Objections to Claims

Any objections to Claims shall be Filed on or before the later of (i) 180 days after the Effective Date; and (ii) such other period of limitation as may be specifically fixed by Debtors or the Liquidation Trustee, as applicable, or by a Final Order of the Bankruptcy Court for objecting to such Claims.

### F. Disallowance of Claims

Any Claims or Interests held by Entities whom the Bankruptcy Court has determined are Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed Disallowed pursuant to Section 502(d) of the

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 57

Bankruptcy Code, and Holders of such Claims or Interests may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to Debtors by that Entity have been turned over or paid to the Liquidation Trustee. All Claims Filed on account of an indemnification obligation to a director, manager, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan, without further notice to or action, order, or approval of the Bankruptcy Court.

Except as provided herein or otherwise agreed, any and all Proofs of Claim Filed after the applicable Bar Date may be deemed Disallowed and expunged as of the Effective Date upon the filing of an objection to such Claims on notice to any affected claimant. If the Bankruptcy Court deems such Claims Disallowed and expunged as of the Effective Date following a hearing, Holders of such Claims shall not receive any Distributions on account of such Claims.

## G.    Amendments to Claims

After the Effective Date, a Claim may not be Filed or amended without the prior authorization of the Bankruptcy Court, Debtors, or the Liquidation Trustee, as applicable, or upon a motion to file a late Claim. Absent such authorization or the Bankruptcy Court granting such motion, any new or amended Claim Filed shall be deemed Disallowed in full and expunged without any further action.

## H.    No Distributions Pending Allowance

If an objection to a Claim or portion thereof is Filed as set forth herein, no payment or Distribution provided under the Plan shall be made on account of such Claim or portion thereof unless and until such Disputed Claim becomes an Allowed Claim. For the avoidance of doubt, Distributions may be made on account of any undisputed portions of a partially Disputed Claim prior to the Allowance or Disallowance of the Disputed portion of such Claim.

## I.    Distributions After Allowance

To the extent a Disputed Claim ultimately becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as reasonably practicable after the date the order or judgment of a court of competent jurisdiction allowing any Disputed Claim becomes a Final Order, the Liquidation Trustee shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, less any previous Distribution (if any) that

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 58

was made on account of the undisputed portion of such Claim, without any interest, dividends, or accruals to be paid on account of such Claim unless required under applicable bankruptcy law or as otherwise provided herein.

## ARTICLE 14.
## TERMINATION OF CLAIMS, RELEASE, INJUNCTION, AND RELATED PROVISIONS

### A.    Termination of Claims and Interests

To the maximum extent provided by Section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the Distributions, rights, and treatment provided in the Plan shall be in complete satisfaction and release, effective as of the Effective Date, of Claims, Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against liabilities of, liens on, obligations of, rights against, and Interests in Debtors or any of their Assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, in each case whether or not (i) a Proof of Claim or Proof of Interest based upon such Claim or Interest is Filed or deemed Filed pursuant to Section 501 of the Bankruptcy Code; (ii) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to Section 502 of the Bankruptcy Code; or (iii) the Holder of such a Claim or Interest has accepted the Plan.  Any default by Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the filing of the Chapter 11 Cases shall be deemed cured on the Effective Date. The Confirmation Order shall be a judicial determination of the termination of all Claims and Interests subject to the occurrence of the Effective Date.

### B.    Release of Liens

Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, or any settlement approved by a Final Order entered in the Chapter 11 Cases prior to the Effective Date, on the Effective Date, and concurrently with the applicable Distributions made pursuant to the Plan, and in the case of a Secured Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 59

Exhibit A
Page 64 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 64 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 64 of 78

Effective Date and required to be satisfied pursuant to the Plan, all mortgages, deeds of trust, liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, and compromised, and all of the right, title, and interest of any holder of such mortgages, deeds of trust, liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns, in each case without any further approval or order of the Bankruptcy Court and without any action or Filing being required to be made by Debtors. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Liquidation Trustee to evidence the release of such lien, including the execution, delivery, and filing or recording of such releases, and shall authorize Debtors and the Liquidation Trustee to file UCC-3 termination statements (to the extent applicable) with respect thereto. The presentation or filing of the Confirmation Order to or with any federal, state, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such liens. Notwithstanding the foregoing, nothing in the Plan or Confirmation Order releases any liens that lienholders have on water machines (also referred to herein as water stations) owned by non-Debtors, if they are not sold, or the net sale proceeds of such water machines if they are sold.

## C.    Release Provision

Upon a Confirmation Order of this Plan becoming a Final Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the Releasing Creditors globally release the First Fed Released Parties from any and all claims, demands, causes of action, suits, liabilities, and obligations of every nature and kind, known or unknown, asserted or unasserted, now existing or hereafter arising, that any Releasing Creditor may hold against any of the First Fed Released Parties, whether arising at law or in equity, in contract or tort, under federal or state law, including, without limitation, (a) the Lender Liability Claims, (b) any bankruptcy claims and claims assertable by the Releasing Creditors under state law, and any claims released by the Debtors that may be assertable by any Releasing Creditor, (c) any claims related to, or asserted, or that could have been asserted in the "State Court Litigation" or "Federal Court Litigation" (as defined and described in the Disclosure Statements filed by Ideal), or in King County Superior Court lead case no. 24-2-12567-1 SEA, and the cases consolidated therein, or in King County Superior Court case no. 25-2-17253-8 SEA, (d) the Claims, (e) any claim against the First Fed Released Parties now or hereafter assigned to, or acquired by, the Debtors, Committee, or any liquidating trustee or administrator under the Plans of Liquidation, or any other Releasing Party, whether by merger, substantive

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 60

consolidation, sale, assignment, contribution, or other transfer, (f) any claims arising from or relating to (i) the Credit Accommodation and Enhancement Agreements; (ii) the Security Instruments, (iii) the First Fed Loans; (iv) the First Fed Parties' banking, treasury, lending, credit, business, or other relationship with any of the Debtors, Ryan Wear, Additional Collateral Grantors, or any other affiliate or subsidiary of any Debtor or Ryan Wear, or any officer, employee or agent of such entities or persons, (v) any and all payments received by or on behalf of First Fed, and (vi) the Reserve Account.

In addition, upon a Confirmation Order of this Plan becoming a Final Order, for good and valuable consideration, the adequacy of which is hereby confirmed, the First Fed Parties globally release the Releasing Creditors from any and all claims, demands, causes of action, suits, liabilities, and obligations of every nature and kind, known or unknown, asserted or unasserted, now existing or hereafter arising, that it may hold against the Releasing Creditors, whether arising at law or in equity, in contract or tort, under federal or state law; provided, however, such release from the First Fed Released Parties shall not include (collectively, the "Releasing Creditor Reserved Claims") (aa) any claims related to a First Fed Third Party Loan or any non-Debtor loan owing by such Releasing Creditor, (bb) any claims related to any unrelated loans, treasury and credit products, (cc) any claims First Fed may possess against Ryan Wear, Richard Wear, Jordan Chirico or any other insider of the Debtors (as such term is defined in the Bankruptcy Code), (dd) any claims now or hereafter in litigation with any non-Party for apportionment or allocation of fault to any Releasing Creditor, or any related affirmative defense based on the fault of such Releasing Creditor, all of which Releasing Creditor Reserved Claims are expressly reserved by the First Fed Parties.

In addition, to the extent not previously released pursuant to the First Fed Settlement Agreement, the Releasing Parties hereby exchange mutual, global releases of any and all claims, demands, causes of action, suits, liabilities, and obligations of every nature and kind, known or unknown, asserted or unasserted, now existing or hereafter arising, that each Releasing Party may hold against the Released Parties, whether arising at law or in equity, in contract or tort, under federal or state law, including, without limitation, (a) the Adversary Claims, (b) the Equitable Subordination Claims, (c) the Lender Liability Claims, (d) other bankruptcy claims and claims assertable by the Debtors under state law, (e) any claims related to, or asserted, or that could have been asserted in the "State Court Litigation" or "Federal Court Litigation" (as such terms are defined and described in the Disclosure Statements filed by Ideal), or in King County Superior Court lead case no. 24-2-12567-1 SEA, and the cases consolidated therein, or in King County Superior Court case no. 25-2-17253-8 SEA, (f) the Claims, (g) any claim against the First Fed Released Parties now or hereafter assigned to, or acquired by, the Debtors, Committee, or any liquidating trustee or administrator under the Plans of

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 61

Liquidation, or any other Releasing Party, whether by merger, substantive consolidation, sale, contribution, assignment or other transfer, and (h) any claims arising from or relating to (i) the Credit Accommodation and Enhancement Agreements; (ii) the Security Instruments, (iii) the First Fed Loans; (iv) the First Fed Parties' banking, treasury, lending, credit, business, or other relationship with any of the Debtors, Ryan Wear, Additional Collateral Grantors, or any other affiliate or subsidiary of any Debtor or Ryan Wear, or any officer, employee or agent of such entities or persons, (v) any and all payments received by or on behalf of First Fed, and (vi) the Reserve Account; provided, however, such release from the First Fed Parties shall not include (collectively, the "Releasing Party Reserved Claims") (aa) the First Fed Allowed Claim, (bb) First Fed's secured claims based on its retention of collateral pursuant to <u>Section 6</u> of the First Fed Settlement Agreement, (cc) any claims against any parties other than the Debtors related to the First Fed Third Party Loans, (dd) any claims First Fed may possess against Ryan Wear, Richard Wear, or Jordan Chirico, (ee) any claims First Fed may assert related to any non-Debtor loan, (ff) any claims First Fed may assert against non-Debtor parties related to any unrelated loans, treasury and credit products, (gg) any claims of First Fed against any creditor of the Debtors, other than Releasing Creditors (subject to and only to the extent provided above), or party other than the Debtors and/or their bankruptcy estates, and (hh) any claims now or hereafter in litigation with any non-Party for apportionment or allocation of fault to any Releasing Party, including any Debtor, Additional Collateral Grantor, or any affiliate or subsidiary of any Debtor, or any related affirmative defense based on the fault of such Releasing Party, all of which Releasing Party Reserved Claims are expressly reserved by the First Fed Parties. For the avoidance of doubt, the releases described herein shall not include any claims, demands, causes of action, suits, liabilities, or obligations arising out of or relating to any breach of the Settlement Agreement or the Plan. Capitalized terms used but not defined in this Article 14 shall have the meaning ascribed thereto in the First Fed Settlement Agreement [Dkt No. 1069].

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the foregoing releases by the Releasing Parties, which includes by reference each of the related provisions and definitions contained in the Plan and the First Fed Settlement Agreement, and, further, shall constitute the Bankruptcy Court's finding that the First Fed Release is: (a) consensual; (b) essential to the Confirmation of the Plan; (c) given in exchange for the good and valuable consideration provided by the Releasing Parties, including First Fed's contributions to facilitating the restructuring and implementing the Plan; (d) a good faith settlement and compromise of the claims or causes of Action released by the First Fed Release; (e) in the best interests of the Debtors and the Estates; (f) fair, equitable, and reasonable; (g) given and made after due notice and opportunity for hearing; and (h) a bar to any of the Releasing

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 62

Parties asserting any claim or Cause of Action released pursuant to the First Fed Release.

## D.    Exculpation

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is exculpated from, any liability to any Holder of a Cause of Action, Claim, or Interest for any act or omission taking place between the Petition Date and the Effective Date of the Plan in connection with, relating to, or arising out of the Chapter 11 Cases; consummation of the transactions contemplated by the APAs; the formulation, preparation, dissemination, negotiation, filing, or consummation of the Plan or Disclosure Statement, Schedules and Statements, Plan Supplement, Liquidation Trust Agreement, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or Disclosure Statement, Schedules and Statements, Plan Supplement, or the filing of the Chapter 11 Cases; the pursuit of Confirmation; administration and implementation of the Plan, including the Distribution of property under the Plan or any other related agreement; negotiations regarding or concerning any of the foregoing, or the administration of the Plan or property to be distributed hereunder, except for actions determined by Final Order to have constituted bad faith, breach of fiduciary duty, willful misconduct, actual fraud, or gross negligence, but in all respects such Entities shall be entitled to assert appropriate affirmative defenses, including reliance upon the advice of counsel, with respect to their duties and responsibilities pursuant to the Plan.

## E.    Document Retention

On and after the Effective Date, the Liquidation Trustee may maintain documents in accordance with its standard document retention policy, as may be altered, amended, modified, or supplemented by the Liquidation Trustee.

## F.    Reimbursement or Contribution

If the Bankruptcy Court Disallows a Claim for reimbursement or contribution of an Entity pursuant to Section 502(e)(1)(B) of the Bankruptcy Code, then to the extent such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever Disallowed and expunged notwithstanding Section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date (i) such Claim has been adjudicated as non-contingent, or (ii) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim is no longer contingent.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 63

Exhibit A
Page 68 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 68 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 68 of 78

## G.    Term of Injunctions or Stays

Unless otherwise provided in the Plan or Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to Sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or Confirmation Order), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.  All injunctions or stays contained in the Plan or Confirmation Order shall remain in full force and effect in accordance with their terms.

## ARTICLE 15.
## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

### A.    Conditions Precedent to the Effective Date

The Consummation and Effective Date of the Plan shall be subject to the fulfillment or waiver (pursuant to the provisions of Article 15.B hereof) of the following conditions:

1.    The Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) in form and substance acceptable to Debtors and the Committee.

2.    Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents necessary to implement and effectuate the Plan;

3.    the Liquidation Trustee shall have been appointed and the Liquidation Trust Agreement shall have been executed and become effective;

4.    the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

5.    the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to Debtors and the Committee; and

6.    Debtors shall have implemented all transactions contemplated herein in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to Debtors and the Committee, in their discretion.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 64

       7.      The Ideal plan has been confirmed on terms providing for contribution by Ideal to the Liquidation Trust.

## B.    Waiver of Conditions

The conditions to Consummation set forth in this Article 15 may be waived by Debtors and the Committee without further notice, leave, or order of the Bankruptcy Court or any formal action other than a proceeding to confirm or consummate the Plan.

## C.    Effect of Failure of Conditions

If Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan shall (i) constitute a waiver or release of any Causes of Action by Debtors or Claims or Interests by any Holders of Claims or Interests, or any other Entity; (ii) prejudice in any manner the rights of Debtors, any Holders of Claims or Interests, or any other Entity; or (iii) constitute an admission, acknowledgment, offer, or undertaking by Debtors, any Holders of Claims or Interests, or any other Entity in any respect.

## ARTICLE 16.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

## A.    Modification and Amendments

Except as otherwise specifically provided in the Plan, Debtors reserve the right to modify the Plan, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend, or modify the Plan one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan and Disclosure Statement or the Confirmation Order in such matters as may be necessary to carry out the purposes and intent of the Plan.

## B.    Effect of Confirmation on Modifications

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to Section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 65

Exhibit A
Page 70 of 78
24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 70 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 70 of 78

## C. Revocation or Withdrawal of Plan

Debtors reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent Chapter 11 plans. If Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then (i) the Plan shall be null and void in all respects; (ii) any settlement or compromise which has not been independently approved by the Court and is solely embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (iii) nothing contained in the Plan shall (x) constitute a waiver or release of any Claims, Interests, or Causes of Action; (y) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (z) constitute an admission, acknowledgement, offer, or undertaking of any sort by such Debtor, any Holder of a Claim or Interest, or any other Entity.

## ARTICLE 17.
## RETENTION OF JURISDICTION

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court retains jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to Sections 105(a) and 1142 of the Bankruptcy Code, to the fullest extent permitted by law, including jurisdiction to:

1. allow, disallow, determine, liquidate, classify, estimate, or establish the priority, secured or unsecured status, or amount of any Claim or Interest, including resolution of any request for payment of any Administrative Claim and resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

2. decide and resolve all matters related to the granting and denying, in whole or in part, of any applications for allowance of compensation or reimbursement of expenses to Professionals (including Professional Fee Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3. resolve any matters related to (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to Section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 66

Exhibit A
Page 71 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 71 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 71 of 78

or Unexpired Lease that is assumed (or assumed and assigned); (c) the Liquidation Trustee amending, modifying, or supplementing, after the Effective Date, pursuant to Article 14, the Executory Contracts and Unexpired Leases to be assumed, rejected, or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.    ensure that Distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.    adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving Debtors that may be pending on the Effective Date;

6.    adjudicate, decide, or resolve any and all matters related to Section 1141 of the Bankruptcy Code;

7.    enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan or the Plan Supplement;

8.    enter and enforce any order for the sale of property pursuant to Sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.    resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

10.    issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

11.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the releases, injunctions, and other provisions contained in Article 14, and enter such orders as may be necessary or appropriate to implement such releases, injunctions, and other provisions;

12.    resolve any cases, controversies, suits, disputes, or Causes of Action with respect to the repayment or return of Distributions and recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article 12.H;

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 67

Exhibit A
Page 72 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 72 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 72 of 78

13. enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

14. determine any other matters that may arise in connection with, or that relate to, the Plan, Disclosure Statement, Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan;

15. enter an order or Final Decree concluding or closing any of the Chapter 11 Cases;

16. adjudicate any and all disputes arising from or relating to Distributions under the Plan;

17. consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

18. determine requests for payment of Claims entitled to priority pursuant to Section 507 of the Bankruptcy Code;

19. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

20. hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, whether they occur before, on, or after the Effective Date;

21. hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

22. hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, injunctions, and releases granted in connection with and under the Plan, including under Article 14;

23. hear and determine all Causes of Action;

24. enforce all orders previously entered by the Bankruptcy Court; and

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 68

Exhibit A
Page 73 of 78

25. hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE 18.
## MISCELLANEOUS PROVISIONS

### A. Binding Effect

Subject to the terms hereof and notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of the Plan, Plan Supplement, and Confirmation Order shall be effective and enforceable and deemed binding upon Debtors, Debtors' Estates, the Liquidation Trust, and any and all Holders of Claims or Interests (regardless of whether such Claims or Interests are deemed to have accepted or rejected the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan or Confirmation Order, and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with Debtors. All Claims and debts shall be as fixed, adjusted, or compromised, as applicable, pursuant to the Plan regardless of whether any Holder of a Claim, Interest, or debt has voted on the Plan.

### B. Additional Documents

On or before the Effective Date, Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. Debtors or the Trustee, as applicable, all Holders receiving Distributions pursuant to the Plan, and all other parties-in-interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

### C. Reservation of Rights

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur. None of the Filing of the Plan, any statement or provision contained in the Plan, or the taking of any action by any Debtor with respect to the Plan or the Plan Supplement shall be, or shall be deemed to be, an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 69

Exhibit A
Page 74 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 74 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 74 of 78

### D. Successors and Assigns

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, Beneficiaries, or guardian, if any, of each Entity.

### E. Dissolution of the Committee

The Committee shall dissolve on the Effective Date and the members of such Committee shall be released and discharged from all further rights and duties arising from or related to the Chapter 11 Cases, except with respect to, and to the extent of any (i) participation by the Committee and its retained Professionals in any appeal pending as of the Effective Date or timely filed thereafter, the outcome of which could affect the treatment of prepetition creditors, including, but not limited to, any cases, controversies, suits, or disputes arising in connection with the Consummation, interpretation, implementation, or enforcement of the Plan or Confirmation Order; or (ii) applications for Professional Fee Claims or expense reimbursements for members of such Committee, including, without limitation, Professional Fee Claims or expense reimbursements arising from the appeals described in the foregoing clause (i), which, subject to approval by the Bankruptcy Court, shall be paid from the Professional Fee Escrow Account or the Liquidation Trust Assets.

### F. Notices

To be effective, all notices, requests, and demands to or upon Debtors shall be in writing (which may be by email) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by email, when received and confirmed telephonically or in writing (including by email), addressed to the following:

| Debtors | With a Copy to Counsel for Debtors |
|---|---|
| Force Ten Partners, LLC<br>Attn: Brian Weiss<br>Chief Restructuring Officer<br>5271 California Avenue, Ste. 270<br>Irvine, CA 92617 | Tonkon Torp LLP<br>Attn: Danny Newman<br>1300 SW 5th Avenue, Suite 2400<br>Portland, OR 97201<br>Email: danny.newman@tonkon.com |

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 70

Exhibit A
Page 75 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 75 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 75 of 78

## G.  Entire Agreement

Except as otherwise indicated, the Plan and Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan; provided, however, the terms of any Settlement Agreement between the Debtors and First Fed Parties approved by a Final Order of the Bankruptcy Court prior to the Effective Date shall control the settlement terms as between the parties thereto, including the First Fed Released Parties.

## H.  Exhibits

All exhibits and documents included in the Plan and the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to Debtors' counsel at the address above or by downloading such exhibits and documents from the Bankruptcy Court's website at http://www.waeb.uscourts.gov.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion of the Plan shall control.

## I.  Non-Severability of Plan Provisions

The provisions of the Plan, including its release, injunction, exculpation, and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is (i) valid and enforceable pursuant to its terms, (ii) integral to the Plan and may not be deleted or modified without the consent of Debtors consistent with the terms set forth herein, and (iii) non-severable and mutually dependent.

## J.  Votes Solicited in Good Faith

Upon entry of the Confirmation Order, Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing solicitation of votes on the Plan.

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 71

Exhibit A
Page 76 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 76 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 76 of 78

**K. Closing of Chapter 11 Cases**

The Liquidation Trustee shall, promptly after full administration of the Chapter 11 Cases, file with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

DATED: July 16, 2025.

> REFRESHING USA, LLC
> CREATIVE TECHNOLOGIES, LLC
> WATER STATION MANAGEMENT LLC
>
> By _____
>    Brian Weiss, Chief Restructuring Officer
>    Force Ten Partners, LLC
>
>
> OFFICIAL COMMITTEE OF UNSECURED
> CREDITORS OF REFRESHING USA, LLC,
> WATER STATION MANAGEMENT LLC, AND
> CREATIVE TECHNOLOGIES, LLC
>
> By _____
>    Michael J. Gearin, WSBA 20982
>    *Attorneys for Official Committee of Unsecured*
>    *Creditors of Refreshing USA, LLC, Water*
>    *Station Management LLC, and Creative*
>    *Technologies, LLC*

Presented by:

TONKON TORP LLP

By */s/* Danny Newman _____
   Danny Newman, WSBA 61824
   *Attorneys for Debtors and*
   *Debtors-in-Possession*

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 72

Exhibit A
Page 77 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 77 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 77 of 78

K&L GATES LLP

By */s/ Michael J. Gearin*
    Michael J. Gearin, WSBA 20982
    *Attorneys for Official Committee*
    *of Unsecured Creditors of*
    *Refreshing USA, LLC,*
    *Water Station Management LLC,*
    *and Creative Technologies, LLC*

044904\00001\18604720v2

DEBTORS' AND COMMITTEE'S JOINT FIRST AMENDED AND SECOND MODIFIED CHAPTER 11 PLAN OF LIQUIDATION (JULY 16, 2025) – Page 73

Exhibit A
Page 78 of 78

24-01863-FPC11    Doc 1117    Filed 07/16/25    Entered 07/16/25 12:03:53    Pg 78 of 78
24-01863-FPC11    Doc 1259-1    Filed 09/09/25    Entered 09/09/25 11:46:22    Pg 78 of 78