Danny Newman, WSBA No. 61824
  Email:  danny.newman@tonkon.com
  Direct:  503.802.2089
Christopher Pallanch, WSBA No. 45859
  Email: christopher.pallanch@tonkon.com
  Direct: 503.802.2104
Michael W. Fletcher, WSBA No. 52208
  Email:  michael.fletcher@tonkon.com
  Direct:  503.802.2169
Eric Levine, admitted *Pro Hac Vice*
  Email: eric.levine@tonkon.com
  Direct: 503.802.2072
Tonkon Torp LLP
1300 SW 5th Avenue, Suite 2400
Portland, OR 97201
  Main:  503.221.1440
  Facsimile:  503.274.8779
  *Attorneys for Remaining Debtor*
  *Refreshing USA Liquidation Trust*

HONORABLE FREDERICK P. CORBIT

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF WASHINGTON

| REFRESHING USA LIQUIDATION TRUST, | Lead Case No. 24-01863-11 (Jointly Administered) |
|---|---|
| Remaining Debtor[1], | **REFRESHING USA LIQUIDATION TRUST'S MOTION TO APPROVE SETTLEMENT WITH** |

---

[1] The Refreshing USA Liquidation Trust (the "Liquidation Trust") is the successor-in-interest to the Former Debtors and Debtors-in-Possession (defined below). The Former Debtors and Debtors-in-Possession, along with the last four digits of their respective Employer Identification Numbers, are as follows: Refreshing USA, LLC (8945) ("Refreshing"); Water Station Management LLC (2716) ("Water Station"); Creative Technologies, LLC (1888) ("Creative" and, together with Refreshing and Water Station, the "Refreshing Debtors"); and Ideal Property

REFRESHING USA LIQUIDATION TRUST'S MOTION TO APPROVE SETTLEMENT
WITH CANTALOUPE, INC. PURSUANT TO FED. R. BANKR. P. 9019 - Page 1

The Refreshing USA Liquidation Trust (the "Liquidation Trust") and Cantaloupe, Inc. ("Cantaloupe," together with the Liquidation Trust, the "Parties") jointly move this Court, under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for entry of an order ("Order"), substantially similar to the proposed form of order attached as **Exhibit A**, approving the settlement agreement between Liquidation Trust and Cantaloupe (the "Settlement Agreement"), which resolves issues related to:

(i)    Cantaloupe's asserted administrative claim, Refreshing Claim No. 356 (the "Cantaloupe Claim");

(ii)    The Liquidation Trust's claims against Cantaloupe;

(iii)    Payment to the Liquidation Trust from Cantaloupe; and

(iv)    Cooperation among the Parties on future document production.

## RELIEF REQUESTED

By this Motion, the Parties jointly seek the entry of an order granting this Motion and authorizing the Parties to take all actions necessary to effectuate the Settlement Agreement.

## I.    FACTUAL BACKGROUND

Former Debtors Refreshing USA, LLC ("Refreshing"), Water Station Management LLC, and Creative Technologies, LLC (the "Debtors") were chapter

---

Investments, LLC (1791) ("Ideal" and, together with the Refreshing Debtors, "Former Debtors"). The cases being jointly administered are Refreshing, Case No. 24-01863-11; Water Station, Case No. 24-01864-11; and Creative, Case No. 24-01866-11. Ideal, Case No. 24-01421, was not jointly administered and closed on January 8, 2026. The service address for the Liquidation Trust and Former Debtors, the purposes of these Chapter 11 cases only, is: 1300 SW 5th Avenue, Suite 2400, Portland, Oregon 97201.

REFRESHING USA LIQUIDATION TRUST'S MOTION TO APPROVE SETTLEMENT WITH CANTALOUPE, INC. PURSUANT TO FED. R. BANKR. P. 9019 - Page 2

11 debtors in the following cases before the United States Bankruptcy Court for the Eastern District of Washington ("Court"): 24-01863-11, 24-01864-11, and 24-01866-11 ("Chapter 11 Cases").

On August 27, 2024 (the "Petition Date"), involuntary petitions were filed against each Debtor in the Bankruptcy Court for the Southern District of Texas ("Texas Court") under chapter 11 of the Bankruptcy Code (the "Texas Bankruptcy Cases"). On October 27, 2024, the Texas Court entered Orders Directing Joint Administration of the Texas Bankruptcy Cases. On November 14, 2024, on motion to transfer venue filed by Debtors, the Texas Court transferred the Texas Bankruptcy Cases to the Court.

In the Chapter 11 Cases, the Court confirmed Debtors' plan of liquidation ("Plan") pursuant to an order entered on September 9, 2025. Under the Plan, Debtors' assets were pooled into the Liquidation Trust, including the Retained Causes of Action (as defined in the Plan).

Refreshing and Cantaloupe were parties to a Master Services Agreement ("MSA") and applicable Rental Terms and Conditions (the "Cantaloupe Agreement") pursuant to which Cantaloupe leased certain credit card readers to Refreshing and its affiliates for use in Debtors' vending and water machines, and Cantaloupe provided ongoing services and warranties in connection with such equipment.

Following the Petition Date, Cantaloupe continued to provide goods and services to the Debtors pursuant to the terms of the Cantaloupe Agreement and, in exchange for such goods and services, Cantaloupe alleges that it is owed for rental fees, licensing and processing fees as set forth in the Cantaloupe Agreement, and that such services were reasonable and necessary post-petition expenses of the Debtors.

REFRESHING USA LIQUIDATION TRUST'S MOTION TO APPROVE SETTLEMENT WITH CANTALOUPE, INC. PURSUANT TO FED. R. BANKR. P. 9019 - Page 3

The Parties entered a stipulation in the Chapter 11 Cases rejecting the MSA, Cantaloupe Agreement, and any other related contracts, effective April 30, 2025. [ECF No. 974.]

On July 7, 2025, Cantaloupe filed the Cantaloupe Claim asserting a claim of not less than $3,239,874.34. Cantaloupe asserts that a portion of its claim is entitled to priority as a post-petition, administrative claim.

The Liquidation Trust has asserted that payments made by the Debtors may be avoided as fraudulent transfer under Bankruptcy Code section 544 and 548 and related state law. The Liquidation Trust has alleged that Cantaloupe received payments from the Debtors from January 2021 in the amount of $9,229,912, and that such payments are recoverable as fraudulent transfers. Cantaloupe disputes this, asserts that, as an arm's-length vendor who provided goods and services to the Debtors, Cantaloupe's good faith defenses will prevail. Cantaloupe alleges that it acted in good faith, provided valuable services to the Debtors in the ordinary course of Cantaloupe's and the Debtors' respective businesses, and transferred net revenues to the Debtors well in excess of any payments that Cantaloupe received from the Debtors. Moreover, Cantaloupe has asserted that Cantaloupe's claims are valid and enforceable against the Debtors, represent amounts owed for goods and services provided to the Debtors that were reasonable and necessary and, thus, entitled to priority as an administrative expense claim.

## II.	PROPOSED SETTLEMENT

To resolve the Cantaloupe Claim, the Liquidation Trust's claims against Cantaloupe, and to provide finality without additional legal expenses or delays caused by the litigation, the Parties have agreed to settle all disputes between the Liquidation Trust and Cantaloupe, the substantive terms of which are copied below and are subject to approval by the Court:

REFRESHING USA LIQUIDATION TRUST'S MOTION TO APPROVE SETTLEMENT WITH CANTALOUPE, INC. PURSUANT TO FED. R. BANKR. P. 9019 - Page 4

a) <u>Payment</u>. Within ten business days of entry of an order by the Court approving this Agreement (the "Settlement Order"), Cantaloupe shall pay the sum of $499,000 to the Liquidation Trust via wire or ACH, pursuant to written instructions issued by counsel for Liquidation to counsel for Cantaloupe (the "Settlement Payment").

b) <u>Expungement of Claim</u>. Upon both conveyance of the Settlement Payment and the entry of the Settlement Order, the Proof of Claim shall be expunged from the claims register in the case. For the avoidance of doubt, Cantaloupe agrees that no payment or distribution will be due or payable to Cantaloupe and Cantaloupe waives and releases any right to participation or interest in the Liquidation Trust.

c) <u>Cooperation on Documentation</u>. Cantaloupe will provide reasonable, good faith cooperation with reasonable written requests from the Liquidation Trust for non-privileged, non-confidential documents, if any, in Cantaloupe's possession relevant to the Liquidation Trust's Retained Causes of Action. Such cooperation is subject to the following conditions: (i) such documents will be produced by Cantaloupe on dates and in a manner to be mutually agreed by the Parties, (ii) Cantaloupe shall not be required to incur any third party fees, costs or expenses (including attorneys' or advisors' fees or expenses) in connection with searching for, reviewing, or producing such documents, and (iii) nothing in this Agreement shall be construed to require, and Cantaloupe shall have no obligation to testify, provide affidavits, prepare witness declarations, or sit for interviews, discussions or depositions. The Liquidation Trust accepts such cooperation as resolution of the now-pending subpoena for documents dated January 27, 2025.

d) <u>Further Instruments and Assurances</u>. The Parties shall take all necessary action and execute all necessary documents and instruments as may reasonably be requested by a Party to carry out the intent of this Agreement.

e) <u>Release of Cantaloupe</u>. Upon both conveyance of the Settlement Payment and entry of the Settlement Order, the Liquidation Trust, on behalf of itself and the Debtors, and each of their assigns, affiliates, attorneys, representatives, and respective agents, hereby releases and

REFRESHING USA LIQUIDATION TRUST'S MOTION TO APPROVE SETTLEMENT WITH CANTALOUPE, INC. PURSUANT TO FED. R. BANKR. P. 9019 - Page 5

discharges Cantaloupe, as well as its respective parents, subsidiaries, officers, directors, partners, agents, managers, management entities, representatives, employees, members, predecessors in interest, participants, affiliates, affiliated entities or lenders, attorneys, insurers, and reinsurers, from any and all obligations of any kind, and any liability, claims, or causes of action, damages, demands, rights and losses of any kind or nature, including, but not limited to, contract or tort, law or equity, both known or unknown, asserted or unasserted that the Liquidation Trust or the Debtors ever had, now has, or may have, existing now or in the future for acts, events or occurrences prior to the date of this Agreement relating in any way to the agreements, the Proof of Claim or any transfers or payments made by the Debtors to Cantaloupe; *provided, however*, that this release does not include any claims for breach of this Agreement.

f) <u>Release of the Liquidation Trust</u>.  Upon both conveyance of the Settlement Payment and entry of the Settlement Order, Cantaloupe, and its assigns, parents, subsidiaries, officers, directors, partners, affiliates, attorneys, representatives, and respective agents, hereby releases and discharges the Liquidation Trust, as well as its respective agents, managers, management entities, representatives, employees, members, predecessors in interest, participants, affiliates, affiliated entities or lenders, attorneys, insurers, and reinsurers, from any and all obligations of any kind, and any liability, claims, or causes of action, damages, demands, rights and losses of any kind or nature, including, but not limited to, contract or tort, law or equity, both known or unknown, asserted or unasserted that Cantaloupe ever had, now has, or may have existing now or in the future for acts, events or occurrences prior to the date of this Agreement relating in any way to the agreements, the Proof of Claim or any transfers or payments made by the Debtors to Cantaloupe; *provided, however*, that this release does not include any claims for breach of this Agreement.

g) <u>No Admission of Liability</u>.  The Parties agree that this Agreement is a result of compromise of their claims and potential claims against each other and shall not be construed as or determined to be an admission of liability to any person or entity.

## III. LEGAL AUTHORITY

Bankruptcy Rule 9019(a) provides: "on motion . . . and after a hearing on notice to creditors, the debtor . . . and to such other entities as the court may designate, the court may approve a compromise or settlement." The approval of a settlement in a bankruptcy proceeding is within the sound discretion of the Court and will not be disturbed or modified on appeal unless approval or disapproval is an abuse of discretion. *Martin v. Cane (In re A&C Prop.)*, 784 F.2d 1377, 1380 (9th Cir. 1986) ("*In re A&C Prop.*"). The test is whether the proposed settlement "falls below the lowest point in the range of reasonableness." *In re TBH19, LLC*, 2022 WL 16782946, at *6 (B.A.P. 9th Cir. Nov. 8, 2022) (quoting *In re Pac. Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004)).

According to the Ninth Circuit Court of Appeals, when a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider: (a) the probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises. *In re A & C Prop.*, 784 F.2d at 1381 (9th Cir. 1985); *see also, In re WCI Cable, Inc.*, 282 B.R. 457, 469 (Bankr. D. Or. 2002). "[W]hen engaging in this analysis, bankruptcy courts need not conduct a 'mini trial on the merits,' but need only 'canvass the issues.'" *In re TBH19, LLC*, 2022 WL 16782946, at *6 (quoting *In re Open Med. Inst., Inc.*, 639 B.R. 169, 181 (B.A.P. 9th Cir. 2022)).

In exercising its review under Bankruptcy Rule 9019, a bankruptcy court gives weight to sound business judgment. *See, e.g., In re Douglas J. Roger, M.D., Inc., APC*, 393 F.Supp.3d 940, 962 (C.D. Cal. 2019) (citing *In re A & C Prop.*, 784

F.2d at 1381); *Abeles v. Infotechnology, Inc. (In re Infotechnology, Inc.*), 89 F.3d 825 (2d Cir. 1995) (noting that in determining whether to approve a debtor's motion to settle a controversy, a court does not substitute its judgment for that of the debtor in possession). In this instance, each of the four *In re A&C Properties* factors weigh in favor of approval of the settlement.

As to the first *In re A&C Properties* factor, while the Liquidation Trust believes its avoidance claim has merit, the likelihood that the Liquidation Trust would prevail is uncertain. The Liquidation Trusts' prosecution of an avoidance action is largely dependent on its Ponzi scheme theory and accounting records that have been intertwined with the Former Debtors records and other subsidiaries of the Former Debtors. Cantaloupe disputes that the Liquidation Trust will be able to establish any of the facts or circumstances relating to the alleged Ponzi scheme, a Ponzi start date, or any alleged fraud or misconduct by or on behalf of the Debtors. In addition, Cantaloupe has asserted defenses to the causes of action that are fact-intensive, such as Cantaloupe's good-faith and whether the transfers were in furtherance of the Ponzi scheme, which, if successful, would potentially entitle Cantaloupe to retain the full amounts it received. Such defenses including their fact intensive nature and raising potentially novel legal issues create significant uncertainty and cost, which presents significant downside risk for the Liquidation Trust's pursuit of this litigation. The settlement also eliminates a $3.2 million administrative claim, a substantial and real benefit for the Liquidation Trust. The complexity of the litigation involved and the expense, inconvenience and delay in attending it, all weigh in favor of approval of the settlement between the Liquidation Trust and Cantaloupe.

With respect to the remaining *In re A&C Properties* factor, the Liquidation Trust believes the proposed settlement is fair, reasonable and adequately addresses

both the Liquidation Trust's rights and the Cantaloupe Claim that has been subject to debate and potential litigation and is therefore in the best interest of the Liquidation Trust and its creditors.

**IV.     CONCLUSION**

Based upon the foregoing, the Liquidation Trust and Cantaloupe respectfully request that the Court enter an order, substantially similar to the proposed form of order attached as **Exhibit A**, approving the settlement agreement between the Liquidation Trust and Cantaloupe, which resolves issues related to:

(i)     Cantaloupe's asserted administrative claim, the Cantaloupe Claim;

(ii)     The Liquidation Trust's claims against Cantaloupe;

(iii)     Payment to the Liquidation Trust from Cantaloupe; and

(iv)     Cooperation among the Parties on future document production.

DATED: April 21, 2026.

| ORRICK, HERRINGTON & SUTCLIFFE LLP | TONKON TORP LLP |
|---|---|
| By: */s/ Aaron Brecher* | By: */s/ Michael W. Fletcher* |
| Aaron Brecher, WSBA No. 47212  Email: abrecher@orrick.com  Direct: 206.839.4300  401 Union Street, Suite 3300  Seattle, WA 98101 | Danny Newman, WSBA No. 61824  Email:  danny.newman@tonkon.com  Direct:  503.802.2089  Christopher Pallanch, WSBA No. 45859  Email:  christopher.pallanch@tonkon.com  Direct:  503.802.2104 |
| Lorraine McGowen, admitted *Pro Hac Vice*  Email:  lmcgowen@orrick.com  Direct:  212.506.5000  David Litterine-Kaufman, admitted *Pro Hac Vice*  Email:  dlitterinekaufman@orrick.com  Direct:  212.506.5000 | Michael W. Fletcher, WSBA No. 52208  Email:  michael.fletcher@tonkon.com  Direct:  503.802.2169  Eric Levine, admitted *Pro Hac Vice*  Email:  eric.levine@tonkon.com  Direct:  503.802.2072  1300 SW 5th Avenue, Suite 2400  Portland, OR 97201 |

Michael Trentin, admitted *Pro Hac Vice*
  Email: mtrentin@orrick.com          *Attorneys for Debtor Refreshing USA*
  Direct: 212.506.5000                *Liquidation Trust*
51 West 52nd Street
New York, NY 10019

*Attorneys for Cantaloupe, Inc.*

044904\00001\19368701v7

24-01863-FPC11    Doc 1570    Filed 04/21/26    Entered 04/21/26 13:53:02    Pg 10 of 10